JUDGE COTE

Thomas V. Marino, Esq. (TM 7397)
Dunnington Bartholow & Miller LLP
Attorneys for Plaintiffs
477 Madison Avenue – 12th Floor
New York, New York 10022
(212) 682-8811

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 11201

-----------------------------------------------------------------X

SHEA DEVELOPMENT CORP., BRAVERA, INC., and IP HOLDING OF NEVADA CORP.,

Plaintiffs,

07 Civ.

- against -

**COMPLAINT**

CHRISTOPHER WATSON, and ELIZABETH ANNE CONLEY,

**JURY TRIAL DEMANDED**

Defendants.

-----------------------------------------------------------------X

RECEIVED U.S.D.C. S.D. N.Y. CASHIERS

Plaintiffs, SHEA DEVELOPMENT CORP., BRAVERA, INC., and IP HOLDING OF NEVADA CORP. by their attorneys, Dunnington, Bartholow & Miller LLP, for their Complaint against defendants CHRISTOPHER WATSON, and ELIZABETH ANNE CONLEY, allege as follows:

**NATURE OF ACTION**

1. This action arises out of a reverse triangular merger on or about July 16, 2007 by and among Shea Development Corp. ("Shea"), Shea Development Acquisition No. 3 Corp. ("Acquisition Corp."), on the one side and Bravera, Inc. ("Bravera"), and Christopher Watson ("Watson") on the other by which Shea through its wholly owned subsidiary Acquisition Corp. acquired Bravera. Shea through its wholly owned subsidiary IP Holding of Nevada Corp. ("IP Holding") licensed for use by Bravera

the intellectual property assets that were then owned by Intellectus, LLC ("Intellectus") pursuant to an agreement entered into as of July 16, 2007.

2. Defendant Watson was the sole shareholder of Bravera and the sole member of Intellectus. Defendant Elizabeth Ann Conley ("Conley") was responsible for sales at Bravera at the time of the acquisition and post merger held the title of Vice President of Strategic Accounts at Bravera.

3. The two principal agreements executed by the parties to the acquisition were the Agreement and Plan of Merger dated April 26, 2007 by and among Shea, Acquisition Corp., Bravera, and Watson (the "Acquisition Agreement") and a Software License and Asset Purchase Agreement (the "Asset Purchase Agreement") entered into as of July 16, 2007 between and among Intellectus and IP Holding.

4. A condition of the closing of the acquisition was the delivery of the executed Asset Purchase Agreement by defendant Watson to Shea.

5. Defendants induced plaintiffs to enter into the Acquisition Agreement and Asset Purchase Agreement by fraudulently misrepresenting the number and value of sales contracts in Bravera's sales "Pipeline" and falsely and fraudulently "Estimat[ing]" Bravera's sales for calendar year 2007. In addition, defendant Watson breached the Asset Purchase Agreement by having breached, *inter alia*, certain Warranties and Representations regarding projected financial results for calendar year 2007. Defendants Watson and Conley also breached their employment agreements with plaintiffs and the fiduciary duties they owed to plaintiffs in their capacity as high and senior ranking officers of plaintiffs in the period following the merger by: (1) failing to immediately apprise plaintiffs' senior management that the information that Watson and

Conley had both individually and jointly provided to them in the course of the

negotiations that led to the merger was materially false, and (2) by failing to immediately

apprise senior management at Shea of material changes in the sales prospects of Bravera.

## THE PARTIES

6.      Plaintiff Shea Development Corp. is a foreign corporation duly

organized and subsisting under the laws of the State of Nevada with its principal place of

business located at 200 East Palm Valley Drive, 2nd Floor, Oviedo, Florida.

7.      Shea is qualified to do business in the State of New York.

8.      Shea is and at all relevant times herein has been engaged in the

business of software development through a number of wholly owned operating

subsidiaries.

9.      Plaintiff Bravera, Inc. is a foreign corporation duly organized

and subsisting under the laws of the State of Florida with its principal place of business

located at 200 East Palm Valley Drive, 2nd Floor, Oviedo, Florida.

10.     Bravera and Shea Development Acquisition No. 3 Corp. were

merged into a single entity Bravera, Inc. on July 16, 2007 in a reverse triangular merger.

Since July 16, 2007, Bravera is and has been a wholly owned subsidiary of Shea.

11.     Bravera is qualified to do business in the State of New York.

12.     Bravera is and at all relevant times herein has been engaged in

the business of software development.

13.     Plaintiff IP Holding of Nevada, Inc. is a foreign corporation

duly organized and existing under the laws of the State of Nevada with its principal place

of business located at 200 East Palm Valley Drive, 2nd Floor, Oviedo, Florida.

14. Intellectus, L.L.C., which is not a party to this action, is a foreign limited liability company that is organized under the laws of the State of a Florida with a principal place of business located at 300 Bucksley Lane, #305, Daniel Island, South Carolina.

15. Upon information and belief, Intellectus is not qualified to do business in the State of New York.

16. Upon information and belief, defendant Christopher Watson is a citizen and resident of the State of South Carolina residing at 300 Bucksley Lane, #305, Daniel Island, South Carolina.

17. At all relevant times, defendant Watson was and upon information and belief still is sole member of Intellectus.

18. Prior to July 16, 2007, defendant Watson was the President, Chief Executive Officer and sole shareholder of Bravera.

19. Between July 15, 2007 and the effective date of his resignation, October 30, 2007, Watson was the Executive Vice President of Sales for Shea and had overall sales management responsibility for all Shea subsidiaries including those at Bravera.

20. Upon information and belief, defendant Elizabeth Ann Conley is a citizen and resident of the State of South Carolina residing at 1147 Blakeway Street, Daniel Island, South Carolina.

21. Upon information and belief from December 2006 until Bravera was acquired by Shea on July 16, 2007, Conley was employed as Vice President of Strategic Accounts which was then the title of the chief sales position at Bravera.

22. Upon information and belief, Conley reported directly to Watson while she was employed as Vice President of Strategic Accounts for Bravera.

23. Between July 16, 2007 and the termination of her employment on October 15, 2007, Conley was Vice President of Sales for Bravera and was responsible for administration and sales management at Bravera.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332 because the parties to this action are citizens and residents of different states and the amount in controversy exceeds $75,000.

25. Jurisdiction and venue is proper in this Court under 28 U.S.C. § 1391(a)(3) as all the parties to the Acquisition Agreement have "expressly and irrevocably consent[ed] and submit[ted] to the exclusive jurisdiction of the applicable local, federal or appellate courts located in New York, New York in connection with any proceeding arising from or out of this Agreement." Section 9.11 of the Acquisition Agreement provides in full as follows:

> **Governing Law**. This Agreement will be governed by and construed in accordance with the domestic laws of the State of New York, without giving effect to any choice of law or conflict of law provision. The parties hereto expressly and irrevocably consent and submit to the exclusive jurisdiction of the applicable local, federal, or appellate courts located in New York, New York, in connection with any proceeding arising from or out of this Agreement. Each party agrees that such courts shall be deemed to be a convenient forum in any such legal proceeding, and agrees not to assert (by way of motion, as a defense or otherwise) any claim that such party is not subject

personally to the jurisdiction of any such courts, that such legal proceeding has been brought in an inconvenient forum, that the venue of such legal proceeding is improper or, that this Agreement or the subject matter hereof may not be enforced in, or by, any such courts.

26. Venue is also proper in this Court under 28 U.S.C. § 1391(a)(2) because this claim arises out of the defendants' negotiation of the Acquisition Agreement which was negotiated in substantial part in the City, County and State of New York.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

27. Watson represented and warranted in Section 2.8 of the Acquisition Agreement that there were no undisclosed liabilities except for what was described as the Navy Billing Dispute as follows:

> **No Undisclosed Liabilities**. Except for the Navy Billing Dispute and as set forth in Schedule 2.8, the Company [Bravera] has no obligations or liabilities of any nature (matured or unmatured, fixed or contingent) other than (i) those set forth or reserved against in the Company Financials, (ii) those incurred in connection with this Agreement or the transactions contemplated hereby, (iii) those incurred in the ordinary course of business consistent with the Company's past practice, and (iv) those set forth in this Agreement or the Schedules hereto.

28. Schedule 2.8 contained no relevant liabilities.

29. Watson represented and warranted in Section 2.10 of the Acquisition Agreement, entitled "Taxes", that there were no unpaid taxes due by Bravera to either the Federal government or any state government.

30. In particular, in Section 2.10(a) of the Acquisition Agreement, Watson warranted and represented:

> The Company [Bravera] has timely filed and paid any taxes due through the Tax year ended December 31, 2005 and through Tax year ended December 31, 2006. The Company has prepared and maintained adequate records so as to facilitate the prompt filing of Tax Returns when they become due.

31. On or about mid-November 2007, Bravera received from the Internal Revenue Service of the United States an account summary notice revealing unpaid taxes for the tax year ending December 31, 2005 of $258,367.91 not including interest and penalties.

32. On or about early December 2007, Bravera received from the Commonwealth of Virginia a Notice of Assessment of unpaid "Withholding" taxes for the period October through December 2005 in the amount of $9,300.20 including interest and penalties.

33. Watson represented and warranted in Section 2.24 of the Acquisition Agreement that neither he nor the Bravera had retained a broker nor had either of them incurred any third party expenses in connection with the merger. Section 2.24 of the Acquisition Agreement provides as follows:

> **Other Negotiations; Brokers; Third Party Expenses**. Except as set forth in Schedule 2.24, neither the Company nor, to the knowledge of the Shareholder, any of its Affiliates (nor any investment banker, financial advisor, attorney, accountant or other Person retained by, and in connection with its actions, for or on behalf of the Company or any such Affiliate) (i) has entered into any Contract that conflicts with any of the transactions contemplated by this Agreement or (ii) has entered into any Contract or had any discussions with any Person regarding any transaction involving the Company which could result in the Company's being subject to any claim for liability to said Person as a result of entering into this Agreement or consummating the transactions contemplated hereby. Without limiting the foregoing, except as set forth in Schedule 2.24, no finder, broker, agent, financial advisor, or other intermediary has acted on behalf of the Company in connection with the Merger or the negotiation or consummation of this Agreement or any of the transactions contemplated hereby. Schedule 2.24 sets forth a reasonable estimate of all Third Party Expenses expected to be incurred by the Company through the Closing Date in connection with the negotiation of the terms and conditions of this Agreement and the Closing of the transactions contemplated hereby.

34. Upon information and belief, Watson on behalf of Bravera, LLC hired Doug Allan of the Paladin Group, Inc. pursuant to a written agreement to locate a purchaser and to otherwise assist him and Bravera, LLC in the connection with the merger with Shea.

35. The written agreement with Allan purports to entitle Allan to a fee in connection with the merger.

36. Bravera used SalesForce.Com software to track potential sales. ("SalesForce.Com.")

37. SalesForce.Com provides a web-based service which allows clients to confidentially track customer names; specific contract opportunities with that customer; the amount of revenue at stake on each contract; the date the contract is expected to close; the stage of the sale (prospecting, needs analysis, proposal, quote, qualification, value proposition, negotiation, review, etc.); next steps in the sales process; and probability of success.

38. Upon information and belief, prior to July 16, 2007, a principal duty of defendant Conley while she was employed by Bravera in the capacity of Vice President of Strategic Accounts was to prepare regular sales updates for Watson using SalesForce.Com software.

39. As Vice President of Strategic Accounts at Bravera, defendant Conley was responsible and had operational control of the SalesForce.Com software and was the only person at Bravera licensed to use that software.

40. Between April 30 and May 2, 2007, during a three day face to face meeting in Orlando, Florida, defendant Watson presented Shea with projected

financial statements for calendar year 2007 allegedly based in principal part on a *bona fide* projection of sales (the "Orlando Plan") that he, Conley, and Bravera had prepared using SalesForce.Com software. (The "May 2 Meeting.")(A copy of the PowerPoint presentation, and the projected financials that Watson gave to Shea at the May 2 Meeting are annexed as Exhibit A hereto.)

41.    On or about May 31, 2007, Conley sent to plaintiffs the SalesForce.Com Report that defendant used to create a revised set of projected financials that were presented to plaintiffs on June 6, 2007. (The "May 31 SalesForce.Com Report")(A copy of the May 31, 2007 SalesForce.Com Report provided by Conley to plaintiffs is annexed as Exhibit B hereto.)

42.    In the May 31 SalesForce.Com Report, Watson, Conley and Bravera listed  "Pipeline" sales for 2007 at $20,885,000.00.

43.    In the May 31 SalesForce.Com Report, Watson, Conley and Bravera "Forecasted" sales for 2007 at $6,612,000.

44.    Upon information and belief, Watson personally participated in the preparation of the May 31 SalesForce.Com Report.

45.    On or about June 6, 2007, during the final negotiations that led to the merger, defendant Watson presented Shea with a projection of financial statements for calendar year 2007 based in principal part on an allegedly good faith sales projection using SalesForce.Com software. (A copy of the projected financials that Watson gave to Shea on June 6, 2007 are annexed as Exhibit C hereto.)

46. On the June 6, 2007, presented to plaintiffs projected financials which projected sales for Bravera in calendar 2007 of $6,131,000. (See Exhibit C, hereto.)

47. Upon information and belief, Conley personally prepared and/or provided to Watson the information that was used to create the financial projections that Watson gave to plaintiffs in June 2007.

48. The SalesForce.Com Reports furnished to Plaintiffs were materially false because the sales “Forecast” was only $275,000 not $6,131,000 as represented on June 6, 2007 or the $6,709,000 that had been represented at the May 2 Meeting.

49. The Acquisition Agreement and Asset Purchase Agreement closed as of July 16, 2007.

50. The sales price paid for the Bravera was based entirely upon the projected financials (Exhibit C, hereto) submitted to Shea by Watson.

51. The projected financials used to induce plaintiffs to complete the merger were prepared using the SalesForce.Com Reports prepared by Conley.

52. Defendant Watson specifically represented and warranted in Section 2.27(ii) of the Acquisition Agreement that the financial projections and sales projections that he provided to the plaintiffs during negotiations were made in good faith.

53. Other than the down payment paid at closing, the payment of the purchase price was explicitly made contingent by the parties in Section 2.27 and in Schedule 2.6 of the Acquisition Agreement on Bravera achieving the financial

projections presented to investors, bankers and Shea during the negotiations including the projections annexed as Exhibits D hereto.

54. In Section 6.3(a) of the Acquisition Agreement, defendant Watson "represented and warranted" that:

> *Representations and Warranties*. Each of the representations and warranties made by the Company and the Shareholder in this Agreement shall be materially true and correct when made and on and as of the Closing Date as though such representation or warranty was made on and as of the Closing Date, except that any representation or warranty that expressly speaks as of a specified date earlier than the Closing Date shall have been true and correct on and as of such earlier date, and further provided that Company and the Shareholder shall be permitted to update, revise, supplement and/or correct the Schedules through the Closing Date.

55. Defendant Watson further represented and warranted in Section 2.7 of the Acquisition Agreement that:

> Absence of Changes. Since the Financial Statement Date, other than the Navy Billing Dispute, there has not been any Material Adverse Change in the Business or Condition of the Company or any occurrence or event, which, individually or in the aggregate could be reasonably expected to have any Material Adverse Change in the Business or Condition of the Company.

56. In Section 2.6 of the Acquisition Agreement, defendant Watson specifically represented and warranted that Projected Financial Statements attached as Schedule 2.6(a) to the Acquisition Agreement "fairly and accurately represented the financial condition and operating results of the Company [Bravera] as of the dates and during the periods indicated therein . . ."

57. Section 2.6 of Acquisition Agreement provides in full as follows:

> 2.6 Company Financial Statements
>
> The Company Financials, as set forth in Schedule 2.6(a), have been delivered to the Parent. The Company Financials delivered to Parent have been audited by a Public Company Accounting Oversight Board ("PCAOB") registered Auditor and, to Shareholder's knowledge, were correct and complete in all material respects as at the dates thereof. The Company Financials present fairly and accurately the financial condition and operating results of the Company as of the dates and during the periods indicated therein, subject, in the case of any interim financial statements, to normal year-end adjustments, which adjustments will not be material in amount or significance and except that any interim financial statements may not contain footnotes. Except for the Navy Billing Dispute and as set forth in Schedule 2.6(a), since the Financial Statement Date, there has been no change in any accounting policies, principles, methods or practices, including any change with respect to reserves (whether for bad debts, contingent liabilities or otherwise), of the Company that would be likely to have a Material Adverse Effect. (Emphasis added.)

58. The projected financial statements annexed as Schedule 2.6(a) to the Acquisition Agreement were for calendar 2007 and included a list of customer for which sales were allegedly pending. (A copy of the documents annexed as Schedule 2.6(a), included the projected financials for calendar 2007 and excerpted SalesForce.Com Report is annexed as Exhibit D, hereto.)

59. Plaintiffs attempted to verify the information contained in the SalesForce.Com Reports with customers but with few exceptions were unable to do so and were therefore forced to rely upon the information contained in Exhibits B & D, hereto.

60. On July 15, 2007, one day before the Acquisition Agreement and Asset Purchase Agreement with Shea closed, Watson in connection with the merger, entered into a written Employment Agreement with the Shea and immediately assumed

his duties as the Executive Vice-President in charge of all sales for all subsidiaries of Shea including sales at Bravera.

61. The Employment Agreement between Bravera and Watson provides at Section 14(f) that:

> Non-Solicitation of Employees, Consultants and Contractors. Employee agree that, for a period of twelve (12) months following the Termination Date, Employee shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, Persons who were employees, consultants or independent contractors of the Company at the time of Employee's employment with Company, or who continue to be employed or engaged by Company, or with to leave their employment or engagement with the Company.

62. In connection with the closing of the merger, Watson pursuant to the Acquisition Agreement received a down payment of $800,000.

63. In connection with the merger, on June 26, 2007, Conley entered into a written Employment Agreement with the Shea and on July 16, 2007 assumed her duties as the Vice-President of Sales for Bravera.

64. Bravera missed its sales targets for the month through August 2007 by millions of dollars.

65. On September 8, 2007, at a meeting among the senior management of Shea (the "September 8 Meeting"), Watson and Conley again presented projected sales in a form similar to Exhibits B, hereto. (Exhibit E hereto.)(The "August Sales Force Report")

66. At that meeting and in response to the August SalesForce.Com Report, Conley said to Watson: "I have been telling you for months that the forecast is only worth $275,000."

67.     Conley thereafter refused to provide any further details to the senior management of Shea and Bravera of her the allegation she made at the September 8 Meeting that she had "been telling [Watson] for months that the forecast is only worth $275,000."

68.     Watson's Employment Agreement required that he give thirty days notice that he intended to terminate his employment with plaintiffs.

69.     On September 29, 2007, Watson resigned his duties as Executive Vice President of Sales allegedly effective as of October 29, 2007 but immediately upon submitting his letter of resignation ceased working for Shea.

70.     As a result of the revelations at the September 8 Meeting, Bravera reduced its staff out of economic necessity from approximately thirty to six.

71.     The costs incurred by Bravera in terminating these individuals were substantial and included severance, disbursement, and a great deal of valuable management time.

72.     As a cost cutting measure, Bravera attempted to restructure the employment of two key employees, Dan Korbini and Nagaraj (Raj) Yanambakkan, by making them part-time employees.

73.     Upon information and belief, Watson through a company he controls hired both employees.

74.     Bravera terminated Conley's employment on October 17, 2007.

## AS AND FOR A FIRST CAUSE OF ACTION

**(Fraud)**
**(Against Watson)**

75. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 74, above, as if fully set forth herein.

76. At all times relevant hereto, Watson, on his own behalf and on behalf of Intellectus which he owned, explicitly and impliedly represented to plaintiffs that there was no broker or third party banker that he caused to be involved with the merger.

77. At all times relevant hereto, Watson, on his own behalf and on behalf of Intellectus which he owned, explicitly and impliedly represented to plaintiffs that Bravera had paid all taxes that were due and owing.

78. At all times relevant hereto, Watson, on his own behalf and on behalf of Intellectus which he owned, explicitly and impliedly represented to plaintiffs that the projected financial statements that he presented to plaintiff were made in good faith.

79. At all times relevant hereto, Watson on his own behalf and on behalf of Intellectus which he owned, explicitly and impliedly represented to plaintiffs that the projected financial statements were based on good faith estimates of the sales "Pipeline" and "Forecast" contained on the SalesForce.Com Reports that he submitted to the plaintiffs.

80. These representations made by Watson were false in that: Watson had involved a broker, finder or investment banker with the merger, Bravera's taxes were not paid and because there was no prospect for Bravera to sell its software to

the customers listed in the SalesForce.Com reports provided to plaintiffs in connection with the specific requests for bids listed on those SalesForce.Com Reports.

81.    At the time that Watson made these representations to plaintiffs, Watson knew or should have known that the representations therein were false.

82.    At the time when Watson made the aforesaid misrepresentations, he made them with the intent to deceive and defraud plaintiffs and to induce plaintiffs to enter into the Acquisition Agreement and the Asset Purchase Agreement.

83.    At the time when Watson made these false representations, plaintiffs did not know the truth, believed the representations to be true, reasonably relied on the representations and were thereby induced to enter into the Acquisition Agreement and Asset Purchase Agreement.

84.    As a direct, proximate and foreseeable result of the fraudulent representations made by Watson to plaintiffs, plaintiffs were induced to complete the merger.

85.    As a direct, proximate and foreseeable result of the aforesaid conduct on the part of defendant Watson, plaintiffs have been damaged in the amount of in the amount of not less than $6,500,000, the precise amount of which will be determined at trial, for which Watson is liable to plaintiffs.

86.    The aforesaid acts on the part of the defendants were done in willful, wanton, reckless, and intentional disregard of plaintiffs' rights.

87.    Plaintiffs, accordingly, are entitled to an award of punitive damages against defendants in the amount of $5,000,000.

88. Plaintiffs are entitled to recover as additional damages against Watson, the costs, disbursements and attorneys' fees that they have incurred as a result of Watson's wrong doing including the costs, disbursements and attorneys' fees incurred in the prosecution of this action.

## AS AND FOR A SECOND CAUSE OF ACTION

**(Constructive Fraud)**
**(Against Watson)**

89. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 88, above, as if fully set forth herein.

90. Beginning at least by the commencement of his employment with Shea on July 15, 2007, Watson owed a fiduciary duty to Shea where he was obligated to bring to the attention of Shea management any fact that might affect their decision to pursue the Acquisition Agreement and Asset Purchase Agreement.

91. Watson breached that duty by failing at the closing of the Acquisition Agreement and the Asset Purchase Agreement to advise Shea that Bravera could not meet its sales projections, that it had not paid taxes to the United States of America in 2005; that it had not paid taxes to the State of Virginia in the fourth quarter of 2005 and that it had caused a broker, finder or investment banker to become involved with the merger.

92. The aforesaid facts that Watson failed to disclose to plaintiff were material to plaintiffs' decision to close the Acquisition Agreement and the Asset Purchase Agreement.

93. Watson knew or should have known that plaintiffs would not have closed either the Acquisition Agreement or the Asset Purchase Agreement if he had advised them of the aforesaid facts.

94. Watson knew or should have known that plaintiffs had relied upon him to reveal the existence of the aforesaid material facts in closing the Acquisition Agreement and Asset Purchase Agreement.

95. Watson did not reveal these facts in order to deceive plaintiffs.

96. Plaintiffs were thereby deceived.

97. As a direct, proximate and foreseeable result of the aforesaid failure to disclose material facts were induced to complete the merger.

98. As a direct, proximate and foreseeable result of the aforesaid conduct on the part of defendant Watson, plaintiffs have been damaged in the amount of in the amount of not less than $6,500,000, the precise amount of which will be determined at trial, for which Watson is liable to plaintiffs.

99. The aforesaid acts on the part of the defendant Watson were done in willful, wanton, reckless, and intentional disregard of plaintiffs' rights.

100. Plaintiffs, accordingly, are entitled to an award of punitive damages against defendant in the amount of $5,000,000.

101. Plaintiffs are entitled to recover as additional damages against Watson, the costs, disbursements and attorneys' fees that they have incurred as a result of Watson's wrong doing including the costs, disbursements and attorneys' fees incurred in the prosecution of this action.

**AS AND FOR A THIRD CAUSE OF ACTION**

**(Fraud)**
**(Against Conley)**

102. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 101, above, as if fully set forth herein.

103. Defendants Watson and Conley conspired among themselves to create the false projected financials and false SalesForce.Com Reports.

104. At the time Conley prepared and assisted in the preparation of the aforesaid false SalesForce.Com Reports, she knew or should have known them to be false.

105. At the time Conley prepared the aforesaid SalesForce.Com. Reports she knew or should have known that Watson would present them to plaintiffs.

106. At the time Conley prepared the aforesaid SalesForce.Com. Reports she knew or should have known that plaintiffs would rely upon those reports.

107. At the time Conley prepared the aforesaid SalesForce.Com Reports, she intended that plaintiffs would be deceived by the aforesaid SalesForce.Com Reports and was thereby induced to enter into the Acquisition Agreement and Asset Purchase Agreement.

108. Plaintiffs reasonably relied on the false SalesForce.Com Reports in entering into the Acquisition Agreement and Asset Purchase Agreement.

109. As a direct, proximate and foreseeable result of the fraudulent representations made by Watson to plaintiffs with the substantial assistance of Conley, plaintiffs were induced to complete the merger.

110. As a direct, proximate and foreseeable result of the fraudulent representations made by Watson with the substantial assistance of Conley, plaintiffs were damaged in the amount of in the amount of not less than $6,500,000, the precise amount of which will be determined at trial, for which Conley is liable to plaintiffs.

111. The aforesaid acts on the part of the defendant were done in willful, wanton, reckless, and intentional disregard of plaintiffs' rights.

112. Plaintiffs, accordingly, are entitled to an award of punitive damages against defendant in the amount of $5,000,000.

113. Plaintiffs are entitled to recover as additional damages against Conley the costs, disbursements and attorneys' fees that they have incurred as a result of Conley's wrong doing including the costs, disbursements and attorneys' fees incurred in the prosecution of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**

**(Breach of fiduciary duty)**
**(Against Watson)**

114. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 113, above, as if fully set forth herein.

115. As an Executive Vice-President of Shea, Watson owed a fiduciary duty to Shea and was obligated by that duty to immediately apprise senior management at Shea of erroneous statements in any information that he provided to plaintiffs in the course of the negotiations that led to the merger.

116. As an Executive Vice-President of Shea, Watson owed a fiduciary duty to Shea and was obligated by that duty to immediately apprise senior

management at Shea of any material change in the sales prospects for any subsidiary for which he had responsibility.

117.    Watson failed to disclose to Defendants that the sales projections upon which Shea and he had based the purchase prices stated in both the Acquisition Agreement and the Asset Purchase Agreement were inaccurate and false.

118.    Watson also had a fiduciary duty to cooperate with plaintiffs in their investigation into the revelations at the September 8 Meeting.

119.    Watson failed and refused to cooperate with plaintiffs in their investigation into the revelations at the September 8 Meeting.

120.    Watson in breach of his fiduciary duties to Shea, conspired with Conley to frustrate plaintiffs investigation into the revelations made at the September 8 Meeting.

121.    The aforesaid conduct on the part of Watson constitutes breach of his fiduciary duty to plaintiffs.

122.    As a direct, proximate and foreseeable result of the aforesaid actions on the part of Watson, plaintiffs have suffered and will suffer great financial loss in an amount to be determined at trial but in an amount no less than $6,500,000.

123.    By reason of the aforesaid breaches of fiduciary duty, Watson must disgorge the compensation paid to him since he first breached his fiduciary duties to the plaintiffs.

124.    By reason of the aforesaid acts, plaintiffs are relieved of any further obligation to pay compensation to Watson.

125. The aforesaid acts on the part of the defendant were done in willful, wanton, reckless, and intentional disregard of plaintiffs' rights.

126. Plaintiffs, accordingly, are entitled to an award of punitive damages against defendant in the amount of $5,000,000.

127. Plaintiffs are entitled to recover as additional damages against Watson the costs, disbursements and attorneys' fees that they have incurred as a result of Watson's wrong doing including the costs, disbursements and attorneys' fees incurred in the prosecution of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION

**(Breach of Employment Agreement)**
**(Against Watson)**

128. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 127, above, as if fully set forth herein.

129. Pursuant to the Common Law and the written Employment Agreement he executed with Shea, Watson was obligated to diligently manage the sales of all Shea subsidiaries including that of Bravera.

130. Watson failed to perform his duty in a diligent and honest manner.

131. The aforesaid conduct on the part of defendant constitutes a material breach of his Employment Agreement.

132. Shea performed all of its obligations under the Employment Agreement except to the extent that it may have been prevented from doing so by the acts of defendant.

133. As a direct result of the aforesaid breach of the Employment Agreement, Shea has been damaged.

134. As a direct result of the aforesaid acts on the part of the defendant, defendant must disgorge the compensation paid to him since the day he first breached his Employment Agreement.

135. By reason of the aforesaid acts on the part of defendant, Shea has been damaged in an amount to be determined at trial but in an amount no less than $6,500,000.

**AS AND FOR A SIXTH CAUSE OF ACTION**

**(Breach of fiduciary duty)**
**(Against Conley)**

136. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 135, above, as if fully set forth herein.

137. From the moment defendant Conley undertook the duties of Vice-President of Sales of Bravera on July 16, 2007, she owed a fiduciary duty to Bravera and was obligated by that duty to immediately apprise senior management at Bravera of erroneous statements in any information that she and Watson had provided to plaintiffs in the course of the negotiations that led to the merger.

138. As a Vice-President of Bravera, Conley owed a fiduciary duty to Bravera and to Shea and was obligated by that duty to immediately apprise senior management at Bravera and Shea of any material change in the sales prospects for Bravera.

139. Conley had failed to disclose to plaintiffs until the meeting on September 8, 2007 that the sales projections upon which Shea had based the purchase

prices set forth in the Acquisition Agreement and the Asset Purchase Agreement were false and inaccurate.

140.    Conley also had a fiduciary duty to cooperate with plaintiffs in their investigation into the revelations she made at the September 8, 2007 Meeting.

141.    Conley failed and refused to cooperate in that investigation.

142.    Conley in breach of her fiduciary duties to Bravea and to Shea, conspired with Watson to frustrate plaintiffs investigation into the revelations made at the September 8 Meeting.

143.    The aforesaid conduct on the part of Conley constitutes breaches of her fiduciary duty to Bravera and to Shea.

144.    The aforesaid acts on the part of the defendant were done in willful, wanton, reckless, and intentional disregard of plaintiffs' rights.

145.    As a direct, proximate and foreseeable result of the aforesaid actions on the part of Conley, plaintiffs have suffered and will suffer great financial loss in an amount to be determined at trial but in an amount no less than $6,500,000.

146.    By reason of the aforesaid acts, Conley must disgorge the compensation paid to her since she first breached her fiduciary duties to the plaintiffs.

147.    By reason of the aforesaid acts, plaintiffs are relieved of any further obligation to pay compensation to Conley.

148.    The aforesaid acts on the part of the defendant were done in willful, wanton, reckless, and intentional disregard of plaintiffs' rights.

149.    Plaintiffs, accordingly, are entitled to an award of punitive damages against defendant in the amount of $5,000,000.

150. Plaintiffs are entitled to recover as additional damages against Conley the costs, disbursements and attorneys' fees that they have incurred as a result of Conley's wrong doing including the costs, disbursements and attorneys' fees incurred in the prosecution of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION

**(Breach of Employment Agreement)**
**(Against Conley)**

151. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 150, above, as if fully set forth herein.

152. Pursuant to the Common Law and the written employment agreement she executed with Bravera, Conley was obligated to diligently manage the sales of Bravera.

153. Conley failed to perform her duty in a diligent and honest manner.

154. Conley performed her duties in a negligent manner.

155. The aforesaid conduct on the part of defendant Conley constitutes a material breach of her Employment Agreement.

156. Bravera performed all of its obligations under the Employment Agreement except to the extent that it may have been prevented from doing so by the acts of defendant.

157. Shea performed all of its obligations under the Employment Agreement except to the extent that it may have been prevented from doing so by the acts of defendant.

158. As a direct result of the aforesaid breach of the Employment Agreement, Shea has been damaged.

159. As a direct result of the aforesaid breaches of the Employment Agreement, Bravera has been damaged but in an amount no less than $6,500,000.

**AS AND FOR A EIGHTH CAUSE OF ACTION**

**(Breach of Acquisition Agreement)**
**(Against Watson)**

160. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 159, above, as if fully set forth herein.

161. For the reasons set forth above, Watson substantially breached the Acquisition Agreement.

162. Shea performed all of its obligations under the Acquisition Agreement except to the extent that it may have been prevented from doing so by the acts of defendant.

163. As a direct result of the foregoing, Shea has been damaged in an amount to be established at trial but not less than $6,500,000.

WHEREFORE, plaintiffs demand judgment as follows:

1. With respect to the First Cause of Action, against Watson damages in an amount to be determined at trial, but not less than $6,500,000 together with punitive damages in the amount of $5,000,000 as well as the costs, disbursements and attorneys' fees incurred by plaintiffs in this action;

2. With respect to the Second Cause of Action against Watson, against Watson damages in an amount to be determined at trial, but not less than $6,500,000

together with punitive damages in the amount of $5,000,000 as well as the costs, disbursements and attorneys' fees incurred by plaintiffs in this action;

3.   With respect to the Third Cause of Action against Watson damages in an amount to be determined at trial, but not less than $6,500,000 together with punitive damages in the amount of $5,000,000 as well as the costs, disbursements and attorneys' fees incurred by plaintiffs in this action;

4.   With respect to the Fourth Cause of Action, against Watson damages in an amount to be determined at trial, but not less than $6,500,000 together with punitive damages in the amount of $5,000,000 as well as the costs, disbursements and attorneys' fees incurred by plaintiffs in this action;

5.   With respect to the Fifth Cause of Action, against Watson damages in an amount to be determined, but not less than $6,500,000;

6.   With respect to the Sixth Cause of Action, against Watson damages in an amount to be determined at trial, but not less than $6,500,000 together with punitive damages in the amount of $5,000,000 as well as the costs, disbursements and attorneys' fees incurred by plaintiffs in this action;

7.   With respect to the Seventh Cause of Action, against Conley, damages in an amount to be determined, but not less than $6,500,000;

8.   With respect to the Eighth Cause of Action, against Watson, damages in an amount to be determined at trial, but not less than $6,500,000;

9.   With respect to each and every cause of action of this Complaint, against both defendants such other, further and different relief that this Court deems just and proper.

Dated: New York, New York
December 12, 2007

DUNNINGTON, BARTHOLOW & MILLER L.L.P.

By: ______________________

Thomas V. Marino, Esq. (TM 7397)
Attorneys for Plaintiffs
477 Madison Avenue, 12th Floor
New York, NY 10022
212-682-8811

# EXHIBIT A





# BRAVERA

**Intelligent Business Process Automation**

*Who We Are*







- Software Developer
  - Business Process Automation
  - Electronic Content Management
  - ASP Web Applications
- Integrator
  - Claims Processing (FEMA)
  - Financial Workflow Applications  (RAPID, Loan Processing)
  - Retirement/Benefit Applications
  - Various Other Applications (The usual grab bag)
  - Data mapping, conversion
  - GSA Schedule 70, MOBIS underway
  - DOD *SECRET* Level





- What we do well
  - High $$$, High Complexity Sales
  - Understanding the clients *real* need and the business challenge
  - Architecting Cutting edge solutions
  - Creating Opportunity with a synergistic mix of players, technologies and ideas
  - Delivering Integrations On Time and bug free

- What we're not so good at
  - Delivering our internal software on time and bug free
  - Only average or bit better on project management
  - Hiring and H/R
  - Marketing is improving but still needs work
  - General Back office functions





1. <u>Sales</u>
   - Steady growth of current Federal customer base
   - Target key commercial verticals: Finance, Insurance, Healthcare
   - Establishment of new west coast sales office (Seattle)
2. <u>Business Development</u>
   - Multiple vertical software solution opportunities
     - Some closed and developing pipeline, some in negotiation
3. <u>Product</u>
   - Three product releases planned for 2007
     - 1 completed, 2 more underway
4. <u>Growth through acquisition</u>
   - Drivers: similar customer base and solutions that can productized.





2007 Revenue Streams
$7M Goal
9%
10%
36%
1%
44%
Scan Services
Consulting Practice
Government Software
Commercial Software
Bravera Online
2007 Stretch Revenue Streams
$9M Goal
11%
13%
39%
3%
44%
Scan Services
Consulting Practice
Government Software
Commercial Software
Bravera Online

**Total 2007: $6,950,000**

Bravera Services: $2.5M in 2007

Consulting - $70K

Commercial s/ware - $600K

Gov't s/ware – $3.1M

Bravera Online – $680,000

**Total Stretch 2007: $9,000,000**

Bravera Services: $3.0M in 2007

Consulting - $300K

Commercial s/ware - $1M

Gov't s/ware – $4.0M

Bravera Online – $700K

BRAVERA
Intelligent Business Process Automation



BRAVERA
Intelligent Business Process Automation

Bravera Org Chart
Chris Watson
President
Amy Rich
Executive Assistant
Operations
Dan Korbini
Director of Operations
Development
Raj Yanambakkam
VP of Engineering
Gary Greer
Sr. Developer
Genc Ymeri
Sr. Developer
Ranjit Subramani
Developer
Sridhar
De-Mei Meng
Sr. Developer
Savy Surupudi
Sr. Developer
TBH
Developer
TBH
IT Engineer
TBD
Help Desk
TBD
Office Assistant
Alex Rosenbaum
Cisco Networking
Bravera Services
Tony Weaver
Vice President
Scan Services
Victor Hayes
Acting Manager
Erica Stuart
Quality Control
Sri Ravula
Project Assistant
Chantay Kennedy
Project Assistant
Keith Leetun
Sales Rep
Temp Staff
Software QC
Kanth
QC Manager
Software Sales
Anne Conley
VP of Sales
Paul Hopkins
Sales Engineer
Susan Janger
Technical Writer/ Analyst
Bruce Thompson
Acting Product Mktg Mgr
Dan MacGibbon
Consultant
Graphic Artist
Consultant
India



BRAVERA
Intelligent Business Process Automation

# Bravera Infrastructure

- 5 +/- Dev servers in Reston (1 LINUX, 4 Windows (2003, 200)
- 40 +/- workstations: Current Standard is Office 2003, Windows XP
- VOIP Phones: NEC Aspire
- Dual T1's to Reston

- Charleston 3Mbs Fiber
  - VPN to Reston & Verio

- CISCO Firewalls Reston, Charleston
- Host own web sites

- Outsourced Exchange service
- MS Communicator for IM
- GMAIL is Corp standard for emergency email

- 10 +/- Servers @ Verio Colocation in Virginia: Windows 2003
- Sonicwall firewalls @ Verio

# Bravera Product Suite

RAPID Workplace
Start
Home
Tasks
Search
TREEV
Reports
Preferences
Designer
Admin
Help
Logout
-- Enter Search Here --
BRAVERA
Intelligent Business Process Automation
User: Chris Watson
Inbox 12 items
Queues 25 items
Searches
Documents
Attach/View
Tasks
Notes
Tracking
Folder Fields
Client Hopkins
DOB 09/14/1966
Address 1550 Sea Side D
Value $450,000
Type Wood Frame
Initiate: Loan Application
Metavante
Personal Information:
Required fields are in bold.
Borrower Information
First Name: Paul
Middle Initial: H
Last Name: Hopkins
Preferred E-Mail Address: paul.hopkins@bravera.com
Social Security Number: 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
Date of Birth(mm/dd/yyyy): 01/30/2007
Phone Number: 510-387-6277
Work Phone Number: 703-310-6850
Citizenship: U.S. Citizen
Marital Status: Married
Co-Borrower Information (If Any)
First Name: Gabrielle
Middle Initial: A
Last Name: Hopkins
Preferred E-Mail Address: gabupaul@yahoo.com
Social Security Number: 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
Date of Birth(mm/dd/yyyy): 01/30/2007
Phone Number: 843-471-2544
Work Phone Number:
Citizenship: U.S. Citizen
Marital Status: Married
Relationship to Primary Borrower: Spouse
Page : 1/2
Submit

BRAVERA
Intelligent Business Process Automation

Process Director System
Process Groups
Commander Navy Installations
Navy CNI
AO Maintenance
Forms
Fields
APC Maintenance
Forms
Fields
CH Maintenance
Procurement - Standard
Forms
Fields
Setup AO
Setup CH
Task Management
Process Templates
Content Types
Assignable Properties
Start
Supervisor
Supervisor Approved
DENY
Requestor
APPROVE
CH Technical Screening
CH Approved
APPROVE
SkipCH
Requires Special Approver
Special Approver
SA Approved
FALSE
APPROVE
Authorizing Official Funds Check
AO Approved
Deny Notification
DENY
DENY
DENY
DENY
CCH Approved
Convenience Check
APPROVE
Layout
Link
Text
Standard Events
Start
Stop
Split
Join
Rule
User
Call Subprocess
Send To Process
Inbox
Print
Fax
Query
API
Mail
Archive
Server
Decision
WebService
Tracking
EDI Import
Custom Script
XML Import
Do
While
Custom Events
BRAVERA
Intelligent Business Process Automation



***Department of Homeland Security***

***Commander, Naval Installations (CNIC)***

***Department of Interior***

***Department of Homeland Security/CBP***

***U.S. Navy Region SouthWest***

***US Navy Region NorthWest***

***US Navy Strategic Weapons Facility***

***Sallie Mae***

***Ryder, Inc.***

***Department of Veterans Affairs***

***State of Washington***

***Washington and Lee University***

***State of New Hampshire, Dept Of Labor***

***State of Pennsylvania, PA-SERS***

***Pennsylvania Higher Education Association***

***General Dynamics***

***Plus a host of other satisfied customers!***

BRAVERA
Intelligent Business Process Automation





- Bravera provides workflow design AND claims processing for FEMA

BRAVERA
Intelligent Business Process Automation

# Overview

- RAPID is a web based real-time system. Requiring no client installation, RAPID manages and tracks the requisition and procurement process from the time the product or service is ordered through delivery
- Supports multiple DOD and Navy Standard purchase forms
- RAPID tracks and supports all transactions regardless of the financial or accounting system utilized
- RAPID provides an archive of all past procurements for research and audit purposes including complete credit card log and reconciliation capability
- RAPID includes a complete document management system, storing all required supporting documents and files.



# Multiple Forms

- RAPID displays and prints over 20 Navy and Government forms
- Data from the forms can be transmitted directly to other Navy Systems
- RAPID Power users can "morph" a generic request into a 2276 or other appropriate form, preventing the need for re-keying

Overall Short Description: Sample Procurement
JCN/Workpacket No: 0321
Supporting Location: 0123
Request Priority: 1
Request Payment Type: Credit Card
Delivery Address: Workflow Systems, LLC
Requestor Email: dan.korbin@workflowsystems.com
Supervisor Email: julia@workflowsystems.com
Address Line 1: 5454 Wisconsin Ave
Requestor Name: Dan Korbin
Supervisor Name: Julia
Address Line 2: Suite 1405
Requestor Phone: 303-619-5555
Supervisor Phone: 303 619 5555
City: Chevy Chase State: MD Zip: 20815

GENERIC REQUEST

Item Detailed Description:
Quantity: | Supplier Source: | POC Name:
Unit of Issue: | Address Line 1 | POC Email Address:
Unit Price: | Address Line 2 | POC Phone Number:
Other Fees: | City State ZIP | POC Fax Number:
Total Cost:

Plant/Minor property purchase?
- Not Applicable
- Pilferable Less than $5000
- Greater Than $5000

Available from mandatory sources? Check all that apply. (Submit Waiver)
- NIB/NISH
- Green Buy
- UNICOR
- DAPS

Suppliers Contacted (Min of 3) | Bid Amount | COG: | NSN: | Advice Code:

Sole Source Justification:

Notes:

I certify this request to be both accurate and necessary for the official business of the United States government

JON Line Order Number | Expense Element | Object Class

Submit

RAPID ASSIST



## Full cycle Purchase Card Management!

- Reminder emails are automatically sent
- Work is automatically routed to the next person
- Users are notified when a task is complete
- All supporting documents stored with electronic folder!
- Automatic Credit Card logs are created!

BRAVERA
Intelligent Business Process Automation

# *Bring it all together!*

- **RAPID includes document management, automated Credit Card logs, data feeds... Authorized users can access all the information required to perform their work, their way!**





# BRAVERA

**Intelligent Business Process Automation**

Christopher Watson
Chris.watson@bravera.com

Anne Conley
Anne.Conley@bravera.com

**Bravera, Inc.**
(877) 411-2300
www.bravera.com



| | FY 04 | FY 05 | FY 06 | FY 07 | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Q1 Actual | Q2 Forecast | Q3 Forecast | Q4 Forecast | Total |
| ***Revenue*** | | | | | | | | |
| License | 52 | 1,419 | 253 | 196 | 395 | 689 | 789 | 2,069 |
| Maintenance | 26 | 694 | 466 | | 204 | 204 | 223 | 631 |
| Service | 1,342 | 1,277 | 4,023 | 559 | 700 | 1,300 | 1,450 | 4,009 |
| Hardware | - | 8 | - | - | | | | - |
| Total | 1,420 | 3,398 | 4,742 | 755 | 1,299 | 2,193 | 2,462 | 6,709 |
| ***Cost of Revenue*** | | | | | | | | |
| Services | 847 | 1,309 | 2,230 | 15 | 385 | 650 | 715 | 1,765 |
| Maintenance | | 27 | 14 | | | | | - |
| Hardware | | | | | | | | |
| Total | 847 | 1,336 | 2,244 | 15 | 385 | 650 | 715 | 1,765 |
| ***Gross Profit*** | 573 | 2,062 | 2,498 | 740 | 914 | 1,543 | 1,747 | 4,944 |
| ***Operating Expenses*** | | | | | | | | |
| Sales | | | | 289 | 100 | 100 | 100 | 589 |
| Marketing | 5 | 69 | 49 | 15 | 100 | 100 | 100 | 315 |
| Development | | | | - | 194 | 192 | 187 | 573 |
| Management | | | | 152 | 140 | 140 | 140 | 572 |
| Corporate Services | 424 | 525 | 1,346 | 354 | 122 | 122 | 121 | 719 |
| Total | 429 | 594 | 1,395 | 810 | 656 | 654 | 648 | 2,768 |
| ***Operating Income*** | 144 | 1,468 | 1,103 | (70) | 258 | 889 | 1,099 | 2,176 |
| Interest Expense | | | | | | | | - |
| Interest Income | | | | | | | | - |
| F/X (Gain) Loss | | | | | | | | - |
| Depreciation | | | | | | | | - |
| Bad debts | | | | | | | | - |
| Acquisition amortization | | | | | | | | - |
| Stock Based Compensation | | | | | | | | - |
| Income (Loss) | 144 | 1,468 | 1,103 | (70) | 258 | 889 | 1,099 | 2,176 |
| Taxes @35% | | | | | | | | |
| Net Income (Loss) | 144 | 1,468 | 1,103 | (70) | 258 | 889 | 1,099 | 2,176 |
| Preferred Dividends | | | | | | | | |
| Earnings (Loss) to Common | 144 | 1,468 | 1,103 | (70) | 258 | 889 | 1,099 | 2,176 |

# EXHIBIT B

2007 Sales Forcast

| | Pipeline | Forecast |
|---|---|---|
| **Bravera Enterprise** | 20,885,000.00 | 6,612,000.00 |
| **Bravera Services** | 3,295,500.00 | 1,982,450.00 |
| **Totals** | **24,180,500.00** | **8,594,450.00** |

* Note that the revenue showed assumes sales closed but revenue not able to be billed, thus we are still projecting aprox $6.9M billed sales for the year

| Bravera Enterprise | Pipeline | Forecast |
|---|---|---|
| Totals | 20,885,000.00 | 6,612,000.00 |

| Account Name | Opportunity Name | Amount | Expected Revenue | Close Date | Next Step | Stage | Probability (%) | Fiscal Period | Created Date |
|---|---|---|---|---|---|---|---|---|---|
| DOI | DOI - consulting & software | 1,500,000.00 | 1,050,000.00 | 05/20/2007 | New Budget | Proposal/Price Quote | 70 | Q2-2007 | 03/11/2007 |
| FEMA | FEMA-A76 Hyattsvile | 2,250,000.00 | 1,125,000.00 | 05/30/2007 | Meeting with COTR | Proposal/Price Quote | 50 | Q2-2007 | 02/21/2007 |
| SWLFLANT | Upsell Oppty | 30,000.00 | 24,000.00 | 04/30/2007 | Dan to Contact | Value Proposition | 80 | Q2-2007 | 04/06/2007 |
| New Hampshire | New Hampshire DMV - RAPID RFP | 500,000.00 | 125,000.00 | 05/30/2007 | Waiting for RFP | Proposal/Price Quote | 25 | Q2-2007 | 03/05/2007 |
| IKON Document Services | CD, Partner | 250,000.00 | 25,000.00 | 05/31/2007 | Chris follow up w/ George | Qualification | 10 | Q2-2007 | 03/09/2007 |
| RACSB | Rapid Workplace | 40,000.00 | 8,000.00 | 05/31/2007 | Demo RPW 3rd wk April | Value Proposition | 20 | Q2-2007 | 04/02/2007 |
| General Dynamics | NEMIS Services | 500,000.00 | 250,000.00 | 06/01/2007 | Chris to call Frank Stellar | Needs Analysis | 50 | Q2-2007 | 03/05/2007 |
| IMC | Follow on Development | 1,000,000.00 | 250,000.00 | 06/01/2007 | Chris to Monitor | Negotiation/Review | 25 | Q2-2007 | 03/05/2007 |
| XEROX | Michael Freedman - Partnering | 500,000.00 | 50,000.00 | 06/01/2007 | Chris to follow up | Qualification | 10 | Q2-2007 | 04/06/2007 |
| Aliant Bank | RWP Loan Application (TREEV) | 120,000.00 | 48,000.00 | 06/15/2007 | Follow with Kent on status | Proposal/Price Quote | 40 | Q2-2007 | 02/13/2007 |
| CNIC | Maintenance | 450,000.00 | 337,500.00 | 06/30/2007 | chris working w/COTR | Negotiation/Review | 75 | Q2-2007 | 03/05/2007 |
| Ryder | License Maint. | 75,000.00 | 15,000.00 | 06/30/2007 | Chris to follow up | Needs Analysis | 20 | Q2-2007 | 04/06/2007 |
| Skookum Technologies | Internal Sale | 50,000.00 | 10,000.00 | 06/30/2007 | Bruce to follow up | Needs Analysis | 20 | Q2-2007 | 04/06/2007 |
| vCustomer | Internal Sale | 50,000.00 | 5,000.00 | 06/30/2007 | Bruce to Validate Infopath functionality | Qualification | 10 | Q2-2007 | 04/06/2007 |
| IDOC | Enterprise Sales/Services | 400,000.00 | 200,000.00 | 07/15/2007 | Chris to follow up | Qualification | 50 | Q3-2007 | 04/06/2007 |
| CNIC | Services | 750,000.00 | 525,000.00 | 08/01/2007 | Chris to call | Qualification | 70 | Q3-2007 | 04/06/2007 |
| Metavante | Various financial solution sales | 250,000.00 | 25,000.00 | 08/01/2007 | Chris to call David McWorter | Qualification | 10 | Q3-2007 | 04/06/2007 |
| Bank of Minnesota | RWP Loan Application (TREEV) | 100,000.00 | 50,000.00 | 09/01/2007 | Follow with Kent on status | Proposal/Price Quote | 50 | Q3-2007 | 03/02/2007 |
| CNRNW-Regional Information Systems | CNRNW - Conversion | 75,000.00 | 67,500.00 | 09/01/2007 | Monitor | Negotiation/Review | 90 | Q3-2007 | 03/05/2007 |
| CNRSW | CNRSW Conversion | 75,000.00 | 67,500.00 | 09/01/2007 | Chris to monitor | Negotiation/Review | 90 | Q3-2007 | 03/05/2007 |
| Office of the Under Secretary of Defense (Comptroller) | OSD - Procurement Card | 1,200,000.00 | 120,000.00 | 09/14/2007 | Formal Presentation | Qualification | 10 | Q3-2007 | 01/28/2007 |
| CISCO Systems | Asset management | | | 09/28/2007 | Follow up call to Steve Emmarino | Prospecting | 10 | Q3-2007 | 03/19/2007 |
| IDT | Partnership opportunity | 250,000.00 | 50,000.00 | 09/30/2007 | Anne scheduling demo with Harry - need to put together demo based on workflow Harry provided | Prospecting | 20 | Q3-2007 | 03/19/2007 |
| SIM | Roger Nelson-Simulation | 250,000.00 | 25,000.00 | 10/01/2007 | Chris to meet | Prospecting | 10 | Q4-2007 | 03/05/2007 |
| USJFCOM | Rapid | | | 10/01/2007 | Chris to call | Prospecting | 25 | Q4-2007 | 03/09/2007 |
| XEROX | Roger Sam - Partnering | 500,000.00 | 50,000.00 | 10/01/2007 | AC to call | Prospecting | 10 | Q4-2007 | 04/06/2007 |
| Athene Group | Integrated Financial Solution | 400,000.00 | 100,000.00 | 10/01/2007 | Anne to get SOW | Needs Analysis | 25 | Q4-2007 | 04/06/2007 |
| Harry Velasquez | DOD technologies | 750,000.00 | 37,500.00 | 10/01/2007 | Chris to follow up | Qualification | 5 | Q4-2007 | 04/06/2007 |
| XEROX | Chris Varnes - Partnering | 500,000.00 | 50,000.00 | 10/01/2007 | Chris W to call | Qualification | 10 | Q4-2007 | 04/06/2007 |
| Piney Knoll | Domion Power Plants - RAPID Workplace | 700,000.00 | 210,000.00 | 10/30/2007 | Qualification Call - I2 Involvement? | Qualification | 30 | Q4-2007 | 12/13/2005 |
| Naval Academy | Rapid | 600,000.00 | 120,000.00 | 10/31/2007 | Chris to follow up | Value Proposition | 20 | Q4-2007 | 03/09/2007 |
| Business Edge Solutions | Potential Partner | 250,000.00 | 25,000.00 | 11/01/2007 | Follow up with Ethan | Prospecting | 10 | Q4-2007 | 02/13/2007 |
| Dept of Energy (IG-45) | Rapid Workplace | | | 12/30/2007 | | Prospecting | 10 | Q4-2007 | 04/03/2007 |
| Criterion Systems | Product Suite Intro | | | 12/31/2007 | Anne to call | Prospecting | 10 | Q4-2007 | 03/09/2007 |
| XEROX | Partnering -Kathy K | 2,000,000.00 | 400,000.00 | 12/31/2007 | Agreed to Embedd Docshare with RWP | Qualification | 20 | Q4-2007 | 03/05/2007 |
| DOI/MMS/PMI | DOI/MMS/PMI- | | | 12/31/2007 | Demo April 11th | Prospecting | 10 | Q4-2007 | 04/03/2007 |
| NISH | External Sales | 1,000,000.00 | 250,000.00 | 12/31/2007 | Bruce to cultivate with Ken Lynn | Prospecting | 25 | Q4-2007 | 04/06/2007 |
| vCustomer | External Sales | 500,000.00 | 75,000.00 | 12/31/2007 | Bruce to follow up | Qualification | 15 | Q4-2007 | 04/06/2007 |
| Skookum Technologies | External opps | 500,000.00 | 50,000.00 | 12/31/2007 | Bruce to follow up | Qualification | 10 | Q4-2007 | 04/06/2007 |
| USAIS | Various external | 500,000.00 | 75,000.00 | 12/31/2007 | Bruce to follow up - comb Mick's pipeline | Prospecting | 15 | Q4-2007 | 04/06/2007 |
| SAIC | SAIC- subcontracting for Bravera | 200,000.00 | 20,000.00 | 08/30/2007 | task order | Qualification | 10 | Q3-2007 | 03/12/2007 |
| US Customs and Border Protection | CBP - Investigation Files: RAPID and backfile | 1,000,000.00 | 500,000.00 | 09/20/2007 | Waiting RFP | Proposal/Price Quote | 30 | Q3-2007 | 03/11/2007 |
| Peace Corps DIRECTOR | Peace Corps - CD Online | 50,000.00 | 5,000.00 | 09/30/2007 | Waiting to Issue RFP | Prospecting | 10 | Q3-2007 | 04/04/2007 |
| FEMA | Hyattsville Upsell | 250,000.00 | 50,000.00 | 10/01/2007 | Chris to contact | Qualification | 10 | Q4-2007 | 04/06/2007 |
| Page Valley Bank | Page Valley Bank | 20,000.00 | 2,000.00 | 12/02/2007 | follow up with President | Qualification | 10 | Q4-2007 | 03/24/2007 |
| Fernando Arce | SAIC partnering opportunity | 400,000.00 | 40,000.00 | 10/01/2007 | Chris to follow up | Qualification | 10 | Q4-2007 | 04/06/2007 |
| Current Sales Backlog | Current Sales Backlog | 100,000.00 | 100,000.00 | | | | | | |
| | Totals | 20,885,000.00 | 6,612,000.00 | | | | | | |

| Bravera Services | Pipeline | Forecast |
|---|---|---|
| Totals | 3,295,500.00 | 1,982,450.00 |

| Account Name | Opportunity Name | Amount | Expected Services Revenue | Close Date | Next Step | Stage | Probability (%) | Fiscal Period | Created Date | Division |
|---|---|---|---|---|---|---|---|---|---|---|
| Augusta Family Practice | AMC scanning services | 18,500.00 | 14,800.00 | 05/01/2007 | follow up with HR Director | Negotiation/Review | 80 | Q1-2007 | 12/13/2005 | Bravera Services |
| UVA Residency Office | UVA Residency - scanning services & CD Online project | 25,000.00 | 17,500.00 | 04/15/2007 | sample box for Tony | Proposal/Price Quote | 70 | Q1-2007 | 12/12/2005 | Bravera Services |
| Liebherr | Liebherr - scanning servics & CD Online | 100,000.00 | 20,000.00 | 04/28/2007 | follow up with IT Director | Negotiation/Review | 20 | Q2-2007 | 10/12/2005 | Bravera Services |
| Aerofin | Aerofin - scanning project | 20,000.00 | 14,000.00 | 05/25/2007 | waiting on Corporate | Proposal/Price Quote | 70 | Q2-2007 | 02/23/2007 | Bravera Services |
| Perdue Chicken | Perdue - scanning services | 15,000.00 | 11,250.00 | 05/30/2007 | sample scan | Proposal/Price Quote | 75 | Q2-2007 | 03/10/2007 | Bravera Services |
| AREVA | AREVA - scanning services | 20,000.00 | 15,000.00 | 05/31/2007 | Keith to Contact in Summer | Proposal/Price Quote | 75 | Q2-2007 | 10/11/2005 | Bravera Services |
| Stewart Title | Stewart Title - scanning servcies | 20,000.00 | 2,000.00 | 06/01/2007 | follow up with President | Prospecting | 10 | Q2-2007 | 03/16/2007 | Bravera Services |
| Southern Title | Southern Title - scanning services | 40,000.00 | 16,000.00 | 06/15/2007 | follow up with IT Director | Value Proposition | 40 | Q2-2007 | 10/11/2005 | Bravera Services |
| Document Plus Inc. | Document Plus - CD Online | 45,000.00 | 22,500.00 | 06/15/2007 | follow up with President | Negotiation/Review | 50 | Q2-2007 | 02/09/2007 | Bravera Services |
| Harry & David Mail Order Catalog | Harry & David - Kofax forms capture | 80,000.00 | 8,000.00 | 06/30/2007 | Keith left a voicemail | Qualification | 10 | Q2-2007 | 03/12/2007 | Bravera Services |
| Henrico County | Henrico - scanning services | 100,000.00 | 20,000.00 | 06/30/2007 | March meeting | Needs Analysis | 20 | Q2-2007 | 03/10/2007 | Bravera Services |
| DOL | DOL - scanning services | 100,000.00 | 20,000.00 | 06/30/2007 | discovery call | Qualification | 20 | Q2-2007 | 03/24/2007 | Bravera Services |
| Belvac | Belvac - scanning services | 5,000.00 | 2,500.00 | 07/27/2007 | qualification | Perception Analysis | 50 | Q3-2007 | 03/05/2007 | Bravera Services |
| Blue Ridge Pediatrics | Piney Knoll - Blue Ridge Ped - scanning services | 25,000.00 | 10,000.00 | 07/30/2007 | Piney Knoll sales call | Perception Analysis | 40 | Q3-2007 | 03/10/2007 | Bravera Services |
| UVA Neurology | UVA Neurology scanning servcies | 40,000.00 | 24,000.00 | 08/01/2007 | follow up with IT Director | Negotiation/Review | 60 | Q3-2007 | 05/10/2006 | Bravera Services |
| PGCPS | Prince George County - scanning services | 75,000.00 | 30,000.00 | 08/01/2007 | follow up with President | Value Proposition | 40 | Q3-2007 | 03/24/2007 | Bravera Services |
| RACSB | Community Service Board - X Forms | 75,000.00 | 37,500.00 | 08/10/2007 | RAPID demo | Qualification | 20 | Q3-2007 | 02/16/2007 | Bravera Services |
| Averett University | Averett University - scaning student records | 20,000.00 | 10,000.00 | 08/15/2007 | follow up with President | Negotiation/Review | 50 | Q3-2007 | 10/12/2005 | Bravera Services |
| Bedford County Public Schools | Bedford Schools - Content Director | 25,000.00 | 10,000.00 | 08/20/2007 | proposal for CD Online | Qualification | 40 | Q3-2007 | 10/08/2005 | Bravera Services |
| ComputerLand | ComputerLand - scanning services | 200,000.00 | 100,000.00 | 08/20/2007 | executive call | Value Proposition | 50 | Q3-2007 | 03/24/2007 | Bravera Services |
| OPM | OPM - scanning services | 95,000.00 | 9,500.00 | 08/23/2007 | Follow up call | Qualification | 10 | Q3-2007 | 03/24/2007 | Bravera Services |
| nTelos | Ntelos - scanning services | 35,000.00 | 3,500.00 | 09/15/2007 | qualification | Qualification | 10 | Q3-2007 | 03/10/2007 | Bravera Services |
| R Solutions | R Solutions - scanning services | 100,000.00 | 10,000.00 | 09/27/2007 | joint seminar plan | Qualification | 10 | Q3-2007 | 04/05/2007 | Bravera Services |
| Library of Congress | Library of Congress - scanning services | 100,000.00 | 10,000.00 | 10/10/2007 | follow up with IT Director | Qualification | 10 | Q4-2007 | 03/05/2007 | Bravera Services |
| UVA Otolarynglogy Head & Neck | UVA Otolarynglogy scanning project | 30,000.00 | 9,000.00 | 10/15/2007 | demonstration meeting | Prospecting | 30 | Q4-2007 | 07/12/2006 | Bravera Services |
| USDA - Forest Service | USDA Forest Service - scanning services nationwide | 250,000.00 | 50,000.00 | 10/20/2007 | follow up with Director | Needs Analysis | 20 | Q4-2007 | 03/10/2007 | Bravera Services |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Bon Secours Health System | Bon Secours - scanning services | 50,000.00 | 10,000.00 | 10/22/2007 follow up with Director | Needs Analysis | 20 Q4-2007 | 10/11/2005 | Bravera Services |
| Culpeper County | Culpeper County - scanning services | 50,000.00 | 10,000.00 | 10/25/2007 Discovery call | Prospecting | 20 Q4-2007 | 03/24/2007 | Bravera Services |
| Marriott | Marriott - CD Online | 55,000.00 | 11,000.00 | 10/25/2007 discovery visit | Prospecting | 20 Q4-2007 | 03/24/2007 | Bravera Services |
| Page Valley Bank | Page Valley Bank | 20,000.00 | 2,000.00 | 12/02/2007 follow up with President | Qualification | 10 Q4-2007 | 03/24/2007 | Bravera Services |
| Virginia State University | VSU - content director | 12,000.00 | 2,400.00 | 12/20/2007 follow up with Director | Needs Analysis | 20 Q4-2007 | 10/12/2005 | Bravera Services |
| FEMA-Hyattsville Annuity | FEMA-Hyattsville Annuity | 1350000 | 1350000 | | | | | |
| Current Sales Backlog | Current Sales Backlog | 100,000.00 | 100,000.00 | | | | | |
| | **Totals** | **3,295,500.00** | 1,982,450.00 | | | | | |

# EXHIBIT C

Intial Model in New format
Need to generate this report using raw data in Salesforce

| | Q1 2007 Actual | Q1 2007 Forecast | Q2 2007 Estimate | Q2 2007 Forecast | Q3 2007 Actual | Q3 2007 Forecast | Q4 2007 Actual | Q4 2007 Forecast | 2007 Forecast | Orlando Model | GAP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | |
| License | $ 11 | $ - | $ 45 | $ 395 | | $ 500 | | $ 800 | $ 1,356 | $ 2,069 | $ (713) |
| Maintenance | $ 185 | $ 196 | $ 205 | $ 204 | | $ 204 | | $ 300 | $ 894 | $ 631 | $ 263 |
| Service | $ 520 | $ 559 | $ 710 | $ 700 | | $ 1,200 | | $ 1,450 | $ 3,880 | $ 4,009 | $ (129) |
| Hardware | $ - | $ - | $ - | $ - | | $ - | | $ - | $ - | $ - | $ - |
| Total | $ 716 | $ 755 | $ 960 | $ 1,299 | | $ 1,904 | | $ 2,550 | $ 6,130 | $ 6,709 | $ (579) |
| **Cost of Revenue** | | | | | | | | | | | |
| Services | $ 300 | | $ 300 | $ 385 | | $ 380 | | $ 600 | $ 1,580 | $ 1,765 | $ 185 |
| Maintenance | $ - | | $ - | $ - | | $ - | | $ - | $ - | $ - | $ - |
| Hardware | $ 11 | $ 15 | $ 6 | $ - | | $ - | | $ - | $ 17 | $ - | $ (17) |
| Total | $ 311 | $ 15 | $ 306 | $ 385 | | $ 380 | | $ 600 | $ 1,597 | $ 1,765 | $ 168 |
| **Gross Profit** | **$ 405** | **$ 740** | **$ 654** | **$ 914** | | **$ 1,524** | | **$ 1,950** | **$ 4,533** | **$ 4,944** | **$ (411)** |
| **Operating Expenses** | | | | | | | | | | | |
| Sales | $ 470 | $ 289 | $ 600 | $ 100 | | $ 130 | | $ 130 | $ 1,330 | $ 589 | $ (741) |
| Marketing | | $ 15 | | $ 100 | | $ 100 | | $ 100 | $ 200 | $ 315 | $ 115 |
| Development | | $ - | | $ 194 | | $ 192 | | $ 187 | $ 379 | $ 573 | $ 194 |
| Management | | $ 152 | | $ 140 | | $ 140 | | $ 140 | $ 280 | $ 572 | $ 292 |
| Corporate Services | | $ 354 | | $ 122 | | $ 122 | | $ 121 | $ 243 | $ 719 | $ 476 |
| Total | $ 470 | $ 810 | $ 600 | $ 656 | | $ 684 | | $ 678 | $ 2,432 | $ 2,768 | $ 336 |
| **Operating Income** | **$ (65)** | **$ (70)** | **$ 54** | **$ 258** | | **$ 840** | | **$ 1,272** | **$ 2,101** | **$ 2,176** | **$ (75)** |

**Notes**

1 Intellectus expense/revenue is backed out. Original sales forecast did not adjust this. Original revenue forecasts did adjust for Intellectus
2 Q1-Q4 Expense has extraordinary legal/accounting/excess rent and expense backed out as per original projection
3 Model has been adjusted to reflect the late release of the various major RFP's and the FEMA budgeting process that has pushed back multiple opportunities.
the late push back should lead to increased carry carry forward revenue into '08

q2
484 in Current QB
250 2 Months of FEMA
35 GD
-45 Intellectus
27 SFLLANT
60 Scanning Svcs
30 Ryder Svcs
30 Skookum
20 FEMA
40 CNIC
40 DOI?/TREEV?/
971 Summary

1600

Q3
300 FEMA Scanning
180 Maint
180 Scan Services
250 NH Potential Sale: SW
100 NH Potential Sale: SVCS
50 Bruce Prod
40 Bruce Svcs +25K
100 NH OFP SVCS + 150K
100 CNIC
50 TREEV product
50 TREEV Svcs
330 DOI
300 CBP Prod
60 CBP Svcs
100 Xerox Sale
250 GD NEMIS

2440 Summary

Q4
525 FEMA/New Award
180 Maint
150 NH Carry Forward
150 Scan SVCS
200 Anne: Partnering SW
100 Anne: Partnering SVCS
150 Skookum/NISH: Bruce SW: 150
100 Skookun/NISH: Bruce Svcs: 100
150 CNIC Carry Forward
50 TREEV product
50 TREEV Svcs
330 DOI
90 CNRNW/CNRSW Conversion
250 CBP Svcs
100 Xerox
250 GD NEMIS
300 USJFCOM SVCS
25 Bruce Carry forward

3150 Summary

7190 sum

# EXHIBIT D

# FINANCIAL STATEMENTS

DECEMBER 31, 2006 AND 2005

BRAVERA, INC.

BRAVERA, INC.

**Index to Financial Statements**

| | |
|---|---|
| Report of Independent Registered Certified Public Accounting Firm | F-1 |
| Balance Sheets at December 31, 2006 and 2005 | F-2 |
| Statements of Operations for the Years ended December 31, 2006 and 2005 | F-3 |
| Statements of Deficiency In Stockholders' Equity for the Years ended December 31, 2006 and 2005 | F-4 |
| Statements of Cash Flows for the Years ended December 31, 2006 and 2005 | F-5 |
| Notes to Financial Statements | F-6 – F-15 |

# REPORT OF INDEPENDENT REGISTERED CERTIFIED PUBLIC ACCOUNTING FIRM

Board of Directors
Bravera, Inc.
Reston, VA

We have audited the accompanying balance sheets of Bravera, Inc. (the "Company") as of December 31, 2006 and 2005 and the related statements of operations, deficiency in stockholders' equity, and cash flows for each of the two years in the period ended December 31, 2006. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based upon our audit.

We conducted our audits in accordance with standards of the Public Company Accounting Oversight Board (United States of America). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatements. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Bravera, Inc. as of December 31, 2006 and 2005, and the results of its operations and its cash flows for each of the two years in the period ended December 31, 2006, in conformity with accounting principles generally accepted in the United States of America.

As discussed in Note A to the financial statements, the Company adopted the provisions of Statement of Financial Accounting Standards No. 123(R), "Share-Based Payment", effective January 1, 2006.

As discussed in Note E to the financial statements, the Company has had numerous significant transactions with entities owned and controlled by the officer of the Company.

RBSM LLP

McLean, Virginia
May 25, 2007

BRAVERA, INC.
BALANCE SHEETS
DECEMBER 31, 2006 AND 2005

| | 2006 | 2005 |
|---|---|---|
| ASSETS | | |
| Current assets: | | |
| Cash and cash equivalents | $ 29,789 | $ 3,420 |
| Accounts receivable, net of allowance for doubtful accounts of $444,935 and $0 for 2006 and 2005 (Note A and Note I) | 452,621 | 968,833 |
| Unbilled revenue | - | 254,928 |
| Deferred tax assets (Note G) | 174,937 | 141,813 |
| Prepaid expenses | 8,160 | 6,797 |
| Total current assets | 665,507 | 1,375,791 |
| Property, plant and equipment, net of accumulated depreciation of $202,859 and $147,718, respectively (Note B) | 254,490 | 262,403 |
| Other assets: | | |
| Other receivable, related party (Note E) | - | 235,312 |
| Total Assets | $ 919,997 | $ 1,873,506 |
| LIABILITIES AND (DEFICIENCY IN) STOCKHOLDERS' EQUITY | | |
| Current liabilities: | | |
| Cash disbursed in excess of available balance | $ - | $ 393,222 |
| Accounts payable and accrued liabilities (Note C ) | 630,205 | 401,759 |
| Deferred revenue (Note A) | 275,079 | 284,203 |
| Deferred taxes liability, current (Note G) | 241,756 | 359,336 |
| Notes payable, current portion (Note D) | 312,589 | 301,568 |
| Loans from related parties (Note E) | 165,000 | 115,758 |
| Total liabilities | 1,624,629 | 1,855,846 |
| Notes payable, long-term portion (Note D) | 13,158 | 19,273 |
| Deferred tax liability (Note G) | 19,091 | 32,546 |
| Commitments and contingencies (Note I) | - | - |
| (DEFICIENCY IN) STOCKHOLDERS' EQUITY | | |
| Common stock, par value $0.01, authorized 1,000,000 shares, 200 shares issued and outstanding as of December 31, 2006 and 2005 (Note F) | 2 | 2 |
| Accumulated deficit | (736,883) | (34,161) |
| Total (deficiency in) stockholders' equity | (736,881) | (34,159) |
| Total liabilities and (deficiency in) stockholders' equity | $ 919,997 | $ 1,873,506 |

The accompanying notes are an integral part of these financial statements

BRAVERA, INC.
STATEMENTS OF OPERATIONS
FOR THE YEARS ENDED DECEMBER 31, 2006 AND 2005

| | 2006 | 2005 |
|---|---|---|
| REVENUES: | | |
| Revenues, net | 5,321,375 | 4,924,056 |
| COSTS OF SALES | | |
| Cost of sales, net | 3,674,427 | 3,190,769 |
| Gross profit | 1,646,948 | 1,733,287 |
| OPERATING EXPENSES: | | |
| Research and development | 594,350 | - |
| Depreciation | 57,052 | 41,931 |
| Selling, general and administrative | 1,824,811 | 1,307,365 |
| Total operating expenses | 2,476,213 | 1,349,296 |
| (LOSS) INCOME FROM OPERATIONS: | (829,265) | 383,991 |
| Other income (expense): | | |
| Interest (expense), net | (31,578) | (31,211) |
| Net (loss) income before provision for income taxes | (860,843) | 352,780 |
| INCOME TAXES BENEFIT (PROVISION): | | |
| Federal | 159,527 | (254,137) |
| State(s) | (1,406) | (3,306) |
| Total income taxes benefit (provision) | 158,121 | (257,443) |
| NET (LOSS) INCOME | $ (702,722) | $ 95,337 |
| Net (loss) income per common share, basic and fully diluted | $ (3,514) | $ 477 |
| Weighted average number of common shares outstanding, basic and fully diluted | 200 | 200 |

The accompanying notes are an integral part of these financial statements

BRAVERA, INC.
STATEMENTS OF DEFICIENCY IN STOCKHOLDERS' EQUITY
FOR THE YEARS ENDED DECEMBER 31, 2006 AND 2005

| | Common Shares | Stock Amount | Member's Capital | Retained Earnings | Total |
|---|---|---|---|---|---|
| Balance at January 1, 2005 | - | $ - | $ (59,496) | $ - | $ (59,496) |
| Distributions | - | - | (70,000) | - | (70,000) |
| Shares issued in exchange for membership interests in connection with Company reorganization in June 2005 | 200 | 2 | 129,496 | (129,498) | - |
| Net income | - | - | - | 95,337 | 95,337 |
| Balance at December 31, 2005 | 200 | $ 2 | - | (34,161) | (34,159) |
| Net loss | - | - | - | (702,722) | (702,722) |
| Balance at December 31, 2006 | 200 | $ 2 | $ - | $ (736,883) | $ (736,881) |

The accompanying notes are an integral part of these financial statements

BRAVERA, INC.
STATEMENTS OF CASH FLOWS
FOR THE YEARS ENDED DECEMBER 31, 2006 AND 2005

| | 2006 | 2005 |
|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES: | | |
| Net income (loss) | $ (702,722) | $ 95,337 |
| Adjustments to net income (loss) to net cash provided by (used in) operating activities: | | |
| Depreciation | 57,052 | 41,931 |
| Deferred income taxes | (164,159) | 250,069 |
| Allowance for doubtful account (Note A and I) | 444,935 | - |
| (Increase) decrease in: | | |
| Accounts receivable | 71,277 | (823,130) |
| Unbilled revenues | 254,928 | (232,894) |
| Prepaid expenses | (1,363) | (478) |
| Increase (decrease) in: | | |
| Cash disbursed in excess of available funds | (393,222) | 343,700 |
| Accounts payable and accrued liabilities | 228,446 | 304,619 |
| Deferred revenue | (9,124) | 151,310 |
| Net cash (used in) provided by operating activities: | (213,952) | 130,464 |
| CASH FLOWS FROM INVESTING ACTIVITIES: | | |
| Acquisition of fixed assets | (49,139) | (208,841) |
| Net cash used in investing activities | (49,139) | (208,841) |
| CASH FLOWS FROM FINANCING ACTIVITIES: | | |
| Other receivable, related party | 235,312 | - |
| Proceeds from notes payable, net of repayments | 4,906 | 65,183 |
| Proceeds from related party loans, net of repayments | 49,242 | 85,758 |
| Distributions to members | - | (70,000) |
| Net cash provided by financing activities: | 289,460 | 80,941 |
| Net increase in cash and cash equivalents | 26,369 | 2,564 |
| Cash and cash equivalents at beginning of year | 3,420 | 856 |
| Cash and cash equivalents at end of year | $ 29,789 | $ 3,420 |
| SUPPLEMENTAL DISCLOSURES OF CASH FLOW INFORMATION: | | |
| Cash paid during the year for interest | $ 33,151 | $ 8,627 |
| Cash paid during the year for taxes | $ 3,773 | $ - |

The accompanying notes are an integral part of these financial statements

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE A – SUMMARY OF ACCOUNTING POLICIES

General

A summary of the significant accounting policies applied in the preparation of the accompanying financial statements follows:

Business and Basis of Presentation

Bravera Inc. ("the Company") was incorporated on June 6, 2005 under the laws of the State of Florida and is a successor to Workflow Systems of North America LLC ("Workflow"), a limited liability corporation formed under on September 9, 1998 under the laws of the State of Maryland. The Company formally merged with Workflow on September 1, 2005. The Company develops and sells Business Content and Management software solutions designed from the ground up to meet specific government and corporate requirements for security and ease of use.

The accompanying financial statements represent the financial condition and results of operations of the Company and its predecessor, Workflow.

Revenue Recognition

For revenue from software product sales, the Company recognizes revenue in accordance with Staff Accounting Bulletin No. 104, Revenue Recognition ("SAB 104"), which superseded Staff Accounting Bulletin No. 101, Revenue Recognition in Financial Statements ("SAB 101"). SAB 101 requires that four basic criteria must be met before revenue can be recognized: 1) Persuasive evidence of an arrangement exists; 2) delivery has occurred; 3) the selling price is fixed and determinable; and 4) collectibility is reasonably assured.

Determination of criteria (3) and (4) are based on management's judgments regarding the fixed nature of the selling prices of the products delivered and the collectibility of those amounts. Provisions for discounts and rebates to customers, estimated returns and allowances, and other adjustments are provided for in the same period the related sales are recorded. The Company defers any revenue for which the product has not been delivered or is subject to refund until such time that the company and the customer jointly determine that the product has been delivered or no refund will be required. Deferred revenues as of December 31, 2006 and 2005 were $275,079 and $284,203, respectively. SAB 104 incorporates Emerging Issues Task Force 00-21 ("EITF 00-21"), Multiple-Deliverable Revenue Arrangements. EITF 00-21 addresses accounting for arrangements that may involve the delivery or performance of multiple products, services and/or rights to use assets. The effect of implementing EITF 00-21 on the Company's financial position and results of operations was not significant.

Revenue is recorded for time-and-materials contracts at contractually agreed upon rates and reflects the extent of actual services delivered in the period in accordance with the terms of the contract. Revenue from conversion and other development services is recognized as the services are performed. Revenue from maintenance is recognized as the services are performed or ratably over the contractual period, which is generally one year.

From time to time, the Company may proceed with work based on client direction prior to the completion and signing of formal contract documents. The Company has a formal review process for approving any such work. Revenue associated with such work is recognized only when it can be reliably estimated and realization is probable. The Company based its estimates on previous experiences with the customer, communications with the customer regarding funding status, and its knowledge of available funding for the contract or program.

Currently, there are no warranties provided with the purchase of the Company's products. The cost of replacing defective products and product returns have been immaterial and within management's expectations. In the future, when the Company deems warranty reserves are appropriate that such costs will be accrued to reflect anticipated warranty costs.

Estimates

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenue and expenses during the reporting period. Actual results could differ from those estimates.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE A – SUMMARY OF ACCOUNTING POLICIES (continued)

Cash and Cash Equivalents

For purposes of the Statements of Cash Flows, the Company considers all highly liquid debt instruments purchased with a maturity date of three months or less to be cash equivalents.

Foreign Currency Translation

The Company translates the foreign currency financial statements in accordance with the requirements of Statement of Financial Accounting Standards No. 52, "Foreign Currency Translation." Assets and liabilities are translated at current exchange rates, and related revenue and expenses are translated at average exchange rates in effect during the period. Resulting translation adjustments are recorded as a separate component in stockholders' equity. Foreign currency transaction gains and losses are included in the statement of operations.

Property and Equipment

Property and equipment are stated at cost. When retired or otherwise disposed, the related carrying value and accumulated depreciation are removed from the respective accounts and the net difference less any amount realized from disposition, is reflected in earnings. For financial statement purposes, property and equipment are recorded at cost and depreciated using the straight-line method over their estimated useful lives as follows:

| | |
|---|---|
| Computer equipment | 5 years |
| Office equipment | 5 to 7 years |
| Software | 3 years |
| Vehicles | 5 years |

Advertising Costs

The Company expenses all costs of marketing and advertising as incurred. Marketing and advertising costs totaled $4,361 and $12,067 for the year ended December 31, 2006 and 2005, respectively.

Research and Development

The Company accounts for research and development costs in accordance with the Financial Accounting Standards Board's Statement of Financial Accounting Standards No. 2 ("SFAS 2"), "Accounting for Research and Development Costs". Under SFAS 2, all research and development costs must be charged to expense as incurred. Accordingly, internal research and development costs are expensed as incurred. Third-party research and developments costs are expensed when the contracted work has been performed or as milestone results have been achieved. Company-sponsored research and development costs related to both present and future products are expensed in the period incurred. The Company incurred $594,350 and $0 of expenditures on research and product development for the years ended December 31, 2006 and 2005, respectively.

Impairment of Long Lived Assets

The Company has adopted Statement of Financial Accounting Standards No. 144 (SFAS 144 ). The Statement requires that long-lived assets and certain identifiable intangibles held and used by the Company be reviewed for impairment whenever events or changes ill circumstances indicate that the carrying amount of an asset may not be recoverable. Events relating to recoverability may include significant unfavorable changes in business conditions, recurring losses, or a forecasted inability to achieve break-even operating results over an extended period. The Company evaluates the recoverability of long-lived assets based upon forecasted undercounted cash flows. Should impairment in value be indicated, the carrying value of intangible assets will be adjusted, based on estimates of future discounted cash flows resulting from the use and ultimate disposition of the asset. SFAS No. 144 also requires assets to be disposed of is reported at the lower of the carrying amount or the fair value less costs to sell.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE A – SUMMARY OF ACCOUNTING POLICIES (continued)

Fair Value of Financial Instruments

Fair value estimates discussed herein are based upon certain market assumptions and pertinent information available to management as of December 31, 2006 and 2005. The respective carrying value of certain on-balance-sheet financial instruments approximated their fair values. These financial instruments include cash and accounts payable. Fair values were assumed to approximate carrying values for cash and payables because they are short term in nature and their carrying amounts approximate fair values or they are payable on demand.

Concentrations of Credit Risk

Financial instruments and related items which potentially subject the Company to concentrations of credit risk consist primarily of cash, cash equivalents and trade receivables. The Company places its cash and temporary cash investments with credit quality institutions. At times, such investments may be in excess of the FDIC insurance limit. The Company periodically reviews its trade receivables in determining its allowance for doubtful accounts. At December 31, 2006 and 2005, allowance for doubtful receivable was $444,935 (see Note I) and $-0-, respectively.

Comprehensive Income (Loss)

The Company adopted Statement of Financial Accounting Standards No. 130, "Reporting Comprehensive Income". SFAS No. 130 establishes standards for the reporting and displaying of comprehensive income and its components. Comprehensive income is defined as the change in equity of a business during a period from transactions and other events and circumstances from non-owner sources. It includes all changes in equity during a period except those resulting from investments by owners and distributions to owners. SFAS No. 130 requires other comprehensive income (loss) to include foreign currency translation adjustments and unrealized gains and losses on available-for-sale securities.

Segment Information

Statement of Financial Accounting Standards No. 131, "Disclosures about Segments of an Enterprise and Related Information" ("SFAS 131") establishes standards for reporting information regarding operating segments in annual financial statements and requires selected information for those segments to be presented in interim financial reports issued to stockholders. SFAS 131 also establishes standards for related disclosures about products and services and geographic areas. Operating segments are identified as components of an enterprise about which separate discrete financial information is available for evaluation by the chief operating decision maker, or decision-making group, in making decisions how to allocate resources and assess performance. The Company operates as a single segment and will evaluate additional segment disclosure requirements as it expands its operations.

Income Taxes

The Company follows Statement of Financial Accounting Standard No.109, Accounting for Income Taxes (SFAS No.109) for recording the provision for income taxes. Deferred tax assets and liabilities are computed based upon the difference between the financial statement and income tax basis of assets and liabilities using the enacted marginal tax rate applicable when the related asset or liability is expected to be realized or settled. Deferred income tax expenses or benefits are based on the changes in the asset or liability during each period. If available evidence suggests that it is more likely than not that some portion or all of the deferred tax assets will not be realized, a valuation allowance is required to reduce the deferred tax assets to the amount that is more likely than not to be realized. Future changes in such valuation allowance are included in the provision for deferred income taxes in the period of change. Deferred income taxes may arise from temporary differences resulting from income and expense items reported for financial accounting and tax purposes in different periods. Deferred taxes are classified as current or non-current, depending on the classification of assets and liabilities to which they relate. Deferred taxes arising from temporary differences that are not related to an asset or liability are classified as current or non-current depending on the periods in which the temporary differences are expected to reverse.

Liquidity

As shown in the accompanying financial statements, the Company incurred a net income (loss) of $(702,722) and $95,337 for the year ended December 31, 2006 and 2005, respectively. The Company's current liability exceeded its current assets by $959,122 as of December 31, 2006.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

NOTE A – SUMMARY OF ACCOUNTING POLICIES (continued)

Net Earnings (Losses) Per Common Share

The Company computes earnings (losses) per share under Statement of Financial Accounting Standards No. 128, "Earnings Per Share" ("SFAS 128"). Net earnings per common share is computed by dividing net income by the weighted average number of shares of common stock and dilutive common stock equivalents outstanding during the year. Dilutive common stock equivalents may consist of shares issuable upon conversion of convertible preferred shares and the exercise of the stock options and warrants (calculated using the treasury stock method). During the year ended December 31, 2006 and 2005, the Company did not have common stock equivalents.

Stock Based Compensation

The Company has no stock based compensation issued as of December 31, 2006 and 2005. Effective January 1, 2006, the beginning of the Company's first fiscal quarter of 2006, the Company follow the fair value recognition provisions of Statement of Financial Accounting Standards No. 123R, "Share-based Payment" ("SFAS 123R"). SFAS 123R requires forfeitures to be estimated at the time of grant and revised, if necessary, in subsequent periods if actual forfeitures differ from those estimates.

Recent Accounting Pronouncements

In March 2005, the FASB issued FASB Interpretation (FIN) No. 47, "Accounting for Conditional Asset Retirement Obligations, an interpretation of FASB Statement No. 143," which requires an entity to recognize a liability for the fair value of a conditional asset retirement obligation when incurred if the liability's fair value can be reasonably estimated. The Company is required to adopt the provisions of FIN 47 no later than the first quarter of fiscal 2006. The Company does not expect the adoption of this Interpretation to have a material impact on its financial position, results of operations or cash flows.

In May 2005 the FASB issued Statement of Financial Accounting Standards (SFAS) No. 154, "Accounting Changes and Error Corrections, a replacement of APB Opinion No. 20 and FASB Statement No. 3." SFAS 154 requires retrospective application to prior periods' financial statements for changes in accounting principle, unless it is impracticable to determine either the period-specific effects or the cumulative effect of the change. SFAS 154 also requires that retrospective application of a change in accounting principle be limited to the direct effects of the change. Indirect effects of a change in accounting principle, such as a change in non-discretionary profit-sharing payments resulting from an accounting change, should be recognized in the period of the accounting change. SFAS 154 also requires that a change in depreciation, amortization, or depletion method for long-lived, non-financial assets be accounted for as a change in accounting estimate effected by a change in accounting principle. SFAS 154 is effective for accounting changes and corrections of errors made in fiscal years beginning after December 15, 2005. Early adoption is permitted for accounting changes and corrections of errors made in fiscal years beginning after the date this Statement is issued. The Company does not expect the adoption of this SFAS to have a material impact on its financial position, results of operations or cash flows.

In February 2006, the FASB issued SFAS No. 155. "*Accounting for certain Hybrid Financial Instruments an amendment of FASB Statements No. 133 and 140,*" or SFAS No. 155. SFAS No. 155 permits fair value remeasurement for any hybrid financial instrument that contains an embedded derivative that otherwise would require bifurcation, clarifies which interest-only strips and principal-only strips are not subject to the requirements of Statement No. 133, establishes a requirement to evaluate interests in securitized financial assets to identify interests that are freestanding derivatives or that are hybrid financial instruments that contain an embedded derivative requiring bifurcation, clarifies that concentrations of credit risk in the form of subordination are not embedded derivatives, and amends SFAS No. 140 to eliminate the prohibition on a qualifying special purpose entity from holding a derivative financial instrument that pertains to a beneficial interest other than another derivative financial instrument. SFAS 155 is effective for all financial instruments acquired or issued after the beginning of an entity's first fiscal year that begins after September 15, 2006. The Company did not have a material impact on its financial position, results of operations or cash flows.

In March 2006, the FASB issued FASB Statement No. 156, Accounting for Servicing of Financial Assets - an amendment to FASB Statement No. 140. Statement 156 requires that an entity recognize a servicing asset or servicing liability each time it undertakes an obligation to service a financial asset by entering into a service contract under certain situations. The new standard is effective for fiscal years beginning after September 15, 2006. The adoption of SFAS No.156 did not have a material impact on the Company's financial position and results of operations.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2005 AND 2004

## NOTE A – SUMMARY OF ACCOUNTING POLICIES (continued)

Recent Accounting Pronouncements (Continued)

In July 2006, the FASB issued Interpretation No. 48 (FIN 48). "*Accounting for uncertainty in Income Taxes*". FIN 48 clarifies the accounting for Income Taxes by prescribing the minimum recognition threshold a tax position is required to meet before being recognized in the financial statements. It also provides guidance on derecognition, measurement, classification, interest and penalties, accounting in interim periods, disclosure and transition and clearly scopes income taxes out of SFAS 5, " *Accounting for Contingencies*". FIN 48 is effective for fiscal years beginning after December 15, 2006. The Company does not expect adoption of this standard will have a material impact on its financial position, operations or cash flows.

In September 2006 the Financial Account Standards Board (the "FASB") issued its Statement of Financial Accounting Standards 157, Fair Value Measurements. This Statement defines fair value, establishes a framework for measuring fair value in generally accepted accounting principles (GAAP), and expands disclosures about fair value measurements. This Statement applies under other accounting pronouncements that require or permit fair value measurements, the Board having previously concluded in those accounting pronouncements that fair value is the relevant measurement attribute. Accordingly, this Statement does not require any new fair value measurements. However, for some entities, the application of this Statement will change current practice. FAS 157 effective date is for fiscal years beginning after November 15, 2007. The Company does not expect adoption of this standard will have a material impact on its financial position, operations or cash flows.

In September 2006 the FASB issued its Statement of Financial Accounting Standards 158 "Employers' Accounting for Defined Benefit Pension and Other Postretirement Plans". This Statement improves financial reporting by requiring an employer to recognize the overfunded or underfunded status of a defined benefit postretirement plan (other than a multiemployer plan) as an asset or liability in its statement of financial position and to recognize changes in that funded status in the year in which the changes occur through comprehensive income of a business entity or changes in unrestricted net assets of a not-for-profit organization. This Statement also improves financial reporting by requiring an employer to measure the funded status of a plan as of the date of its year-end statement of financial position, with limited exceptions. The effective date for an employer with publicly traded equity securities is as of the end of the fiscal year ending after December 15, 2006. The Company does not expect adoption of this standard will have a material impact on its financial position, operations or cash flows.

In December 2006, the FASB issued FSP EITF 00-19-2, Accounting for Registration Payment Arrangements ("FSP 00-19-2") which addresses accounting for registration payment arrangements. FSP 00-19-2 specifies that the contingent obligation to make future payments or otherwise transfer consideration under a registration payment arrangement, whether issued as a separate agreement or included as a provision of a financial instrument or other agreement, should be separately recognized and measured in accordance with FASB Statement No. 5, Accounting for Contingencies. FSP 00-19-2 further clarifies that a financial instrument subject to a registration payment arrangement should be accounted for in accordance with other applicable generally accepted accounting principles without regard to the contingent obligation to transfer consideration pursuant to the registration payment arrangement. For registration payment arrangements and financial instruments subject to those arrangements that were entered into prior to the issuance of EITF 00-19-2, this guidance shall be effective for financial statements issued for fiscal years beginning after December 15, 2006 and interim periods within those fiscal years. The Company has not yet determined the impact that the adoption of FSP 00-19-2 will have on its financial statements.

In February 2007, the FASB issued SFAS No. 159, "The Fair Value Option for Financial Assets and Financial Liabilities." SFAS 159 permits entities to choose to measure many financial instruments, and certain other items, at fair value. SFAS 159 applies to reporting periods beginning after November 15, 2007. The adoption of SFAS 159 is not expected to have a material impact on the Company's financial condition or results of operations.

## NOTE B – PROPERTY AND EQUIPMENT

Property and equipment consist of the following as of December 31, 2006 and 2005:

| | 2006 | 2005 |
|---|---|---|
| Computer equipment | $150,578 | $121,107 |
| Furniture and fixtures | 153,707 | 145,647 |
| Software | 38,385 | 28,688 |
| Vehicles | 54,203 | 54,203 |
| Leasehold improvements | 60,476 | 60,476 |
| | 457,349 | 410,121 |
| Less: Accumulated depreciation | (202,859) | (147,718) |
| | $254,490 | $262,403 |

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE B – PROPERTY AND EQUIPMENT (Continued)

During the years ended December 31, 2006 and 2005, depreciation expense charged to operations was $57,052 and $41,931, respectively. Additionally, the Company sold computer equipment to an employee for $1,000 in cash during the year ended December 31, 2006. The historical cost of the computer equipment sold was $1,911 and it had been fully depreciated in prior year.

## NOTE C – ACCOUNTS PAYABLE AND OTHER ACCRUED LIABILITIES

Accounts payable and accrued liabilities at December 31, 2006 and 2005 are as follows:

| | 2006 | 2005 |
|---|---|---|
| Accounts payable | $602,866 | $213,181 |
| Tax payable | 3,751 | 7,374 |
| Payroll related liabilities | 1,688 | 10,063 |
| Other accrued liabilities | 21,900 | 171,141 |
| | $630,205 | $401,759 |

## NOTE D – NOTES PAYABLE

Notes payable consist of the following as of December 31, 2006 and 2005:

| | 2006 | 2005 |
|---|---|---|
| Line of credit, due and payable on demand; with interest at 16.5% and 15.50% at December 31, 2006 and 2005, respectively; Secured with substantially all corporate assets and personally guaranteed by the Company's president | $66,264 | $50,745 |
| Note payable, due December 2009 with monthly payments of $577 with an annual interest rate of 4.9%. Secured by corporate asset | 19,273 | 25,096 |
| Line of credit, due and payable on demand; with interest at prime plus 5.49%. Secured with substantially all corporate assets and personally guaranteed by the Company's president | -0- | 70,000 |
| Line of credit, due and payable upon demand, with interest at prime plus 1%; Secured with substantially all corporate assets and personally guaranteed by the Company's president | 175,000 | 175,000 |
| Line of credit, due and payable upon demand, with interest at 13.74%, Secured with substantially all corporate assets and personally guaranteed by the Company's president | 65,210 | -0- |
| | 325,747 | 320,841 |
| Less: current portion | (312,589) | (301,568) |
| Long-term portion | $ 13,158 | $ 19,273 |

Future payment obligations of notes payable are as follows:

| | |
|---|---|
| 2007 | $ 312,589 |
| 2008 | 6,422 |
| 2009 | 6,736 |
| Total | $ 325,757 |

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE E – RELATED PARTY TRANSACTIONS

The Company performs contract services to and leases developed software from Intellectus, LLC ("Intellectus"), formerly Bravera, LLC, an entity wholly owned and controlled by the Company's President and Chief Executive officer. The Company entered into a one-year license agreement with Intellerus during the year ended December 31, 2005. The license agreement is renewable annually. Pursuant to the license agreement, the Company was obligated to pay Intellectus license fees quarterly in the amount of $30,000 plus four (4) percent of gross revenue. During the year ended December 31, 2006 and 2005, Intellectus charged the Company for license fees in the amount of $332,855 and $316,962, respectively, pursuant to the license agreement. Additionally, Intellectus charged the Company for trademark, bonuses, software maintenance, and other fees in an aggregate amount of $1,162,145 and $997,080 during the year ended December 31, 2006 and 2005, respectively. There were no formal agreements supporting these charges, the Company rewards Intellectus periodically in amounts determined at the sole discretion of the Company's President and Chief Executive Officer.

During the year ended December 31, 2005, in lieu of paying cash to Intellectus for the aggregate charges of $1,314,042, the Company offset the total amount due Intellectus by $360,000 of software development services provided to Intellectus and $272,081 of miscellaneous expenses the Company paid on behalf of Intellectus. The Company also transferred to Intellectus loan receivables from two other entities controlled by the Company's president in an aggregate amount of $681,961.

The Company has a legally enforceable right to offset amounts it owes to Intellectus , and accordingly, the amounts owed to and due from Intellectus have been netted for financial reporting purposes and are not shown on the balance sheet in accordance with FIN No. 39, *Offsetting of Amounts Related to Certain Contracts*.

As of December 31, 2005, total receivable from Intellectus amounted $235,312. The amount was carried over from prior years. During the year ended December 31, 2006, the Company collected $140,591 in cash from Intellectus, and the remaining balance due was offset by the license fees Intellectus billed to the Company during the year ended December 31, 2006. During the year ended December 31, 2006, the Company charged Intellectus an aggregate of $885,000 for software development services provided. The Company collected the amount in full as of December 31, 2006.

The Company leases transportation equipment from Niner T.J., LLC, an entity wholly owned by the Company's President. For the years ended December 31, 2006 and 2005, the Company incurred $33,000 and $37,000 in related lease payments.

As described in Note I, the Company leases office space in Daniel Island, South Carolina and Reston, Virginia from entities owned and controlled by the Company's president. As of December 31, 2006 and 2005, the Company has incurred approximately $185,395 and $74,350 in rent expenses paid to related parties.

During the year ended December 31, 2006 and 2005, the Company's President and entities controlled by the Company's President have advanced funds to the Company for working capital purposes. These loans are payable on demand, non-interest bearing, and no formal repayment terms exist. As of December 31, 2006 and 2005, total advances from these related parties amounted $165,000 and $115,758, respectively.

## NOTE F – COMMON STOCK

In June 2005, the Company restructured from a limited liability company, Workflow Systems of North America, LLC to Bravera, Inc. The Company is authorized to issue 1,000,000 shares of its common stock at a par value of $0.01. As of December 31, 2006 and 2005, the Company had issued 200 shares of its common stock to the president of the Company. The Company's president was the sole shareholder of the Company. For the period from January 1, 2005 through the Company's reorganization in June 2005, the Company had made capital distribution to its president in the amount of $70,000.

## NOTE G – INCOME TAXES

As described in Note A, Bravera, Inc. was formed on June 6, 2005. Prior to formation, the Company operated under Workflow Systems of North America, LLC, a limited liability company, where members are taxed on their proportionate share of the Company's taxable income. Therefore, no provision or liability was recorded for the period from January 1, 2004 through June 5, 2005.

Income tax expense (benefit) attributable to income (loss) from operations for the years ended December 31, 2006 and 2005 consists of:

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE G – INCOME TAXES (Continued)

| | 2006 | 2005 |
|---|---|---|
| Current - | | |
| U.S Taxes | $ 5.,888 | $ 7,374 |
| Others | - | - |
| Total | 5,888 | 7,374 |
| Deferred - | | |
| U.S Taxes | (164,009) | 250,069 |
| Others | - | - |
| Total | (164,009) | 250,069 |
| Total tax expense (benefit) | $(158,121) | $ 257,443 |

A reconciliation of the income tax expense (benefit) to the amount computed by applying the statutory income tax rate to income tax expense for the year ended December 31, 2006 and 2005 is:

| | 2006 | 2005 |
|---|---|---|
| Bravera Inc. net income (loss) before taxes (net loss of Workflow Systems of North America, LLC excluded) | $(860,843) | $ 654,269 |
| Enacted tax rate | 34% | 34% |
| Computed tax expense | (292,686) | $ 222,451 |
| State income taxes, net of federal tax benefit | 39,514 | 34,992 |
| Opening balance differences | 44,192 | - |
| Permanent differences | 2,109 | - |
| Other | 48,750 | - |
| Income tax expense (benefit) recognized in the statements of income | $(158,121) | $ 257,443 |

The components of the deferred tax balances as of December 31, 2006 and 2005 are as follows:

| | 2006 | 2005 |
|---|---|---|
| Deferred tax assets: | | |
| Deferred revenue | $ 174,937 | $ 141,813 |
| Total deferred tax assets | 174,937 | 141,813 |
| Deferred tax liabilities: | | |
| Excess of accrual basis over cash basis taxable income | 241,756 | 359,336 |
| Depreciation | 19,091 | 32,546 |
| Total deferred tax liabilities | $ 260,847 | $ 391,882 |

## NOTE H – BUSINESS CONCENTRATIONS

Revenue from four (4) major customers, which accounted for greater than 10% of total of total sales, approximately $5,158,683 or 97% of total sales for the year ended December 31, 2006. One of which with sales totally $885,000 or 17% of total sales is a related party transaction (Note E). Accounts receivable in connection with these customers amounted to $316,926 or 70% of total accounts receivable at December 31, 2006.

Revenue from two (2) major customers, which accounted for greater than 10% of total sales, approximated $3,552,356 or 72% of total sales for the year ended December 31, 2005. Accounts receivable in connection with these customers amounted $631,058, or 65% of total accounts receivable at December 31, 2005.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE I – COMMITMENTS AND CONTINGENCIES

Operating Lease Commitments

During the year ended December 31, 2005, the Company leased office space in Chevy Chase, Maryland under a lease which expired in May 2005. Total lease rental expenses for the year ended December 31, 2005 under this lease was $19,501.

The Company also leased additional office space in Chevy Chase, Maryland under a month to month lease which expired in November 2005. Total lease rental expenses for the years ended December 31, 2005 under this lease was $17,375.

In February 2005, the Company entered into a 3–year lease in Daniel Island, South Carolina for office space from an entity owned and controlled by the Company's president for $1,350 per month. In June 2006, the lease agreement was modified and the rent was increased to $2,500 per month. Total lease rental expenses for the years ended December 31, 2006 and 2005 under this lease were $24,250 and $14,850, respectively.

In August 2005, the Company entered into a 5-year lease in Reston, Virginia for two office suites from an entity owned and controlled by the Company's president for an aggregate of $10,500 per month, with a 3% yearly rental increase. Total lease rental expenses for the years ended December 31, 2006 and 2005 under this lease were $126,945 and $52,500, respectively.

In September 2005, the Company entered into a 30-month lease in Daniel Island, South Carolina for office space from an entity owned and controlled by the Company's president for $1,750 per month. . In June 2006, the lease agreement was modified and the rent was increased to $3,000 per month. Total lease rental expense for the years ended December 31, 2006 and 2005 under this lease were $30,000 and $7,000 respectively.

In June 2006, the Company entered into a 6-month lease in Daniel Island, South Carolina for office space from an entity owned and controlled by the Company's president for $700 per month. Total lease rental expenses for the year ended December 31, 2006 under this lease were $4,200. The lease is now on month-to-month basis.

During the year ended December 31, 2006, the Company also had short-term leases of storage facilities and corporate apartments, total rent expenses incurred under these short-term leases was $31,075.

Commitments for minimum rentals under non-cancelable leases at December 31, 2006 are as follows, and all rentals are payable to entities owned and controlled by the Company's president:

| Year ending December 31, | |
|---|---|
| 2007 | $ 200,302 |
| 2008 | 146,844 |
| 2009 | 137,689 |
| 2010 | 82,725 |
| Total future minimum lease payments: | $ 567,560 |

Employment and Consulting Agreements

The Company has various consulting agreements with outside contractors to provide business development and consultation services. The Agreements are generally for a term of 12 months from inception and renewable automatically from year to year unless either the Company or Consultant terminates such agreement by written notice.

Litigation

Subsequent to the date of the financial statements, the Company received a demand letter from the Defense Finance and Accounting Service ("DFAS"), seeking a refund of $746,968 for alleged "overpayments" on a Navy contract performed by the Company during the year ended December 31, 2006 and 2005. The Company's legal counsel responded to that demand, citing the fact that all of the Company's work on that contract was ordered, approved, accepted, and paid for by the cognizant Navy contract managers. DFAS did not respond to the Company's legal counsel, and so the Company sought a preliminary injunction against any collection activity, pending further investigation, before the United States District Court in Alexandria, Virginia. That Court denied the injunction on jurisdictional grounds, and the Company now has a pending appeal before the United States Court of Appeals for the Fourth Circuit. It is the Government's contention in that litigation that, although Navy officials did order and accept all of the Company's work on the subject contract, some of those officials were not authorized to bind the Government contractually.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE I – COMMITMENTS AND CONTINGENCIES (Continued)

Litigation (Continued)

In the meantime, the Company has been in negotiation with the Navy, seeking a negotiated resolution of whether the Company owes any refund on the subject Navy contract. In addition, the Company still has one unpaid invoice from the completed Navy contract, in the amount of $444,935, and that the Company's claim is also the subject of discussions. These negotiations are at an early stage, and it is not possible at this time to predict their ultimate outcome. If the Navy will not to agree to a reasonable settlement, the Company has indicated its willingness to litigate the authority issues in an appropriate Contract Disputes Act forum. The Company has reserved in full the unpaid invoice of $444,935 during the year ended December 31, 2006.

The Company believes it has meritorious defenses to Navy's claim for a refund of $746,968 and intends to vigorously defend itself against the claim. While it cannot predict the outcome of this matter, depending on the amount and timing, an unfavorable resolution of this matter could materially affect our business, future results of operations, financial position or cash flows in a particular period.

The Company may be subject to other legal proceedings and claims which may arise in the ordinary course of its business in future periods. Although occasional adverse decisions or settlements may occur, the Company believes that the final disposition of such matters shall not have a material adverse effect on its financial position, results of operations or liquidity.

**Robert Lincoln**

**From:** chris.watson@bravera.com
**Sent:** Sunday, June 17, 2007 2:35 PM
**To:** Richard Connelly
**Cc:** Frank Wilde; Robert Korkuc; Joe Vitetta
**Subject:** RE: Bravera Audited Financial Statements
**Attachments:** FS Bravera 12 31 06 - FINAL6.15.2007 - manual.pdf

Rich,

Here it is again. It was inside the attached email I forwarded to you and Sheri Friday.
Note that this is both the '06 & '05 audit. I have asked for the final '04 PDF and for word versions of the three years.

Best Regards,

Chris

----------------------

President
Bravera, Inc.
(703) 310 6850
(202) 255 8092 Mobile
(703) 310 6837 Fax

---

**From:** Richard Connelly [mailto:rconnelly@infointellect.com]
**Sent:** Sunday, June 17, 2007 1:36 PM
**To:** chris.watson@bravera.com
**Cc:** 'Frank Wilde'
**Subject:** FW: Bravera Audited Financial Statements
**Importance:** High

Chris;

Please scan and email the Bravera signed audit report to Bob Korkuc and me.
In addition, please ask your accountants to send me an MSWord version to be Edgarized and filed with the SEC.
Thanks.

Rich Connelly, CFO
Information Intellect, Inc.
469-951-9584 (Mobile)

**Confidentiality Notice:** The information contained in this transmittal, including any attachment, is Privileged and Confidential Information of Shea Development Corp. and its subsidiaries, including Information Intellect, Inc. The information contained herein is intended only for the person or entity to which it is addressed. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any action in reliance on the contents of this transmittal is strictly prohibited. If you have received this transmittal in error, please contact the sender immediately and delete this transmittal from any computer or other data bank. Thank you.

---

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

| | Apr 1 - May 30, 07 | |
|---|---|---|
| Ordinary Income/Expense | | |
| Income | | |
| Bravera Online | 13,079.50 | Added 4,000 of unbilled revenue |
| Misc. Income | 302.67 | |
| Service Revenue | 370,957.47 | Added $130K + 35K of unbilled Ma |
| Software Income | | |
| Software Maintenance | 93,460.48 | Added 8,000 of unbilled license re' |
| Total Software Income | 93,460.48 | |
| Total Income | 477,800.12 | |
| Cost of Goods Sold | | |
| Cost of Sales | 396.64 | |
| GSA Fees | 3,819.23 | |
| Software License Fee Expense | 70,000.00 | |
| Total COGS | 74,215.87 | |
| Gross Profit | 403,584.25 | |
| Expense | | |
| Bank Service Charges | | |
| Administrative Fees | 2,818.36 | |
| Bank Service Charges - Other | 122.00 | |
| Total Bank Service Charges | 2,940.36 | |
| Dues and Subscriptions | | |
| Memberships | 1,000.00 | |
| Dues and Subscriptions - Other | 205.00 | |
| Total Dues and Subscriptions | 1,205.00 | |
| Employee | | |
| Employee Benefits | | |
| 401(k) Company Match | 1,148.00 | |
| 401(k) Company Matching | 978.00 | |
| Medical Benefits | 15,862.60 | |
| Total Employee Benefits | 17,988.60 | |
| Payroll | 114,734.29 | |
| Payroll Expenses | 59.00 | |
| Recruiting | 6,300.00 | |
| Total Employee | 139,081.89 | |
| Facilities | | |
| Cleaning/Janitorial | 250.00 | |
| Rent | 38,530.00 | |

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

| | Apr 1 - May 30, 07 |
|---|---|
| Utilities | 202.04 |
| Total Facilities | 38,982.04 |
| | |
| Insurance | |
| General Liability Insurance | 67.34 |
| Professional Liability Ins | 2,579.48 |
| Supplemental Insurance | 33.67 |
| Worker's Compensation | 1,242.25 |
| Total Insurance | 3,922.74 |
| | |
| Marketing | |
| Promotional | |
| Meals and Entertainment | 40.98 |
| Total Promotional | 40.98 |
| | |
| Marketing - Other | 1,850.00 |
| Total Marketing | 1,890.98 |
| | |
| Miscellaneous | 545.77 |
| Office Supplies | |
| Consumable | 425.57 |
| Postage and Delivery | 475.24 |
| Printing and Reproduction | 212.93 |
| Telecommunications | |
| Cellular Phone | 725.23 |
| Online Charges | 252.30 |
| Server Expenses | 2,190.00 |
| Telephone and Fax | 91.78 |
| Total Telecommunications | 3,259.31 |
| | |
| Office Supplies - Other | 546.85 |
| Total Office Supplies | 4,919.90 |
| | |
| Professional Fees | |
| Accounting Fees | 9,085.00 |
| Total Professional Fees | 9,085.00 |
| | |
| Subcontractors | |
| Consulting Expense | |
| Sales Consulting | 9,999.00 |
| Thompson Consulting | 15,627.50 |
| Vernalis | 13,450.00 |
| Total Consulting Expense | 39,076.50 |
| | |
| Kelly Services | 10,253.22 |

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
### April 1 through May 30, 2007

| | Apr 1 - May 30, 07 |
|---|---|
| Manpower | 92,575.93 |
| NRI, Inc. | 6,091.13 |
| Randstad | 481.80 |
| Total Subcontractors | 148,478.58 |
| Travel & Entertainment | |
| Automobile | |
| Auto Repairs & Maintenance | 18.99 |
| Fuel | 197.17 |
| Insurance | 3,931.80 |
| Total Automobile | 4,147.96 |
| Aviation | |
| Airplane Lease | 6,000.00 |
| Total Aviation | 6,000.00 |
| Mileage | 1,607.12 |
| Travel | 3,440.11 |
| Total Travel & Entertainment | 15,195.19 |
| Total Expense | 366,247.45 |
| Net Ordinary Income | 37,336.80 |
| Other Income/Expense | |
| Other Expense | |
| Finance Charges | 2,400.06 |
| Interest Expense | 1,539.06 |
| Total Other Expense | 3,939.12 |
| Net Other Income | -3,939.12 |
| Net Income | 33,397.68 |

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

Ordinary Income/Expense
Income
Bravera Online
Misc. Income
Service Revenue ly revenue
Software Income
Software Maintenance venue
Total Software Income

Total Income

Cost of Goods Sold
Cost of Sales
GSA Fees
Software License Fee Expense
Total COGS

Gross Profit

Expense
Bank Service Charges
Administrative Fees
Bank Service Charges - Other
Total Bank Service Charges

Dues and Subscriptions
Memberships
Dues and Subscriptions - Other
Total Dues and Subscriptions

Employee
Employee Benefits
401(k) Company Match
401(k) Company Matching
Medical Benefits
Total Employee Benefits

Payroll
Payroll Expenses
Recruiting
Total Employee

Facilities
Cleaning/Janitorial
Rent

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

Utilities
Total Facilities

Insurance
General Liability Insurance
Professional Liability Ins
Supplemental Insurance
Worker's Compensation
Total Insurance

Marketing
Promotional
Meals and Entertainment
Total Promotional

Marketing - Other
Total Marketing

Miscellaneous
Office Supplies
Consumable
Postage and Delivery
Printing and Reproduction
Telecommunications
Cellular Phone
Online Charges
Server Expenses
Telephone and Fax
Total Telecommunications

Office Supplies - Other
Total Office Supplies

Professional Fees
Accounting Fees
Total Professional Fees

Subcontractors
Consulting Expense
Sales Consulting
Thompson Consulting
Vernalis
Total Consulting Expense

Kelly Services

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

Manpower
NRI, Inc.
Randstad
Total Subcontractors

Travel & Entertainment
Automobile
Auto Repairs & Maintenance
Fuel
Insurance
Total Automobile

Aviation
Airplane Lease
Total Aviation

Mileage
Travel
Total Travel & Entertainment

Total Expense

Net Ordinary Income

Other Income/Expense
Other Expense
Finance Charges
Interest Expense
Total Other Expense

Net Other Income

Net Income

Intial Model in New format
Need to generate this report using raw data in Salesforce

| | Q1 2007 Actual | Q1 2007 Forecast | Q2 2007 Estimate | Q2 2007 Forecast | Q3 2007 Actual | Q3 2007 Forecast | Q4 2007 Actual | Q4 2007 Forecast | 2007 Forecast | Orlando Model | GAP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | |
| License | $ 11 | $ - | $ 45 | $ 395 | | $ 500 | | $ 800 | $ 1,356 | $ 2,069 | $ (713) |
| Maintenance | $ 185 | $ 196 | $ 205 | $ 204 | | $ 204 | | $ 300 | $ 894 | $ 631 | $ 263 |
| Service | $ 520 | $ 559 | $ 710 | $ 700 | | $ 1,200 | | $ 1,450 | $ 3,880 | $ 4,009 | $ (129) |
| Hardware | $ - | $ - | $ - | $ - | | $ - | | $ - | $ - | $ - | $ - |
| Total | $ 716 | $ 755 | $ 960 | $ 1,299 | | $ 1,904 | | $ 2,550 | $ 6,130 | $ 6,709 | $ (579) |
| **Cost of Revenue** | | | | | | | | | | | |
| Services | $ 300 | | $ 300 | $ 385 | | $ 380 | | $ 600 | $ 1,580 | $ 1,765 | $ 185 |
| Maintenance | $ - | | $ - | $ - | | $ - | | $ - | $ - | $ - | $ - |
| Hardware | $ 11 | $ 15 | $ 6 | $ - | | $ - | | $ - | $ 17 | $ - | $ (17) |
| Total | $ 311 | $ 15 | $ 306 | $ 385 | | $ 380 | | $ 600 | $ 1,597 | $ 1,765 | $ 168 |
| **Gross Profit** | **$ 405** | **$ 740** | **$ 654** | **$ 914** | | **$ 1,524** | | **$ 1,950** | **$ 4,533** | **$ 4,944** | **$ (411)** |
| **Operating Expenses** | | | | | | | | | | | |
| Sales | $ 470 | $ 289 | $ 600 | $ 100 | | $ 130 | | $ 130 | $ 1,330 | $ 589 | $ (741) |
| Marketing | | $ 15 | | $ 100 | | $ 100 | | $ 100 | $ 200 | $ 315 | $ 115 |
| Development | | $ - | | $ 194 | | $ 192 | | $ 187 | $ 379 | $ 573 | $ 194 |
| Management | | $ 152 | | $ 140 | | $ 140 | | $ 140 | $ 280 | $ 572 | $ 292 |
| Corporate Services | | $ 354 | | $ 122 | | $ 122 | | $ 121 | $ 243 | $ 719 | $ 476 |
| Total | $ 470 | $ 810 | $ 600 | $ 656 | | $ 684 | | $ 678 | $ 2,432 | $ 2,768 | $ 336 |
| **Operating Income** | **$ (65)** | **$ (70)** | **$ 54** | **$ 258** | | **$ 840** | | **$ 1,272** | **$ 2,101** | **$ 2,176** | **$ (75)** |

**Notes**

1 Intellectus expense/revenue is backed out. Original sales forecast did not adjust this. Original revenue forecasts did adjust for Intellectu:
2 Q1-Q4 Expense has extraordinary legal/accounting/excess rent and expense backed out as per original projectior
3 Model has been adjusted to reflect the late release of the various major RFP's and the FEMA budgeting process that has pushed back multiple opportunities
the late push back should lead to increased carry carry forward revenue into '08

q2
484 In Current QB
250 2 Months of FEMA
35 GD
-45 Intellectus
27 SFLLANT
60 Scanning Svcs
30 Ryder Svcs
30 Skookum
20 FEMA
40 CNIC
40 DOI?/TREEV?/
971 Summary

1600

Q3
300 FEMA Scanning
180 Maint
180 Scan Services
250 NH Potential Sale: SW
100 NH Potential Sale: SVCS
50 Bruce Prod
40 Bruce Svcs +25K
100 NH OFP SVCS + 150K
100 CNIC
50 TREEV product
50 TREEV Svcs
330 DOI
300 CBP Prod
60 CBP Svcs
100 Xerox Sale
250 GD NEMIS

2440 Summary

Q4
525 FEMA/New Award
180 Maint
150 NH Carry Forward
150 Scan SVCS
200 Anne: Partnering SW
100 Anne: Partnering SVCS
150 Skookum/NISH: Bruce SW: 150
100 Skookun/NISH: Bruce Svcs: 100
150 CNIC Carry Forward
50 TREEV product
50 TREEV Svcs
330 DOI
90 CNRNW/CNRSW Conversion
250 CBP Svcs
100 Xerox
250 GD NEMIS
300 USJFCOM SVCS
25 Bruce Carry forward

3150 Summary

7190 sum

# EXHIBIT E

| Legacy Company | Owner | Opportunity | Forecast Date | Stage | Contract $ Total | License $ | Maintenance $ | Services $ | Product $ | Post 4th Qtr | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meter Mesh | Lynn | Altus - through Cherokee Connex | Sep-07 | Waiting PO | $ 785,000.00 | $ 20,000.00 | $ 15,000.00 | $ 50,000.00 | $ 700,000.00 | | |
| | Lynn | Chattanooga - Follow On | Sep-07 | Waiting PO | $ 100,000.00 | $ 1,500.00 | $ 1,500.00 | $ 10,000.00 | $ 87,000.00 | | |
| | Lynn | Thief River Falls, MN | Sep-07 | Negotiations | $ 25,000.00 | $ 150.00 | | $ 100.00 | $ 24,750.00 | | |
| | Lynn | Elizabethton - thru Cherokee Connex | Sep-07 | Negotiations | $ 25,000.00 | $ 150.00 | | $ 150.00 | $ 24,700.00 | | Pw=100% |
| | Lynn | U of Utah | Sep-07 | Waiting PO | $ 25,000.00 | $ 150.00 | $ 2,000.00 | $ 5,000.00 | $ 17,850.00 | | |
| | Lynn | U of Missouri | Sep-07 | Proposal | $ 25,000.00 | $ 150.00 | $ 2,000.00 | $ 5,000.00 | $ 17,850.00 | | |
| | Lynn | Lusk, Wyoming | Sep-07 | Prop Submitted | $ 300,000.00 | | | $ 100,000.00 | $ 200,000.00 | | |
| | | | | | | | | | | | |
| | Lynn | Thief River Falls, MN | Dec-07 | Negotiations | $ 50,000.00 | $ 300.00 | | $ 2,000.00 | $ 47,700.00 | $ 400,000.00 | |
| | Lynn | Elizabethton | Dec-07 | Negotiations | $ 8,500,000.00 | $ 20,000.00 | $ 13,000.00 | $ 75,000.00 | $ 1,500,000.00 | $ 6,892,000.00 | |
| | Lynn | Longmont | Dec-07 | Prop Submitted | $ 50,000.00 | $ 1,500.00 | | $ 2,000.00 | $ 46,500.00 | | |
| | Lynn | Columbus City through Cherokee Connex | Dec-07 | Proposal | $ 1,200,000.00 | $ 6,000.00 | $ 2,000.00 | $ 60,000.00 | $ 850,000.00 | $ 282,000.00 | |
| | Lynn | Altus - through Cherokee Connex | Dec-07 | Waiting PO | $ 1,015,000.00 | $ 10,000.00 | | $ 20,000.00 | $ 985,000.00 | | |
| | Lynn | Kissimmee | Dec-07 | Demo HW | $ 50,000.00 | $ 300.00 | | $ 300.00 | $ 49,400.00 | | |
| | Lynn | Delano, MN | Dec-07 | Signed | $ 233,000.00 | $ 1,800.00 | | $ 5,000.00 | $ 226,200.00 | | |
| | Lynn | Tecumseh, OK | Dec-07 | RFQ Released | $ 580,000.00 | $ 10,000.00 | | $ 70,000.00 | $ 500,000.00 | | |
| | Lynn | Rock Hill, SC | Dec-07 | Prop Submitted | $ 2,900,000.00 | $ 30,000.00 | $ 70,000.00 | $ 300,000.00 | $ 2,500,000.00 | | |
| | | | | | $ - | | | | | | |
| Bravera | | | | | | | | | | | |
| | Conley | CNRNW Regional Info Sys - Conversion | Sep-07 | Negotiations | $ 8,000.00 | | | $ 8,000.00 | | $ 75,000.00 | |
| | Conley | FEMA-A76 Hyattsvile | Sep-07 | Prop Submitted | $ 2,244,000.00 | $ 200,000.00 | $ 44,000.00 | $2,000,000.00 | | $ 12,000,000.00 | |
| | Conley | Peace Corps | Sep-07 | Prop Submitted | $ - | | | | | | |
| | Conley | HHS / FDA / CBER- | Dec-07 | Prospecting | $ - | | | | | | |
| | Conley | PKW ASSOCIATES, INC- | Dec-07 | Prospecting | $ - | | | | | | |
| | Conley | General Dynamics NEMIS Services | Dec-07 | Prop Submitted | $ 675,000.00 | $ 50,000.00 | $ 75,000.00 | $ 450,000.00 | $ 100,000.00 | $ 2,000,000.00 | |
| | Conley | IDT Partnership opportunity | Dec-07 | Prospecting | $ - | | | | | | |
| | Conley | USSTRATCOM JTF-GNO- | Dec-07 | Value Prop | $ 255,000.00 | | $ 40,000.00 | $ 15,000.00 | $ 200,000.00 | | |
| | Conley | IPL - Overheads | Dec-07 | Discovery | $ 50,000.00 | | | | | | |
| | Conley | Blackbaud RWP OEM | Dec-07 | Qualifying | $ 250,000.00 | | | | | | |
| | Conley | New York Botannical Garden - RAPID WP | Dec-07 | Qualifying | $ 50,000.00 | | | | | | |
| | Conley | CUNY - RAPID Workplace | Dec-07 | Qualifying | $ 50,000.00 | | | | | | |
| | Conley | NUMBER SIX SOFTWARE | Dec-07 | Discovery | $ - | | | | | | |
| | Conley | XEROX - Public Sector Ops, NY | Dec-07 | Qualifying | $ 100,000.00 | | | | | | |
| | Conley | Athene Group - Integrated Financial Sol'n | Dec-07 | Value Prop | $ 274,000.00 | $ 200,000.00 | $ 44,000.00 | $ 30,000.00 | | | |
| | Conley | XEROX Roger Sam - Partnering | Dec-07 | Prospecting | $ 100,000.00 | | | | | | |
| | Conley | XEROX Michael Freedman - Partnering | Dec-07 | Needs Anal. | $ 500,000.00 | | $ 60,000.00 | $ 140,000.00 | $ 300,000.00 | | |
| | Conley | SAIC - Healthcare Sector-WorkFlow | Dec-07 | Qualifying | $ 294,000.00 | $ 200,000.00 | $ 44,000.00 | $ 50,000.00 | | | |
| | Conley | TREEV - FNB Minn | Dec-07 | Negotiations | $ 50,000.00 | | | $ 5,000.00 | $ 45,000.00 | | |
| | Conley | Criterion Systems | Dec-07 | Prospecting | $ - | | | | | | |
| | Conley | TREEV Provident Bank | Dec-07 | Value Prop | $ 147,100.00 | $ 95,000.00 | $ 17,100.00 | $ 35,000.00 | $ - | | |
| | Conley | CISCO Systems Asset management | Dec-07 | Prospecting | $ - | | | | | | |
| | Conley | Business Edge Solutions | Dec-07 | Prospecting | $ 250,000.00 | | | | | | |
| | Conley | USAREUR RAMIT Replacement | Dec-07 | Prop Submitted | $ 685,000.00 | $ 500,000.00 | $ 110,000.00 | $ 25,000.00 | | $ 50,000.00 | |
| | Conley | XEROX Parntering with Jane Hensley | Dec-07 | Value Prop | $ 200,000.00 | | | | | | |
| | Conley | Scholz - Commercial | Dec-07 | | $ 150,900.00 | $ 95,000.00 | $ 20,900.00 | $ 35,000.00 | | | |
| | | | | | | | | | | | |
| | Watson | TREEV OEM | Sep-07 | Negotiations | $ - | | | | | | |
| | Watson | GDIT NEMIS Svcs Follow-On | Sep-07 | Prop Submitted | $ 45,000.00 | | | $ 45,000.00 | | | |
| | Watson | nTelos Scanning Services | Sep-07 | Qualifying | $ 35,000.00 | | | $ 3,500.00 | | $ 31,500.00 | |
| | Watson | CNIC Maintenance | Sep-07 | Negotiations | $ 337,500.00 | | $ 337,500.00 | | | | |
| | Watson | CNRSW Conversion | Sep-07 | Qualifying | $ 25,000.00 | | | $ 25,000.00 | | | |
| | Watson | CNIC - 2007 Main | Sep-07 | Negotiations | $ 450,000.00 | | $ 90,000.00 | | | $ 360,000.00 | |
| | Watson | CNIC Services Follow-On | Dec-07 | Qualifying | $ 400,000.00 | | | $ 50,000.00 | $ 230,000.00 | $ 120,000.00 | |
| | Watson | SWFLNT Upsell | Dec-07 | Qualifying | $ - | | | | | | |
| | Watson | DOI Consulting and Software | Dec-07 | Prop Submitted | $ 3,000,000.00 | | $ 100,000.00 | $ 500,000.00 | $ 1,500,000.00 | $ 900,000.00 | |
| | Watson | USJFCOM RAPID | Dec-07 | Prospecting | $ 500,000.00 | | | $ 5,000.00 | | $ 495,000.00 | |
| | Watson | Ryder Phase II (Follow-On) | Dec-07 | Prop Submitted | $ 262,500.00 | | | $ 42,500.00 | $ 220,000.00 | | |
| | | | | | | | | | | | |
| Riptide | O'Connell | US Army Operational Test Spt at Ft Hood | Dec-07 | Pre-RFP | $ 720,000.00 | | | $ 30,000.00 | | $ 690,000.00 | |
| | O'Connell | SED, AMRDEC, Personnel Recovery F/O | Dec-07 | Qualifying | $ 600,000.00 | | | $ 50,000.00 | | $ 550,000.00 | |
| | O'Connell | Joint, Personnel Recovery | Mar-08 | Qualifying | $ 1,000,000.00 | | | | | $ 1,000,000.00 | |
| | O'Connell | Vbrick Software Services - Partnership | Jan-08 | Qualifying | TBD | | | | | | |
| | O'Connell | NETPDTC Curriculum Development | Nov-07 | RFP Released | $ 2,400,000.00 | | | | | $ 2,400,000.00 | 8 yr contract |
| | O'Connell | PEO STRI Net-Centric Instrumentation | Feb-08 | Unqualified | TBD | | | | | | |
| | O'Connell | PEO STRI Gaming ID/IQ | Dec-07 | Pre-RFP | TBD | | | | | | ID/IQ |
| | O'Connell | SAIC - FCS IMI | Nov-07 | Qualifying | $ 150,000.00 | | | $ 25,000.00 | | $ 125,000.00 | |
| | O'Connell | CECOM FBCB2 JCR IMI | Nov-07 | Qualifying | $ 350,000.00 | | | $ 15,000.00 | | $ 335,000.00 | |
| | O'Connell | ITT- CMMI Documentation Support | Oct-07 | Pre-RFP | $ 75,000.00 | | | $ 75,000.00 | | | |
| | O'Connell | CHEP - Portal Development | TBD | Unqualified | TBD | | | | | | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | O'Connell | CHEP - RAPID Workplace | TBD | Unqualified | TBD | | | | | | | |
| | O'Connell | Raytheon - NTC RSS | Aug-07 | Won | $ 75,000.00 | | | $ 75,000.00 | | | | |
| | O'Connell | Raytheon - ATLAS Portal Enhancements | Aug-07 | Won | $ 100,000.00 | | | $ 100,000.00 | | | | |
| | O'Connell | Raytheon - JRTC Mk-19 Development | Aug-07 | Won | $ 100,000.00 | | | $ 100,000.00 | | | | |
| | O'Connell | Raytheon - Portal Development (LOGCOM) | Jan-08 | Qualifying | TBD | | | | | | | |
| | O'Connell | PEO STRI - HITS IA & Integration | Sep-07 | Prop Submitted | $ 2,300,000.00 | | | $ 225,000.00 | | $ 2,005,000.00 | | |
| | O'Connell | PEO STRI - Instrumented Ranges Obj Sys | Dec-07 | Prop Submitted | $ 1,020,000.00 | | | | | $ 1,020,000.00 | | |
| | O'Connell | PEO STRI - LT2 Continuation | Oct-07 | Prop Submitted | $ 250,000.00 | | | $ 250,000.00 | | $ 1,750,000.00 | | |
| | O'Connell | PEO STRI/TACOM - MRF Range @ Eustis | Jan-08 | Won | $ 500,000.00 | | | | | $ 500,000.00 | ($200K Svc, $300K HW) | |
| | O'Connell | PEO STRI - STOC II Re-Compete | Jan-08 | Pre-RFP | TBD | | | | | | ID/IQ | |
| | O'Connell | PEO STRI - ITSC ID/IQ | Oct-07 | Prop Submitted | TBD | | | | | | ID/IQ | |
| | O'Connell | PEO STRI - Aviation IMI | Oct-07 | Qualifying | $ 2,700,000.00 | | | $ 50,000.00 | | $ 2,650,000.00 | | |
| | O'Connell | NGIT IRAD Partnership | Oct-07 | Qualifying | TBD | | | | | | | |
| | O'Connell | PM FBCB2 RAPID Workplace | Nov-07 | Qualifying | TBD | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | TOTALS | $1,442,000.00 | $1,088,000.00 | $5,163,550.00 | $ 10,371,950.00 | | | |
| | | | | | | | | | | | | |
| | | | | | FY07 Grand Total | | | | $ 18,065,500.00 | | | |
| | | **Opportunities Recently Won and Booked** | | | | | | | | | | |
| | | | | | | | | | | | | |
| | Conley | Ryder - Maintenance | May-07 | Signed | $ - | | $ 45,000.00 | | | | | |
| | Conley | TREEV - Mid Missouri Bank | Sep-07 | Signed | $ 88,000.00 | | $ 9,950.00 | $ 22,850.00 | $ 55,200.00 | | | |
| | Conley | RWP Loan Application (TREEV) | Sep-07 | Signed | $ 83,540.00 | | $ 9,540.00 | $ 21,000.00 | $ 53,000.00 | $ 9,540.00 | | |

# EXHIBIT A





# BRAVERA

**Intelligent Business Process Automation**

## *Who We Are*







- Software Developer
  - Business Process Automation
  - Electronic Content Management
  - ASP Web Applications

- Integrator
  - Claims Processing (FEMA)
  - Financial Workflow Applications (RAPID, Loan Processing)
  - Retirement/Benefit Applications
  - Various Other Applications (The usual grab bag)
  - Data mapping, conversion
  - GSA Schedule 70, MOBIS underway
  - DOD *SECRET* Level





- What we do well
  - High $$$, High Complexity Sales
  - Understanding the clients *real* need and the business challenge
  - Architecting Cutting edge solutions
  - Creating Opportunity with a synergistic mix of players, technologies and ideas
  - Delivering Integrations On Time and bug free
- What we're not so good at
  - Delivering our internal software on time and bug free
  - Only average or bit better on project management
  - Hiring and H/R
  - Marketing is improving but still needs work
  - General Back office functions

BRAVERA
Intelligent Business Process Automation





1. <u>Sales</u>
   - Steady growth of current Federal customer base
   - Target key commercial verticals: Finance, Insurance, Healthcare
   - Establishment of new west coast sales office (Seattle)
2. <u>Business Development</u>
   - Multiple vertical software solution opportunities
     - Some closed and developing pipeline, some in negotiation
3. <u>Product</u>
   - Three product releases planned for 2007
     - 1 completed, 2 more underway
4. <u>Growth through acquisition</u>
   - Drivers: similar customer base and solutions that can productized.





2007 Revenue Streams
$7M Goal
9%
10%
36%
44%
1%
Scan Services
Consulting Practice
Government Software
Commercial Software
Bravera Online
2007 Stretch Revenue Streams
$9M Goal
11%
13%
39%
44%
3%
Scan Services
Consulting Practice
Government Software
Commercial Software
Bravera Online

**Total 2007: $6,950,000**

Bravera Services: $2.5M in 2007

Consulting - $70K

Commercial s/ware - $600K

Gov't s/ware – $3.1M

Bravera Online – $680,000

**Total Stretch 2007: $9,000,000**

Bravera Services: $3.0M in 2007

Consulting - $300K

Commercial s/ware - $1M

Gov't s/ware – $4.0M

Bravera Online – $700K

BRAVERA
Intelligent Business Process Automation

BRAVERA
Intelligent Business Process Automation
Bravera Org Chart
Chris Watson
President
Amy Rich
Executive Assistant
Operations
Bravera Services
Software Sales
Dan Korbini
Director of Operations
Tony Weaver
Vice President
Anne Conley
VP of Sales
Development
Raj Yanambakkam
VP of Engineering
Scan Services
Software QC
TBH
IT Engineer
Victor Hayes
Acting Manager
Kanth
QC Manager
Paul Hopkins
Sales Engineer
Bruce Thompson
Acting Product Mktg Mgr
Gary Greer
Sr. Developer
De-Mei Meng
Sr. Developer
TBD
Help Desk
Erica Stuart
Quality Control
Susan Janger
Technical Writer/ Analyst
Dan MacGibbon
Consultant
Graphic Artist
Genc Ymeri
Sr. Developer
Savy Surupudi
Sr. Developer
TBD
Office Assistant
Sri Ravula
Project Assistant
Ranjit Subramani
Developer
TBH
Developer
Alex Rosenbaum
Cisco Networking
Chantay Kennedy
Project Assistant
Consultant
India
Sridhar
Keith Leetun
Sales Rep
Temp Staff

BRAVERA
Intelligent Business Process Automation

# Bravera Infrastructure

- 5 +/- Dev servers in Reston (1 LINUX, 4 Windows (2003, 200)
- 40 +/- workstations: Current Standard is Office 2003, Windows XP
- VOIP Phones: NEC Aspire
- Dual T1's to Reston

- Charleston 3Mbs Fiber
  - VPN to Reston & Verio

- CISCO Firewalls Reston, Charleston
- Host own web sites

- Outsourced Exchange service
- MS Communicator for IM
- GMAIL is Corp standard for emergency email

- 10 +/- Servers @ Verio Colocation in Virginia: Windows 2003
- Sonicwall firewalls @ Verio

# Bravera Product Suite

BRAVERA
Intelligent Business Process Automation

BRAVERA
Intelligent Business Process Automation

***Department of Homeland Security***

***Commander, Naval Installations (CNIC)***

***Department of Interior***

***Department of Homeland Security/CBP***

***U.S. Navy Region SouthWest***

***US Navy Region NorthWest***

***US Navy Strategic Weapons Facility***

***Sallie Mae***

***Ryder, Inc.***

***Department of Veterans Affairs***

***State of Washington***

***Washington and Lee University***

***State of New Hampshire, Dept Of Labor***

***State of Pennsylvania, PA-SERS***

***Pennsylvania Higher Education Association***

***General Dynamics***

***Plus a host of other satisfied customers!***

BRAVERA
Intelligent Business Process Automation



- Bravera provides workflow design AND claims processing for FEMA

BRAVERA
Intelligent Business Process Automation

Vorkplace is s
on successful
BRAVERA
Intelligent Business Process Automation

# Overview

- RAPID is a web based real-time system. Requiring no client installation, RAPID manages and tracks the requisition and procurement process from the time the product or service is ordered through delivery
- Supports multiple DOD and Navy Standard purchase forms
- RAPID tracks and supports all transactions regardless of the financial or accounting system utilized
- RAPID provides an archive of all past procurements for research and audit purposes including complete credit card log and reconciliation capability
- RAPID includes a complete document management system, storing all required supporting documents and files.

BRAVERA
Intelligent Business Process Automation





# Multiple Forms

- RAPID displays and prints over 20 Navy and Government forms
- Data from the forms can be transmitted directly to other Navy Systems
- RAPID Power users can "morph" a generic request into a 2276 or other appropriate form, preventing the need for re-keying

Overall Short Description: Sample Procurement
JCN/Workpacket No: 0321
Supporting Location: 0123
Request Priority: 1
Request Payment Type: Credit Card
Delivery Address: Workflow Systems, LLC
Requester Email: dan.korbin@workflowsystems.com
Supervisor Email: julia@workflowsystems.com
Address Line 1: 5454 Wisconsin Ave
Requester Name: Dan Korbin
Supervisor Name: Julia
Address Line 2: Suite 1405
Requester Phone: 303-619-5556
Supervisor Phone: 303-619-5555
City: Chevy Chase State: MD Zip: 20815

GENERIC REQUEST

Item Detailed Description:
Quantity: Supplier Source: POC Name:
Unit of Issue: Address Line 1 POC Email Address:
Unit Price: Address Line 2 POC Phone Number:
Other Fees: City State ZIP POC Fax Number:
Total Cost:

Plant/Minor property purchase?
Not Applicable
Plierable Less than $5000
Greater Than $5000

Available from mandatory sources? Check all that apply. (Submit Waiver)
NIB/NISH Green Buy
UNICOR* DAPS*

Suppliers Contacted (Min of 3) Bid Amount COG: NSN: Advice Code:

Sole Source Justification:

Notes:

I certify this request to be both accurate and necessary for the official business of the United States government.

JON (Job Order Number) Expense Element Object Class

Submit

RAPID ASSIST



## Full cycle Purchase Card Management!

- Reminder emails are automatically sent
- Work is automatically routed to the next person
- Users are notified when a task is complete
- All supporting documents stored with electronic folder!
- Automatic Credit Card logs are created!

BRAVERA
Intelligent Business Process Automation

# *Bring it all together!*

⑩ **RAPID includes document management, automated Credit Card logs, data feeds... Authorized users can access all the information required to perform their work, their way!**

RAPID Action: Certify Purchase
GENERAL INFORMATION - ID # 100092
2276 REQUEST FOR CONTRAC
Document Attributes:
View Associated:
ASSOCIATED DOCUMENTS - RESU

BRAVERA
Intelligent Business Process Automation

17





# BRAVERA

**Intelligent Business Process Automation**

Christopher Watson
Chris.watson@bravera.com

Anne Conley
Anne.Conley@bravera.com

**Bravera, Inc.**
(877) 411-2300
www.bravera.com



| | FY 04 | FY 05 | FY 06 | FY 07 | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Q1 Actual | Q2 Forecast | Q3 Forecast | Q4 Forecast | Total |
| ***Revenue*** | | | | | | | | |
| License | 52 | 1,419 | 253 | 196 | 395 | 689 | 789 | 2,069 |
| Maintenance | 26 | 694 | 466 | | 204 | 204 | 223 | 631 |
| Service | 1,342 | 1,277 | 4,023 | 559 | 700 | 1,300 | 1,450 | 4,009 |
| Hardware | - | 8 | - | - | | | | - |
| Total | 1,420 | 3,398 | 4,742 | 755 | 1,299 | 2,193 | 2,462 | 6,709 |
| ***Cost of Revenue*** | | | | | | | | |
| Services | 847 | 1,309 | 2,230 | 15 | 385 | 650 | 715 | 1,765 |
| Maintenance | | 27 | 14 | | | | | - |
| Hardware | | | | | | | | |
| Total | 847 | 1,336 | 2,244 | 15 | 385 | 650 | 715 | 1,765 |
| ***Gross Profit*** | 573 | 2,062 | 2,498 | 740 | 914 | 1,543 | 1,747 | 4,944 |
| ***Operating Expenses*** | | | | | | | | |
| Sales | | | | 289 | 100 | 100 | 100 | 589 |
| Marketing | 5 | 69 | 49 | 15 | 100 | 100 | 100 | 315 |
| Development | | | | - | 194 | 192 | 187 | 573 |
| Management | | | | 152 | 140 | 140 | 140 | 572 |
| Corporate Services | 424 | 525 | 1,346 | 354 | 122 | 122 | 121 | 719 |
| Total | 429 | 594 | 1,395 | 810 | 656 | 654 | 648 | 2,768 |
| ***Operating Income*** | 144 | 1,468 | 1,103 | (70) | 258 | 889 | 1,099 | 2,176 |
| Interest Expense | | | | | | | | - |
| Interest Income | | | | | | | | - |
| F/X (Gain) Loss | | | | | | | | - |
| Depreciation | | | | | | | | - |
| Bad debts | | | | | | | | - |
| Acquisition amortization | | | | | | | | - |
| Stock Based Compensation | | | | | | | | - |
| Income (Loss) | 144 | 1,468 | 1,103 | (70) | 258 | 889 | 1,099 | 2,176 |
| Taxes @35% | | | | | | | | |
| Net Income (Loss) | 144 | 1,468 | 1,103 | (70) | 258 | 889 | 1,099 | 2,176 |
| Preferred Dividends | | | | | | | | |
| Earnings (Loss) to Common | 144 | 1,468 | 1,103 | (70) | 258 | 889 | 1,099 | 2,176 |

# EXHIBIT B

2007 Sales Forcast

| | Pipeline | Forecast |
|---|---|---|
| **Bravera Enterprise** | 20,885,000.00 | 6,612,000.00 |
| **Bravera Services** | 3,295,500.00 | 1,982,450.00 |
| **Totals** | **24,180,500.00** | **8,594,450.00** |

* Note that the revenue showed assumes sales closed but revenue not able to be billed, thus we are still projecting aprox $6.9M billed sales for the year

| Bravera Enterprise | Pipeline | Forecast |
|---|---|---|
| Totals | 20,885,000.00 | 6,612,000.00 |

| Account Name | Opportunity Name | Amount | Expected Revenue | Close Date | Next Step | Stage | Probability (%) | Fiscal Period | Created Date |
|---|---|---|---|---|---|---|---|---|---|
| DOI | DOI - consulting & software | 1,500,000.00 | 1,050,000.00 | 05/20/2007 | New Budget | Proposal/Price Quote | 70 | Q2-2007 | 03/11/2007 |
| FEMA | FEMA-A76 Hyattsville | 2,250,000.00 | 1,125,000.00 | 05/30/2007 | Meeting with COTR | Proposal/Price Quote | 50 | Q2-2007 | 02/21/2007 |
| SWLFLANT | Upsell Oppty | 30,000.00 | 24,000.00 | 04/30/2007 | Dan to Contact | Value Proposition | 80 | Q2-2007 | 04/06/2007 |
| New Hampshire | New Hampshire DMV - RAPID RFP | 500,000.00 | 125,000.00 | 05/30/2007 | Waiting for RFP | Proposal/Price Quote | 25 | Q2-2007 | 03/05/2007 |
| IKON Document Services | CD, Partner | 250,000.00 | 25,000.00 | 05/31/2007 | Chris follow up w/ George | Qualification | 10 | Q2-2007 | 03/09/2007 |
| RACSB | Rapid Workplace | 40,000.00 | 8,000.00 | 05/31/2007 | Demo RPW 3rd wk April | Value Proposition | 20 | Q2-2007 | 04/02/2007 |
| General Dynamics | NEMIS Services | 500,000.00 | 250,000.00 | 06/01/2007 | Chris to call Frank Stellar | Needs Analysis | 50 | Q2-2007 | 03/05/2007 |
| IMC | Follow on Development | 1,000,000.00 | 250,000.00 | 06/01/2007 | Chris to Monitor | Negotiation/Review | 25 | Q2-2007 | 03/05/2007 |
| XEROX | Michael Freedman - Partnering | 500,000.00 | 50,000.00 | 06/01/2007 | Chris to follow up | Qualification | 10 | Q2-2007 | 04/06/2007 |
| Aliant Bank | RWP Loan Application (TREEV) | 120,000.00 | 48,000.00 | 06/15/2007 | Follow with Kent on status | Proposal/Price Quote | 40 | Q2-2007 | 02/13/2007 |
| CNIC | Maintenance | 450,000.00 | 337,500.00 | 06/30/2007 | chris working w/COTR | Negotiation/Review | 75 | Q2-2007 | 03/05/2007 |
| Ryder | License Maint. | 75,000.00 | 15,000.00 | 06/30/2007 | Chris to follow up | Needs Analysis | 20 | Q2-2007 | 04/06/2007 |
| Skookum Technologies | Internal Sale | 50,000.00 | 10,000.00 | 06/30/2007 | Bruce to follow up | Needs Analysis | 20 | Q2-2007 | 04/06/2007 |
| vCustomer | Internal Sale | 50,000.00 | 5,000.00 | 06/30/2007 | Bruce to Validate Infopath functionality | Qualification | 10 | Q2-2007 | 04/06/2007 |
| IDOC | Enterprise Sales/Services | 400,000.00 | 200,000.00 | 07/15/2007 | Chris to follow up | Qualification | 50 | Q3-2007 | 04/06/2007 |
| CNIC | Services | 750,000.00 | 525,000.00 | 08/01/2007 | Chris to call | Qualification | 70 | Q3-2007 | 04/06/2007 |
| Metavante | Various financial solution sales | 250,000.00 | 25,000.00 | 08/01/2007 | Chris to call David McWorter | Qualification | 10 | Q3-2007 | 04/06/2007 |
| Bank of Minnesota | RWP Loan Application (TREEV) | 100,000.00 | 50,000.00 | 09/01/2007 | Follow with Kent on status | Proposal/Price Quote | 50 | Q3-2007 | 03/02/2007 |
| CNRNW-Regional Information Systems | CNRNW - Conversion | 75,000.00 | 67,500.00 | 09/01/2007 | Monitor | Negotiation/Review | 90 | Q3-2007 | 03/05/2007 |
| CNRSW | CNRSW Conversion | 75,000.00 | 67,500.00 | 09/01/2007 | Chris to monitor | Negotiation/Review | 90 | Q3-2007 | 03/05/2007 |
| Office of the Under Secretary of Defense (Comptroller) | OSD - Procurement Card | 1,200,000.00 | 120,000.00 | 09/14/2007 | Formal Presentation | Qualification | 10 | Q3-2007 | 01/28/2007 |
| CISCO Systems | Asset management | | | 09/28/2007 | Follow up call to Steve Emmarino | Prospecting | 10 | Q3-2007 | 03/19/2007 |
| IDT | Partnership opportunity | 250,000.00 | 50,000.00 | 09/30/2007 | Anne scheduling demo with Harry - need to put together demo based on workflow Harry provided | Prospecting | 20 | Q3-2007 | 03/19/2007 |
| SIM | Roger Nelson-Simulation | 250,000.00 | 25,000.00 | 10/01/2007 | Chris to meet | Prospecting | 10 | Q4-2007 | 03/05/2007 |
| USJFCOM | Rapid | | | 10/01/2007 | Chris to call | Prospecting | 25 | Q4-2007 | 03/09/2007 |
| XEROX | Roger Sam - Partnering | 500,000.00 | 50,000.00 | 10/01/2007 | AC to call | Prospecting | 10 | Q4-2007 | 04/06/2007 |
| Athene Group | Integrated Financial Solution | 400,000.00 | 100,000.00 | 10/01/2007 | Anne to get SOW | Needs Analysis | 25 | Q4-2007 | 04/06/2007 |
| Harry Velasquez | DOD technologies | 750,000.00 | 37,500.00 | 10/01/2007 | Chris to follow up | Qualification | 5 | Q4-2007 | 04/06/2007 |
| XEROX | Chris Varnes - Partnering | 500,000.00 | 50,000.00 | 10/01/2007 | Chris W to call | Qualification | 10 | Q4-2007 | 04/06/2007 |
| Piney Knoll | Domion Power Plants - RAPID Workplace | 700,000.00 | 210,000.00 | 10/30/2007 | Qualification Call - I2 involvement? | Qualification | 30 | Q4-2007 | 12/13/2005 |
| Naval Academy | Rapid | 600,000.00 | 120,000.00 | 10/31/2007 | Chris to follow up | Value Proposition | 20 | Q4-2007 | 03/09/2007 |
| Business Edge Solutions | Potential Partner | 250,000.00 | 25,000.00 | 11/01/2007 | Follow up with Ethan | Prospecting | 10 | Q4-2007 | 02/13/2007 |
| Dept of Energy (IG-45) | Rapid Workplace | | | 12/30/2007 | | Prospecting | 10 | Q4-2007 | 04/03/2007 |
| Criterion Systems | Product Suite Intro | | | 12/31/2007 | Anne to call | Prospecting | 10 | Q4-2007 | 03/09/2007 |
| XEROX | Partnering -Kathy K | 2,000,000.00 | 400,000.00 | 12/31/2007 | Agreed to Embedd Docshare with RWP | Qualification | 20 | Q4-2007 | 03/05/2007 |
| DOI/MMS/PMI | DOI/MMS/PMI- | | | 12/31/2007 | Demo April 11th | Prospecting | 10 | Q4-2007 | 04/03/2007 |
| NISH | External Sales | 1,000,000.00 | 250,000.00 | 12/31/2007 | Bruce to cultivate wtih Ken Lynn | Prospecting | 25 | Q4-2007 | 04/06/2007 |
| vCustomer | External Sales | 500,000.00 | 75,000.00 | 12/31/2007 | Bruce to follow up | Qualification | 15 | Q4-2007 | 04/06/2007 |
| Skookum Technologies | External opps | 500,000.00 | 50,000.00 | 12/31/2007 | Bruce to follow up | Qualification | 10 | Q4-2007 | 04/06/2007 |
| USAIS | Various external | 500,000.00 | 75,000.00 | 12/31/2007 | Bruce to follow up - comb Mick's pipeline | Prospecting | 15 | Q4-2007 | 04/06/2007 |
| SAIC | SAIC- subcontracting for Bravera | 200,000.00 | 20,000.00 | 08/30/2007 | task order | Qualification | 10 | Q3-2007 | 03/12/2007 |
| US Customs and Border Protection | CBP - Investigation Files: RAPID and backfile | 1,000,000.00 | 500,000.00 | 09/20/2007 | Waiting RFP | Proposal/Price Quote | 30 | Q3-2007 | 03/11/2007 |
| Peace Corps DIRECTOR | Peace Corps - CD Online | 50,000.00 | 5,000.00 | 09/30/2007 | Waiting to Issue RFP | Prospecting | 10 | Q3-2007 | 04/04/2007 |
| FEMA | Hyattsville Upsell | 250,000.00 | 50,000.00 | 10/01/2007 | Chris to contact | Qualification | 10 | Q4-2007 | 04/06/2007 |
| Page Valley Bank | Page Valley Bank | 20,000.00 | 2,000.00 | 12/02/2007 | follow up with President | Qualification | 10 | Q4-2007 | 03/24/2007 |
| Fernando Arce | SAIC partnering opportunity | 400,000.00 | 40,000.00 | 10/01/2007 | Chris to follow up | Qualification | 10 | Q4-2007 | 04/06/2007 |
| Current Sales Backlog | Current Sales Backlog | 100,000.00 | 100,000.00 | | | | | | |
| | Totals | 20,885,000.00 | 6,612,000.00 | | | | | | |

| Bravera Services | Pipeline | Forecast |
|---|---|---|
| Totals | 3,295,500.00 | 1,982,450.00 |

| Account Name | Opportunity Name | Amount | Expected Services Revenue | Close Date | Next Step | Stage | Probability (%) | Fiscal Period | Created Date | Division |
|---|---|---|---|---|---|---|---|---|---|---|
| Augusta Family Practice | AMC scanning services | 18,500.00 | 14,800.00 | 05/01/2007 | follow up with HR Director | Negotiation/Review | 80 | Q1-2007 | 12/13/2005 | Bravera Services |
| UVA Residency Office | UVA Residency - scanning services & CD Online project | 25,000.00 | 17,500.00 | 04/15/2007 | sample box for Tony | Proposal/Price Quote | 70 | Q1-2007 | 12/12/2005 | Bravera Services |
| Liebherr | Liebherr - scanning servics & CD Online | 100,000.00 | 20,000.00 | 04/28/2007 | follow up with IT Director | Negotiation/Review | 20 | Q2-2007 | 10/12/2005 | Bravera Services |
| Aerofin | Aerofin - scanning project | 20,000.00 | 14,000.00 | 05/25/2007 | waiting on Corporate | Proposal/Price Quote | 70 | Q2-2007 | 02/23/2007 | Bravera Services |
| Perdue Chicken | Perdue - scanning services | 15,000.00 | 11,250.00 | 05/30/2007 | sample scan | Proposal/Price Quote | 75 | Q2-2007 | 03/10/2007 | Bravera Services |
| AREVA | AREVA - scanning services | 20,000.00 | 15,000.00 | 05/31/2007 | Keith to Contact in Summer | Proposal/Price Quote | 75 | Q2-2007 | 10/11/2005 | Bravera Services |
| Stewart Title | Stewart Title - scanning servcies | 20,000.00 | 2,000.00 | 06/01/2007 | follow up with President | Prospecting | 10 | Q2-2007 | 03/16/2007 | Bravera Services |
| Southern Title | Southern Title - scanning services | 40,000.00 | 16,000.00 | 06/15/2007 | follow up with IT Director | Value Proposition | 40 | Q2-2007 | 10/11/2005 | Bravera Services |
| Document Plus Inc. | Document Plus - CD Online | 45,000.00 | 22,500.00 | 06/15/2007 | follow up with President | Negotiation/Review | 50 | Q2-2007 | 02/09/2007 | Bravera Services |
| Harry & David Mail Order Catalog | Harry & David - Kofax forms capture | 80,000.00 | 8,000.00 | 06/30/2007 | Keith left a voicemail | Qualification | 10 | Q2-2007 | 03/12/2007 | Bravera Services |
| Henrico County | Henrico - scanning services | 100,000.00 | 20,000.00 | 06/30/2007 | March meeting | Needs Analysis | 20 | Q2-2007 | 03/10/2007 | Bravera Services |
| DOL | DOL - scanning services | 100,000.00 | 20,000.00 | 06/30/2007 | discovery call | Qualification | 20 | Q2-2007 | 03/24/2007 | Bravera Services |
| Belvac | Belvac - scanning services | 5,000.00 | 2,500.00 | 07/27/2007 | qualification | Perception Analysis | 50 | Q3-2007 | 03/05/2007 | Bravera Services |
| Blue Ridge Pediatrics | Piney Knoll - Blue Ridge Ped - scanning services | 25,000.00 | 10,000.00 | 07/30/2007 | Piney Knoll sales call | Perception Analysis | 40 | Q3-2007 | 03/10/2007 | Bravera Services |
| UVA Neurology | UVA Neurology scanning servcies | 40,000.00 | 24,000.00 | 08/01/2007 | follow up with IT Director | Negotiation/Review | 60 | Q3-2007 | 05/10/2006 | Bravera Services |
| PGCPS | Prince George County - scanning services | 75,000.00 | 30,000.00 | 08/01/2007 | follow up with President | Value Proposition | 40 | Q3-2007 | 03/24/2007 | Bravera Services |
| RACSB | Community Service Board - X Forms | 75,000.00 | 37,500.00 | 08/10/2007 | RAPID demo | Qualification | 20 | Q3-2007 | 02/16/2007 | Bravera Services |
| Averett University | Averett University - scaning student records | 20,000.00 | 10,000.00 | 08/15/2007 | follow up with President | Negotiation/Review | 50 | Q3-2007 | 10/12/2005 | Bravera Services |
| Bedford County Public Schools | Bedford Schools - Content Director | 25,000.00 | 10,000.00 | 08/20/2007 | proposal for CD Online | Qualification | 40 | Q3-2007 | 10/08/2005 | Bravera Services |
| ComputerLand | ComputerLand - scanning services | 200,000.00 | 100,000.00 | 08/20/2007 | executive call | Value Proposition | 50 | Q3-2007 | 03/24/2007 | Bravera Services |
| OPM | OPM - scanning services | 95,000.00 | 9,500.00 | 08/23/2007 | Follow up call | Qualification | 10 | Q3-2007 | 03/24/2007 | Bravera Services |
| nTelos | Ntelos - scanning services | 35,000.00 | 3,500.00 | 09/15/2007 | qualification | Qualification | 10 | Q3-2007 | 03/10/2007 | Bravera Services |
| R Solutions | R Solutions - scanning services | 100,000.00 | 10,000.00 | 09/27/2007 | joint seminar plan | Qualification | 10 | Q3-2007 | 04/05/2007 | Bravera Services |
| Library of Congress | Library of Congress - scanning services | 100,000.00 | 10,000.00 | 10/10/2007 | follow up with IT Director | Qualification | 10 | Q4-2007 | 03/05/2007 | Bravera Services |
| UVA Otolarynglogy Head & Neck | UVA Otolarynglogy scanning project | 30,000.00 | 9,000.00 | 10/15/2007 | demonstration meeting | Prospecting | 30 | Q4-2007 | 07/12/2006 | Bravera Services |
| USDA - Forest Service | USDA Forest Service - scanning services nationwide | 250,000.00 | 50,000.00 | 10/20/2007 | follow up with Director | Needs Analysis | 20 | Q4-2007 | 03/10/2007 | Bravera Services |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Bon Secours Health System | Bon Secours - scanning services | 50,000.00 | 10,000.00 | 10/22/2007 follow up with Director | Needs Analysis | 20 Q4-2007 | 10/11/2005 | Bravera Services |
| Culpeper County | Culpeper County - scanning services | 50,000.00 | 10,000.00 | 10/25/2007 Discovery call | Prospecting | 20 Q4-2007 | 03/24/2007 | Bravera Services |
| Marriott | Marriott - CD Online | 55,000.00 | 11,000.00 | 10/25/2007 discovery visit | Prospecting | 20 Q4-2007 | 03/24/2007 | Bravera Services |
| Page Valley Bank | Page Valley Bank | 20,000.00 | 2,000.00 | 12/02/2007 follow up with President | Qualification | 10 Q4-2007 | 03/24/2007 | Bravera Services |
| Virginia State University | VSU - content director | 12,000.00 | 2,400.00 | 12/20/2007 follow up with Director | Needs Analysis | 20 Q4-2007 | 10/12/2005 | Bravera Services |
| FEMA-Hyattsville Annuity | FEMA-Hyattsville Annuity | 1350000 | 1350000 | | | | | |
| Current Sales Backlog | Current Sales Backlog | 100,000.00 | 100,000.00 | | | | | |
| | **Totals** | **3,295,500.00** | 1,982,450.00 | | | | | |

# EXHIBIT C

Intial Model in New format
Need to generate this report using raw data in Salesforce

| | Q1 2007 Actual | Q1 2007 Forecast | Q2 2007 Estimate | Q2 2007 Forecast | Q3 2007 Actual | Q3 2007 Forecast | Q4 2007 Actual | Q4 2007 Forecast | 2007 Forecast | Orlando Model | GAP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | |
| License | $ 11 | $ - | $ 45 | $ 395 | | $ 500 | | $ 800 | $ 1,356 | $ 2,069 | $ (713) |
| Maintenance | $ 185 | $ 196 | $ 205 | $ 204 | | $ 204 | | $ 300 | $ 894 | $ 631 | $ 263 |
| Service | $ 520 | $ 559 | $ 710 | $ 700 | | $ 1,200 | | $ 1,450 | $ 3,880 | $ 4,009 | $ (129) |
| Hardware | $ - | $ - | $ - | $ - | | $ - | | $ - | $ - | $ - | $ - |
| Total | $ 716 | $ 755 | $ 960 | $ 1,299 | | $ 1,904 | | $ 2,550 | $ 6,130 | $ 6,709 | $ (579) |
| **Cost of Revenue** | | | | | | | | | | | |
| Services | $ 300 | | $ 300 | $ 385 | | $ 380 | | $ 600 | $ 1,580 | $ 1,765 | $ 185 |
| Maintenance | $ - | | $ - | $ - | | $ - | | $ - | $ - | $ - | $ - |
| Hardware | $ 11 | $ 15 | $ 6 | $ - | | $ - | | $ - | $ 17 | $ - | $ (17) |
| Total | $ 311 | $ 15 | $ 306 | $ 385 | | $ 380 | | $ 600 | $ 1,597 | $ 1,765 | $ 168 |
| **Gross Profit** | **$ 405** | **$ 740** | **$ 654** | **$ 914** | | **$ 1,524** | | **$ 1,950** | **$ 4,533** | **$ 4,944** | **$ (411)** |
| **Operating Expenses** | | | | | | | | | | | |
| Sales | $ 470 | $ 289 | $ 600 | $ 100 | | $ 130 | | $ 130 | $ 1,330 | $ 589 | $ (741) |
| Marketing | | $ 15 | | $ 100 | | $ 100 | | $ 100 | $ 200 | $ 315 | $ 115 |
| Development | | $ - | | $ 194 | | $ 192 | | $ 187 | $ 379 | $ 573 | $ 194 |
| Management | | $ 152 | | $ 140 | | $ 140 | | $ 140 | $ 280 | $ 572 | $ 292 |
| Corporate Services | | $ 354 | | $ 122 | | $ 122 | | $ 121 | $ 243 | $ 719 | $ 476 |
| Total | $ 470 | $ 810 | $ 600 | $ 656 | | $ 684 | | $ 678 | $ 2,432 | $ 2,768 | $ 336 |
| **Operating Income** | **$ (65)** | **$ (70)** | **$ 54** | **$ 258** | | **$ 840** | | **$ 1,272** | **$ 2,101** | **$ 2,176** | **$ (75)** |

**Notes**

1 Intellectus expense/revenue is backed out. Original sales forecast did not adjust this. Original revenue forecasts did adjust for Intellectus
2 Q1-Q4 Expense has extraordinary legal/accounting/excess rent and expense backed out as per original projection
3 Model has been adjusted to reflect the late release of the various major RFP's and the FEMA budgeting process that has pushed back multiple opportunities.
the late push back should lead to increased carry carry forward revenue into '08

q2
484 in Current QB
250 2 Months of FEMA
35 GD
-45 Intellectus
27 SFLLANT
60 Scanning Svcs
30 Ryder Svcs
30 Skookum
20 FEMA
40 CNIC
40 DOI?/TREEV?/
971 Summary

Q3
300 FEMA Scanning
180 Maint
180 Scan Services
250 NH Potential Sale: SW
100 NH Potential Sale: SVCS
50 Bruce Prod
40 Bruce Svcs +25K
100 NH OFP SVCS + 150K
100 CNIC
50 TREEV product
50 TREEV Svcs
330 DOI
300 CBP Prod
60 CBP Svcs
100 Xerox Sale
250 GD NEMIS

Q4
525 FEMA/New Award
180 Maint
150 NH Carry Forward
150 Scan SVCS
200 Anne: Partnering SW
100 Anne: Partnering SVCS
150 Skookum/NISH: Bruce SW: 150
100 Skookun/NISH: Bruce Svcs: 100
150 CNIC Carry Forward
50 TREEV product
50 TREEV Svcs
330 DOI
90 CNRNW/CNRSW Conversion
250 CBP Svcs
100 Xerox
250 GD NEMIS
300 USJFCOM SVCS
25 Bruce Carry forward

1600 2440 Summary 3150 Summary

7190 sum

# EXHIBIT D

# FINANCIAL STATEMENTS

DECEMBER 31, 2006 AND 2005

BRAVERA, INC.

BRAVERA, INC.

Index to Financial Statements

| | |
|---|---|
| Report of Independent Registered Certified Public Accounting Firm | F-1 |
| Balance Sheets at December 31, 2006 and 2005 | F-2 |
| Statements of Operations for the Years ended December 31, 2006 and 2005 | F-3 |
| Statements of Deficiency In Stockholders' Equity for the Years ended December 31, 2006 and 2005 | F-4 |
| Statements of Cash Flows for the Years ended December 31, 2006 and 2005 | F-5 |
| Notes to Financial Statements | F-6 – F-15 |

REPORT OF INDEPENDENT REGISTERED CERTIFIED PUBLIC ACCOUNTING FIRM

Board of Directors
Bravera, Inc.
Reston, VA

We have audited the accompanying balance sheets of Bravera, Inc. (the "Company") as of December 31, 2006 and 2005 and the related statements of operations, deficiency in stockholders' equity, and cash flows for each of the two years in the period ended December 31, 2006. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based upon our audit.

We conducted our audits in accordance with standards of the Public Company Accounting Oversight Board (United States of America). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatements. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Bravera, Inc. as of December 31, 2006 and 2005, and the results of its operations and its cash flows for each of the two years in the period ended December 31, 2006, in conformity with accounting principles generally accepted in the United States of America.

As discussed in Note A to the financial statements, the Company adopted the provisions of Statement of Financial Accounting Standards No. 123(R), "Share-Based Payment", effective January 1, 2006.

As discussed in Note E to the financial statements, the Company has had numerous significant transactions with entities owned and controlled by the officer of the Company.

RBSM LLP

McLean, Virginia
May 25, 2007

**BRAVERA, INC.**
**BALANCE SHEETS**
**DECEMBER 31, 2006 AND 2005**

| | 2006 | 2005 |
|---|---|---|
| ASSETS | | |
| Current assets: | | |
| Cash and cash equivalents | $ 29,789 | $ 3,420 |
| Accounts receivable, net of allowance for doubtful accounts of $444,935 and $0 for 2006 and 2005 (Note A and Note I) | 452,621 | 968,833 |
| Unbilled revenue | - | 254,928 |
| Deferred tax assets (Note G) | 174,937 | 141,813 |
| Prepaid expenses | 8,160 | 6,797 |
| Total current assets | 665,507 | 1,375,791 |
| Property, plant and equipment, net of accumulated depreciation of $202,859 and $147,718, respectively (Note B) | 254,490 | 262,403 |
| Other assets: | | |
| Other receivable, related party (Note E) | - | 235,312 |
| Total Assets | $ 919,997 | $ 1,873,506 |
| LIABILITIES AND (DEFICIENCY IN) STOCKHOLDERS' EQUITY | | |
| Current liabilities: | | |
| Cash disbursed in excess of available balance | $ - | $ 393,222 |
| Accounts payable and accrued liabilities (Note C) | 630,205 | 401,759 |
| Deferred revenue (Note A) | 275,079 | 284,203 |
| Deferred taxes liability, current (Note G) | 241,756 | 359,336 |
| Notes payable, current portion (Note D) | 312,589 | 301,568 |
| Loans from related parties (Note E) | 165,000 | 115,758 |
| Total liabilities | 1,624,629 | 1,855,846 |
| Notes payable, long-term portion (Note D) | 13,158 | 19,273 |
| Deferred tax liability (Note G) | 19,091 | 32,546 |
| Commitments and contingencies (Note I) | - | - |
| (DEFICIENCY IN) STOCKHOLDERS' EQUITY | | |
| Common stock, par value $0.01, authorized 1,000,000 shares, 200 shares issued and outstanding as of December 31, 2006 and 2005 (Note F) | 2 | 2 |
| Accumulated deficit | (736,883) | (34,161) |
| Total (deficiency in) stockholders' equity | (736,881) | (34,159) |
| Total liabilities and (deficiency in) stockholders' equity | $ 919,997 | $ 1,873,506 |

The accompanying notes are an integral part of these financial statements

BRAVERA, INC.
STATEMENTS OF OPERATIONS
FOR THE YEARS ENDED DECEMBER 31, 2006 AND 2005

| | 2006 | 2005 |
|---|---|---|
| REVENUES: | | |
| Revenues, net | 5,321,375 | 4,924,056 |
| COSTS OF SALES | | |
| Cost of sales, net | 3,674,427 | 3,190,769 |
| Gross profit | 1,646,948 | 1,733,287 |
| OPERATING EXPENSES: | | |
| Research and development | 594,350 | - |
| Depreciation | 57,052 | 41,931 |
| Selling, general and administrative | 1,824,811 | 1,307,365 |
| Total operating expenses | 2,476,213 | 1,349,296 |
| (LOSS) INCOME FROM OPERATIONS: | (829,265) | 383,991 |
| Other income (expense): | | |
| Interest (expense), net | (31,578) | (31,211) |
| Net (loss) income before provision for income taxes | (860,843) | 352,780 |
| INCOME TAXES BENEFIT (PROVISION): | | |
| Federal | 159,527 | (254,137) |
| State(s) | (1,406) | (3,306) |
| Total income taxes benefit (provision) | 158,121 | (257,443) |
| NET (LOSS) INCOME | $ (702,722) | $ 95,337 |
| Net (loss) income per common share, basic and fully diluted | $ (3,514) | $ 477 |
| Weighted average number of common shares outstanding, basic and fully diluted | 200 | 200 |

The accompanying notes are an integral part of these financial statements

BRAVERA, INC.
STATEMENTS OF DEFICIENCY IN STOCKHOLDERS' EQUITY
FOR THE YEARS ENDED DECEMBER 31, 2006 AND 2005

| | Common Shares | Stock Amount | Member's Capital | Retained Earnings | Total |
|---|---|---|---|---|---|
| Balance at January 1, 2005 | - | $ - | $ (59,496) | $ - | $ (59,496) |
| Distributions | - | - | (70,000) | - | (70,000) |
| Shares issued in exchange for membership interests in connection with Company reorganization in June 2005 | 200 | 2 | 129,496 | (129,498) | - |
| Net income | - | - | - | 95,337 | 95,337 |
| Balance at December 31, 2005 | 200 | $ 2 | - | (34,161) | (34,159) |
| Net loss | - | - | - | (702,722) | (702,722) |
| Balance at December 31, 2006 | 200 | $ 2 | $ - | $ (736,883) | $ (736,881) |

The accompanying notes are an integral part of these financial statements

BRAVERA, INC.
STATEMENTS OF CASH FLOWS
FOR THE YEARS ENDED DECEMBER 31, 2006 AND 2005

|  | 2006 | 2005 |
|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES: |  |  |
| Net income (loss) | $ (702,722) | $ 95,337 |
| Adjustments to net income (loss) to net cash provided by (used in) operating activities: |  |  |
| Depreciation | 57,052 | 41,931 |
| Deferred income taxes | (164,159) | 250,069 |
| Allowance for doubtful account (Note A and I) | 444,935 | - |
| (Increase) decrease in: |  |  |
| Accounts receivable | 71,277 | (823,130) |
| Unbilled revenues | 254,928 | (232,894) |
| Prepaid expenses | (1,363) | (478) |
| Increase (decrease) in: |  |  |
| Cash disbursed in excess of available funds | (393,222) | 343,700 |
| Accounts payable and accrued liabilities | 228,446 | 304,619 |
| Deferred revenue | (9,124) | 151,310 |
| Net cash (used in) provided by operating activities: | (213,952) | 130,464 |
| CASH FLOWS FROM INVESTING ACTIVITIES: |  |  |
| Acquisition of fixed assets | (49,139) | (208,841) |
| Net cash used in investing activities | (49,139) | (208,841) |
| CASH FLOWS FROM FINANCING ACTIVITIES: |  |  |
| Other receivable, related party | 235,312 | - |
| Proceeds from notes payable, net of repayments | 4,906 | 65,183 |
| Proceeds from related party loans, net of repayments | 49,242 | 85,758 |
| Distributions to members | - | (70,000) |
| Net cash provided by financing activities: | 289,460 | 80,941 |
| Net increase in cash and cash equivalents | 26,369 | 2,564 |
| Cash and cash equivalents at beginning of year | 3,420 | 856 |
| Cash and cash equivalents at end of year | $ 29,789 | $ 3,420 |
| SUPPLEMENTAL DISCLOSURES OF CASH FLOW INFORMATION: |  |  |
| Cash paid during the year for interest | $ 33,151 | $ 8,627 |
| Cash paid during the year for taxes | $ 3,773 | $ - |

The accompanying notes are an integral part of these financial statements

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE A – SUMMARY OF ACCOUNTING POLICIES

General

A summary of the significant accounting policies applied in the preparation of the accompanying financial statements follows:

Business and Basis of Presentation

Bravera Inc. ("the Company") was incorporated on June 6, 2005 under the laws of the State of Florida and is a successor to Workflow Systems of North America LLC ("Workflow"), a limited liability corporation formed under on September 9, 1998 under the laws of the State of Maryland. The Company formally merged with Workflow on September 1, 2005. The Company develops and sells Business Content and Management software solutions designed from the ground up to meet specific government and corporate requirements for security and ease of use.

The accompanying financial statements represent the financial condition and results of operations of the Company and its predecessor, Workflow.

Revenue Recognition

For revenue from software product sales, the Company recognizes revenue in accordance with Staff Accounting Bulletin No. 104, Revenue Recognition ("SAB 104"), which superseded Staff Accounting Bulletin No. 101, Revenue Recognition in Financial Statements ("SAB 101"). SAB 101 requires that four basic criteria must be met before revenue can be recognized: 1) Persuasive evidence of an arrangement exists; 2) delivery has occurred; 3) the selling price is fixed and determinable; and 4) collectibility is reasonably assured.

Determination of criteria (3) and (4) are based on management's judgments regarding the fixed nature of the selling prices of the products delivered and the collectibility of those amounts. Provisions for discounts and rebates to customers, estimated returns and allowances, and other adjustments are provided for in the same period the related sales are recorded. The Company defers any revenue for which the product has not been delivered or is subject to refund until such time that the company and the customer jointly determine that the product has been delivered or no refund will be required. Deferred revenues as of December 31, 2006 and 2005 were $275,079 and $284,203, respectively. SAB 104 incorporates Emerging Issues Task Force 00-21 ("EITF 00-21"), Multiple-Deliverable Revenue Arrangements. EITF 00-21 addresses accounting for arrangements that may involve the delivery or performance of multiple products, services and/or rights to use assets. The effect of implementing EITF 00-21 on the Company's financial position and results of operations was not significant.

Revenue is recorded for time-and-materials contracts at contractually agreed upon rates and reflects the extent of actual services delivered in the period in accordance with the terms of the contract. Revenue from conversion and other development services is recognized as the services are performed. Revenue from maintenance is recognized as the services are performed or ratably over the contractual period, which is generally one year.

From time to time, the Company may proceed with work based on client direction prior to the completion and signing of formal contract documents. The Company has a formal review process for approving any such work. Revenue associated with such work is recognized only when it can be reliably estimated and realization is probable. The Company based its estimates on previous experiences with the customer, communications with the customer regarding funding status, and its knowledge of available funding for the contract or program.

Currently, there are no warranties provided with the purchase of the Company's products. The cost of replacing defective products and product returns have been immaterial and within management's expectations. In the future, when the Company deems warranty reserves are appropriate that such costs will be accrued to reflect anticipated warranty costs.

Estimates

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenue and expenses during the reporting period. Actual results could differ from those estimates.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE A – SUMMARY OF ACCOUNTING POLICIES (continued)

Cash and Cash Equivalents

For purposes of the Statements of Cash Flows, the Company considers all highly liquid debt instruments purchased with a maturity date of three months or less to be cash equivalents.

Foreign Currency Translation

The Company translates the foreign currency financial statements in accordance with the requirements of Statement of Financial Accounting Standards No. 52, "Foreign Currency Translation." Assets and liabilities are translated at current exchange rates, and related revenue and expenses are translated at average exchange rates in effect during the period. Resulting translation adjustments are recorded as a separate component in stockholders' equity. Foreign currency transaction gains and losses are included in the statement of operations.

Property and Equipment

Property and equipment are stated at cost. When retired or otherwise disposed, the related carrying value and accumulated depreciation are removed from the respective accounts and the net difference less any amount realized from disposition, is reflected in earnings. For financial statement purposes, property and equipment are recorded at cost and depreciated using the straight-line method over their estimated useful lives as follows:

| | |
|---|---|
| Computer equipment | 5 years |
| Office equipment | 5 to 7 years |
| Software | 3 years |
| Vehicles | 5 years |

Advertising Costs

The Company expenses all costs of marketing and advertising as incurred. Marketing and advertising costs totaled $4,361 and $12,067 for the year ended December 31, 2006 and 2005, respectively.

Research and Development

The Company accounts for research and development costs in accordance with the Financial Accounting Standards Board's Statement of Financial Accounting Standards No. 2 ("SFAS 2"), "Accounting for Research and Development Costs". Under SFAS 2, all research and development costs must be charged to expense as incurred. Accordingly, internal research and development costs are expensed as incurred. Third-party research and developments costs are expensed when the contracted work has been performed or as milestone results have been achieved. Company-sponsored research and development costs related to both present and future products are expensed in the period incurred. The Company incurred $594,350 and $0 of expenditures on research and product development for the years ended December 31, 2006 and 2005, respectively.

Impairment of Long Lived Assets

The Company has adopted Statement of Financial Accounting Standards No. 144 (SFAS 144 ). The Statement requires that long-lived assets and certain identifiable intangibles held and used by the Company be reviewed for impairment whenever events or changes ill circumstances indicate that the carrying amount of an asset may not be recoverable. Events relating to recoverability may include significant unfavorable changes in business conditions, recurring losses, or a forecasted inability to achieve break-even operating results over an extended period. The Company evaluates the recoverability of long-lived assets based upon forecasted undercounted cash flows. Should impairment in value be indicated, the carrying value of intangible assets will be adjusted, based on estimates of future discounted cash flows resulting from the use and ultimate disposition of the asset. SFAS No. 144 also requires assets to be disposed of is reported at the lower of the carrying amount or the fair value less costs to sell.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE A – SUMMARY OF ACCOUNTING POLICIES (continued)

### Fair Value of Financial Instruments

Fair value estimates discussed herein are based upon certain market assumptions and pertinent information available to management as of December 31, 2006 and 2005. The respective carrying value of certain on-balance-sheet financial instruments approximated their fair values. These financial instruments include cash and accounts payable. Fair values were assumed to approximate carrying values for cash and payables because they are short term in nature and their carrying amounts approximate fair values or they are payable on demand.

### Concentrations of Credit Risk

Financial instruments and related items which potentially subject the Company to concentrations of credit risk consist primarily of cash, cash equivalents and trade receivables. The Company places its cash and temporary cash investments with credit quality institutions. At times, such investments may be in excess of the FDIC insurance limit. The Company periodically reviews its trade receivables in determining its allowance for doubtful accounts. At December 31, 2006 and 2005, allowance for doubtful receivable was $444,935 (see Note I) and $-0-, respectively.

### Comprehensive Income (Loss)

The Company adopted Statement of Financial Accounting Standards No. 130, "Reporting Comprehensive Income". SFAS No. 130 establishes standards for the reporting and displaying of comprehensive income and its components. Comprehensive income is defined as the change in equity of a business during a period from transactions and other events and circumstances from non-owner sources. It includes all changes in equity during a period except those resulting from investments by owners and distributions to owners. SFAS No. 130 requires other comprehensive income (loss) to include foreign currency translation adjustments and unrealized gains and losses on available-for-sale securities.

### Segment Information

Statement of Financial Accounting Standards No. 131, "Disclosures about Segments of an Enterprise and Related Information" ("SFAS 131") establishes standards for reporting information regarding operating segments in annual financial statements and requires selected information for those segments to be presented in interim financial reports issued to stockholders. SFAS 131 also establishes standards for related disclosures about products and services and geographic areas. Operating segments are identified as components of an enterprise about which separate discrete financial information is available for evaluation by the chief operating decision maker, or decision-making group, in making decisions how to allocate resources and assess performance. The Company operates as a single segment and will evaluate additional segment disclosure requirements as it expands its operations.

### Income Taxes

The Company follows Statement of Financial Accounting Standard No.109, Accounting for Income Taxes (SFAS No.109) for recording the provision for income taxes. Deferred tax assets and liabilities are computed based upon the difference between the financial statement and income tax basis of assets and liabilities using the enacted marginal tax rate applicable when the related asset or liability is expected to be realized or settled. Deferred income tax expenses or benefits are based on the changes in the asset or liability during each period. If available evidence suggests that it is more likely than not that some portion or all of the deferred tax assets will not be realized, a valuation allowance is required to reduce the deferred tax assets to the amount that is more likely than not to be realized. Future changes in such valuation allowance are included in the provision for deferred income taxes in the period of change. Deferred income taxes may arise from temporary differences resulting from income and expense items reported for financial accounting and tax purposes in different periods. Deferred taxes are classified as current or non-current, depending on the classification of assets and liabilities to which they relate. Deferred taxes arising from temporary differences that are not related to an asset or liability are classified as current or non-current depending on the periods in which the temporary differences are expected to reverse.

### Liquidity

As shown in the accompanying financial statements, the Company incurred a net income (loss) of $(702,722) and $95,337 for the year ended December 31, 2006 and 2005, respectively. The Company's current liability exceeded its current assets by $959,122 as of December 31, 2006.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE A – SUMMARY OF ACCOUNTING POLICIES (continued)

### Net Earnings (Losses) Per Common Share

The Company computes earnings (losses) per share under Statement of Financial Accounting Standards No. 128, "Earnings Per Share" ("SFAS 128"). Net earnings per common share is computed by dividing net income by the weighted average number of shares of common stock and dilutive common stock equivalents outstanding during the year. Dilutive common stock equivalents may consist of shares issuable upon conversion of convertible preferred shares and the exercise of the stock options and warrants (calculated using the treasury stock method). During the year ended December 31, 2006 and 2005, the Company did not have common stock equivalents.

### Stock Based Compensation

The Company has no stock based compensation issued as of December 31, 2006 and 2005. Effective January 1, 2006, the beginning of the Company's first fiscal quarter of 2006, the Company follow the fair value recognition provisions of Statement of Financial Accounting Standards No. 123R, "Share-based Payment" ("SFAS 123R"). SFAS 123R requires forfeitures to be estimated at the time of grant and revised, if necessary, in subsequent periods if actual forfeitures differ from those estimates.

### Recent Accounting Pronouncements

In March 2005, the FASB issued FASB Interpretation (FIN) No. 47, "Accounting for Conditional Asset Retirement Obligations, an interpretation of FASB Statement No. 143," which requires an entity to recognize a liability for the fair value of a conditional asset retirement obligation when incurred if the liability's fair value can be reasonably estimated. The Company is required to adopt the provisions of FIN 47 no later than the first quarter of fiscal 2006. The Company does not expect the adoption of this Interpretation to have a material impact on its financial position, results of operations or cash flows.

In May 2005 the FASB issued Statement of Financial Accounting Standards (SFAS) No. 154, "Accounting Changes and Error Corrections, a replacement of APB Opinion No. 20 and FASB Statement No. 3." SFAS 154 requires retrospective application to prior periods' financial statements for changes in accounting principle, unless it is impracticable to determine either the period-specific effects or the cumulative effect of the change. SFAS 154 also requires that retrospective application of a change in accounting principle be limited to the direct effects of the change. Indirect effects of a change in accounting principle, such as a change in non-discretionary profit-sharing payments resulting from an accounting change, should be recognized in the period of the accounting change. SFAS 154 also requires that a change in depreciation, amortization, or depletion method for long-lived, non-financial assets be accounted for as a change in accounting estimate effected by a change in accounting principle. SFAS 154 is effective for accounting changes and corrections of errors made in fiscal years beginning after December 15, 2005. Early adoption is permitted for accounting changes and corrections of errors made in fiscal years beginning after the date this Statement is issued. The Company does not expect the adoption of this SFAS to have a material impact on its financial position, results of operations or cash flows.

In February 2006, the FASB issued SFAS No. 155. "*Accounting for certain Hybrid Financial Instruments an amendment of FASB Statements No. 133 and 140,*" or SFAS No. 155. SFAS No. 155 permits fair value remeasurement for any hybrid financial instrument that contains an embedded derivative that otherwise would require bifurcation, clarifies which interest-only strips and principal-only strips are not subject to the requirements of Statement No. 133, establishes a requirement to evaluate interests in securitized financial assets to identify interests that are freestanding derivatives or that are hybrid financial instruments that contain an embedded derivative requiring bifurcation, clarifies that concentrations of credit risk in the form of subordination are not embedded derivatives, and amends SFAS No. 140 to eliminate the prohibition on a qualifying special purpose entity from holding a derivative financial instrument that pertains to a beneficial interest other than another derivative financial instrument. SFAS 155 is effective for all financial instruments acquired or issued after the beginning of an entity's first fiscal year that begins after September 15, 2006. The Company did not have a material impact on its financial position, results of operations or cash flows.

In March 2006, the FASB issued FASB Statement No. 156, Accounting for Servicing of Financial Assets - an amendment to FASB Statement No. 140. Statement 156 requires that an entity recognize a servicing asset or servicing liability each time it undertakes an obligation to service a financial asset by entering into a service contract under certain situations. The new standard is effective for fiscal years beginning after September 15, 2006. The adoption of SFAS No.156 did not have a material impact on the Company's financial position and results of operations.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2005 AND 2004

## NOTE A – SUMMARY OF ACCOUNTING POLICIES (continued)

Recent Accounting Pronouncements (Continued)

In July 2006, the FASB issued Interpretation No. 48 (FIN 48). "*Accounting for uncertainty in Income Taxes*". FIN 48 clarifies the accounting for Income Taxes by prescribing the minimum recognition threshold a tax position is required to meet before being recognized in the financial statements. It also provides guidance on derecognition, measurement, classification, interest and penalties, accounting in interim periods, disclosure and transition and clearly scopes income taxes out of SFAS 5, " *Accounting for Contingencies*". FIN 48 is effective for fiscal years beginning after December 15, 2006. The Company does not expect adoption of this standard will have a material impact on its financial position, operations or cash flows.

In September 2006 the Financial Account Standards Board (the "FASB") issued its Statement of Financial Accounting Standards 157, Fair Value Measurements. This Statement defines fair value, establishes a framework for measuring fair value in generally accepted accounting principles (GAAP), and expands disclosures about fair value measurements. This Statement applies under other accounting pronouncements that require or permit fair value measurements, the Board having previously concluded in those accounting pronouncements that fair value is the relevant measurement attribute. Accordingly, this Statement does not require any new fair value measurements. However, for some entities, the application of this Statement will change current practice. FAS 157 effective date is for fiscal years beginning after November 15, 2007. The Company does not expect adoption of this standard will have a material impact on its financial position, operations or cash flows.

In September 2006 the FASB issued its Statement of Financial Accounting Standards 158 "Employers' Accounting for Defined Benefit Pension and Other Postretirement Plans". This Statement improves financial reporting by requiring an employer to recognize the overfunded or underfunded status of a defined benefit postretirement plan (other than a multiemployer plan) as an asset or liability in its statement of financial position and to recognize changes in that funded status in the year in which the changes occur through comprehensive income of a business entity or changes in unrestricted net assets of a not-for-profit organization. This Statement also improves financial reporting by requiring an employer to measure the funded status of a plan as of the date of its year-end statement of financial position, with limited exceptions. The effective date for an employer with publicly traded equity securities is as of the end of the fiscal year ending after December 15, 2006. The Company does not expect adoption of this standard will have a material impact on its financial position, operations or cash flows.

In December 2006, the FASB issued FSP EITF 00-19-2, Accounting for Registration Payment Arrangements ("FSP 00-19-2") which addresses accounting for registration payment arrangements. FSP 00-19-2 specifies that the contingent obligation to make future payments or otherwise transfer consideration under a registration payment arrangement, whether issued as a separate agreement or included as a provision of a financial instrument or other agreement, should be separately recognized and measured in accordance with FASB Statement No. 5, Accounting for Contingencies. FSP 00-19-2 further clarifies that a financial instrument subject to a registration payment arrangement should be accounted for in accordance with other applicable generally accepted accounting principles without regard to the contingent obligation to transfer consideration pursuant to the registration payment arrangement. For registration payment arrangements and financial instruments subject to those arrangements that were entered into prior to the issuance of EITF 00-19-2, this guidance shall be effective for financial statements issued for fiscal years beginning after December 15, 2006 and interim periods within those fiscal years. The Company has not yet determined the impact that the adoption of FSP 00-19-2 will have on its financial statements.

In February 2007, the FASB issued SFAS No. 159, "The Fair Value Option for Financial Assets and Financial Liabilities." SFAS 159 permits entities to choose to measure many financial instruments, and certain other items, at fair value. SFAS 159 applies to reporting periods beginning after November 15, 2007. The adoption of SFAS 159 is not expected to have a material impact on the Company's financial condition or results of operations.

## NOTE B – PROPERTY AND EQUIPMENT

Property and equipment consist of the following as of December 31, 2006 and 2005:

| | 2006 | 2005 |
|---|---|---|
| Computer equipment | $150,578 | $121,107 |
| Furniture and fixtures | 153,707 | 145,647 |
| Software | 38,385 | 28,688 |
| Vehicles | 54,203 | 54,203 |
| Leasehold improvements | 60,476 | 60,476 |
| | 457,349 | 410,121 |
| Less: Accumulated depreciation | (202,859) | (147,718) |
| | $254,490 | $262,403 |

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE B – PROPERTY AND EQUIPMENT (Continued)

During the years ended December 31, 2006 and 2005, depreciation expense charged to operations was $57,052 and $41,931, respectively. Additionally, the Company sold computer equipment to an employee for $1,000 in cash during the year ended December 31, 2006. The historical cost of the computer equipment sold was $1,911 and it had been fully depreciated in prior year.

## NOTE C – ACCOUNTS PAYABLE AND OTHER ACCRUED LIABILITIES

Accounts payable and accrued liabilities at December 31, 2006 and 2005 are as follows:

|  | 2006 | 2005 |
|---|---|---|
| Accounts payable | $602,866 | $213,181 |
| Tax payable | 3,751 | 7,374 |
| Payroll related liabilities | 1,688 | 10,063 |
| Other accrued liabilities | 21,900 | 171,141 |
|  | $630,205 | $401,759 |

## NOTE D – NOTES PAYABLE

Notes payable consist of the following as of December 31, 2006 and 2005:

|  | 2006 | 2005 |
|---|---|---|
| Line of credit, due and payable on demand; with interest at 16.5% and 15.50% at December 31, 2006 and 2005, respectively; Secured with substantially all corporate assets and personally guaranteed by the Company's president | $66,264 | $50,745 |
| Note payable, due December 2009 with monthly payments of $577 with an annual interest rate of 4.9%. Secured by corporate asset | 19,273 | 25,096 |
| Line of credit, due and payable on demand; with interest at prime plus 5.49%. Secured with substantially all corporate assets and personally guaranteed by the Company's president | -0- | 70,000 |
| Line of credit, due and payable upon demand, with interest at prime plus 1%; Secured with substantially all corporate assets and personally guaranteed by the Company's president | 175,000 | 175,000 |
| Line of credit, due and payable upon demand, with interest at 13.74%, Secured with substantially all corporate assets and personally guaranteed by the Company's president | 65,210 | -0- |
|  | 325,747 | 320,841 |
| Less: current portion | (312,589) | (301,568) |
| Long-term portion | $ 13,158 | $ 19,273 |

Future payment obligations of notes payable are as follows:

| | |
|---|---|
| 2007 | $ 312,589 |
| 2008 | 6,422 |
| 2009 | 6,736 |
| Total | $ 325,757 |

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE E – RELATED PARTY TRANSACTIONS

The Company performs contract services to and leases developed software from Intellectus, LLC ("Intellectus"), formerly Bravera, LLC, an entity wholly owned and controlled by the Company's President and Chief Executive officer. The Company entered into a one-year license agreement with Intellerus during the year ended December 31, 2005. The license agreement is renewable annually. Pursuant to the license agreement, the Company was obligated to pay Intellectus license fees quarterly in the amount of $30,000 plus four (4) percent of gross revenue. During the year ended December 31, 2006 and 2005, Intellectus charged the Company for license fees in the amount of $332,855 and $316,962, respectively, pursuant to the license agreement. Additionally, Intellectus charged the Company for trademark, bonuses, software maintenance, and other fees in an aggregate amount of $1,162,145 and $997,080 during the year ended December 31, 2006 and 2005, respectively. There were no formal agreements supporting these charges, the Company rewards Intellectus periodically in amounts determined at the sole discretion of the Company's President and Chief Executive Officer.

During the year ended December 31, 2005, in lieu of paying cash to Intellectus for the aggregate charges of $1,314,042, the Company offset the total amount due Intellectus by $360,000 of software development services provided to Intellectus and $272,081 of miscellaneous expenses the Company paid on behalf of Intellectus. The Company also transferred to Intellectus loan receivables from two other entities controlled by the Company's president in an aggregate amount of $681,961.

The Company has a legally enforceable right to offset amounts it owes to Intellectus , and accordingly, the amounts owed to and due from Intellectus have been netted for financial reporting purposes and are not shown on the balance sheet in accordance with FIN No. 39, *Offsetting of Amounts Related to Certain Contracts* .

As of December 31, 2005, total receivable from Intellectus amounted $235,312. The amount was carried over from prior years. During the year ended December 31, 2006, the Company collected $140,591 in cash from Intellectus, and the remaining balance due was offset by the license fees Intellectus billed to the Company during the year ended December 31, 2006. During the year ended December 31, 2006, the Company charged Intellectus an aggregate of $885,000 for software development services provided. The Company collected the amount in full as of December 31, 2006.

The Company leases transportation equipment from Niner [illegible]J., LLC, an entity wholly owned by the Company's President. For the years ended December 31, 2006 and 2005, the Company incurred $33,000 and $37,000 in related lease payments.

As described in Note I, the Company leases office space in Daniel Island, South Carolina and Reston, Virginia from entities owned and controlled by the Company's president. As of December 31, 2006 and 2005, the Company has incurred approximately $185,395 and $74,350 in rent expenses paid to related parties.

During the year ended December 31, 2006 and 2005, the Company's President and entities controlled by the Company's President have advanced funds to the Company for working capital purposes. These loans are payable on demand, non-interest bearing, and no formal repayment terms exist. As of December 31, 2006 and 2005, total advances from these related parties amounted $165,000 and $115,758, respectively.

## NOTE F – COMMON STOCK

In June 2005, the Company restructured from a limited liability company, Workflow Systems of North America, LLC to Bravera, Inc. The Company is authorized to issue 1,000,000 shares of its common stock at a par value of $0.01. As of December 31, 2006 and 2005, the Company had issued 200 shares of its common stock to the president of the Company. The Company's president was the sole shareholder of the Company. For the period from January 1, 2005 through the Company's reorganization in June 2005, the Company had made capital distribution to its president in the amount of $70,000.

## NOTE G – INCOME TAXES

As described in Note A, Bravera, Inc. was formed on June 6, 2005. Prior to formation, the Company operated under Workflow Systems of North America, LLC, a limited liability company, where members are taxed on their proportionate share of the Company's taxable income. Therefore, no provision or liability was recorded for the period from January 1, 2004 through June 5, 2005.

Income tax expense (benefit) attributable to income (loss) from operations for the years ended December 31, 2006 and 2005 consists of:

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

NOTE G – INCOME TAXES (Continued)

| | 2006 | 2005 |
|---|---|---|
| Current - | | |
| U.S Taxes | $ 5.,888 | $. 7,374 |
| Others | - | - |
| Total | 5,888 | 7,374 |
| Deferred - | | |
| U.S Taxes | (164,009) | 250,069 |
| Others | - | - |
| Total | (164,009) | 250,069 |
| Total tax expense (benefit) | $(158,121) | $ 257,443 |

A reconciliation of the income tax expense (benefit) to the amount computed by applying the statutory income tax rate to income tax expense for the year ended December 31, 2006 and 2005 is:

| | 2006 | 2005 |
|---|---|---|
| Bravera Inc. net income (loss) before taxes (net loss of Workflow Systems of North America, LLC excluded) | $(860,843) | $ 654,269 |
| Enacted tax rate | 34% | 34% |
| Computed tax expense | (292,686) | $ 222,451 |
| State income taxes, net of federal tax benefit | 39,514 | 34,992 |
| Opening balance differences | 44,192 | - |
| Permanent differences | 2,109 | - |
| Other | 48,750 | - |
| Income tax expense (benefit) recognized in the statements of income | $(158,121) | $ 257,443 |

The components of the deferred tax balances as of December 31, 2006 and 2005 are as follows:

| | 2006 | 2005 |
|---|---|---|
| Deferred tax assets: | | |
| Deferred revenue | $ 174,937 | $ 141,813 |
| Total deferred tax assets | 174,937 | 141,813 |
| Deferred tax liabilities: | | |
| Excess of accrual basis over cash basis taxable income | 241,756 | 359,336 |
| Depreciation | 19,091 | 32,546 |
| Total deferred tax liabilities | $ 260,847 | $ 391,882 |

NOTE H – BUSINESS CONCENTRATIONS

Revenue from four (4) major customers, which accounted for greater than 10% of total of total sales, approximately $5,158,683 or 97% of total sales for the year ended December 31, 2006. One of which with sales totally $885,000 or 17% of total sales is a related party transaction (Note E). Accounts receivable in connection with these customers amounted to $316,926 or 70% of total accounts receivable at December 31, 2006.

Revenue from two (2) major customers, which accounted for greater than 10% of total sales, approximated $3,552,356 or 72% of total sales for the year ended December 31, 2005. Accounts receivable in connection with these customers amounted $631,058, or 65% of total accounts receivable at December 31, 2005.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE I – COMMITMENTS AND CONTINGENCIES

Operating Lease Commitments

During the year ended December 31, 2005, the Company leased office space in Chevy Chase, Maryland under a lease which expired in May 2005. Total lease rental expenses for the year ended December 31, 2005 under this lease was $19,501.

The Company also leased additional office space in Chevy Chase, Maryland under a month to month lease which expired in November 2005. Total lease rental expenses for the years ended December 31, 2005 under this lease was $17,375.

In February 2005, the Company entered into a 3-year lease in Daniel Island, South Carolina for office space from an entity owned and controlled by the Company's president for $1,350 per month. In June 2006, the lease agreement was modified and the rent was increased to $2,500 per month. Total lease rental expenses for the years ended December 31, 2006 and 2005 under this lease were $24,250 and $14,850, respectively.

In August 2005, the Company entered into a 5-year lease in Reston, Virginia for two office suites from an entity owned and controlled by the Company's president for an aggregate of $10,500 per month, with a 3% yearly rental increase. Total lease rental expenses for the years ended December 31, 2006 and 2005 under this lease were $126,945 and $52,500, respectively.

In September 2005, the Company entered into a 30-month lease in Daniel Island, South Carolina for office space from an entity owned and controlled by the Company's president for $1,750 per month. . In June 2006, the lease agreement was modified and the rent was increased to $3,000 per month. Total lease rental expense for the years ended December 31, 2006 and 2005 under this lease were $30,000 and $7,000 respectively.

In June 2006, the Company entered into a 6-month lease in Daniel Island, South Carolina for office space from an entity owned and controlled by the Company's president for $700 per month. Total lease rental expenses for the year ended December 31, 2006 under this lease were $4,200. The lease is now on month-to-month basis.

During the year ended December 31, 2006, the Company also had short-term leases of storage facilities and corporate apartments, total rent expenses incurred under these short-term leases was $31,075.

Commitments for minimum rentals under non-cancelable leases at December 31, 2006 are as follows, and all rentals are payable to entities owned and controlled by the Company's president:

| Year ending December 31, | |
|---|---|
| 2007 | $ 200,302 |
| 2008 | 146,844 |
| 2009 | 137,689 |
| 2010 | 82,725 |
| Total future minimum lease payments: | $ 567,560 |

Employment and Consulting Agreements

The Company has various consulting agreements with outside contractors to provide business development and consultation services. The Agreements are generally for a term of 12 months from inception and renewable automatically from year to year unless either the Company or Consultant terminates such agreement by written notice.

Litigation

Subsequent to the date of the financial statements, the Company received a demand letter from the Defense Finance and Accounting Service ("DFAS"), seeking a refund of $746,968 for alleged "overpayments" on a Navy contract performed by the Company during the year ended December 31, 2006 and 2005. The Company's legal counsel responded to that demand, citing the fact that all of the Company's work on that contract was ordered, approved, accepted, and paid for by the cognizant Navy contract managers. DFAS did not respond to the Company's legal counsel, and so the Company sought a preliminary injunction against any collection activity, pending further investigation, before the United States District Court in Alexandria, Virginia. That Court denied the injunction on jurisdictional grounds, and the Company now has a pending appeal before the United States Court of Appeals for the Fourth Circuit. It is the Government's contention in that litigation that, although Navy officials did order and accept all of the Company's work on the subject contract, some of those officials were not authorized to bind the Government contractually.

BRAVERA INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2006 AND 2005

## NOTE I – COMMITMENTS AND CONTINGENCIES (Continued)

Litigation (Continued)

In the meantime, the Company has been in negotiation with the Navy, seeking a negotiated resolution of whether the Company owes any refund on the subject Navy contract. In addition, the Company still has one unpaid invoice from the completed Navy contract, in the amount of $444,935, and that the Company's claim is also the subject of discussions. These negotiations are at an early stage, and it is not possible at this time to predict their ultimate outcome. If the Navy will not to agree to a reasonable settlement, the Company has indicated its willingness to litigate the authority issues in an appropriate Contract Disputes Act forum. The Company has reserved in full the unpaid invoice of $444,935 during the year ended December 31, 2006.

The Company believes it has meritorious defenses to Navy's claim for a refund of $746,968 and intends to vigorously defend itself against the claim. While it cannot predict the outcome of this matter, depending on the amount and timing, an unfavorable resolution of this matter could materially affect our business, future results of operations, financial position or cash flows in a particular period.

The Company may be subject to other legal proceedings and claims which may arise in the ordinary course of its business in future periods. Although occasional adverse decisions or settlements may occur, the Company believes that the final disposition of such matters shall not have a material adverse effect on its financial position, results of operations or liquidity.

**Robert Lincoln**

---

**From:** chris.watson@bravera.com
**Sent:** Sunday, June 17, 2007 2:35 PM
**To:** Richard Connelly
**Cc:** Frank Wilde; Robert Korkuc; Joe Vitetta
**Subject:** RE: Bravera Audited Financial Statements
**Attachments:** FS Bravera 12 31 06 - FINAL6.15.2007 - manual.pdf

Rich,

Here it is again. It was inside the attached email I forwarded to you and Sheri Friday.
Note that this is both the 'O6 & '05 audit. I have asked for the final '04 PDF and for word versions of the three years.

Best Regards,

Chris

---------------------

President
Bravera, Inc.
(703) 310 6850
(202) 255 8092 Mobile
(703) 310 6837 Fax

---

**From:** Richard Connelly [mailto:rconnelly@infointellect.com]
**Sent:** Sunday, June 17, 2007 1:36 PM
**To:** chris.watson@bravera.com
**Cc:** 'Frank Wilde'
**Subject:** FW: Bravera Audited Financial Statements
**Importance:** High

Chris;

Please scan and email the Bravera signed audit report to Bob Korkuc and me.
In addition, please ask your accountants to send me an MSWord version to be Edgarized and filed with the SEC.
Thanks.

Rich Connelly, CFO
Information Intellect, Inc.
469-951-9584 (Mobile)

**Confidentiality Notice:** The information contained in this transmittal, including any attachment, is Privileged and Confidential Information of Shea Development Corp. and its subsidiaries, including Information Intellect, Inc. The information contained herein is intended only for the person or entity to which it is addressed. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any action in reliance on the contents of this transmittal is strictly prohibited. If you have received this transmittal in error, please contact the sender immediately and delete this transmittal from any computer or other data bank. Thank you.

---

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

| | Apr 1 - May 30, 07 | |
|---|---|---|
| Ordinary Income/Expense | | |
| Income | | |
| Bravera Online | 13,079.50 | Added 4,000 of unbilled revenue |
| Misc. Income | 302.67 | |
| Service Revenue | 370,957.47 | Added $130K + 35K of unbilled Ma |
| Software Income | | |
| Software Maintenance | 93,460.48 | Added 8,000 of unbilled license re' |
| Total Software Income | 93,460.48 | |
| Total Income | 477,800.12 | |
| Cost of Goods Sold | | |
| Cost of Sales | 396.64 | |
| GSA Fees | 3,819.23 | |
| Software License Fee Expense | 70,000.00 | |
| Total COGS | 74,215.87 | |
| Gross Profit | 403,584.25 | |
| Expense | | |
| Bank Service Charges | | |
| Administrative Fees | 2,818.36 | |
| Bank Service Charges - Other | 122.00 | |
| Total Bank Service Charges | 2,940.36 | |
| Dues and Subscriptions | | |
| Memberships | 1,000.00 | |
| Dues and Subscriptions - Other | 205.00 | |
| Total Dues and Subscriptions | 1,205.00 | |
| Employee | | |
| Employee Benefits | | |
| 401(k) Company Match | 1,148.00 | |
| 401(k) Company Matching | 978.00 | |
| Medical Benefits | 15,862.60 | |
| Total Employee Benefits | 17,988.60 | |
| Payroll | 114,734.29 | |
| Payroll Expenses | 59.00 | |
| Recruiting | 6,300.00 | |
| Total Employee | 139,081.89 | |
| Facilities | | |
| Cleaning/Janitorial | 250.00 | |
| Rent | 38,530.00 | |

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

| | Apr 1 - May 30, 07 |
|---|---|
| Utilities | 202.04 |
| Total Facilities | 38,982.04 |
| | |
| Insurance | |
| General Liability Insurance | 67.34 |
| Professional Liability Ins | 2,579.48 |
| Supplemental Insurance | 33.67 |
| Worker's Compensation | 1,242.25 |
| Total Insurance | 3,922.74 |
| | |
| Marketing | |
| Promotional | |
| Meals and Entertainment | 40.98 |
| Total Promotional | 40.98 |
| | |
| Marketing - Other | 1,850.00 |
| Total Marketing | 1,890.98 |
| | |
| Miscellaneous | 545.77 |
| Office Supplies | |
| Consumable | 425.57 |
| Postage and Delivery | 475.24 |
| Printing and Reproduction | 212.93 |
| Telecommunications | |
| Cellular Phone | 725.23 |
| Online Charges | 252.30 |
| Server Expenses | 2,190.00 |
| Telephone and Fax | 91.78 |
| Total Telecommunications | 3,259.31 |
| | |
| Office Supplies - Other | 546.85 |
| Total Office Supplies | 4,919.90 |
| | |
| Professional Fees | |
| Accounting Fees | 9,085.00 |
| Total Professional Fees | 9,085.00 |
| | |
| Subcontractors | |
| Consulting Expense | |
| Sales Consulting | 9,999.00 |
| Thompson Consulting | 15,627.50 |
| Vernalis | 13,450.00 |
| Total Consulting Expense | 39,076.50 |
| | |
| Kelly Services | 10,253.22 |

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
### April 1 through May 30, 2007

| | Apr 1 - May 30, 07 |
|---|---|
| Manpower | 92,575.93 |
| NRI, Inc. | 6,091.13 |
| Randstad | 481.80 |
| Total Subcontractors | 148,478.58 |
| Travel & Entertainment | |
| Automobile | |
| Auto Repairs & Maintenance | 18.99 |
| Fuel | 197.17 |
| Insurance | 3,931.80 |
| Total Automobile | 4,147.96 |
| Aviation | |
| Airplane Lease | 6,000.00 |
| Total Aviation | 6,000.00 |
| Mileage | 1,607.12 |
| Travel | 3,440.11 |
| Total Travel & Entertainment | 15,195.19 |
| Total Expense | 366,247.45 |
| Net Ordinary Income | 37,336.80 |
| Other Income/Expense | |
| Other Expense | |
| Finance Charges | 2,400.06 |
| Interest Expense | 1,539.06 |
| Total Other Expense | 3,939.12 |
| Net Other Income | -3,939.12 |
| Net Income | 33,397.68 |

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

Ordinary Income/Expense
Income
Bravera Online
Misc. Income
Service Revenue ιy revenue
Software Income
Software Maintenance venue
Total Software Income

Total Income

Cost of Goods Sold
Cost of Sales
GSA Fees
Software License Fee Expense
Total COGS

Gross Profit

Expense
Bank Service Charges
Administrative Fees
Bank Service Charges - Other
Total Bank Service Charges

Dues and Subscriptions
Memberships
Dues and Subscriptions - Other
Total Dues and Subscriptions

Employee
Employee Benefits
401(k) Company Match
401(k) Company Matching
Medical Benefits
Total Employee Benefits

Payroll
Payroll Expenses
Recruiting
Total Employee

Facilities
Cleaning/Janitorial
Rent

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

Utilities
Total Facilities

Insurance
General Liability Insurance
Professional Liability Ins
Supplemental Insurance
Worker's Compensation
Total Insurance

Marketing
Promotional
Meals and Entertainment
Total Promotional

Marketing - Other
Total Marketing

Miscellaneous
Office Supplies
Consumable
Postage and Delivery
Printing and Reproduction
Telecommunications
Cellular Phone
Online Charges
Server Expenses
Telephone and Fax
Total Telecommunications

Office Supplies - Other
Total Office Supplies

Professional Fees
Accounting Fees
Total Professional Fees

Subcontractors
Consulting Expense
Sales Consulting
Thompson Consulting
Vernails
Total Consulting Expense

Kelly Services

6:31 PM
06/10/07
Accrual Basis

# Bravera, Inc.
## Profit & Loss
April 1 through May 30, 2007

Manpower
NRI, Inc.
Randstad
Total Subcontractors

Travel & Entertainment
Automobile
Auto Repairs & Maintenance
Fuel
Insurance
Total Automobile

Aviation
Airplane Lease
Total Aviation

Mileage
Travel
Total Travel & Entertainment

Total Expense

Net Ordinary Income

Other Income/Expense
Other Expense
Finance Charges
Interest Expense
Total Other Expense

Net Other Income

Net Income

Intial Model in New format
Need to generate this report using raw data in Salesforce

| | Q1 2007 | | Q2 2007 | | Q3 2007 | | Q4 2007 | | 2007 | Orlando | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Forecast | Estimate | Forecast | Actual | Forecast | Actual | Forecast | Forecast | Model | GAP |
| **Revenue** | | | | | | | | | | | |
| License | $ 11 | $ - | $ 45 | $ 395 | | $ 500 | | $ 800 | $ 1,356 | $ 2,069 | $ (713) |
| Maintenance | $ 185 | $ 196 | $ 205 | $ 204 | | $ 204 | | $ 300 | $ 894 | $ 631 | $ 263 |
| Service | $ 520 | $ 559 | $ 710 | $ 700 | | $ 1,200 | | $ 1,450 | $ 3,880 | $ 4,009 | $ (129) |
| Hardware | $ - | $ - | $ - | $ - | | $ - | | $ - | $ - | $ - | $ - |
| Total | $ 716 | $ 755 | $ 960 | $ 1,299 | | $ 1,904 | | $ 2,550 | $ 6,130 | $ 6,709 | $ (579) |
| **Cost of Revenue** | | | | | | | | | | | |
| Services | $ 300 | | $ 300 | $ 385 | | $ 380 | | $ 600 | $ 1,580 | $ 1,765 | $ 185 |
| Maintenance | $ - | | $ - | $ - | | $ - | | $ - | $ - | $ - | $ - |
| Hardware | $ 11 | $ 15 | $ 6 | $ - | | $ - | | $ - | $ 17 | $ - | $ (17) |
| Total | $ 311 | $ 15 | $ 306 | $ 385 | | $ 380 | | $ 600 | $ 1,597 | $ 1,765 | $ 168 |
| **Gross Profit** | $ 405 | $ 740 | $ 654 | $ 914 | | $ 1,524 | | $ 1,950 | $ 4,533 | $ 4,944 | $ (411) |
| **Operating Expenses** | | | | | | | | | | | |
| Sales | $ 470 | $ 289 | $ 600 | $ 100 | | $ 130 | | $ 130 | $ 1,330 | $ 589 | $ (741) |
| Marketing | | $ 15 | | $ 100 | | $ 100 | | $ 100 | $ 200 | $ 315 | $ 115 |
| Development | | $ - | | $ 194 | | $ 192 | | $ 187 | $ 379 | $ 573 | $ 194 |
| Management | | $ 152 | | $ 140 | | $ 140 | | $ 140 | $ 280 | $ 572 | $ 292 |
| Corporate Services | | $ 354 | | $ 122 | | $ 122 | | $ 121 | $ 243 | $ 719 | $ 476 |
| Total | $ 470 | $ 810 | $ 600 | $ 656 | | $ 684 | | $ 678 | $ 2,432 | $ 2,768 | $ 336 |
| **Operating Income** | $ (65) | $ (70) | $ 54 | $ 258 | | $ 840 | | $ 1,272 | $ 2,101 | $ 2,176 | $ (75) |

**Notes**

1 Intellectus expense/revenue is backed out. Original sales forecast did not adjust this. Original revenue forecasts did adjust for Intellectu:
2 Q1-Q4 Expense has extraordinary legal/accounting/excess rent and expense backed out as per original projectior
3 Model has been adjusted to reflect the late release of the various major RFP's and the FEMA budgeting process that has pushed back multiple opportunities
the late push back should lead to increased carry carry forward revenue into '08

q2
484 In Current QB
250 2 Months of FEMA
35 GD
-45 Intellectus
27 SFLLANT
60 Scanning Svcs
30 Ryder Svcs
30 Skookum
20 FEMA
40 CNIC
40 DOI?/TREEV?/
971 Summary

1600

Q3
300 FEMA Scanning
180 Maint
180 Scan Services
250 NH Potential Sale: SW
100 NH Potential Sale: SVCS
50 Bruce Prod
40 Bruce Svcs +25K
100 NH OFP SVCS + 150K
100 CNIC
50 TREEV product
50 TREEV Svcs
330 DOI
300 CBP Prod
60 CBP Svcs
100 Xerox Sale
250 GD NEMIS

2440 Summary

Q4
525 FEMA/New Award
180 Maint
150 NH Carry Forward
150 Scan SVCS
200 Anne: Partnering SW
100 Anne: Partnering SVCS
150 Skookum/NISH: Bruce SW: 150
100 Skookun/NISH: Bruce Svcs: 100
150 CNIC Carry Forward
50 TREEV product
50 TREEV Svcs
330 DOI
90 CNRNW/CNRSW Conversion
250 CBP Svcs
100 Xerox
250 GD NEMIS
300 USJFCOM SVCS
25 Bruce Carry forward

3150 Summary

7190 sum