UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SHEA DEVELOPMENT CORP., BRAVERA,
INC., and IP HOLDING OF NEVADA CORP.

                    Plaintiffs,              Civil Action No.: 07 CV 11201 (DLC)

          -against-

CHRISTOPHER WATSON and
ELIZABETH ANNE CONLEY

                    Defendants.

_____


**DEFENDANT ELIZABETH ANNE CONLEY'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; OR IN THE
ALTERNATIVE, MOTION TO STAY AND REFER ALL CLAIMS TO ARBITRATION;
OR IN THE ALTERNATIVE, FOR TRANSFER OF VENUE TO SOUTH CAROLINA.**

Donald A. Derfner (DD 0696)
David P. Gillett (DG 5305)
600 Third Avenue, 26th Floor
New York, New York 10016
(212) 697-8100


Terry Ann Rickson
Anne E. Mjaatvedt
102 Wappoo Creek Drive, No. 8
Charleston, South Carolina 29412
(843) 722-1500
(Application for Admission Pro Hac Vice pending)


Allan R. Holmes
Gibbs & Holmes
171 Church Street, Suite 110
Charleston SC 29402
(843) 722-0033
(Application for Admission Pro Hac Vice pending)


ATTORNEYS FOR DEFENDANT ELIZABETH ANNE CONLEY

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTS ......................................................................................................... 4

    A.  Defendant Conley was not a party to the Acquisition Agreement containing the New York forum selection clause.................................................................................................. 4

    B.  Conley's employment was governed by an employment agreement containing an arbitration clause................................................................................................................. 6

    C.  Additional Facts Related to Personal Jurisdiction and Venue ............................................. 7

ARGUMENT .................................................................................................................... 7

POINT I.  LACK OF PERSONAL JURISDICTION OVER CONLEY MANDATES DISMISSAL. ..................................................................................................................... 7

    A.  Plaintiffs' Alleged Contractual Basis for Personal Jurisdiction Fails as a Matter of Law.  8

        1.  Conley, a Nonsignatory, is not Bound by the Forum Selection Clause......................... 8

        2.  By Its Very Terms, the Forum Selection Clause Does Not Apply to, nor Bind Conley. 9

POINT II.  IF THIS COURT RETAINS JURISDICTION OVER THE COMPLAINT AGAINST CONLEY, HER EMPLOYMENT AGREEMENT MANDATES THAT ALL CLAIMS AGAINST HER BE REFERRED TO ARBITRATION. ........................................................... 10

    A.  Plaintiffs and Defendant Conley Entered into an Agreement to Arbitrate All Disputes. ... 10

    B.  The arbitration clause is broad enough to cover all disputes at issue. ............................... 12

    C.  The non-signatory Plaintiffs are also required to arbitrate their claims against Defendant Conley................................................................................................................................ 14

    D.  Even if this Court finds the FAA inapplicable to the non-signatories' claims, it should stay their cases pursuant to the inherent power of every court to stay cases on its docket, essentially under a theory of collateral proceeding abstention. ................................................. 16

    E.  The arbitration clause's exclusion of punitive damages, if deemed unconscionable, does not render the clause invalid because the Employment Agreement contains a severability clause, and Florida law favors severability........................................................................................ 18

POINT III.  IF THE COURT DECLINES TO DISMISS THE CLAIMS AGAINST CONLEY FOR LACK OF PERSONAL JURISDICTION, AND DECLINES TO COMPEL ARBITRATION, VENUE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT OF SOUTH CAROLINA. ...................................................................................................... 20

CONCLUSION ................................................................................................................. 23

**LIST OF EXHIBITS:**

Affidavit of Elizabeth Anne Conley
    Exhibit A:  Senior Management Employment Agreement of Elizabeth Anne Conley
    Exhibit B:  Acquisition Agreement
    Exhibit C:  Asset Purchase Agreement
    Exhibit D:  Termination Letter and Proposed Severance – October 15, 2007
    Exhibit E:  Def. Conley's Settlement Negotiation Letter – October 29, 2007
    Exhibit F:  Pl. Bravera Response – November 1, 2007
    Exhibit G:  Pl. Bravera E-Mail and Proposed Affidavit – November 19, 2007
    Exhibit H:  Pl. Bravera E-Mail and Proposed Settlement Agreement – November 20, 2007
    Exhibit I:  Def. Conley Resp. to Proposed Affidavit and Settlement – December 4, 2007
    Exhibit J:  Pl. Bravera E-Mail accompanying filed Complaint

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————

SHEA DEVELOPMENT CORP., BRAVERA,
INC., and IP HOLDING OF NEVADA CORP.

                    Plaintiffs,                    Civil Action No.: 07 CV 11201 (DLC)

          -against-

CHRISTOPHER WATSON and
ELIZABETH ANNE CONLEY

                    Defendants
———————————————————————

**DEFENDANT ELIZABETH ANNE CONLEY'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; OR IN THE
ALTERNATIVE, MOTION TO STAY AND REFER ALL CLAIMS TO ARBITRATION;
OR IN THE ALTERNATIVE, FOR TRANSFER OF VENUE TO SOUTH CAROLINA.**

    Defendant Elizabeth Anne Conley respectfully submits this Memorandum in support of
her Motion to Dismiss the complaint of Shea Development, et al.; or in the alternative, her
Motion to Stay this Action and Refer all claims to arbitration; or the alternative, her Motion to
Transfer Venue.

## **INTRODUCTION**

    This lawsuit concerns a "busted deal" in a corporate merger, a deal in which Conley was
not a party.  After the deal fell apart, Plaintiffs tried to enlist Conley in their case against
Defendant Christopher Watson, former president of Plaintiff Bravera, Inc.   When Conley
refused to participate, Plaintiffs improperly dragged her into this suit to neutralize her as a
potential witness for Watson.

    Adding insult to injury, the sole basis asserted for an exercise of jurisdiction by this Court
over Conley is a forum selection clause in a merger agreement that she did not negotiate, sign, or

1

even see until after the termination of her employment. Conley was not a party to the merger agreement containing the New York forum selection clause, nor was she even aware that clause existed until after her employment was terminated by Plaintiffs.

Conley was employed as a sales person by Bravera Corporation before and after the Plaintiffs bought Bravera from its President and sole shareholder, Defendant Watson. The sale was accomplished pursuant to the terms of a merger agreement between the Plaintiffs and Defendant Watson. Conley is not a party to the merger agreement. She did not negotiate that agreement, and she had no involvement in the negotiations leading to it. Indeed, she never saw the merger agreement until after her employment with Bravera ended. She has never owned any equity in Bravera.

As the merger was being accomplished, Conley entered into an employment agreement with Bravera. She played no part in its drafting. The employment agreement requires payment of severance upon termination of Conley's employment. It also requires AAA arbitration in Florida of "[a]ny claim or controversy arising out of or relating to this Agreement or any breach thereof . . ."

Some months after the merger, Plaintiffs and Defendant Watson had a falling out. Plaintiffs accused Watson of misconduct and expressed dissatisfaction with the merger. Watson resigned his position with Bravera.

After Watson resigned, Conley was terminated without cause. Conley sought her contractually specified severance. Plaintiffs attempted to improperly condition payment of the severance upon Conley's signing of an affidavit condemning Defendant Watson. Conley could not sign the affidavit because it was untruthful. When she refused to proffer the false affidavit, Plaintiffs named her in this suit. Plaintiffs knew that she was not involved in the merger

negotiations, was not a party to the merger, and was at all times merely an employee of Bravera, however, they have again tried to insert her in the controversy between Plaintiffs and Defendant Watson by naming her as a co-Defendant, apparently in an effort to gain leverage against Watson.

As set forth in greater detail below, this Court should dismiss Plaintiffs suit as to Conley, or refer all matters against her to arbitration on the following grounds:

1.    **This Court lacks jurisdiction over Defendant Conley**.

Plaintiffs improperly and incorrectly claim that Conley is subject to the jurisdiction of this Court based on their insinuation that she was a party to the Acquisition Agreement. (Complaint ¶ 25). In fact, while Plaintiffs refer to the Acquisition Agreement forum selection clause as the sole basis for jurisdiction, they carefully avoid direct allegations that Conley was a party to that document, and interestingly have not themselves produced this crucial Acquisition Agreement to the Court.  Defendant Conley here produces relevant portions of those merger documents as exhibits in her attached Affidavit.  Because Conley was not a party to the Acquisition Agreement containing the New York forum selection clause, it is not enforceable against her.  Thus, this Court lacks personal jurisdiction over Conley, and the case against her should be dismissed.

2.    **The Plaintiffs and Conley entered a pre-dispute contract to arbitrate**.

The only agreement to which Conley was a party was her employment contract, the "Senior Management Employment Agreement" (hereinafter "Employment Agreement", attached as Exhibit A to her affidavit), drawn up by Plaintiffs or their agent(s).  The Employment Agreement requires Plaintiffs and Conley to arbitrate any "claim or controversy arising out of or relating to this Agreement".    In addition, the Employment Agreement further provides that

Plaintiff Bravera, Inc. and Defendant Conley expressly and "irrevocably" agree that "Florida Law [is] to Govern".  If this Court retains jurisdiction over Conley, she in the alternative requests that this Court refer the entire case against her to arbitration pursuant to 9 U.S.C. § 3 and by virtue of the agreement of the parties.

3.      **In the alternative, venue should be transferred to the District Court of South Carolina**.

As set forth in her affidavit, Conley is a resident of South Carolina, she conducted business as an employee of Bravera while she was based in South Carolina, and to her knowledge, other non-party employees who would be called as witnesses work and reside in South Carolina.  In addition, Plaintiffs base the diversity jurisdiction of this Court on their allegation that Watson is also a resident of South Carolina.[1]

## RELEVANT FACTS

The facts relevant to this motion are set out in Conley's sworn affidavit attached and incorporated in its entirety by reference herein (Affidavit of Elizabeth Anne Conley, sworn and signed January 25, 2008).

**A.  Defendant Conley was not a party to the Acquisition Agreement containing the New York forum selection clause.**

Briefly, Conley was hired as a sales representative by pre-merger Bravera President, Defendant Christopher Watson, on or about December 11, 2006.  (Conley Aff. ¶5).  Conley was one of six people responsible for soliciting sales for Bravera while it was owned by Defendant Watson, (Conley Aff. ¶11).  Her principal duty was selling the Bravera software product to the

---

[1] Conley is aware that Watson has filed a motion to dismiss on the basis that he is a resident of Florida, thus destroying diversity.  Conley takes no position on the facts of Watson's state of residence, however, wishes to preserve this grounds for venue pending this Court's decision on Watson's motion.

4

private sector market.  (Conley Aff. ¶10).  She worked out of the Bravera office in Charleston, South Carolina.  (Conley Aff. ¶ 6).  Her duties and responsibilities remained unchanged after Defendant Watson promoted her to Vice President of Sales in March 2007. (Conley Aff. ¶8). Conley never had any ownership interest in Bravera.  (Conley Aff. ¶ 21).

Conley continued to do her job, which was to solicit sales while the merger negotiations proceeded between the various corporations.  From time to time Watson requested that she extract and provide information from the SalesForce software in the normal course of her business duties.  (Conley Aff. ¶ 25).  She never participated in any merger negotiations or any of the due diligence process. (Conley Aff. ¶¶ 17, 18).  Her only contact with Shea Corporation officers during the merger was when she was asked by Watson at the last-minute to accompany him to a presentation to Shea in Orlando Florida. (Conley Aff. ¶ 22).  She was not involved in preparing the presentation or the PowerPoint slides, nor did she participate in the presentation or make any representations. (Conley Aff., ¶ 23).

At some point prior to the actual merger, she was presented with a "Senior Management Employment Agreement" drawn up by Plaintiffs or their agent(s). (Conley Aff. ¶ 14, Conley Aff. Exh. A).  Conley executed the Employment Agreement on or about June 26, 2007 (Conley Aff. ¶14), and submitted it to Bravera.

Conley did not see any of the merger documents until after her termination. (Conley Aff. ¶ 20).  Conley's name does not appear in either the Acquisition Agreement on which Plaintiffs base jurisdiction (Conley Aff. ¶ 19, Conley Aff. Exh. B),  nor the Asset Purchase Agreement (Conley Aff. ¶ 19, Conley Aff. Exh. C) [2].  She was neither a party nor a signatory to those

---

[2] Defendant Conley in this Memorandum follows the convention in the Complaint in referring to documents.  The documents actual titles are "Agreement or Plan of Merger" (hereinafter, the "Acquisition Agreement) and a "Software License and Asset Purchase Agreement (hereinafter,

documents.  (Conley Aff. ¶ 19).  In fact, she never saw those documents until after her termination. (Conley Aff. ¶ 20).  She had no knowledge of the forum selection clause until after her termination. (Conley Aff. ¶¶ 18-20).

Conley had no ownership interest in Bravera, nor was she a beneficiary of the merger. (Conley Aff. ¶ 21).

Conley was terminated without cause on October 15, 2007. (Conley Aff. ¶ 29, Conley Aff. Exh. D).  At that time, Bravera offered her a severance that was less than the amount agreed upon in her employment agreement. *Id.*  When she attempted to negotiate with Plaintiffs for her correct severance, she was informed that she could only receive it if she signed an affidavit that to her knowledge was untrue, or contained statements about which she had no knowledge. (Conley Aff. ¶ 30, Aff. Exh. E-H).  Once she refused to sign that affidavit (Conley Aff. ¶ 30, Aff. Exh. I), Plaintiffs named her in this suit.

### B.  Conley's employment was governed by an employment agreement containing an arbitration clause.

On or about June 26, 2007, Conley signed a "Senior Management Employment Agreement" drawn up by Plaintiffs or their agent(s). (Conley Aff. ¶ 14, Conley Aff. Exh. A). Conley submitted this signed agreement to Bravera.  In that agreement, Plaintiffs and Conley agree to arbitrate any "claim or controversy arising out of or relating to this Agreement". (*Id.* at 12)[3].  In addition, Plaintiffs and Conley expressly and "irrevocably" consent that "Florida Law to Govern".  (*Id.* at 10).

---

the "Asset Purchase Agreement).  Both documents together will sometimes be referred to as the "Merger Documents".  Only the relevant pages of these 50 and 25 page documents are produced as Exhibits.

[3] The Employment Agreement presented to Conley by Plaintiffs contained no page numbers.

Her Employment Agreement was incorporated into the Acquisition at the time of the merger:

> 1.14 Employment Agreements. At the Effective Time, the Surviving Corporation will offer employment to and will employ the senior management team listed in Schedule 1.14 Part I (the "**Senior Management Team**") for a period of three (3) years under the terms and conditions of Senior Management Employment Agreements, in the form set forth at Schedule 1.14 Part II, such employment agreements to be executed concurrently with the Closing.

(Conley Aff. Exh. B, p.5).


### C.  Additional Facts Related to Personal Jurisdiction and Venue

Conley is a resident of South Carolina, (Conley Aff. ¶ 3), and was employed by Bravera in South Carolina. (Conley Aff.  ¶ 6).   In addition, it is her belief that other non-party witnesses live in South Carolina.  (Conley Aff. ¶ 13).  As a sales representative, she has limited resources based on her salary from Bravera (Conley Aff. Exh. A, p.1).  To her knowledge, none of the parties reside in New York; Plaintiffs have no offices in New York, and are not registered to do business in New York.


## ARGUMENT

## POINT I.  LACK OF PERSONAL JURISDICTION OVER CONLEY MANDATES DISMISSAL.

"In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state...." *D.H. Blair & Co., Inc. v Gottdiener*, 462 F.3d 95, 104 [2d Cir 2006][internal citations omitted].  "It is well established that on a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Remsen Funding Corp. v Ocean West Holding Corp*., 2007 WL 3254403 at *10 (SDNY 2007)[Cotes, J.], *citing Best Van Lines, Inc. v Walker*, 490 F.3d 239, 242-243 (2d Cir 2007).

As set forth more fully below, Plaintiffs have failed to allege sufficient grounds for the exercise of personal jurisdiction over Conley with respect to any of the three claims asserted against her, mandating dismissal.

### A.    Plaintiffs' Alleged Contractual Basis for Personal Jurisdiction Fails as a Matter of Law.

A complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends . . ." Fed.R.Civ.P. 8[a][1]. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists". *Best Van Lines, Inc. v. Walker*, 490 F.3d 239,242 (2d Cir. 2007).

Plaintiffs allege a single ground for personal jurisdiction: the forum selection clause in the Acquisition Agreement. (Complaint, ¶25). However, Plaintiffs have not, and cannot allege that Conley was a party to the Acquisition Agreement. As set forth more fully below, the forum selection clause does not confer personal jurisdiction over Conley.

### 1.    Conley, a Nonsignatory, is not Bound by the Forum Selection Clause.

"While forum-selection clauses are regularly enforced, ...[a] court must first determine that the existence of the clause was reasonably communicated to the parties." *D.H. Blair*, 462 F.3d at 103 [internal citations omitted]; *Phillips*, 494 F.3d at 383 ("The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement."). Generally, a forum selection clause will not bind a non-party.

> Certain courts have been willing to bind non-parties to forum selection clauses, but only where the party is so closely related to the dispute that it becomes foreseeable that it will be bound. In those cases, however, the parties were much more intimately bound with the underlying contract in which the forum selection clause was contained than is [defendant] in this case.

*Maritime Insurance Co. Ltd. v M/V Sea Harmony*, 1998 WL 214777 at *2 [SDNY, Stein, J.].

Here, Plaintiffs do not allege that Conley is a party to the Acquisition Agreement; Conley did not negotiate the Acquisition Agreement, is not a party to it, and did not even see it until after her termination. (Conley Aff. ¶¶ 17-19; Conley Aff. Exh. B, p. 50). Hence, the forum selection clause was not "reasonably communicated" to her, and she is not bound by it. *See D.H. Blair*, 462 F.3d at 103. Thus, the sole basis for personal jurisdiction Plaintiffs have alleged fails with respect to Conley.

### 2. By Its Very Terms, the Forum Selection Clause Does Not Apply to, nor Bind Conley.

Forum selection clauses are not interpreted expansively.

The scope of the forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties. Whether or not a forum selection clause applies depends on what the specific clause at issue says.

*Phillips*, 494 F.3d 378, 389 (2d Cir 2007)(internal citations omitted).

The Acquisition Agreement forum selection clause clearly states: "The parties hereto expressly and irrevocably consent and submit to the exclusive jurisdiction of the applicable local, federal, or appellate courts located in New York, New York, in connection with any proceeding arising from or out of this Agreement." (Conley Aff. Exh. B, p.40, ¶ 9.11). As is clear from the signature page, Conley was not a party to the Acquisition Agreement. (Conley Aff. Exh. B, p.50).

The Acquisition goes on further to state:

9.12 Construction. The parties hereto agree that this Agreement **is the product of negotiation between sophisticated parties and individuals, all of whom were represented by counsel, and each of whom had an opportunity to participate in and did participate in, the drafting of each provision hereof.**

(Conley Aff. Exh. B, p.40-41)(emphasis added).

Once again, as Conley was not involved in the negotiations, was not a party, and therefore did not have an opportunity to participate in the drafting, she is not subject to the forum

selection clause; therefore, Plaintiffs basis for this Court's personal jurisdiction fails with respect to Conley.

Therefore, as Plaintiffs have established no basis for this Court's personal jurisdiction over Defendant Conley, all claims against her should be dismissed.

**POINT II.  IF THIS COURT RETAINS JURISDICTION OVER THE COMPLAINT AGAINST CONLEY, HER EMPLOYMENT AGREEMENT MANDATES THAT ALL CLAIMS AGAINST HER BE REFERRED TO ARBITRATION.**

Defendant Conley seeks a stay pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. §3, and referral of the Plaintiffs' claims to arbitration under the terms of her Employment Agreement.  Alternatively, Conley seeks a stay of the proceeding and referral to arbitration pursuant to the doctrine of parallel proceeding abstention.

Section 3 of the Federal Arbitration Act states:

> Stay of proceedings where issue therein referable to arbitration. If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

**A.  Plaintiffs and Defendant Conley Entered into an Agreement to Arbitrate All Disputes.**

On or about June 26, 2007, Conley executed an Employment Agreement drafted by Plaintiffs which contained a clause where they agreed that all disputes be submitted to AAA arbitration.  (Conley Aff. ¶¶ 14 and 15; Conley Aff. Exh. A, p.12).  This Employment Agreement was adopted by reference to continue after the merger.  (Conley Aff. Exh. B, p.5, § 1.14).

Conley anticipates that four issues might be raised with regard to the arbitration agreement:  (1) Is the arbitration clause broad enough to cover the current dispute?; (2) Are the

non-signatory plaintiffs required to arbitrate their disputes?; (3) In the event that the non-signatories are not required to arbitrate, should the district court issue a stay and refer to arbitration pursuant to the doctrine of parallel proceeding abstention?; and (4) What is the effect of the arbitration agreement's exclusion of punitive damages from the relief that may be obtained by either party to the agreement?

In answer to the first question, the arbitration clause in this case is broad enough to cover all issues in dispute. Two of the three claims are directly based on the employment contract containing the arbitration clause. The third claim, which sounds in fraud, is related, in that it "touches and concerns" the subject matter of the employment agreement to the extent necessary to render it arbitrable under the broad arbitration clause contained in the employment agreement.

Second, the Second Circuit has recognized five instances under which non-signatory plaintiffs to a contract may be required to arbitrate their disputes with the signatory plaintiffs. In the present case, some, if not all, of these exceptions are satisfied, thereby rendering all claims subject to arbitration.

Third, even if this Court finds the FAA inapplicable to the non-signatory parties' claims, district courts "may stay a case pursuant to 'the power inherent in every court to control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for the litigants." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2nd Cir. 1997) (citations omitted). Thus, under a theory of collateral proceeding abstention, the district court may stay related proceedings in the interest of judicial economy, fairness, and other policy-related doctrines where it deems such a stay fit. This case clearly falls into such a category, as Section 3, *infra*, will further explain.

Fourth, the severability issue is determined by Florida law, and according to those cases, the arbitration clause survives despite any unenforceable provisions.

### B.   The arbitration clause is broad enough to cover all disputes at issue.

 "[W]hether an arbitration agreement encompasses a dispute" hinges on "whether the factual allegations underlying the claim are within the scope of the broad arbitration clause." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985). "In accordance with the strong federal policy in favor of arbitration (citation omitted), the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute. Doubts should be resolved in favor of coverage.'" *WorldCrisa* at 74 (quoting *Associated Brickmasons of Greater New York, Inc. v. Harrison*, 820 F.3d 31, 35 (2nd Cir. 1987) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986)). "[I]f the allegations underlying the claims **'touch matters'** covered by the parties' . . . agreements, then those claims **must** be arbitrated, whatever the legal labels attached to them." *Genesco, Inc. v. T. Kakiuichi & Co.*, 815 F.2d 840, 846 (2nd Cir. 1987).

The first two claims against Defendant Conley, breach of the employment contract, and breach of her fiduciary duty as an employee of Plaintiffs, are clearly covered by the employment contract, containing the arbitration clause.   (Conley Aff. Exh. A). Naturally, the breach of contract claim itself is covered by the arbitration clause contained therein.

Breach of her fiduciary obligation as an employee of Plaintiffs is also governed by the employment contract, as the contract controlled the terms of her employment. *See Alemac Ins. Servs., Inc. v. Risk Transfer, Inc.*, 2003 U.S. Dist. LEXIS 26764, at *15 (S.D.N.Y. Aug. 28, 2003) (unpublished opinion) (finding that breach of fiduciary duty claim arises from the contract

12

at issue and is thus covered by its arbitration clause); *see also Greenwood v. Koven*, 880 F. Supp. 186, 194-97 (S.D.N.Y. 1995) (fiduciary obligations governed by contract); *Dime Box Petroleum Corp. v. Louisiana Land & Exploration Co.*, 938 F.2d 1144 (10th Cir. 1991) (parties may contract away fiduciary obligation which would otherwise arise on account of their relationship).

Thus, the only remaining question is whether the fraud claim against Defendant Conley falls under the arbitration clause. The clause in question reads: "Any claim or controversy **arising out of or relating to** this Agreement or any breach thereof shall be settled by arbitration if such claim or controversy is not settled pursuant to Section 18(h) hereof." (Conley Aff. Exh. A, p.12) (emphasis added). "An arbitration clause is broad if the language, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause . . ." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2nd Cir. 1995); *Louis Dreyfus Negoce SA v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225 (2nd Cir. 2001) (finding arbitration clause stating "any dispute arising from the making, performance, or termination of this charter party" to be broad). Consequently, this arbitration clause is broad enough to encompass claims that "touch matters" connected to Conley's Employment Agreement. *See Id.*

The Plaintiffs' fraud claim relates to the Agreement. By Plaintiffs' own admission, in a pre-litigation letter to Conley's attorneys, the Plaintiffs' attorney states, "Ms. Conley misrepresented and purposefully made representations to Shea that were not true, **which were also the basis on which the compensation in her Employment Agreement was structured**." (Conley Aff. Exh. F, p.2)(emphasis added). By their own admission, Plaintiffs "relate" the alleged fraud to the employment agreement. *Id*. Moreover, in their Complaint the Plaintiffs allege that: 1) Defendant Conley's misrepresentations caused them to enter into the merger

agreement (Complaint ¶ 5); 2) her Employment Agreement was appended to the merger document as an exhibit (Conley Aff. Exh. B, p.5, § 1.14); and 3) the employer's entry into the Employment Agreement was occasioned by Plaintiffs' entry into the merger agreement (Complaint ¶ 5). These allegations "relate to" the Employment Agreement in that the agreement's very existence is dependent upon them. In accordance with the strong federal policy favoring arbitration and the inability to state with positive assurance that the fraud dispute is not covered, the fraud claim must be submitted to arbitration. *See WorldCrisa* at 74 (quoting *Associated Brickmasons of Greater New York, Inc. v. Harrison*, 820 F.3d 31, 35 (2nd Cir. 1987) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

Therefore, based on Second Circuit precedent and Plaintiffs' own admissions, the fraud claim against Defendant Conley is subject to arbitration. *See id.; Campaniello Imports, Ltd. v. Saporiti Italia SPA*, 117 F.3d 655, 668 (2nd.Cir. 1997) (finding plaintiff's fraud and unjust enrichment claims "touched matters" involved in the agreement containing the arbitration clause).

### C. The non-signatory Plaintiffs are also required to arbitrate their claims against Defendant Conley.

The Second Circuit has recognized five instances under which non-signatory plaintiffs to a contract may be required to arbitrate their disputes with the signatory plaintiffs: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/ alter-ego, and (5) estoppel, to determine whether the non-signatory should be bound by an arbitration agreement signed by other parties. *Thomson-CSF, S.A. v. Amer. Arb. Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995) (quoting *McAllister Bros., Inc. v. A&S Transp. Co.*, 621 F.2d 519, 524 (2nd Cir. 1980).

Plaintiffs "Shea Development" and "IP Holding" are not named parties to the Employment Agreement. Bravera, Defendant Conley's "employer", is a wholly owned subsidiary of Shea, and this was intended by the merger. (Complaint, ¶1; Conley Exh. B, p.1). IP Holding is also a subsidiary of Shea (Conley Aff. Exh. C, p. 1), and bought licensed software as a part of the merger. All Plaintiffs are controlled by Shea, and they are all related. Also, the Complaint contends that both Shea and Bravera can claim damages for Conley's breach of her Employment Agreement. (Complaint ¶¶ 158 and 159).

Under at least three of the foregoing bases for requiring non-signatory plaintiffs to arbitrate, Shea Development and IP Holdings must submit to binding arbitration. First, a party that is a non-signatory to an arbitration clause is estopped from denying its obligation to arbitrate when it seeks to receive a direct benefit from the contract. *Amer. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2nd Cir. 1999); *see also World Omni Fin. Corp. v. Ace Capital Re Inc., et al,* 2003 U.S. App. LEXIS 8441 (2nd Cir. May 2, 2003) (unpublished opinion). "Shea Development", by claiming damages for breach of the employment agreement, has submitted itself to arbitration under this theory. *See id.; World Omni,* at *12.

Further, under the agency and alter-ego theories, both non-signatories, Shea Development and IP Holdings, are required to arbitrate their disputes. Shea created, owns and controls all three Plaintiffs in this action. The subsidiary Plaintiffs were created by Shea purely for the purpose of the merger transaction, and as the sole signatory to the merger document, Shea acted as principal for its subsidiary agents. As principal, Shea created the Employment Agreement and made its agent, Bravera, a signatory to the Employment Agreement. Under the agency theory, Shea and both of its wholly owned subsidiaries and agents are equally parties to the contract between

15

Bravera and Defendant Conley. All three of the Plaintiffs stood to benefit from the merger and acquisition and the employment of Conley.

Under the veil piercing/alter-ego theory, as all companies are wholly owned subsidiaries of Shea Development, each is an alter-ego of each other, owned by the same company, and equally bound to the arbitration clause signed by Conley and Bravera.

Under the assumption theory, a non-signatory is bound by an arbitration agreement if the non-signatory assumes that agreement. In this case, the non-signatory Shea created the arbitration agreement and the employer signatory as a part of the merger agreement. Shea also created the Plaintiff IP Holdings as a part of this transaction. Both Shea and IT "assumed" the arbitration agreement as it was created under their direction within the terms of the merger agreement.

Any one of these factors subjects the non-signatories to the agreement to arbitrate. The interrelation between the three supposed separate entities subjects each of them to arbitration, within the bounds of the broad arbitration clause, under which each plaintiff is bound. Thus, all must submit to the binding arbitration set forth in the employment agreement. *See Thomson-CSF* at 776.

**D. Even if this Court finds the FAA inapplicable to the non-signatories' claims, it should stay their cases pursuant to the inherent power of every court to stay cases on its docket, essentially under a theory of collateral proceeding abstention.**

In the event that this Court determines the broad applicability of the FAA inapplicable to non-signatory Plaintiffs, the Second Circuit recognizes that ordinary principles of agency and contract law can provide grounds for holding a non-signatory to an agreement. *See WorldCrisa* at 76 (citing *Thomson-CSF* at 776). However, the *WorldCrisa* court never determined whether the non-signatories in that case were subject to arbitration under such theories.

It is arguable that Crisa [the non-signatory plaintiff] could be bound even under these cases. We do not, however, think it is necessary to determine the issue. We have recognized that district courts, despite the inapplicability of the FAA, may stay a case pursuant to 'the power inherent in every court to control the disposition of the cases [sic] on its docket with economy of time and effort for itself, for counsel, and for litigants.' (citations omitted). [The Defendant] bears the burden of demonstrating such a stay is justified, but on this record it is clear he has done so."

*WorldCrisa* at 76.

In reaching this determination, *WorldCrisa* relies upon *IDS Life Ins. Co. v. Sunamerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996).

Chief Judge Posner noted that where a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect in the arbitration, "such a maneuver should not be allowed to succeed, [and] . . . is blocked . . . by the principles of parallel-proceeding abstention, which . . . require the court to stay the proceedings before it and let the arbitration go forward unimpeded." . . . We think the same principle applies in this case, in which a related non-party to an arbitration agreement has apparently brought a suit with the hope of having a similar effect. On this record, failure to grant a stay as to [the related non-party] would be an abuse of discretion.

*Id.*

As in the *WorldCrisa* case, the other Plaintiffs in this case are inextricably related to the signatory plaintiff. The prejudice to the non-signatory Plaintiffs is minimal. However, as in that case, the prejudice that could result from the outcome of another litigants' case could supremely prejudice Defendant Conley by unfairly affecting the outcome of the signatory Plaintiff's arbitration. *Id.*

At a minimum, this Court should apply the holding of *WorldCrisa* and stay the proceedings brought by the non-signatory Plaintiffs to this action until the mandatory arbitration between Defendant Conley and Plaintiff Bravera takes place.

**E. The arbitration clause's exclusion of punitive damages, if deemed unconscionable, does not render the clause invalid because the Employment Agreement contains a severability clause, and Florida law favors severability.**

The arbitration clause in Conley's Employment Agreement prohibits the arbitrator from awarding punitive damages. (Conley Aff. Exh. A, p. 12). However, the Agreement also contains the following provision, which states in pertinent part:

> Interpretation; Severability. Rights and restrictions in this Agreement may be exercised and are applicable only to the extent that they do not violate any applicable laws, and are intended to be limited to the extent necessary so they will not render this Agreement illegal, invalid or unenforceable. If any term shall be held illegal, invalid or unenforceable by a court of competent jurisdiction, the remaining terms shall remain in full force and effect.

*Id.* at 9.

The Agreement contains one other important provision relating to whether the arbitration clause should remain in effect:

> FLORIDA LAW TO GOVERN. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICT OF LAWS.

*Id.* at 10.

Earlier cases suggest that the limitation on punitive damages contained in the Employment Agreement's arbitration clause may render the entire arbitration clause invalid. *See, e.g., Paladino v. Avnet Comp. Techs., Inc.*, 134 F.3d 1054 (11th Cir. 1998). In *Paladino*, the arbitration clause, which required all disputes to go to arbitration, limited any damages recovered to contract damages. Because, plaintiffs brought a Title VII action, the court determined that the entire clause was invalid based on its impermissible restrictions. *Id.*

The Eleventh Circuit later distinguished its opinion in *Paladino* in *Anders v. Hometown Mortgage Services, Inc.*, 346 F.3d 1024 (11th Cir. 2003). That case also dealt with an arbitration

clause containing remedial provisions which the Plaintiff contended rendered the entire clause

inapplicable. In determining the issue, the court stated:

> This case is different from *Paladino* in a way that leads us to conclude that even if the remedial restrictions within the arbitration agreement in this case are invalid, as Anders argues, the parties must still arbitrate. Necessarily implicit in the *Paladino* decision is the proposition that the invalid remedial restrictions were not severable from the remainder of the arbitration agreement in that case. Otherwise, this Court would not have struck down the entire agreement as it did in affirming the district's court's refusal to order arbitration. Nothing in the *Paladino* decision indicates that there was a severability provision in that agreement to arbitrate; severability is not even mentioned in the opinion of the Court. (footnote omitted).
>
> By contrast, the arbitration agreement in this case contains a severability provision that evidences the parties' intention to enforce the remainder of the agreement in the event any portion of it is deemed invalid. If the severability provision is given effect, it means that in this case, unlike in *Paladino*, the remainder of the arbitration agreement survives any invalidity of its remedial restrictions. Whether the severability provision is to be given effect is a question of state law, because in placing arbitration agreements on an even footing with all other contracts, the FAA makes general state contract law controlling. *See Paladino, 134 F.3d at 1061*. That means in this case that the effect given the severability clause - if the provisions restricting remedies are invalid - is to be decided under the law of Alabama, which is the state law applicable to this agreement.

*Id.* at 1031-32; *see also Jackson v. Cintas Corp.*, 425 F.3d 1313, 1317 (11th Cir. 2005) (Georgia

law controlling on issue of severability).

Thus, in the present case, if the Court deems the restriction on punitive damages invalid,

it must determine what effect the applicable state law, i.e. Florida's, gives severability

provisions. *See id.* The recent *Penberthy v. AT&T Wireless Services, Inc.* case examined this

issue and determined that Florida law favors severability. 354 F. Supp. 2d 1323 (M.D. Fl. 2005).

That court examined several applicable recent Florida cases, *see, e.g., Healthcomp. Eval. Servs.

Corp. v. O'Donnell*, 817 So.2d 1095 (Fla. Dist. Ct. App. 2002), in arriving at its decision. *Id.*

The *Penberthy* court concluded that "[b]ased on a review of Florida case law, the Court finds

that Florida supports giving credence to a contract's severability clause if a portion of the

arbitration provision is invalid and if the contract is capable of enforcement absent the valid

19

provision." *Id.* at 1329. Consequently, if a portion of the arbitration clause in Conley's

Employment Agreement is deemed invalid, based on the severability clause, this Court should

enforce the remainder of the contract and require arbitration. *See id.*

## POINT III.  IF THE COURT DECLINES TO DISMISS THE CLAIMS AGAINST CONLEY FOR LACK OF PERSONAL JURISDICTION, AND DECLINES TO COMPEL ARBITRATION, VENUE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT OF SOUTH CAROLINA.

If the Court declines to dismiss the claims against Conley for lack of personal

jurisdiction, and declines to compel arbitration, it is respectfully submitted that the claims should

be severed and transferred to federal district court in South Carolina.  A claim may be severed

and transferred to another venue.  *Wyndham Associates v Bintliff*, 398 F.2d 614, 618 (2d Cir

1968) *citing, inter alia*, Fed.R.Civ.P. 21.

> The standard for a motion to transfer venue pursuant to 28 U.S.C.§1404 is well
> established.  Section 1404 provides that 'for the convenience of parties and
> witnesses, in the interest of justice, a district court may transfer any civil action to
> any other district or division where it might have been brought.'
> *Azari v B&H Photo Video*, 2007 U.S. Dist. LEXIS 12 at *3-*4 [SDNY, Cotes, J.],
> (*citing* 28 U.S.C. § 1404[a]).

This diversity action "might have been brought" in the District of South Carolina.  There

is personal jurisdiction over Defendants in that district because they reside there, and venue in an

action founded solely on diversity is proper in "a judicial district where any defendant resides, if

all defendants reside in the same State."  28 U.S.C. § 1391[a].  Because Defendants are subject to

personal jurisdiction in the District of South Carolina, venue in this diversity suit is proper in that

district.

A transfer is warranted for the convenience of the parties and witnesses and in the interest

of justice.

> A district court has broad discretion to grant or deny motions to transfer and
> makes its determination based on notions of convenience and fairness on a case-

by-case basis.  If the transferee court also has jurisdiction over the case, the court must determine whether, considering the convenience of parties and witnesses and the interest of justice, a transfer is appropriate.  The factors a court considers in making that determination include

(1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficacy and the interest of justice, based on the totality of the circumstances.

*Id.*, 2007 U.S. Dist. LEXIS 12 at *4-*5 (internal citations omitted).

The convenience of witnesses and convenience of the parties warrants transfer to South Carolina.  It appears from a search of the New York Department of State that none of the Plaintiffs are authorized to do business in New York.  Indeed, Plaintiffs' recent SEC filing indicates they do not even maintain offices in New York.  Plaintiffs' sole connection with New York is the presence of their attorneys' offices, which "is not a consideration in a motion to transfer venue."  *Id.*, 2007 U.S. Dist. LEXIS 12 at *9.    Conley resides in South Carolina. (Complaint ¶, 20; Conley Aff. ¶ 3) and the Complaint alleges that Watson is a South Carolina resident.[4]  It is Conley's belief that several nonparty employees that are likely to be witnesses reside in South Carolina (Conley Aff. ¶ 13), and should not (and could not) be compelled to travel to New York to testify.

The location of relevant documents and locus of operative facts also militates strongly for transfer to South Carolina.  The Complaint arises out of Shea's acquisition of Bravera, which maintains an office in South Carolina, and out of Shea-Bravera's employment of Watson and Conley in South Carolina (Conley Aff. ¶ 6).  These facts have no nexus with New York.  The allegations in the Complaint do not indicate the likelihood that extensive document production

---

[4] See Fn. 1*, supra.*

will be sought from nonparties located in New York (except perhaps Plaintiffs' counsel, which maintains offices in New York).

This case should be transferred to South Carolina based on the availability of process to compel unwilling witnesses. As noted above, non-party Bravera employees residing in South Carolina where Bravera-Watson's offices were located are likely to be witnesses. There would be no jurisdictional basis to compel them to appear in New York.

The relative means of the parties favors transfer to South Carolina. Plaintiffs are large corporations; defendants are individuals. *See id.*, 2007 U.S. Dist. LEXIS 12 at *9 ("The fact that Meade is a large corporation and the plaintiffs are individuals . . . would suggest...that this factor favors the plaintiffs"). Conley was a sales representative at Bravera. Her Employment Agreement, setting forth her compensation package, indicates that her financial resources are severely limited compared to those of the Plaintiffs. (Conley Aff. Exh. A). Thus, Plaintiffs could bear the expense of South Carolina litigation far more easily than Conley could bear the expense of New York litigation. Litigation in South Carolina would also obviate the need for Defendants to continue retaining the services of local counsel in New York, further supporting transfer to South Carolina.

The forum has no special familiarity with governing law that would support keeping this case. Conley is not a party to the Acquisition Agreement; hence the New York choice of law provision is inapplicable to the claims against her. Her employment agreement governs all claims against her and that agreement contains both a mandatory arbitration clause (see Arg. § II *supra*) and a Florida choice of law provision. New York has no special familiarity with Florida law that would militate in favor of entertaining those claims.

The interests of efficiency and justice outweigh the Plaintiffs' choice of forum, and strongly support a transfer to South Carolina.

> Where the plaintiffs have chosen to bring an action in a jurisdiction where none of the plaintiffs reside and where there is only a limited connection to the action, the plaintiff's choice of forum is not entitled to the usual deference. The defendants have shown that in the circumstances of this case, the plaintiff's choice of forum is trumped by the interests of efficiency and justice."

*Id.*, 2007 U.S. Dist. LEXIS 12 at *9-10.

Furthermore, a forum selection clause is not "accorded special weight against non-signatories to the agreement[]." *See Yung v Lee*, 160 Fed.Appx. 37, 43 (2d Cir 2005); *see also Phillips*, 494 F.3d at 391 (the fact that neither party signed contract containing forum selection clause facilitated ruling that clause was inapplicable). Thus, if the Court were to find that it has personal jurisdiction over Conley, and declined to enforce the arbitration agreement, in the alternative, it is respectfully submitted that this case should be transferred to the U.S. District Court of South Carolina.

## <u>CONCLUSION</u>

Plaintiff Conley was an employee who was a victim of, not a party to, the merger agreements (and disagreements) between the Plaintiff corporations and Defendant Watson's company. Because she was not a party to the forum selection clause in the merger documents, this Court lacks personal jurisdiction, and should dismiss the current action against her.

Alternatively, the only Agreement to which Conley was a party bound the parties to resolve disputes in arbitration. Pursuant to 9 U.S.C. § 3, she respectfully requests that should this Court retain jurisdiction, that it stay the current lawsuit against her and refer all claims against her to arbitration.

Finally, if this Court retains jurisdiction, Conley requests that venue be transferred to the District Court of South Carolina, Charleston Division for the "convenience of parties and witnesses, in the interest of justice".

Respectfully submitted

Derfner & Gillett, LLP

S/   David P. Gillett
Donald A. Derfner (DD 0696)
David P. Gillett (DG 5305)
600 Third Avenue, 26th Floor
New York, New York 10016
 (212) 697-8100

Terry Ann Rickson
Anne E. Mjaatvedt
102 Wappoo Creek Drive, No. 8
Charleston, South Carolina 29412
(843) 722-1500
(Application for Admission Pro Hac Vice pending)

Allan R. Holmes
Gibbs & Holmes
171 Church Street, Suite 110
Charleston SC 29402
(843) 722-0033
(Application for Admission Pro Hac Vice pending)

ATTORNEYS FOR DEFENDANT
ELIZABETH ANNE CONLEY

New York, New York
January 28, 2008