Thomas V. Marino, Esq. (TM 7397)
Dunnington Bartholow & Miller LLP
Attorneys for Plaintiffs
477 Madison Avenue – 12th Floor
New York, New York 10022
(212) 682-8811

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHEA DEVELOPMENT CORP., BRAVERA,
INC., and IP HOLDING OF NEVADA CORP.,

                                Plaintiffs,        07 Civ. 11201(DLC)(GWG)

    -  against -
CHRISTOPHER WATSON, and ELIZABETH ANNE
CONLEY,
                                Defendants.
------------------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHRISTOPHER WATSON'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiffs Shea Development Corp. ("Shea"), Bravera, Inc. ("Bravera"), and IP Holding of Nevada Corp. ("IP Holding"), by their attorneys Dunnington, Bartholow & Miller LLP, submit this memorandum of law in opposition to defendant Christopher Watson's ("Watson") motion to dismiss for lack of subject matter jurisdiction.[1] The Court should deny defendant Watson's motion because, as is fully explained in this memorandum of law, in the affidavit of R. Dodge Frederick sworn to on January 31, 2008 ("Frederick Affid."), and in the declaration of Francis E. Wilde executed on January 30, 2008 ("Wilde Decl."), there is no doubt that defendant Watson's domicile at the time this action was commenced was in South Carolina and not Florida. Accordingly, because

---

[1] Although defendant's Notice of Motion seeks an order dismissing plaintiffs' claims with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal rules of civil Procedure, defendant's motion is actually made only pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

there exists complete diversity between the parties, the Court clearly has subject matter jurisdiction and defendant's motion should be denied.

Mr. Frederick is one of principle partners of The Quantico Group, Inc. ("The Quantico Group"), a private investigation security consulting agency headquartered in Columbia, South Carolina. The Quantico Group is an experienced agency designed to meet investigative needs of law firms, corporations and individuals. Mr. Frederick, a former FBI agent, himself has extensive experience in conducting this type of investigation.

Defendant Watson's bare bones declaration is insufficient as a matter of law and does not establish that at the time this action was commenced, he was domiciled in Florida. The declaration Watson submitted to this Court conflicts with indisputable and documented facts showing that Watson's domicile was and still is in South Carolina.

Watson's self-serving declaration that he resides in the State of Florida supported only by a copy of his newly issued driver's license is plainly insufficient to establish that he is a Florida domiciliary. *See Durst v. Siegler*, 2005 WL 3358599 (S.D.N.Y. Dec. 7, 2005)(registration to vote in Texas and a Texas driver's license by themselves are not enough to establish Texas domicile)(*citing Galva*, 924 F.2d 729 (7th Cir. 1991)(where the Court held that: "Anyone with residences in two or more states could change domicile continually, by changing his voter registration or his driver's license, in order to take advantage of changes in tax law or to opt in or out of federal jurisdiction.")

In the alternative, plaintiffs respectfully request that the Court direct expedited discovery regarding the issue of Watson's domicile including, but not limited to, the depositions of defendant Watson and other witnesses who may have information relevant

to the issue as well as documents discovery to allow plaintiffs to adduce additional evidence so that the Court will have a more complete factual record for its determination of subject matter jurisdiction.

## FACTS

The evidence adduced in the Frederick Affidavit and the Wilde Declaration clearly proves that Watson's domicile was and still remains in South Carolina.

Watson's sole documentary evidence of domicile in Florida, which he submitted in support of his motion, is, as stated above, a copy of his driver's license which he obtained in Key West, Florida on May 2, 2007. About the same time, Watson rented an apartment at 3910 South Roosevelt, Key West, Florida. (*See* Frederick Affid. at ¶ 8.) While Watson declares that he "file[s] tax returns with the State of Florida" (*see* Declaration of Christopher Watson executed on January 11, 2008 ("Watson Decl.") at ¶ 5), it is not clear what tax returns he files since there is no personal income tax in Florida and Watson does not appear to own any property, real or personal, in the State of Florida. (*See* Frederick Affid. at ¶ 8.) Moreover, no copy of any tax returns, even in redacted form, is attached to his declaration.

On the other hand, the evidence submitted by plaintiffs in opposition to this motion establishes that Watson has been domiciled in South Carolina since at least 2003. Specifically, Watson's wife and their two children still reside in a house which he and his wife purchased on Daniel Island, South Carolina in 2003; there is no record of divorce or legal separation on file with the Clerk of the Court for Berkeley County, South Carolina where they reside (*see* Frederick Affid. at ¶ 10); Watson either directly or indirectly through Daniel Island Partners, LLC, a company which he controls, still owns substantial

3

real estate on Daniel Island, South Carolina (*see* Frederick Affid. at ¶¶ 24-28); maintains professional connections with attorneys who are located in South Carolina (*see* Frederick Affid. at ¶ 21); belongs to a Daniel Island Golf Club (see Frederick Affid. at ¶ 13); operates a personal airplane, Columbia 400 (Tail Number N999TJ) based in Charleston International Airport (*see* Frederick Affid. at ¶ 18); and receives his American Express credit card statements in Daniel Island, South Carolina. (*See* Exhibit F, to Wilde Decl.)

In fact, during the year 2007, Watson has been to Key West, where he allegedly permanently resides, only three times. The first time for the purpose of obtaining a Florida driver's license and to rent an apartment. (*See* Frederick Affid. at ¶ 20.) The other few times that Watson flew to Florida were to Orlando where Riptide's headquarters are located.

Thus, there is very little doubt that Watson was domiciled in the State of South Carolina at the time this action was commenced and is still domiciled there.

Watson's shifting of assets can only be interpreted as an intent to conceal assets rather than an intent to create a new domicile. Watson's extraordinary effort to transfer his principal assets out of his name for little or no consideration should be viewed by the Court as an admission by him that the allegations of the complaint are well founded and not proof of his alleged intent to change his domicile.

### ARGUMENT

### I

### THE COURT SHOULD DENY DEFENDANT WATSON'S MOTION

A person's domicile is "the place where a person has his true and fixed home and principal establishment, and to which, whenever he is absent he has the intention of

4

returning." *Palazzo v. Corio*, 232 F.3d 38, 42 (2nd Cir. 2000)(citation omitted). Even though a person can have two or more residences, a person can have only one domicile at any point in time. *Id*. Domicile involves two elements: the party's physical presence in the state, and the intent to remain in the state indefinitely. *See National Artists Management Co. Inc., v. Weaving,* 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991). Therefore, it is possible to reside in one location and be domiciled in another. However, a long time domicile in one state is "presumed to continue" until it is superseded by a new domicile. *Gutierrez v. Fox*, 141 F.3d 425, 427 (2nd Cir. 1998).

Where a change of domicile is in issue, the party alleging the change must establish:

> First, residence in a new domicile; and second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence form a fixed home, however long continued, cannot work the change.

*Guttierrez, supra*, 141 F.3d at 428. In addition, "a party alleging that there has been a change of domicile has the burden of proving . . . [it] by clear and convincing evidence." *Palazzo, supra*, 232 F.3d at 42.

The factors that the Courts consider in determining domicile include: location of spouse and family, voting registration, payment of taxes; location of real and personal property (like furniture and automobiles), driver's license, location of bank account, place of employment, and location of a person's physician. *See National Artists Management Co. Inc.,* 769 F. Supp. at 1228; *see also Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2006 WL 300477 at *1 (S.D.N.Y. 2006)(listing relevant factors: "voting registration and voting practices, location of real and personal property, location where taxes are paid, location of brokerage and bank accounts, driver's and other licenses,

5

membership in churches, clubs, and associations, whether the person owns or rents his place of residence, and locations of the person's physician, lawyer, account, dentist, or stockbroker.")  No single factor is conclusive.  *See National Artists Management Co., supra.*

### A.    **Watson Is a Domiciliary of South Carolina**

The undisputable evidence adduced by plaintiffs in opposition to this motion establishes beyond doubt that Watson's domicile is in South Carolina.  As detailed in the Frederick Affidavit, Watson and his wife purchased a residential property at 1054 Blakeway Street on Daniel Island in South Carolina on or about December 12, 2003. Watson's wife, Carmen Watson and their two children still reside there and their seven year old daughter, Zoe, is enrolled in a girl's school in Charleston, South Carolina. (*See* Frederick Affid. at ¶ 17.) Current directory assistance for Charleston, South Carolina, shows a telephone listing in his name at 1054 Blakeway Street. There is evidence that Watson still belongs to a private Daniel Island Golf Club.  Further, Watson flies a Columbia 400 (Tail Number N999TJ) out of the Charleston International Airport and keeps the airplane at Atlantic Aviation Services, which is located at that Airport.  The flight plan report attached as Exhibit I to the Frederick Affidavit shows numerous flights either originating at or coming to Charleston, South Carolina and only *three* trips to Key West, Florida.  Watson's BMW automobile was seen on Daniel Island, South Carolina, last week.  (*See* Frederick Affid. at ¶ 23 and Wilde Decl. at ¶ 12.)

Watson still owns substantial real property, either directly or indirectly, on Daniel Island, South Carolina and maintains professional contacts with attorneys in South Carolina in connection with the real estate transactions/investments. He also commenced

6

an action against plaintiffs in South Carolina Court of Common Pleas even though he claims that he and the plaintiffs are all Florida domiciliaries.

It is also clear that the place where Watson returns is where his wife and children live *i.e*. Daniel Island, South Carolina. In fact, on the date when this action was commenced, Watson was not in Florida but traveled between Utah, California, New Mexico, Oklahoma and Alabama and returned to Charleston, South Carolina on December 21, 2007, four days before Christmas. (*See* Exhibit I, to Frederick Affid. at p. 3.) "A married man's domicile is presumed to be where his wife and family reside, if that is at a permanent home, and there is no proof of separation." *Broadstone Realty Corp. v. Evans,* 213 F. Supp. 261, 265 (S.D.N.Y. 1962). There is absolutely no credible evidence to rebut this presumption.

**B.     Watson Did Not and Cannot Present any Credible Evidence that He Is Florida Domiciliary**

Watson must prove his "intent to give up the old and take up the new domicile, coupled with the acquisition of a residence in the new locality." *Palazzo, supra,* 232 F.3d at 42. Watson cannot make the required showing here. In ascertaining intent, the party's "entire course of conduct may be taken into account." *National Artists Management Co. v. Weaving,* 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991). Moreover, because a party can manufacture allegation of intent, they are entitled to "slight" weigh" when contradicted by objective evidence showing a contrary intent. *Id.* at 1127-28.

There is no credible evidence that Watson permanently resides in Florida or that he relocated to Florida with the intent to remain there indefinitely. Watson's recent real estate transactions evidence his intent to render himself judgment proof and not an intent to change his domicile. Watson gave several special powers of attorney to David G.

7

Pagliarnini, Esq., a South Carolina attorney who represented him in connection with several of these real estate transactions. On these powers of attorney Watson always listed a South Carolina address as his "principal address." Most recently on *November 8, 2007*, Watson stated his "principal address" to be his office at 300 Bucksley Lane, Daniel Island, Charleston, South Carolina. (*See* Exhibit O to Frederick Affid.)

As stated above, Watson's sole documentary proof of his domicile in Florida is a recently issued driver's license. (*See* Watson Decl. at ¶ 3). Defendant does not state whether he had ever voted in the State of Florida only that he has registered to vote, (s*ee* Watson Decl. at ¶ 4) and does not state what tax returns he filed in that State. (*See* Watson Decl. at ¶ 5.)

Moreover, the address that Watson provided for his Employment Agreement with Bravera, Inc., 4446-1A Hendricks Avenue, Suite 246, Jacksonville, Florida is a mail box at a UPS Store located at that address.

Defendant's claim to have filed a tax return in the State of Florida is hard to understand since Florida does not have income tax and because defendant does not own any property, real or personal, in Florida. As stated in the Frederick Affidavit, since on or about May 2007, Watson has been *renting* an apartment in Key West. (*See* Frederick Affid. at ¶ 8.) There are no vehicles registered in Watson's name or in the name of his company, Daniel Island Partners, LLC in Florida. (*See id*.) And, unlike in South Carolina, there is no telephone service listed in his name in Key West. (*See id*.)

Watson's self-serving statement of domicile is insufficient to establish domicile. *See Gutierrez v. Fox*, 666 F. Supp. 214, 217 (S.D.N.Y. 1997).

> Although in tent is crucial to domicile, mere subjective statements of affiliation with a particular state or of an intent to make it one's home, of

8

> course cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent.

*National Artists Management Co., Inc., supra,* 769 F. Supp. at 1228 (*citing Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986).

In sum, there is total lack of clear and convincing evidence that Watson changed his domicile from South Carolina to Florida.

## CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court deny defendant Watson's motion because the undisputable evidence shows that Watson's domicile is in South Carolina and therefore there is complete diversity of jurisdiction between the parties. In the alternative, plaintiffs respectfully request that the Court direct expedited discovery regarding the issue of Watson's domicile including, but not limited to, the depositions of defendant Watson and other witnesses who may have information relevant to the issue as well as documents discovery to allow plaintiffs to adduce additional evidence so that the Court will have a more complete factual record for its determination of subject matter jurisdiction.

Dated: New York, New York
       January 31, 2008

                                            Respectfully submitted,

                                            Dunnington, Bartholow & Miller LLP

                                            By: ___/s/_____
                                                Thomas V. Marino (TM 7397)
                                                Attorneys for Plaintiffs
                                                477 Madison Avenue – 12th Floor
                                                New York, New York 10022
                                                (212) 682-8811