UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
::
SHEA DEVELOPMENT CORP., BRAVERA, INC.,
and IP HOLDING OF NEVADA CORP.,

        Plaintiffs,

        v.

CHRISTOPHER WATSON and ELIZABETH
ANNE CONLEY,

        Defendants.

-----------------------------------------------------------------X

Civil Action No. 07-CV-11201 (DLC)


# DEFENDANT CHRISTOPHER WATSON'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
Tel: 212.813.8800
Fax: 212.355.3333

*Counsel for Defendant Christopher Watson*

Dated: February 5, 2008

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1

**Discussion** .......................................................................................................................... 1

    I. ......... The Legal Standard. ............................................................................................ 1

    II. ........ The Facts Showing That Mr. Watson Is Domiciled In
            Florida. ................................................................................................................ 3

    III ....... Plaintiffs' Opposition Does Not Rebut Mr. Watson's
            Florida Domiciliary. ............................................................................................ 5
        A.     Property In South Carolina. ................................................. 5
        B.     Children In South Carolina ................................................. 7
        C.     Business In South Carolina ................................................ 8

    IV. ...... Plaintiffs' Request For Discovery Is Unnecessary and
            Inappropriate. ...................................................................................................... 9

**Conclusion** ....................................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Aldinger v. Segler*, NO. 04 CV. 4405 (RJH), 2005 WL 2591958, *3 (S.D.N.Y. Oct. 13, 2005) .................................................................................................. 2

*Bogan v. Northwestern Mut. Life Ins. Co.*, 103 F. Supp. 2d 698, 700 (S.D.N.Y. 2000) .............................................................................................................. 5, 7

*Click Model Mgmt. Inc. v. Rhoda*, NO. 06 CV 660 (LBS), 2006 WL 1722578, *1 (S.D.N.Y. June 22, 2006) ........................................................................... 2, 8, 10

*Del Ponte v. Universal City Dev. Partners, Ltd.*, NO. 07-CV-2360 KMK LMS, 2008 WL 169358 (S.D.N.Y. Jan. 16, 2008) ....................................................... 10

*Galu v. Attias*, 923 F. Supp. 590, 595 (S.D.N.Y. 1996) ........................................... 2

*Herrick Co. v. SCS Comms. Inc.*, 251 F.3d 315, 322-23 (2d Cir. 2001) ................. 2

*In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717, 725 (S.D.N.Y. 2003) .............................................................................................. 2

*Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03 Civ. 10333(CSH), 2006 WL 300477, *1 (S.D.N.Y. Feb. 7, 2006) ..................................................... 8

*National Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 2d 1224, 1227 (S.D.N.Y. 1991) .................................................................................................. 2

*Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38 (2$^d$ Cir. 2000) ............................... 5

*Sadesky v. Liberty Chevrolet, Inc.*, NO. 04-CV-1894 (KMK), 2005 WL 1026326, *2 (S.D.N.Y. May 3, 2005) .................................................................................. 3

*Weber v. Paduano*, No. 02 Civ. 3392 (GEL), 2003 WL 22801777, *6 (S.D.N.Y. 2003) ..................................................................................................................... 2

*Young v. Century House Hist. Soc'y*, 117 F. Supp. 2d 277, 280 (N.D.N.Y. 2000) . 3

## Treatises

13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3608, at 448-49 (2d ed. 1984) ............................ 2

INTRODUCTION

Diversity jurisdiction simply does not exist here because both Mr. Watson and Plaintiffs reside in the State of Florida.

As noted in his Declaration and Supplemental Declaration, Mr. Watson's domicile is in Florida, where he rents an apartment, is licensed to drive, has his car registered and insured, maintains his personal property and furniture, is registered to vote, sees a doctor, has looked to purchase property, and sends and receives his W-2 forms and tax returns. Put simply, Florida is Mr. Watson's home and, while he travels considerably for business and family reasons, he has no intention of making his home elsewhere in the indefinite future.

Despite the great lengths they have gone to—including the hiring of a private investigator to spy on Mr. Watson's children—Plaintiffs have demonstrated little that is relevant to this motion. The opposition papers establish only that Mr. Watson has business and family ties to South Carolina despite having relocated to Florida from Maryland more than a year prior to the filing of this lawsuit. What Plaintiffs' private investigator failed to uncover is that Mr. Watson is separated from his wife, explaining his frequent trips to South Carolina to visit his children, who are in the custody of his wife. Plaintiffs' attempt to cloud the issue avoids the central question: at the time the Complaint was filed, did Mr. Watson live in Florida and intend to remain there on an indefinite basis? <u>Both</u> parties' submissions on this motion confirm that the answer is an unequivocal yes.

DISCUSSION

I.   THE LEGAL STANDARD.

The parties do not disagree about the prevailing legal standard here. Plaintiffs concede that they are citizens of the State of Florida for purposes of diversity jurisdiction, and thus, under

28 U.S.C. § 1332, the sole question here is whether Mr. Watson was domiciled in Florida "at the time this action was commenced."[1] Opp. at 2. Plaintiffs bear the burden of proving grounds for diversity, including the citizenship of the parties. *See Herrick Co. v. SCS Comms. Inc.*, 251 F.3d 315, 322-23 (2d Cir. 2001).[2]

"A domicile, unlike a residence, is a permanent abode to which a person intends to return." *In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717, 725 (S.D.N.Y. 2003). Domicile requires two elements: (1) a party's physical presence in a state, and (2) the intent to remain in the state indefinitely. *National Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 2d 1224, 1227 (S.D.N.Y. 1991). In assessing a party's domicile, the courts employ "a totality of the evidence approach, [where] no single factor is conclusive." *Aldinger v. Segler*, NO. 04 CV. 4405 (RJH), 2005 WL 2591958, *3 (S.D.N.Y. Oct. 13, 2005) (quoting *Weber v. Paduano*, No. 02 Civ. 3392 (GEL), 2003 WL 22801777, *6 (S.D.N.Y. 2003)). Among the facts that the courts have found persuasive in proving a person's domicile are "the party's voting registration; place of business; current residence; affidavits of intention; payment of taxes; receipt of mail; and location of business and financial interests." *Click Model Mgmt. Inc. v. Rhoda*, NO. 06 CV 660 (LBS), 2006 WL 1722578, *1 (S.D.N.Y. June 22, 2006).

"An individual's residence at the time the law suit is commenced is *prima facie* evidence of his domicile." *Galu v. Attias*, 923 F. Supp. 590, 595 (S.D.N.Y. 1996). At the same time, the courts recognize that a party need not be exclusively present in one state to be considered domiciled there: "[i]t is possible to reside at one place and be domiciled at another." *Sadesky v.*

---

[1] *See also* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3608, at 448-49 (2d ed. 1984) ("whether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced").

[2] As Mr. Watson has been domiciled in Florida since 2005 (having moved there from Maryland), this is not a case where a party asserts a change of domicile that affects diversity jurisdiction. Watson Supp. Decl., ¶ 24. Mr. Watson

*Liberty Chevrolet, Inc.*, NO. 04-CV-1894 (KMK), 2005 WL 1026326, *2 (S.D.N.Y. May 3, 2005) (quoting *Young v. Century House Hist. Soc'y*, 117 F. Supp. 2d 277, 280 (N.D.N.Y. 2000)).

As discussed below, the evidence unmistakably demonstrates that Mr. Watson was domiciled in Florida at the time this lawsuit was filed and he remains domiciled there. The "evidence" offered by Plaintiffs shows little other than that Mr. Watson has business and family ties to South Carolina even after relocating his domicile to Florida. Under the relevant authorities, Plaintiffs have failed to demonstrate diversity.

II.     THE FACTS SHOWING THAT MR. WATSON IS DOMICILED IN FLORIDA.

The evidence that Mr. Watson is domiciled in Florida is overwhelming and essentially undisputed. It includes the following facts, which are as true today as they were on the date of the filing of this lawsuit:

1. Mr. Watson's primary, permanent residence is in Florida. Watson Decl., ¶ 2; Watson Supp. Decl., ¶ 2.

2. Mr. Watson considers his Florida residence to be his home and he intends to remain in Florida for the indefinite future. *Id.* at ¶ 6. While Mr. Watson travels a great deal for business, it is Florida to which he returns when he is finished with his travels. *Id.* at ¶ 11.

3. Mr. Watson's personal effects, clothing and furniture are located in Florida. *Id.* at ¶ 10.

4. Mr. Watson has an insurance policy on his home in Florida, issued through American Bankers Insurance Company of Florida. *Id.* at ¶ 12 & Ex. G.

5. Mr. Watson has doctors in Florida and Washington, D.C.. *Id.* at ¶ 14.

6. Mr. Watson is licensed to drive in Florida, and drives a car with Florida license plates which is registered and insured in Florida. Watson Decl., ¶ 3; Watson Supp. Decl., ¶¶ 8-9 & Exs. D-F.

---

was *never* domiciled in South Carolina. Plaintiffs have made assertions and assumptions concerning Mr. Watson's domiciliary that simply were never correct. The burden rests squarely on Plaintiffs.

3

7. Mr. Watson is registered to vote in Florida. Watson Decl., ¶ 4; Watson Supp. Decl., ¶ 7 & Ex. C.

8. Mr. Watson lists his Florida residence in all of his tax returns. Watson Decl., ¶ 5; Watson Supp. Decl., ¶ 13 & Ex. I. Mr. Watson's W-2 forms, including those processed by the Plaintiffs themselves, reflect his Florida address. Watson Supp. Decl., ¶ 13 & Ex. H.

9. The tax returns for Mr. Watson's business reflect that he resides in Florida. *Id.* at ¶ 13 & Ex. J.

10. Although Mr. Watson currently rents his residence in Florida, he has made inquiries into the possibility of purchasing real property in Florida and has spoken with realtors about that. *Id.* at ¶ 15 & Ex. A.

Perhaps most telling here is Plaintiffs' own acknowledgement of Mr. Watson's Florida domiciliary. Mr. Watson's Employment Agreement, which he entered into with Plaintiffs Bravera and Shea, expressly acknowledge his Florida residency. *Id.* at ¶¶ 37-38. The Employment Agreement chooses a *Florida venue* for arbitrating any disputes among the parties, reflecting that Bravera, Shea and Mr. Watson are all permanently located there. *Id.* at ¶ 38 & Ex. K. Plaintiffs processed Mr. Watson's W-2's when he was employed with Bravera fully aware that he listed Florida as his permanent home address. *Id.* at ¶ 13, Exs. H & I. Plaintiffs' current contention is squarely at odds with their own prior conduct, which treated Mr. Watson as the Florida citizen that he is.

While Mr. Watson, a highly mobile businessman, has ties to other states as well, there is no consistent pattern to these connections that points to a domicile other than Florida. For example, Mr. Watson grew up in Southern California. Watson Supp. Decl., ¶ 3. He has family members in California, Colorado and South Carolina. *Id.* at ¶ 20. The car that Mr. Watson leased while employed at Bravera was registered in Maryland. Wilde Decl., ¶ 12; Watson Supp. Decl., ¶ 34. Mr. Watson uses a cell phone as his primary phone which has a Washington, D.C. area code. *Id.* at ¶ 17. He owns businesses in Virginia and South Carolina. *Id.* at ¶ 18. Mr.

4

Watson's accountants are located in Maryland. Watson Supp. Decl., ¶ 21. His primary attorneys are located in New York and Maryland. *Id.* at ¶ 22. It is clear that while aspects of Mr. Watson's life are scattered across various states, it is Florida that is his center of gravity.

This evidence is more than ample to demonstrate that Mr. Watson is domiciled in Florida and was domiciled there as of the date this lawsuit was filed.[3]

### III. PLAINTIFFS' OPPOSITION DOES NOT REBUT MR. WATSON'S FLORIDA DOMICILIARY.

Although Plaintiffs seek to muddy the waters, their Opposition does nothing to alter the conclusion that Mr. Watson is domiciled in Florida. Plaintiffs' Opposition can be boiled down to as assertion that Mr. Watson has ties to South Carolina which, they argue, must somehow be proof that he really lives there permanently. But none of the "evidence" that Plaintiffs offer withstands scrutiny, as discussed below.

#### A. Property In South Carolina.

First, Plaintiffs seek to make much of the fact that Mr. Watson purchased property in South Carolina long before the filing of the lawsuit. Mr. Frederick's Affidavit, for example, notes purchases of South Carolina property in 2003, 2005 and early 2007, some by Mr. Watson and some by a company that Mr. Watson owns. *See* Frederick Aff., ¶¶ 10, 24 & 27. But events that took place prior to the filing of the lawsuit are not pertinent here: "[f]or diversity purposes, the relevant date in determining a party's domicile is the date on which the complaint was filed," not where he may have lived in years prior. *Bogan v. Northwestern Mut. Life Ins. Co.*, 103 F.

---

[3] Indeed, the courts repeatedly find that substantially less evidence supports a finding of domicile. In *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38 (2d Cir. 2000), for example, a New York plaintiff sued a defendant alleged to reside in Pennsylvania. The defendant challenged diversity jurisdiction on the ground that he in fact was domiciled in New York. The evidence included defendant's assertion that he lived in Pennsylvania only temporarily and, despite having a car registered and insured in Pennsylvania and a driver's license issued there, the defendant attended school in New York and listed New York as his address on his tax returns. *Id.* at 41. The Court affirmed a finding that the defendant resided in New York, thus defeating diversity, because it found that the evidence supported that defendant both resided in New York and intended to remain there. *Id.* at 42.

5

Supp. 2d 698, 700 (S.D.N.Y. 2000). While it is not disputed that Mr. Watson or one of his businesses purchased property in South Carolina, that has no relevance here.

What Plaintiffs have missed—or perhaps simply avoided mentioning—is that Mr. Watson separated from his wife in 2005. Watson Supp. Decl., ¶ 3. He settled his family in South Carolina around the time of his separation, believing that it was a good environment for them. *Id.* at ¶ 24. And Plaintiffs concede that Mr. Watson has conveyed one of the properties he owns in South Carolina to his estranged wife—which occurred as a part of their separation and several months before this lawsuit began. Frederick Aff., ¶¶ 8-11; Watson Supp. Decl., ¶ 31. As Mr. Watson's Supplemental Declaration indicates, a company that he owns has certain investment properties in South Carolina which are not his residence. Watson Supp. Decl., ¶ 25. (Mr. Watson's businesses also own property in Virginia. *Id.* at 18.) Mr. Watson has been trying to sell his remaining investment property in South Carolina, and despite unfavorable market conditions, has relisted his property again with his realtors for sale. *Id.* at ¶ 25. What property Mr. Watson may have purchased in years past in South Carolina is clearly not his residence. *Id.* at ¶¶ 2, 29. His separation from his wife, his conveyance of his company's South Carolina property, and his attempt to sell his company's remaining property in South Carolina contradicts Plaintiffs' suggestion that he lives there and considers it his home.

Perhaps most significant is Mr. Watson's unequivocal assertion that he does not live in South Carolina, does not consider it his home and has no intention of making it his home. *Id.* at ¶¶ 23-24, 29. The Watson Supplemental Declaration makes clear that Mr. Watson visits solely for purposes of seeing his children and attending to business interests. *Id.* at ¶ 23. Tellingly, Plaintiffs' private investigator, despite acknowledging having spied on Mr. Watson's family and having interviewed their neighbors (*see, e.g.,* Frederick Aff., ¶ 14), *is unable to assert that he*

*ever saw Mr. Watson in South Carolina at any time.* Plaintiffs' "stake out" failed because Mr. Watson is plainly not domiciled in South Carolina.

Plaintiffs went to extreme measures to attempt to suggest that Mr. Watson lives in South Carolina. All that they have shown is the undisputed facts that his children live there with his estranged wife and he still has investment property there. He is not a South Carolina citizen.

### B. Children In South Carolina

Plaintiffs' submission reveals the appalling fact that Plaintiffs have hired a private investigator ***to follow and spy on Mr. Watson's children***. *See* Frederick Aff., ¶ 14. They have seen fit, for no legitimate reason whatsoever, to reveal patently irrelevant personal details about the whereabouts and habits of his young children in the public record. This shameful, desperate behavior has yielded no fruit for Plaintiffs.

Mr. Watson is separated from his wife and does not expect to reconcile with her in the immediate future; his wife and children reside in South Carolina. Watson Supp. Decl., ¶ 3. Thus, the fact that Mr. Watson visits South Carolina often—as any parent under these circumstances would—says nothing about where he is domiciled. To the contrary, it simply explains why he makes frequent visits to South Carolina—to maintain his relationship with his children. This Court has found that separation from one's spouse is a factor that supports domicile in the party's new state of residence. In *Bogan*, for example, the Court found that a party was domiciled in Connecticut after separating from his wife, moving his belongings out and signing a one-year lease which was in effect when the complaint was filed. 103 F. Supp. 2d

at 700.[4] Here, Mr. Watson's separation from his wife cuts against the notion that South Carolina is his domicile, notwithstanding that his children remain there.

Plaintiffs have seen fit to send spies to invade the lives of Mr. Watson's minor children. All they have done is disgrace themselves while unaccountably failing to make note of Mr. Watson's separation from his wife. Plaintiffs' contentions about Mr. Watson's children and family completely miss the mark.

C.  **Business In South Carolina**

Plaintiffs further argue that Mr. Watson owns a company that is located in South Carolina and that this somehow means that he must be domiciled there.[5] This Court has repeatedly found, however, that presence in a state for the "limited purpose" of pursuing a business or career does not establish domicile there. *Click Model Mgmt.*, 2006 WL 1722578, *1. In addressing similar circumstances, this Court in the *Bogan* case observed:

> Much of plaintiffs' documentary evidence purporting to prove that Hodgkins intended to remain a New York citizen is inapposite. Many items relate to periods of time that precede the date the complaint was filed—July 20, 1999—often by more than a year. Moreover, although Hodgkins listed his office as his residence from time to time on documents such as his car registration and license applications—which was sometimes done for business purposes—it is not seriously contended that he lived in his office.

*Bogan*, 103 F. Supp. 2d at 700, n.1. Thus, the fact that Mr. Watson has traveled often to South Carolina (and elsewhere) to conduct business, or the fact that he has business assets in South

---

[4] Similarly, in *Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03 Civ. 10333(CSH), 2006 WL 300477, *1 (S.D.N.Y. Feb. 7, 2006), the Court noted that separation from one's spouse negates the ordinary focus one might put on the location of a party's spouse and children as proof of domicile.

[5] As Mr. Watson's Supplemental Declaration makes clear, he owns three companies: Daniel Partners LLC, Intellectus LLC and SD2R LLC. Watson Supp. Decl., ¶ 18. Daniel Island Partners, is a South Carolina real estate company and holds his real estate investments in South Carolina. *Id.* Intellectus is an Information Technology company and a Florida corporation. *Id.* SD2R LLC is a Virginia company that holds Mr. Watson's real estate investments in Virginia. *Id.* These businesses share a common mailing address in South Carolina, even though their business does not all relate to or take place in South Carolina, because Mr. Watson chose to have a single "back office" location from which his mail could be scanned and sent to him electronically. *Id.*

8

Carolina, does not negate the fact that he has chosen Florida as his home and domicile.

In any event, as Mr. Watson's Supplemental Declaration indicates, Mr. Watson's business in South Carolina does not require his continued presence there. Watson Supp. Decl., ¶ 19. He has his mail scanned and sent to him electronically, for review wherever he may be. *Id.* at ¶ 18. He conducts business in many places, South Carolina being merely one of them. Mr. Watson also owns a company that is located in Virginia, and maintains various business contacts, including his accountants and attorneys, in other states, such as Maryland and New York. *Id.* at ¶¶ 18, 21-22. That Mr. Watson periodically conducts a portion of his business in South Carolina along with other locations does little other than to underscore that he has a mobile, active business life.[6]

While there is no dispute that aspects of Mr. Watson's life are located in South Carolina and other states, there is similarly no dispute that his current and future home is Florida. Plaintiffs' elaborate, expensive efforts to spy on Mr. Watson were wholly ineffective and reflect nothing more than a desperate attempt to maintain this action in a Court where it plainly does not belong.

### IV. PLAINTIFFS' REQUEST FOR DISCOVERY IS UNNECESSARY AND INAPPROPRIATE.

That Plaintiffs would unleash a private investigator on Mr. Watson's young children and inject aspects of their daily lives into the public record of this case demonstrates that Plaintiffs' intent is to harass Mr. Watson and drag his family members into the dispute. Their request to depose "Watson and other witnesses who may have information" confirms Plaintiffs' ruse.

---

[6] The remainder of Plaintiffs' assertions are a grab-bag of red herrings and irrelevancies. The Frederick Affidavit, for example, contends that Mr. Watson filed more flight plans for flights into South Carolina than into Florida. But only "instrument flight rule" flight plans are filed, and thus Plaintiffs' Declarations conveniently neglect to mention the many times that Mr. Watson flew under "visual flight rule" in Florida, not to mention the times he drove or returned home to Florida by alternate means. Watson Supp. Decl. ¶ 30. Again, Plaintiffs' "evidence" is proof of nothing.

9

Mr. Watson respectfully suggests that no discovery is warranted, as Plaintiffs have not sustained their burden and have offered no competent proof demonstrating that he is not domiciled in Florida. If the Court were to nonetheless believe that further discovery is warranted, it should require the parties to specify what issues remain disputed or unclear, and direct the parties first to seek written discovery, as it has done in comparable cases. *See, e.g., Del Ponte v. Universal City Dev. Partners, Ltd.*, NO. 07-CV-2360 KMK LMS, 2008 WL 169358 (S.D.N.Y. Jan. 16, 2008) (permitting, in response to challenge to diversity, "limited discovery, conducted via five interrogatories"); *Click Model Mgmt.* 2006 WL 1722578, *1 (granting "limited discovery" on diversity question in the form of interrogatories). Given Plaintiffs' appetite for questionable intrusions into the lives of others not involved in this lawsuit, Mr. Watson respectfully submits that a tight rein on any permitted discovery would be most appropriate and efficient.

### CONCLUSION

This Court lacks subject matter jurisdiction and thus the case must be dismissed.

Dated: February 5, 2008                               Respectfully submitted,

                                                     CHRISTOPHER WATSON

                                                     By his attorney,

                                                     _____
                                                     Jeffrey A. Simes (JS-7060)
                                                     GOODWIN PROCTER LLP
                                                     599 Lexington Avenue
                                                     New York, New York 10022
                                                     Tel.: 212.813.8800
                                                     Fax: 212.355.3333
                                                     e-mail: jsimes@goodwinprocter.com