Thomas V. Marino, Esq. (TM 7397)
Dunnington Bartholow & Miller LLP
Attorneys for Plaintiffs
477 Madison Avenue – 12th Floor
New York, New York 10022
(212) 682-8811

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHEA DEVELOPMENT CORP., BRAVERA,
INC., and IP HOLDING OF NEVADA CORP.,

                              Plaintiffs,          07 Civ. 11201(DLC) (GWG)

        - against -
CHRISTOPHER WATSON, and ELIZABETH ANNE
CONLEY,

                              Defendants.
-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
CONLEY'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION; OR IN THE ALTERNATIVE, MOTION TO STAY AND
REFER ALL CLAIMS TO ARBITRATION; OR IN THE ALTERNATIVE, FOR
TRANSFER OF VENUE TO SOUTH CAROLINA**

## TABLE OF CONTENTS

PRELIMINARY S TATEMENT……………...…………………….………………1

NATURE OF THE ACTION ......................................................................... 2

FACTS .......................................................................................... 3

AGREEMENTS RELEVANT TO THIS MOTION ......................................... 6

ARGUMENT…………………………………………………………………….7

      I. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT
      CONLEY…………………………………………………………….………7

      II. THE COURT SHOULD DENY DEFENDANT CONLEY'S MOTION TO
      COMPEL ARBITRATION .............................................................. ..…11

      A.    There Is No Valid Arbitration Agreement Between Plaintiffs and
            Defendant Conley…………………………………………………...…11

      B.    Even If Not Superseded by the Acquisition Agreement, the Arbitration
            Clause in the Employment Agreement Does Not Apply to the Claims in
            this Action Arising Out of Defendant Conley's Conduct Prior to the
            Effective Date of the Merger……………………………………………14

      C.    The Court Should Deny Defendant Conley's Motion to Stay…………..16

      III.  THE COURT SHOULD DENY DEFENDANT CONELY'S MOTION TO
      SEVER THE CLAIMS AND TRANSFER THE ACTION TO THE U.S.
      DISTRICT COURT OF SOUTH CAROLINA ...................................... ………..17

CONCLUSION……………………………………………………...…………24

i

Thomas V. Marino, Esq. (TM 7397)
Dunnington Bartholow & Miller LLP
Attorneys for Plaintiffs
477 Madison Avenue – 12th Floor
New York, New York 10022
(212) 682-8811

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHEA DEVELOPMENT CORP., BRAVERA,
INC., and IP HOLDING OF NEVADA CORP.,

                                   Plaintiffs,          07 Civ. 11201(DLC) (GWG)

        -   against -
CHRISTOPHER WATSON, and ELIZABETH ANNE
CONLEY,
                                   Defendants.
-----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
ELIZABETH ANNE CONLEY'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION; OR IN THE ALTERNATIVE, MOTION TO STAY
AND REFER ALL CLAIMS TO ARBITRATION; OR IN THE ALTERNATIVE,
FOR TRANSFER OF VENUE TO SOUTH CAROLINA**

**PRELIMINARY STATEMENT**

Plaintiffs Riptide Worldwide, Inc. (f/k/a Shea Development Corp.), RTWW

Business Services, Inc. (f/k/a Bravera, Inc.), and IP Holding of Nevada Corp. submit this

memorandum of law in opposition to defendant Elizabeth Anne Conley's motion.  The

Court should deny defendant Conley's motion because the Court has personal jurisdiction

over defendant Conley and because there is no enforceable arbitration agreement between

plaintiffs and defendant Conley which would mandate arbitration of any of the claims

asserted in this action against her.  Further, severance and transfer of this action to the

District Court of South Carolina would not materially advance administration of justice.

## NATURE OF THE ACTION

This action arises out of a reverse triangular merger on or about July 16, 2007 by and among Riptide Worldwide, Inc. (f/k/a Shea Development Corp.)("Shea") and Shea Development Acquisition No. 3 Corp. ("Acquisition Corp."), on the one side and RTWW Business Services, Inc. (f/k/a Bravera, Inc.)("Bravera"), and Christopher Watson ("Watson") on the other by which Shea through its wholly owned subsidiary Acquisition Corp. acquired Bravera. In conjunction with the acquisition, Shea, through its wholly owned subsidiary IP Holding of Nevada Corp. ("IP Holding") licensed for use by Bravera the intellectual property assets that were then owned by Intellectus, LLC ("Intellectus") pursuant to an agreement entered into as of July 16, 2007. (*See* Complt. at ¶ 1.) At the time of the merger, defendant Watson was the sole shareholder of Bravera and the sole member of Intellectus while defendant Elizabeth Ann Conley ("Conley") was responsible for sales at Bravera. At the time of the acquisition defendant Conley held the title of Vice President of Strategic Accounts and was the second ranking officer after Watson at Bravera. (*See* Complt. at ¶ 2.)

The two principal agreements which govern the business relationship between the parties are the Agreement and Plan of Merger dated April 26, 2007 by and among Shea, Acquisition Corp., Bravera, and Watson (the "Acquisition Agreement") and a Software License and Asset Purchase Agreement (the "Asset Purchase Agreement") entered into as of July 16, 2007 by and between Intellectus and IP Holding. (*See* Complt. at ¶ 3.) The effective date of the acquisition was July 17, 2007, the date that the Articles of Merger were filed in Nevada and Florida. (*See* Declaration of Francis J. Mooney, Jr., Esq.

2

executed on February 25, 2008 ("Mooney Decl.") submitted in opposition to defendant Conley's motion.)

Defendants induced plaintiffs to enter into the Acquisition Agreement and Asset Purchase Agreement by fraudulently misrepresenting the number and value of sales contracts in Bravera's sales "Pipeline" and falsely and fraudulently "Estimat[ing]" Bravera's sales for calendar year 2007. In addition, defendant Watson breached the Asset Purchase Agreement by having breached, *inter alia*, certain Warranties and Representations regarding projected financial results for calendar year 2007. Defendants Watson and Conley also breached their employment agreements with plaintiffs and the fiduciary duties they owed to plaintiffs in their capacity as high and senior ranking officers of plaintiffs in the period *following* the merger in at least the following ways: (1) failing to immediately apprise plaintiffs' senior management that the information that Watson and Conley had both individually and jointly provided to them in the course of the negotiations that led to the merger was materially false, and (2) by failing to immediately apprise senior management at Shea of material changes in the sales prospects of Bravera. (*See* Complt. at ¶ 5.) In addition, plaintiffs have since learned that defendants have solicited clients of Bravera in violation of the non-competition agreements contained in their Employment Agreements.

## FACTS

The facts relevant to this motion are set forth in the complaint. However, for the ease of reference, they are summarized herein. Plaintiff Bravera is and at all relevant times hereto has been engaged in the business of software development and sales. (*See* Complt. at ¶ 12.) Bravera used SalesForce.Com software to track potential sales.

3

("SalesForce.Com.") SalesForce.Com provides a web-based service which allows clients to track customer names confidentially; specific contract opportunities with that customer; the amount of revenue at stake on each contract; the date the contract is expected to close; the stage of the sale (prospecting, needs analysis, proposal, quote, qualification, value proposition, negotiation, review, etc.); next steps in the sales process; and probability of success. (*See* Complt. at ¶¶ 36 and 37.

Prior to July 16, 2007, a principal duty of defendant Conley while she was employed by pre-merger Bravera in the capacity of Vice President of Strategic Accounts was to prepare regular sales updates for Watson using SalesForce.Com software. As Vice President of Strategic Accounts at pre-merger Bravera, defendant Conley was responsible and had operational control of the SalesForce.Com software and was the only person at Bravera licensed to use that software.  (*See* Complt. at ¶¶ 38 and 39.)

Between April 30 and May 2, 2007, during a three day face-to-face meeting in Orlando, Florida, defendant Watson presented Shea with Bravera's projected financial statements for calendar year 2007 allegedly based in principal part on a *bona fide* projection of sales (the "Orlando Plan") that he, Conley, and pre-merger Bravera had prepared using SalesForce.Com software.  (The "May 2 Meeting.") (*See* Complt. at ¶ 40.)(A copy of the PowerPoint presentation, and the projected financials that Watson gave to Shea at the May 2 Meeting are annexed as Exhibit A to the Complaint.) Defendant Conley attended these crucial meetings in Orlando, Florida with defendant Watson. (*See* Affidavit of Elizabeth Anne Conley sworn to on January 25, 2008 submitted in support of her motion ("Conley Affid.") at ¶ 22.)

On or about May 31, 2007, Conley sent to plaintiffs the SalesForce.Com report that defendants used to create a revised set of projected financials that were presented to plaintiffs on June 6, 2007. (The "May 31 SalesForce.Com Report") *(See* Complt. at ¶ 41.) (A copy of the May 31, 2007 SalesForce.Com Report provided by Conley to plaintiffs is annexed as Exhibit B to the Complaint.)

In the May 31 SalesForce.Com Report, Watson, Conley and pre-merger Bravera listed "Pipeline" sales for 2007 at $20,885,000.00. In addition, in the May 31 SalesForce.Com Report, Watson, Conley and pre-merger Bravera "Forecasted" sales for 2007 at $6,612,000. (*See* Complt. at ¶¶ 42 and 43.)

On or about June 6, 2007, during the final negotiations that led to the merger, defendant Watson presented Shea with a projection of financial statements for calendar year 2007 based in principal part on an allegedly good faith sales projection using SalesForce.Com software. (*See* Complt. at ¶ 45.) (A copy of the projected financials that Watson gave to Shea on June 6, 2007 are annexed as Exhibit C to the Complaint.)

On the June 6, 2007, Watson presented to plaintiffs projected financials which projected sales for pre-merger Bravera in calendar 2007 of $6,131,000. (*See* Complt. at ¶ 46.) (*See* Exhibit C to the Complaint.)

Conley personally prepared and/or provided to Watson the information that was used to create the financial projections that Watson gave to plaintiffs in June 2007. (*See* Complt. at ¶ 47.) The SalesForce.Com Reports furnished to plaintiffs were materially false because the sales "Forecast" was, in reality, only $275,000 not the $6,131,000 as represented on June 6, 2007 or the $6,709,000 that had been represented at the May 2 Meeting. (*See* Complt. at ¶ 48.)

The sales price Shea paid for Bravera was based entirely upon the projected financials (Exhibit C to the Complaint) submitted to Shea by Watson. The projected financials used to induce plaintiffs to complete the merger were prepared using the SalesForce.Com Reports prepared by Conley. (*See* Complt. at ¶¶ 50 and 51.)

## AGREEMENTS RELEVANT TO THIS MOTION

The principle agreement governing the business transaction in issue here is the Acquisition Agreement.[1] The effective date of the acquisition of Bravera by Shea's wholly-owned subsidiary, as agreed in the Arpil 26, 2007 Acquisition Agreement, was on the date that the Articles of Merger were filed in Nevada and Florida on July 17, 2007. (*See* Mooney Decl. at ¶ 4.) The Articles of Merger were incorporated into the Acquisition Agreement by reference. (*See* Mooney Decl. at ¶ 6.) Section 9.11 of the Acquisition Agreement provides, in relevant part:

> **Governing Law.** This Agreement will be governed by and construed in accordance with the domestic laws of the State of New York, without giving effect to any choice of law or conflict of law provision. The parties hereto expressly and irrevocably consent and submit to the exclusive jurisdiction of the applicable local, federal, or appellate courts located in New York, New York, in connection with any proceeding arising from or out of this Agreement.

(*See* Complt. at ¶ 25.) In addition, Section 9.2 of the Acquisition Agreement provides:

> This Agreement *supersedes* all prior discussions and agreements between the parties with respect to the subject matter hereof and thereof and contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof and thereof.

(*See* Mooney Decl. at ¶ 7.) The "Agreement" is defined as:

---

[1] Although integral to the Acquisition Agreement, the Asset Purchase Agreement is not relevant to this motion.

[T]his Agreement and Plan of Merger, the Schedules, the Exhibits, and the certificates and instruments delivered in connection herewith, or incorporated by reference.

(*See* Mooney Decl. at ¶ 8.)

The Senior Management Employment Agreement between pre-merger Bravera and defendant Conley dated April 26, 2007 and the Senior Management Employment Agreement between defendant Watson and Bravera dated July 15, 2007 were incorporated into the Acquisition Agreement in Schedule 1.14 Part II. (*See* Mooney Decl. at ¶ 9.) Defendant Watson negotiated and prepared these employment agreements on behalf of defendant Conley and himself. (*See id.*)

Shea negotiated to have the merger clause in the Acquisition Agreement supersede any other choice of law, governing law, arbitration or mediation clauses contained in earlier dated employment agreements since the merger clause applied not only to the Acquisition Agreement itself, but also to all of the Schedules and Exhibits thereto, including the earlier dated employment agreements for Watson and Conley.

## ARGUMENT

## I

## THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT CONLEY

The law is well settled that parties can consent to personal jurisdiction by means of a forum selection clause. *See D.H. Blair & Co., Inc v. Gottdiener*, 462 F.3d 95, 103 (2nd Cir. 2006). Further, forum selection clauses are presumptively valid and routinely enforced. *See J.B. Harris, Inc. v. Razei Bar Industries, LTD*, 181 F.3d 82 (2nd Cir. 1999); *Brassica Protection Products LLC v. Caudill Seed & Warehouse Co., Inc.* 2007 WL 4468655 (S.D.N.Y. Dec. 19, 2007); *Remsen Funding Corp. v. Ocean West Holding*

*Corp.,* 2007 WL 3254403 (S.D.N.Y. Nov. 1, 2007). There is no argument that the forum

selection clause in the Acquisition Agreement is a valid and enforceable clause.

Defendant Conley's only argument is that because she is not a signatory to the

Acquisition Agreement, she cannot be bound. However, as fully explained below, this

argument lacks merit.

The fact that defendant Conley is not a signatory to the Acquisition Agreement is

not dispositive. A mandatory forum selection clause, such as the one in issue here,

confers an exclusive jurisdiction on the designated forum. Courts often find forum

selection clauses binding on non-signatories. *See Nanopierce Technologies, Inc. v.*

*Southridge Capital Management LLC,* 2003 WL 22882137 (S.D.N.Y. Dec. 4, 2003);

*Weingard v. Telepathy, Inc.*, 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005); *Burrows Paper*

*Corp. v. Moore & Assoc.*, 2007 WL 2089682 (N.D.N.Y. July 20, 2007).

A party opposing enforcement of selection clause must show that the provision is:

> [U]njust and unreasonable by showing that:  1) the clause was a result of
> fraud or overreaching; or 2) enforcement would contravene the strong
> public policy of the forum in which suit is brought; 3) trial in the
> contractual forum will be so gravely difficult and inconvenient that [the
> party] will be deprived of his day in court.

*Reino De Espa A v. American Bureau of Shipping, Inc.*, 2008 WL 36797 (Jan. 2,

2008)(*citing Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).)

In order for a non-signatory to be bound by a forum selection clause, the non-

signatory "must be 'closely related to the dispute such that it becomes 'foreseeable' that it

will be bound." *Nanopierce Technologies, Inc., supra,* 2003 WL 22882137 at *5 (*citing*

*Lipcon v. Underwriters at Lloyd's London,* 148 F.3d 1285, 1299 (11th Cir. 1998).

8

"'[I]t is well established that a 'range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" *Weingard, supra*, 2005 WL 2990645 at *5. Further, as noted by the Court in *Weingard*:

> Other Circuits have held that a contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims "ultimately depend on the existence of a contractual relationship: between the signatory parties, *Coastal Steel Corp.*, 709 F.2d at 203, or if "resolution of the claims relates to interpretation of the contract," *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988), or if the tort claims "involve the same operative facts as a parallel claim for a breach of contract." *Lambert v. Kysar*, 983 F/2d 1100, 1121-22 (1st Cir. 1993).

*Id.* at *5. Here, the tort claims asserted against defendant Conley, *i.e.* fraud and breach of fiduciary duty, depend on the existence of contractual relation between the parties.

In *Weingard, supra*, the forum selection clause was contained in Registration and Service Agreements plaintiff signed with one of the defendants for the use of weingard.com domain. Plaintiff brought an action against several other defendants alleging that they acted in concert to deprive him of weingard.com domain name he acquired through the Registration Agreement and subsequent Service Agreement with defendants and involvement in any scheme to cybersquat or otherwise infringe on his rights. The Court found that based on the close relationship between the defendants and substantially identical claims asserted against them, the non-signatories defendants could enforce the forum selection clause that was contained in plaintiff's agreement with only one defendant.

In *Nanopierce, supra*, the dispute arose from a stock purchase agreement containing a forum selection clause. One of the individual counter-claim defendants, moved to dismiss the counter-claim for lack of personal jurisdiction and improper venue

because she was not a party to the stock purchase agreement. The allegations against her were based on signing a registration statement which contained false and misleading assertions and omissions of material facts. The Court found that as the Chief Financial Officer, she was "closely related" to the transaction "that it was foreseeable that she would be bound by the Forum Selection Clause in the Purchase Agreement." 2003 WL 22882137 at *6.

Similarly here, the forum selection clause is biding on defendant Conley. As alleged in the complaint, defendant Conley and defendant Watson acting in concert made representations which they knew were false and which induced plaintiffs to enter into the Acquisition Agreement. Defendant Conley was the senior sales executive in a case focused on fraudulent representations of sales. Defendant Conley, as Vice President of Strategic Accounts worked very closely with defendant Watson to develop financial projections which she knew would be relied on by plaintiffs in consummating the Acquisition Agreement. Therefore, she was "closely related" to the transaction that it "was foreseeable that she would be bound" by the forum selection clause in the Acquisition Agreement.

The forum selection clause in the Acquisition Agreement is a broad clause and does not contain any limitations. Plaintiffs' entire business relation with defendants stems from the Acquisition Agreement which is the overarching agreement governing the relationships between these parties. Any determination with respect to plaintiffs' claim of fraud will require the consideration of that contract. A fair reading of the forum selection clause is that it encompasses all the claims asserted in this action as they arise out the relationship formed by the parties under the Acquisition Agreement. Therefore,

10

the Court has personal jurisdiction over defendant Conley by virtue of the forum selection clause in the Acquisition Agreement.

II

## THE COURT SHOULD DENY DEFENDANT CONLEY'S MOTION TO COMPEL ARBITRATION

### A.    There Is No Valid Arbitration Agreement Between Plaintiffs and Defendant Conley

Defendant Conley argues that the Court should stay this action pursuant to Section 3 of the Federal Arbitration Act because plaintiffs are required to arbitrate the claims asserted against her in this action. However, the arbitration clause in defendant Conley's Employment Agreement is not enforceable because it was superseded by the forum selection clause of the Acquisition Agreement.

In deciding whether to stay proceedings in favor of arbitration under the Federal Arbitration Act, the Court must first determine (1) whether the parties agreed to arbitrate, and (2) whether the scope of that agreement encompasses the claims. *See Oldroyd v. Elmira Savings Bank*, 134 F.3d 72, 75 (2nd Cir. 1998). "In making such determinations, a court is to employ ordinary contract principles. . . ." *Conway v. Icahn & Co.*, 787 F. Supp. 340, 344 (S.D.N.Y. 1990). Here, any agreement to arbitrate with defendant Conley has been superseded by the Acquisition Agreement.

Conley admits that on or about June 26, 2007, she entered into an Employment Agreement with Bravera, Inc. (*See* Conley Affid. at ¶ 14.) It is indisputable that the Acquisition Agreement, pursuant to which Conley became an employee of Bravera, Inc., did not become effective until July 17, 2007, the date the merger documents were filed

11

with various state authorities. (*See* Mooney Decl at ¶ 4.) The Acquisition Agreement

contains a merger clause which expressly provides in relevant part that:

> 9.2    Entire Agreement.    This Agreement *supersedes* all prior
> discussions and agreements between the parties with respect to the subject
> matter hereof and thereof and contains the sole and entire agreement
> between the parties hereto with respect to the subject matter hereof and
> thereof.

(*See* Mooney Decl. at ¶ 7)(emphasis added.) The Acquisition Agreement does not

contain an arbitration provision.

Clearly, the Acquisition Agreement in issue here was a negotiated agreement

where the parties were represented by counsel. Defendant Conley does not dispute that

the forum selection clause of the Acquisition Agreement is valid and controls this

litigation.[2]

Under New York law, which is applicable to the Acquisition Agreement, a court

construing a contract should strive to give effect to the intentions of the parties as

expressed in the terms of the contract. *See Walace v. 600 Partners Co.*, 89 N.Y.2d 543,

634 N.Y.S.2d 669 (1995). The merger clause ensures that the written contract is the

complete agreement. "The merger clause accomplishes this purpose by evincing the

parties' intent that the agreement 'is to be considered a completely integrated writing.'"

---

[2] Indeed, defendant Watson, who negotiated the Acquisition Agreement as well as the Senior Management Employment Agreements for himself and Conley, has conceded that the forum selection clause superseded the arbitration clause of the Senior Management Employment Agreements. On January 15, 2008, Watson commenced an action in the Supreme Court, New York County against plaintiffs in this action based on Bravera's alleged breach of his Employment Agreement and asserted as the basis of jurisdiction paragraph 9.11 of the Agreement and Plan of Merger. (*See* New York County Complaint, Exhibit A to Mooney Decl. at ¶ 13). In addition, Watson implied that the arbitration clause in the Employment Agreement was superseded by the choice of forum agreement in the Acquisition Agreement when he brought a 12(b)6 motion in this action without moving to compel arbitration.

*Jarecki v. Shung Moo Louie,* 95 N.Y.2d 665, 722 N.Y.S.2d 784 (2001). As a result of the extensively negotiated Acquisition Agreement, which did not become effective until July 17, 2007, the forum selection clause of the Acquisition Agreement superseded the arbitration provision in defendant Conley's Employment Agreement. As stated in the Mooney Declaration, the intent of the merger clause in the Acquisition Agreement was to supersede any other choice of law, governing law, arbitration or mediation clauses contained on any earlier dated agreements, including defendant Conley's Employment Agreement which was annexed as Schedule 1.14 Part II to the Acquisition Agreement.

Further, to the extent that the two agreements conflict, the terms of the Acquisition Agreement govern. *Cf Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278 (2nd Cir. 2005). In *Bank Julius Baer & Co., Ltd.*, the agreements in issue containing arbitration clause were the Bank's forms executed in connection with a loan agreement. These account opening documents containing broad arbitration clauses governed the relationship between the parties. The Second Circuit reversed the District Court's order denying the Bank's motion to compel arbitration and found that the subsequently executed collateral agreements pledging assets to secure the loans containing merger and forum selection clauses did not supersede prior arbitration agreements.

Here, the facts are clearly distinguishable. The basic business relationship between the parties here is clearly governed by the negotiated Acquisition Agreement and not by the collateral Senior Management Employment Agreement. The Acquisition Agreement contains unambiguous forum selection and merger clauses. Therefore, any clauses in defendant Conley's Senior Management Employment Agreement as well as

13

defendant Watson's Senior Management Employment Agreement, which were annexed as Schedules 1.14 Part II to the Acquisition Agreement, to the extent they conflict with the Acquisition Agreement, have been superseded. [3]

**B.    Even If Not Superseded by the Acquisition Agreement, the Arbitration Clause in the Employment Agreement Does Not Apply to the Claims in this Action Arising Out of Defendant Conley's Conduct Prior to the Effective Date of the Merger**

"While federal policy generally favors arbitration, the obligation to arbitrate nevertheless remains a creature of contract." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2nd Cir. 2001). Thus, a party cannot be required to submit to arbitration any dispute that is not within the scope of the arbitration agreement. In deciding whether the dispute is within the scope of the arbitration agreement, the courts first must determine whether the arbitration clause is either broad or narrow. *See id.* Even when it is determined the arbitration clause is broad, the court will not compel arbitration unless the allegations underlying the dispute "implicate[] issues of contract construction or the parties' rights and obligations under it." *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 23 (2nd Cir. 1995). Therefore, claims based on defendant Conley's conduct prior to the formation of the Employment Agreement clearly do not fall within the scope of the Employment Agreement even in view of a broad arbitration clause.

---

[3] Also superseded is the forum selection clause in the Employment Agreement because it conflicts with the choice of law provision of the Acquisition Agreement. Interestingly, defendant Conley does not ask that arbitration be enforced as written. Defendant argues that the Court should sever the claims against her and transfer the case to South Carolina, not to Florida as provided in her Employment Agreement

.

Plaintiffs allege in their claims against defendant Conley that she together with defendant engaged in a fraudulent scheme that induced plaintiffs to enter into the Acquisition Agreement. Defendant Conley's misrepresentations and misleading statements did not arise under the Employment Agreement.

Defendant's duties and obligations under the Employment Agreement did not commence until the effective date of the merger, *i.e.* July 17, 2007. Plaintiffs' claims of fraud and breaches of fiduciary duty are based on defendant Conley's conduct which occurred between April and July 17, 2007. (*See* Complt. at ¶¶ 40-51.) None of these claims asserted in the complaint "implicate issues of contract construction or the parties' rights and obligations under it."

The cases relied on by defendant Conley are readily distinguishable. In *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2nd Cir. 1997), plaintiffs commenced an action alleging that the defendant defaulted under the agreement containing the arbitration clause. Plaintiffs argued that because the arbitration clause proved that disputes over the terms of the agreement or claims of reach would be submitted to arbitration, an allegation of default under the agreement was not within the scope. The Second Circuit rejected plaintiff's argument and held that the dispute "at the very least raise[d] issues that 'touch matters' covered by the Agreement." *Id.* at 75 (*citing Genesco*, 815 F.2d at 846.) Here, the allegation of misrepresentations and providing false financial information to plaintiffs by defendant Conley in concert with defendant Watson, prior to the merger are chronologically distinct, deal with different rights, give rise to different causes of action and therefore do not "touch matters" covered by the Employment Agreement.

15

In *Alemac Insurance Services, Inc. v. Risk Transfer Inc.*, 2003 WL 22024070 (S.D.N.Y. Aug. 28, 2003), the claims involved allegations of breach of contract and breaches of fiduciary duty which arose while two separate agreements, only one of which contained an arbitration clause, were being performed. The Court found that the claims arose directly from the parties' implementation and management of both agreements and fell within the scope of the 'parties' broad arbitration agreement. Here, however, it is not the "implementation" or "management" of Defendant Conley's Employment Agreement is in issue but the misrepresentations and other misconduct prior to her performance under the Employment Agreement. The allegations in the complaint relate to the existence of the Acquisition Agreement and not the Employment Agreement. (See Defendant Conley Memorandum of law at p. 14-15.)[4]

## C.    The Court Should Deny Defendant Conley's Motion to Stay

Even if the Court were to find that the arbitration clause in the Employment Agreement between Bravera and defendant Conley is enforceable, the Court should still deny defendant Conley's motion to stay. This action was commenced by Shea and IP Holding, neither of which is a party to the Employment Agreement. The claims alleged by these two plaintiffs are based on conduct which occurred prior to the Acquisition Agreement and certainly prior to the time defendant Conley commenced her performance under the Employment Agreement. The litigation of these claims would not result in inconsistent rulings. Indeed, any arbitration of claims against defendant Conley in connection with her performance under the Employment Agreement would not involve

---

[4] Defendant Conley attaches as Exhibit F to her Affidavit in Support of Motion a letter from plaintiffs' counsel marked "Confidential: For Settlement Purposes Only." The Court should disregard this Exhibit as well as any references to it in defendant Conley's memorandum of law as totally inappropriate.

litigation of claims arising prior to that. Therefore, continuing with the litigation would not adversely affect the arbitration proceedings and risk inconsistent rulings.

## III

### THE COURT SHOULD DENY DEFENDANT CONELY'S MOTION TO SEVER THE CLAIMS AND TRANSFER THE ACTION TO THE U.S. DISTRICT COURT OF SOUTH CAROLINA

Neither severance of the claims not the transfer to the District Court of South Carolina would materially advance the administration of justice. This diversity action has been properly brought in the District Court for the Southern District of New York based on the mandatory forum selection clause of the Acquisition Agreement. As explained above, this mandatory forum selection clause is binding on defendant Conley. Therefore, by virtue of the forum selection clause, venue is proper in this district under 28 U.S.C. § 1391 with respect to claims asserted against defendant Conley as well.

The decision whether to sever a party or claim from an action is within the broad discretion of the district court. *See Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988).[5] Generally, in making such a determination whether to sever, the court considers: (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted. *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y.1995). The Court also evaluates

---

[5] It is not clear from defendant Conley's memorandum what are the legal basis on which the motion to sever is based. Also, absent is any analysis of factual basis which would support the proposed severance.

whether severance will further the aims of justice and fairness and will promote judicial

economy while avoiding the cumulative presentation of evidence. *See In re Merrill Lynch*

*& Co., Inc. Research Reports Securities Litig.,* 214 F.R.D. 152, 155 (S.D.N.Y.2003).

Defendant Conley has failed to address any of the elements, therefore, her motion should

be denied.

      As alleged in the complaint, defendant Conley acted in concert with defendant

Watson to perpetrate fraud on plaintiffs.  Defendant Conely's misrepresentations and

knowingly false financial projections prepared for defendant Watson which induced

plaintiffs to enter into the Acquisition Agreement, are the gist of plaintiffs' claim against

her.  The theory and proof is the same as to both defendants.  Severance of claims against

defendant Conley would neither serve the interests of justice nor further the prompt and

efficient resolution of this litigation. There are numerous questions of law and fact

common to plaintiffs' claims against both defendants. Therefore, where, as here,

defendant Conley's co-defendant Watson's involvement in the controversy is not

"secondary" or "peripheral", severance is not proper.  1A Fed. Proc., L. Ed. § 1:855,

*Change of Venue*; *Bell v. Classic Auto Group, Inc.*, 2005 WL 659196 (S.D.N.Y. March

21, 2005)(denying motion to sever the Court stated: "[w]hen the conduct of a co-

defendant as to whom venue is proper is central to the issues raised by the plaintiff

against those subject to transfer, the grant of a severance would not ordinarily be

consistent with the sound exercise of discretion.") (*Citing Cottman Transmission*

*Systems, Inc. v. Martino,* 36 F.3d 291, 296 (3rd Cir. 1994)

      The case defendant Conley relies on is clearly not applicable.  In *Wyndham*

*Associates v. Bintliff*, 398 F.2d 614 (2nd Cir. 1968), the Court held that severance and

18

transfer was appropriate to Texas where a number of related cases already had been

initiated, and in light of the fact that the defendants not subject to transfer were only

peripherally involved in the allege securities laws violations.   As the Court stated in

*Wyndham Associates*:

> A district court may properly sever the claims against one or more
> defendants for the purpose of permitting the transfer of the action against
> the other defendants, at least in cases where, as here, the defendants as to
> whom venue would not be proper in the transferee district are alleged to
> be only indirectly connected to the manipulations which form the main
> subject matter of the action.

398 F.2d at 618.  Here, as is clear from plaintiffs' pleadings, there is very little distinction

in the conduct of the two defendants.  Therefore, administration of justice would not be

materially advanced by severance and transfer. *See Levine v. FDIC*, 136 D.R.D. 544, 550

(D. Conn. 1991)(severance disfavored when claims to be severed arise out of same

transaction as those claims remaining in the main action because such creates duplicative

litigation.)

Similarly, a motion to transfer venue is not appropriate here. The party moving

for a change of venue bears the burden of establishing by clear and convincing evidence

that transfer is appropriate. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp.2d 45, 56

(S.D.N.Y. 2001).

The factors considered by courts in the Second Circuit when deciding whether to

transfer a case include: "(1) the convenience of witnesses; (2) the location of relevant

documents and the relative ease of access to sources of proof; (3) the convenience of the

parties; (4) the locus of the operative facts; (5) the availability of process to compel

attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's

familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum;

and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *American Eagle Outfitters, Inc. v. Tala Brothers Corp.*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006) "There is no rigid formula for balancing these factors and no single one of them is determinative" in what is "essentially an equitable task left to the Court's discretion." *Citigroup, Inc. v. City Holding Co.,* 97 F. Supp. 2d 549, 561 (S.D.N.Y.2000).

However, even though not dispositive, "[t]he presence of a forum-selection clause such as the parties entered into in this case will be significant factor that figures centrally in the district court's calculus." *Beatie and Osborn LLP v. Patriot Scheintific Corp.*, 431 F. Supp. 2d 367, 395 (S.D.N.Y. 2006)(*citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In *General Capital Partners LLC v. Liberty Ridge,* LLC, 2007 WL 3010028 (S.D.N.Y. Oct. 12 2007), addressing motion to transfer pursuant to § 1404(a), the Court expressly stated:

> An additional factor to consider is the existence of a forum selection clause. In New York, forum selection clauses "are prima facie valid absent a showing they were signed as a result of fraud or overreaching, that they are unreasonable or unfair, or that enforcing them would contravene a strong public policy of the forum." (*Citing Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230, 233 (S.D.N.Y. 1993)

In addition, "[m]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equipment,* 980 F.2d 110, 117 (2nd Cir. 1992). Here, defendant Conley has failed to show by a clear and convincing evidence that transfer of this action to South Carolina is warranted.

Defendant Conley failed to submit detailed factual statements including information on the identity of potential principal witnesses and a statement as to their testimony. *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp.2d 203, 208

20

(S.D.N.Y. 1998). "Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are insufficient basis upon which to grant a change of venue under § 1404(a)." *Id.* at 208-209. Here, defendant Conley's conclusory statements without naming any witnesses and failure to specify their testimony weighs in favor of the action remaining in this District.

Defendant Conley's argument that the locus of operative facts and the location of documents militates strongly for transfer has no merit.

First, the merger in issue here was a result of extensive negotiations which took place in various locations including South Carolina, New York, Florida and Virginia. (Plaintiffs respectfully request that the Court take judicial notice of Declaration of Francis E. Wilde, Chairman and Chief Executive Officer of Riptide Worldwide, Inc., executed on January 30, 2008, which has been filed in this action in opposition to defendant Watson's motion to dismiss for lack of subject matter jurisdiction and which is now part of the Court's record; see No. 20 on the Court's docket.) Mr. Wilde, on behalf of Shea negotiated this merger including the forum selection clause which specifically identified New York as the appropriate forum in which any proceedings arising from or out of the Acquisition Agreement would be brought.

Second, the location of documents and records "is not a compelling consideration when records are easily portable." *American Eagle, supra*, 457 F. Supp. 2d at 478 (*citing Astor Holdings, Inc. v. Edward Roski III*, 2002 WL 72936 at *12 (S.D.N.Y. Jan. 17, 2002). The documentary evidence consists mainly of e-mails, software applications which are all electronic and therefore very portable. Moreover, because the key

witnesses are located all over the country there is no central repository where the documents and records are located.

This action is not local to any particular jurisdiction. Shea has a principal place of business in Oviedo, Florida and has operations in Texas and Georgia. Bravera's business operations are located in Florida and South Carolina. Prior to the merger, through at least September 2007, Bravera conducted most operations out of a facility in Reston, Virginia. (*See* Mooney Decl. at ¶ 11.)

Plaintiffs seeks in this action damages for defendants' fraudulent misrepresentation as to the number and value of sales contracts in Bravera's sales "Pipeline" and false and fraudulent estimating of its sales. Therefore, the key witnesses in this action are Bravera's customers. These customers are located all over the country. These witnesses have knowledge of pre and post merger contacts with defendants. They are expected to testify about the dates when they awarded the contracts to Bravera or its competitors as well as the dates when these customers notified Watson and Conley of the fact that virtually all of these contracts were going to be awarded to Bravera's competitors. Conley herself worked with customers in several eastern states including the Washington, D.C. metropolitan area. (*See* Mooney Decl. at ¶¶ 12 and 15.)

Bravera's former employees are still residing in the Reston, Virginia area and defendant Watson conducts his business in the Washington, D.C. metropolitan area, South Carolina and Florida. (*See* Mooney Decl. at ¶¶ 13 and 14.)

In addition, Bravera's customers would also have knowledge of Watson's and Conley's more recent violations of the non-competition clauses in defendants' employment agreements. (*See* Mooney Decl. at ¶ 12.)

22

Pursuant to the forum selection clause, the governing law is the law of New York. Defendant Conley's argument that the New York choice of law does not apply to her is unavailing. As stated above, any provisions in conflict with the provisions of the Acquisition Agreement have been superseded by the merger clause of the Acquisition Agreement.[6]

Azari v. B&H Photo Video, 2007 WL 13101 (S.D.N.Y. Jan. 3, 2007), relied on by defendant Conley, is distinguishable. In Azari, there was no valid and enforceable forum selection clause. The main reason for plaintiffs wanting to keep the action in New York the location of their attorneys. Here, the parties negotiated a mandatory forum selection clause which expressly requires that the action be brought in New York. The Acquisition Agreement was negotiated in several states and the parties expressly chose New York as the forum where to resolve their disputes. Although not dispositive, the forum selection clause "weighs in favor of keeping the action in this district." General Capital Partners LLC v. Liberty Ridge LLC, 2007 WL 3010028 at *4 (S.D.N.Y. Oct. 12, 2007). Therefore, where, as here, the transaction in issue involves several jurisdictions, and the witnesses are located all over the country, a deference should be accorded to plaintiffs' choice of forum based on agreed upon by the parties forum selection clause.

---

[6] In fact, it is disingenuous for Defendant Conley to argue for transfer to the District Court of South Carolina and at the same time argue that her Employment Agreement has a mandatory arbitration clause and a choice of law provision which mandates the application of Florida law and requires that an arbitration proceeding be brought in the State of Florida.

## CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court deny defendant Conley's motion in its entirety together with such other and different relief as the Court deems just and proper.

Dated: New York, New York
         February 25, 2008

                                    Respectfully submitted,

                                    Dunnington, Bartholow & Miller LLP


                                    By: ___/s/_____
                                          Thomas V. Marino (TM 7397)
                                          Attorneys for Plaintiffs
                                          477 Madison Avenue – 12th Floor
                                          New York, New York 10022
                                          (212) 682-8811