UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

SHEA DEVELOPMENT CORP., BRAVERA,
INC., and IP HOLDING OF NEVADA CORP.

                            Plaintiffs,                  07 CV 11201 (DLC)(GWG)

     -against-

CHRISTOPHER WATSON and
ELIZABETH ANNE CONLEY

                            Defendants.
───────────────────────────────────────────

**DEFENDANT ELIZABETH ANNE CONLEY'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; OR IN THE ALTERNATIVE, MOTION TO STAY AND REFER ALL CLAIMS TO ARBITRATION; OR IN THE ALTERNATIVE, FOR TRANSFER OF VENUE TO SOUTH CAROLINA.**

                                      Donald A. Derfner (DD 0696)
                                      David P. Gillett (DG 5305)
                                      600 Third Avenue, 26th Floor
                                      New York, New York 10016
                                      (212) 697-8100

                                      Terry Ann Rickson
                                      Anne E. Mjaatvedt
                                      102 Wappoo Creek Drive, No. 8
                                      Charleston, South Carolina 29412
                                      (843) 722-1500
                                      (Applications for Admission Pro Hac Vice pending)

                                      Allan R. Holmes
                                      Gibbs & Holmes
                                      171 Church Street, Suite 110
                                      Charleston SC 29402
                                      (843) 722-0033
                                      (Application for Admission Pro Hac Vice pending)

                                      *Attorneys for Defendant Elizabeth Anne Conley*

March 6, 2008

**TABLE OF CONTENTS**

INTRODUCTION ………………………………………………………………….. 1

ARGUMENT ………………………………………………………………………. 2

    I. Conley is not a party to the Acquisition Agreement or its forum selection clause and thus is not subject to New York jurisdiction……………………………………... 2

    II. An Employment Agreement governs Conley's relationship with Plaintiffs and contains an arbitration clause, so Plaintiffs must submit their claims to arbitration….. 5

    III. Alternatively, even if Conley is deemed to be a party to the Acquisition Agreement, her Employment Agreement is incorporated, and its arbitration provision takes precedence over the Acquisition Agreement choice of forum clause.. 6

        A. If Conley is party to the Acquisition Agreement, it contains both a forum selection and an arbitration clause, and the arbitration clause prevails………….. 6

        B. As the Acquisition Agreement and Employment Agreement came into effect simultaneously, the Employment Agreement is not a prior agreement and therefore not superseded………………………………………………………….. 8

        C. Contrary to Plaintiffs' assertions, Conley was not represented, did not negotiate for, and has never conceded the validity of the forum selection clause in the Acquisition Agreement as applied to her……………………………... 8

    IV. The arbitration clause in Conley's Employment Agreement covers all issues in dispute between Plaintiffs and Conley………………………………………………….. 9

    V. If this Court finds that jurisdiction resides with the Federal District Courts, the District Court of South Carolina is the proper venue………………………………… 10

CONCLUSION…………………………………………………………………………. 10

# INTRODUCTION

Defendant Conley was an innocent bystander to a "busted deal" in a corporate merger. Plaintiffs dragged her into this suit for the improper purpose of neutralizing her as a potential witness for Defendant Watson.

Conley's principal duty at Bravera, Inc. was to sell Bravera software, before, during and after the merger at issue in this litigation. At all times she acted only as an employee under the direction of her supervisors at Bravera. As more fully described in her Memorandum in Support of her Motion to Dismiss, Affidavit and accompanying exhibits (ECF documents 13,14), she was one of six sales people at pre-merger Bravera, and responsible only for her own customers.

Conley was not a party to the Acquisition Agreement, with its New York forum selection clause. She did not negotiate the Acquisition Agreement, never saw it until after her termination, and she was not a signatory. On these grounds, this Court has no basis for personal jurisdiction against Defendant Conley, and should dismiss the case against her.

Defendant Conley also presented alternative motions in the event this Court retain jurisdiction. Apparently, Plaintiffs ignored the alternative nature of these arguments, and incorrectly tried to use these alternate motions as part of their circuitous arguments in their response in opposition. The only forum selection clause that Conley agreed to is contained in her Employment Agreement. Her Employment Agreement, incorporated into the Acquisition Agreement, contains a mandatory arbitration clause. If this Court retains jurisdiction rather than dismiss outright, it should stay the action against her and refer all of her claims to arbitration pursuant to the contract. In the second alternative, this Court should transfer the claims against Conley to South Carolina to "further the aims of justice and fairness".

1

# ARGUMENT

**I.   Conley is not a party to the Acquisition Agreement or its forum selection clause and thus is not subject to New York jurisdiction.**

Plaintiffs' entire argument is based on the idea that Defendant Conley is jurisdictionally bound by a forum selection clause contained in an Acquisition Agreement to which she was not a party and upon which she makes no claim.  However, Conley simply cannot be bound by a forum selection clause in an agreement that she did not negotiate, never saw until after her termination, and to which she was not a signatory.[1]

Plaintiffs are correct that courts can find forum selection clauses binding on non-signatories under certain circumstances. Defendant Conley has already made that point by providing case law that requires the non-signatory Plaintiffs in this case — Shea Development and IP Holding — to submit their claims to an arbitral forum. (Def. Conley Memo. in Supp. at 14).  An essential predicate to these authorities is that a contractual relationship exists between the parties.  An arbitral forum clause is but one form of forum selection, and the admonishment of our Supreme Court in the context of the arbitral forum holds true for all forum selection clauses "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S.Ct. 1347 (1960).

---

[1] Additionally, Defendant finds it amusing that Plaintiffs seem to have taken Conley's argument in support of holding the non-signatory Plaintiffs to the arbitration clause located in Conley's Employment Agreement and are now attempting to use the argument to enforce a forum selection clause against Conley.  Plaintiffs have made claims against Conley, which are based upon, or related to, the Employment Agreement.  Conley makes no claims under the Acquisition Agreement.  Indeed, she has no claim to make.  Plaintiffs' claims bind them to the Employment Agreement and its arbitral forum selection clause.  This logic cannot be  "reversed" so as to bind Conley to the Acquisition Agreement.  Even if Conley were somehow found to be a party to the Acquisition Agreement, that Agreement ratified the arbitral forum because her Employment Agreement was appended the Acquisition Agreement.  This unambiguously makes the Employment Agreement and the arbitral forum applicable to disputes between the Plaintiffs and Conley.  If the existence of  "two Agreements" were somehow deemed to have created an ambiguity, that ambiguity would be resolved in favor of arbitration under the Employment Agreement. *See Israel v. Chabra*, 04 Civ. 4599, 2005 U.S. Dist. LEXIS 3858, at *14 (S.D.N.Y. Mar. 11, 2005) (holding that where there is an arbitration clause and a competing forum selection clause, the arbitration clause "wins"). This will be discussed further in § III, *infra*.

At best, the cases cited by the Plaintiffs are permutations of these principles. At worst, they are irrelevant. Two unpublished cases are called into service as the main support for the Plaintiffs' position: *Weingrad v. Telepathy, Inc.*, 05 Civ. 2024, 2005 US Dist. LEXIS 26952 (S.D.N.Y. Nov. 7, 2005), and *Nanopierce Technologies, Inc. v. Southridge Capital Management, LLC*, 02 Civ. 0767, 2003 US Dist. LEXIS 21858 (S.D.N.Y. Dec. 4, 2003). Neither case supports the contention that Conley is bound by the forum selection clause in the Acquisition Agreement.

*Weingrad* is not on point. It does not require the non-signatory party to accept the application of the forum selection clause; rather the court allowed **other non-signatory defendants to enforce the forum selection clause against the plaintiff**. *Weingrad*, 2005 US Dist. LEXIS 26952, at *15-17.

In the present case, the Plaintiffs are attempting to hold Conley, a non-signatory, to a forum selection clause which she did not negotiate, to which she did not agree, and of which she had no knowledge. Rather than allowing non-signatory defendants to use a forum selection clause to their advantage against the complainant as in *Weingrad*, Plaintiffs here are bringing an action against a non-signatory and attempting to enforce a forum selection clause for its own benefit. The reasoning behind the court's decision in *Weingrad* is inapplicable to the present case and lends no support to binding Conley to the forum selection clause. *See id*. As Plaintiffs state, "The Court found that based on the close relationship between the defendants and substantially identical claims asserted against them, the non-signatories [sic] defendants **could** enforce the forum selection clause that was contained in plaintiff's agreement with only one defendant." (Pls. Memo in Opp. at 9) (emphasis added). Similarly, Conley **could** enforce the forum selection clause contained in the Acquisition Agreement if she so chose, but she does not. Plaintiffs cannot enforce it against her.

3

*Nanopierce* involved a stock purchase agreement containing a forum selection clause. The unpublished opinion cited by the Plaintiffs is the last of three. The principal claim against the non-signatory — the Chief Financial Officer of the stock issuing corporation — is a 10(b)(5) securities claim based upon the CFO's material misrepresentations in the stock registration document that was a predicate to the stock purchase agreement. The CFO, a counterclaiming defendant, sought dismissal for lack of personal jurisdiction and improper venue because she was not a party to the stock purchase agreement. However, there, the CFO had a duty to provide correct information under security regulations (*Nanopierce*, 2003 US Dist. LEXIS 21858 at *14-15) where her official participation was essential to enable the sale of stock under the purchase agreement. Her actions were alleged to violate the securities laws that specifically regulated both her participation in the sale and the sale itself. Based on these facts, the court held that the CFO was "closely related" to the transaction, that "it was foreseeable that she would be bound by the forum selection clause," and denied her motion. *Id.* at *16-19. The reasoning supporting this holding is legally indistinguishable from that which would support a finding of estoppel or agency. The CFO used her corporate office to weld herself into a series of regulated securities transactions that cannot be separated from each other. Her participation in the registration statement estops her from disclaiming the purchase agreement. Similarly, her official corporate agency in these transactions renders her a party to the final document.

Conley's case is clearly distinguishable. Conley was at all times merely an employee of Bravera who extracted data from time to time as requested by her supervisor, Watson, from a sales tracking software program.[2] (Def. Conley Memo. in Supp. at 5). She made no material misrepresentations or omissions to Plaintiffs. She had neither an official nor unofficial role in the corporate transaction, nor did she participate in the due diligence conducted by the Plaintiffs, or

---

[2] In fact, Plaintiffs provide no factual support that Exhibit B of the Complaint was provided by Conley.

4

to the establishment of any necessary predicate to the sale or merger of the company. Her principal duty at all times was the sale of the Bravera product, before, during and after the merger. As she was not "closely related" to the merger transaction, it was not "foreseeable that she would be bound" by the forum selection clause in the Acquisition Agreement. (Pls. Memo. in Opp. at 9).

"A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Id.* (quoting *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir. 1998)). Conley's interests were not directly related to or derivative of the Acquisition Agreement. She had no stake in Bravera. She was not a beneficiary of the merger, she was merely to continue on as an employee of Plaintiffs after the merger. Beyond continued employment, she had no expectation or interest and had every expectation that her employment would continue without the merger. Contrary to Plaintiffs' assertion that their relationship with Conley was governed by the Acquisition Agreement, her relationship with Plaintiffs was governed by a separate employment contract, to which she and Plaintiffs were both signatories, and which requires submissions of the parties disputes to the arbitral forum.

**II.    An Employment Agreement governs Conley's relationship with Plaintiffs and contains an arbitration clause, so Plaintiffs must submit their claims to arbitration.**

Perhaps the most significant distinction between this case and any cited by the Plaintiffs is that only this case has an agreement signed by the parties which requires submission of their disputes to an arbitral forum. Plaintiffs have cited no case in which two agreements existed, one with an arbitration clause and the other with some other type of forum selection clause, in which the parties were not referred to arbitration. In fact, the express holding of the only "two agreement" case cited by the Plaintiffs is completely contrary to their position. Consequently,

the "authority" for their position is their attempt to distinguish an adverse holding. Defendant Conley is a party only to her Employment Agreement. This agreement, between Conley and Bravera, negotiated by Shea and admittedly incorporated into the Acquisition Agreement, contains a mandatory arbitration clause. Rather than rewrite the arguments in support of submitting these claims to arbitration, Defendant Conley simply makes reference to the applicable portion of her Memo in Supp. at 12-14. The arbitration clause in Conley's employment agreement is broad enough to cover all disputes. Because it is the only agreement to which she and Plaintiffs are parties, Plaintiffs must submit their claims to arbitration.

**III.    Alternatively, even if Conley is deemed to be a party to the Acquisition Agreement, her Employment Agreement is incorporated, and its arbitration provision takes precedence over the Acquisition Agreement choice of forum clause.**

As Plaintiffs note, the Acquisition Agreement contains a merger clause expressly providing that it supercedes all "prior discussions and agreements between the parties with respect to the subject matter hereof . . ." (Pls. Memo. in Opp. at 12). Plaintiffs then mistakenly claim that the Acquisition Agreement does not contain an arbitration clause. *Id*.

A. <u>If Conley is party to the Acquisition Agreement, it contains both a forum selection and an arbitration clause, and the arbitration clause prevails.</u>

Conley's Employment Agreement was made a part of the Acquisition Agreement by Plaintiffs expressly incorporating it as an exhibit to the Acquisition Agreement. Therefore, the arbitration provision contained in the Employment Agreement is also a part of the Acquisition Agreement and at the very worst creates an ambiguity between the New York forum selection clause and the arbitration clause. As argued *infra,* the adoption of the Employment Agreement actually eliminates any ambiguity: the parties to the Acquisition Agreement intended the arbitration clause and the Employment Agreement to apply to any disputes between Ms. Conley and the Plaintiffs. This is the only fair reading to be had within the four corners of the

6

document.[3]  Again, Conley does not believe that she is a party to this Acquisition Agreement, but even if she were, the arbitration provision would control forum selection. This would be true even if the existence of both clauses created an ambiguity. *See Israel v. Sabra*, 04 Civ. 4599, 2005 U.S. Dist. LEXIS 3858 (S.D.N.Y. Mar. 11, 2005).

*Israel* dealt with a forum selection clause and a competing arbitration clause. The court had to determine whether "the arbitration provision or a competing forum selection clause 'wins'":

> In answering this question of first impression, Judge Haight ruled, and I agree, that "primacy should go to the arbitration clause . . ., for two reasons: one grounded in public policy and the other in considerations of judicial economy." (citation omitted). While forum selection clauses are to be enforced by the courts, the federal policy favoring arbitration clauses is stronger, receiving expression in legislation. (citation omitted). Judicial economy also favors arbitration in this situation . . . .

*Id*. at *14. Similarly, the Acquisition Agreement here, if applied to Conley, contains both arbitration and forum selection provisions. In accordance with the holdings of New York federal cases, the arbitration provision should take precedence over the forum selection clause, and Plaintiffs should have to submit to arbitration. *See id.*; *HG Estate, LLC v. Corporacion Durango S.A. DE de C.V.*, 271 F. Supp. 2d 587, 595 (S.D.N.Y. 2003) (arbitration clause prevails over forum selection clause).

   B. <u>As the Acquisition Agreement and Employment Agreement came into effect simultaneously, the Employment Agreement is not a prior agreement and therefore not superseded.</u>

Second, the merger clause, upon which Plaintiffs so heavily rely, "supersedes **all prior discussions and agreements**." The Plaintiffs point out numerous times throughout their memorandum that the Employment Agreement between Conley and Plaintiffs did not take effect

---

[3] Traditional contract law provides that extrinsic evidence is inadmissible to interpret an unambiguous contract. *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2nd Cir. 1990). The Declaration offered by Mr. Mooney, a member of the Plaintiffs' law firm, is irrelevant.

7

until the effective date of the merger, i.e. July 17, 2007, the same date that the Acquisition Agreement took effect. (Pls. Memo. in Opp. at 15). Following their logic, the Employment Agreement cannot be considered a prior agreement, as it became effective contemporaneously with the Acquisition Agreement and its merger provisions. Thus, it could not be superseded by the Acquisition Agreement because it was not a prior agreement, as required by the merger clause.

However, if the Employment Agreement is deemed to be effective on its actual date — June 26, 2007 — it is not superceded by the Acquisition Agreement. Rather, it is specifically adopted and ratified by the Acquisition Agreement. Moreover, the arbitration clause is specifically adopted and ratified in the face of the forum selection clause. This is evidence of unambiguous intent within the Acquisition Agreement itself that the parties intended the Employment Agreement — and arbitration — to apply to any disputes arising between Ms. Conley and the Plaintiffs.[4]

C. <u>Contrary to Plaintiffs' assertions, Conley was not represented, did not negotiate for, and has never conceded the validity of the forum selection clause in the Acquisition Agreement as applied to her.</u>

Third, Plaintiffs state, "Clearly, the Acquisition Agreement in issue here was a negotiated agreement where the parties were represented by counsel. Defendant Conley does not dispute that the forum selection clause of the Acquisition Agreement is valid and controls this litigation." (Pls. Memo in Opp. at 12) (footnote omitted, momentarily). This statement is completely false. Conley was never represented by counsel with regard to the Acquisition Agreement and took no part in its negotiation.

---

[4] While the extrinsic evidence regarding intent put forth in Pl. Atty. Mooney's declaration is irrelevant to interpretation of the contract terms, it is of interest that by his Declaration Plaintiffs' admit that they were involved with Def. Watson in the negotiation of Ms. Conley's employment agreement. (Decl. Mooney, ¶ 9).

8

Defendant Conley has never conceded that the Acquisition Agreement forum selection clause controls any aspect of her part in this litigation. In support of this baseless proposition, Plaintiffs insert a footnote which refers solely to Def. Watson's actions in this litigation. (Pls. Memo in Opp. at 12, n.2). First, any position taken or concession made by Watson has no bearing on Conley's case. Second, Watson was actually a party to the Acquisition Agreement as a signatory, so there is little question that its provisions apply to him. Third, any party can waive its right to arbitration, which Watson did by filing suit in New York. Such action by Watson does not make an arbitration provision any less valid, and certainly has no effect on whether Conley can avail herself of the provision.

**IV.  The arbitration clause in Conley's Employment Agreement covers all issues in dispute between Plaintiffs and Conley.**

As discussed previously, Plaintiffs have brought two claims based on an alleged breach of Conley's Employment Agreement. Further, as explained, *supra*, Plaintiffs, by their own admission relate her alleged fraud to the Employment Agreement. **"Ms. Conley misrepresented and purposefully made representations to Shea that were not true,** which were also the basis on which the compensation in her Employment Agreement was structured**."** (Conley Aff. Exh. F, p.2)(emphasis added). Moreover, in their Complaint the Plaintiffs allege that: 1) Defendant Conley's misrepresentations caused them to enter into the merger agreement (Complaint ¶ 5); 2) her Employment Agreement was appended to the merger document as an exhibit (Conley Aff. Exh. B, p.5, § 1.14); and 3) the employer's entry into the Employment Agreement was occasioned by Plaintiffs' entry into the merger agreement (Complaint ¶ 5). These allegations "relate to" the Employment Agreement in that the agreement's very existence is dependent upon them. In accordance with the strong federal policy favoring arbitration and the inability to state with positive assurance that the fraud dispute is not covered, the fraud claim must be submitted

9

to arbitration. *See WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2nd Cir. 1997) (quoting *Associated Brickmasons of Greater New York, Inc. v. Harrison*, 820 F.3d 31, 35 (2nd Cir. 1987) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

**V.    If this Court finds that jurisdiction resides with the Federal District Courts, the District Court of South Carolina is the proper venue.**

Defendent Conley refers to the arguments and facts in her Memorandum in Support. Briefly, Defendant Conley resides in South Carolina. While employed at Bravera, the Bravera offices were located in South Carolina. It is her information that many of the witnesses live in South Carolina and it is her belief that relevant documents are located in South Carolina.

With regard to the relative means of the parties, Defendant Conley was an individual employee who was not a beneficiary of the merger at issue. She has been forced to find new employment, and relative to the other parties, particularly the corporate Plaintiffs, has the least means to litigate this case in New York.

In addition, Plaintiffs take the position that Defendant Watson is a resident of South Carolina. Again, Plaintiffs sole connection to New York is that the Acquisition Agreement may have been negotiated at their attorneys' offices.

The facts of this case clearly support severance of the claims against Conley and transfer of venue to South Carolina.

**CONCLUSION**

Based on the foregoing, Defendant Conley respectfully requests that the Court grant her motion and dismiss this action against her. If this Court finds that it has jurisdiction over her, Defendant Conley respectfully requests the alternative relief in her Motion to Dismiss.

10

  Respectfully submitted

        Derfner & Gillett, LLP


        /s/  David P. Gillett
        Donald A. Derfner (DD 0696)
        David P. Gillett (DG 5305)
        600 Third Avenue, 26th Floor
        New York, New York 10016
        (212) 697-8100

        Terry Ann Rickson
        Anne E. Mjaatvedt
        102 Wappoo Creek Drive, No. 8
        Charleston, South Carolina 29412
        (843) 722-1500
        (Application for Admission Pro Hac Vice pending)

        Allan R. Holmes
        Gibbs & Holmes
        171 Church Street, Suite 110
        Charleston SC 29402
        (843) 722-0033
        (Application for Admission Pro Hac Vice pending)

        *Attorneys for Defendant Elizabeth Anne Conley*

New York, New York
March 6, 2008