UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
SHEA DEVELOPMENT CORP., BRAVERA, INC.,
and IP HOLDING OF NEVADA CORP.,

                                           07 Civ. 11201 (DLC) (GWG)

                *Plaintiffs,*

      *-against-*

CHRISTOPHER WATSON and ELIZABETH
ANNE CONLEY,

                *Defendants.*
---------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS

Of Counsel
      James E. Davies, Esq. (JED 0599)

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
NEW YORK, N.Y. 10271-0079
(212) 238-4800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHEA DEVELOPMENT CORP., BRAVERA INC.,
and IP HOLDING OF NEVADA CORP.,

        **07 Civ. 11201**
        **(DLC) (GWG)**

        Plaintiffs,

    - against -

CHRISTOPHER WATSON and ELIZABETH ANNE
CONLEY,

        Defendants.

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTOPHER WATSON'S MOTION TO ENFORCE SETTLEMENT AND FOR SANCTION

        LANDMAN CORSI BALLAINE & FORD P.C.
        Attorneys for Defendant
        Christopher Watson
        120 Broadway, 27th Floor
        New York, NY 10271-0079
        (212) 238-4800

Of Counsel:
James E. Davies

466888.1 DocsNY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................i

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS..................................................................................2

ARGUMENT....................................................................................................11

POINT I
PLAINTIFFS ARE BOUND BY THE SETTLEMENT AGREEMENT REACHED IN OPEN
COURT AND SHOULD BE ORDERED TO ABIDE BY SAME..............................................11

POINT II
ATTORNEYS' FEES AND OTHER COSTS SHOULD BE AWARDED TO DEFENDANT ..15

CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

Arthur the Dog v. U.S. Merchandising Inc., 2007 U.S. Dist. LEXIS 63885, at *32 (E.D.N.Y. August 28, 2007) ...................................................................................................................15

Colucci v. N.Y. Times Co., 553 F.Supp. 1011, 1013-14 (S.D.N.Y. 1982) ...................................16

Forman v. Mt. Sinai Med. Ctr., 128 F.D.R. 591, 599 (S.D.N.Y. 1989) ........................................15

Hall v. Cole, 412 U.S. 1, 5 (1943) ................................................................................................16

In re Cuffee, 232 B.R. 53, 56 (E.D.N.Y. 1999) ............................................................................11

In re Marketxt Holding Corp, 336 B.R. 39, 58 (S.D.N.Y. 2006) ...................................................11

Manning v. New York Univ., 2001 U.S. Dist. LEXIS 12607, at *18 (S.D.N.Y. Aug. 22, 2001) 11

Marquez v. Costich, 935 F.Supp 232, 236 (W.D.N.Y. 1996) .......................................................16

Medinol Ltd. v. Guidant Corp., 500 F. Supp. 2d 345 (S.D.N.Y. 2007) ........................................11

Melwani v. Jain, 2004 U.S. Dist. LEXIS 7590, at *6 (S.D.N.Y. Apr. 26, 2004)...........................11

Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986)...........................................................15

Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67, 100 S.Ct 2455 (1980)............................16

Sakon v. Andrea, 119 F.3d 109, 115 (2d Cir. 2000) ....................................................................15

State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004) ...................................................................................................................................................15

Vari-O-Matic Machine Corporation v. New York Sewing Machine Attachment Corp., 629 F.Supp.257 (S.D.N.Y. 1986) .............................................................................................16, 17

Winston v. Mediafare Entertainment Corp., 777 F. 2d 78, 80 (2d Cir. 1986)...............................11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

SHEA DEVELOPMENT CORP., BRAVERA INC.,
and IP HOLDING OF NEVADA CORP.,

           Plaintiffs,

    - against -

CHRISTOPHER WATSON and ELIZABETH ANNE
CONLEY,

          Defendants.

------------------------------------------------------------------x

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT
CHRISTOPHER WATSON'S
MOTION TO ENFORCE
SETTLEMENT AND FOR
SANCTIONS**

07 Civ. 11201 (DLC) (GWG)

## PRELIMINARY STATEMENT

Defendant Christopher Watson ("Watson") respectfully submits this memorandum of law in support of his motion to enforce the settlement agreement reached July 10, 2008 and to award Watson his costs and fees, including attorney fees, incurred in seeking to complete and, finally, enforce the settlement agreement.   Plaintiffs entered into a settlement agreement on July 10, 2008 with Watson and have taken no steps to meaningfully complete the agreement while Defendant has consistently sought to implement the terms of the July 10, 2008 agreement. Indeed, if anything plaintiff has stonewalled, failing to place money in escrow as required by the agreement, and delivering equipment that has been altered by removal of necessary hardware and software developed by Watson. As set forth below, Defendant Christopher Watson is entitled to an Order directing Plaintiffs to comply with the Settlement Agreement by dates certain and awarding Defendant his costs and attorneys fees incurred since July 11, 2008 and attributable to Plaintiffs' willful and contumacious conduct.

## STATEMENT OF FACTS

On April 26, 2007, Shea Development Corp. ("Shea") (n/k/a Riptide Worldwide, Inc.) and Bravera, Inc. ("Bravera") entered into an Agreement and Plan of Merger (the "Merger Agreement"). A copy of the Merger Agreement is annexed to the Declaration of James Davies ("Davies Decl.") at Exhibit A. The Merger became effective on July 16, 2007. Christopher Watson accepted employment with Bravera pursuant to a Senior Management Employment Agreement ("Employment Agreement") dated July 15, 2007. A copy of the Employment Agreement is annexed to the Davies Decl. at Exhibit B. IP Holding of Nevada Corp. ("IP Holding") acquired a license for certain intellectual property assets from Intellectus, LLC ("Intellectus") by way of a Software License and Asset Purchase Agreement dated July 16, 2007 (the "Licensing Agreement"). A copy of the Licensing Agreement is annexed to the Davies Decl. at Exhibit C.

Following a dispute regarding pre-Merger representations, Watson gave notice of his voluntary termination of his employment under the Employment Agreement. This lawsuit was initiated by Shea against Watson alleging various claims, including fraud and breach of contract. Watson and Intellectus filed suit against Shea and others in the Supreme Court of New York, alleging similar claims for Shea's failure to comply with the various agreements including the Licensing Agreement. Additionally, several proceedings were commenced by Watson or entities affiliated with Watson against the Plaintiffs herein. Generally, these proceedings concern allegations that Plaintiffs or their affiliated entities breached obligations owed to Watson and/or his affiliated entities pursuant to commercial leasing agreements.

All pending litigation between these parties was settled pursuant to the terms of a settlement agreement placed on the record before the Honorable Gabriel W. Gorenstein on July

10, 2008. A copy of the transcript of those proceedings is annexed to the Davies Decl. at Exhibit

D. While the parties anticipated memorializing their agreement into a written document, the

judge specifically stated that "even in the absence of the paperwork, this is an enforceable

settlement." Davies Decl., Ex. D, p. 4. The settlement terms were as follows:

- The tender of stocks and warrants that was made by Mr. Watson will be accepted. Shea was to verify whether the full amount of stocks and warrants had been tendered; (p.4)

- All pending litigation will be dismissed with prejudice and appropriate releases exchanged; (p.4)

- Mr. Watson will be personally responsible for whatever tax liability is determined to exist with respect to the IRS and Virginia and Mr. Watson will be responsible for hiring any accountants needed in order to accomplish that. Further, Mr. Watson will have final authority with respect to any settlement of that tax liability; (pp. 4-5)

- For purposes of paying that tax liability, $275,000 will be held in escrow. This money will be placed in an interest-bearing escrow account within fourteen days (by July 24, 2008) and any interest earned will be Mr. Watson's property. In addition, the $275,000 is the property of Mr. Watson and will be released to him for purposes of paying the tax liability and/or any remaining money will go to him personally; (pp.5-7)

- $175,000 is to be paid to Mr. Watson fifteen days after the execution and completion of the settlement agreement; (p.7)

- Shea will transfer the following to Mr. Watson: the GSA MOBUS contract, a BMW and certain property that has been the subject of settlement letters and each party is familiar with, including hardware and software; (p.5)

- The non-compete clauses contained in the contracts of any Bravera employees and of Mr. Watson will be released and deemed null and void from the date of the settlement; (p.5)

To date, Shea has utterly failed to comply with the terms of the settlement. As discussed

in more detail below, some equipment has been released to Mr. Watson, however, upon

inspection Mr. Watson observed that key development servers were missing and that drives had

been removed from other servers. See accompanying Declaration of Christopher Watson[1] ("Watson Decl.").     Plaintiff's improper and unauthorized use of Intellectus' intellectual property was a key claim in the New York State Action being pursued by Intellectus and Watson against, *inter alia*, Plaintiffs herein. As discussed with the Court during settlement negotiations, delivery of the source codes and other property (both tangible and intellectual) was to be delivered with the delivery of the business equipment.

Throughout the course of settlement negotiations, including prior to the parties appearance at the July 10, 2008 conference, counsel for Shea were repeatedly advised that "time was of the essence" with respect to consummating the settlement and specifically with respect to the return of various pieces of equipment to Mr. Watson.

The day after the settlement was reached, on July 11, 2008, Power of Attorney forms (for both the State of Virginia and Federal government) were provided to Shea's attorneys for execution. A copy of the July 11, 2008 e-mail with forms is annexed to Davies Decl. at Exhibit E. These Powers of Attorney forms were necessary in order for Watson's accountants, Hertzbach & Company, PA, to investigate the Federal and Virginia tax claims. These authorizations were limited only to Payroll taxes for 2005. To date, these Powers of Attorney forms have not been executed and returned despite numerous requests to do so. Davies Decl., Ex. R.

Following the settlement conference, Shea's counsel drafted and forwarded a proposed settlement agreement on July 17, 2008. A copy of Shea's proposed settlement agreement is annexed to the Davies Decl. at Exhibit F. The proposed draft failed to adequately represent the

---

1 The annexed Declaration of Christopher Watson contains a facsimile image of his signature. Upon receipt of the original, it will be forwarded to the Court.

agreement reached in several respects and in many respects substantially altered the agreement of the parties.

First, Shea's proposed settlement agreement failed to acknowledge that Shea was to accept the tender of stocks and warrants that had previously been made by Watson. The settlement reached in court clearly states that "[t]he tender of stocks and warrants that has been made by Mr. Watson will be accepted." Davies Decl., Ex. D, p. 4.

Next, Shea's proposed agreement added an additional term regarding the timing of a lease and equipment transfer which materially altered the agreement reached in court. The July 10, 2008 settlement agreement states that "[t]he plaintiff will . . . transfer to Mr. Watson . . . certain business equipment that's been the subject of the settlement letters that every party appears to be familiar with." Davies Decl., Ex. D, p. 5. Shea's proposed written agreement, however, states that Bravera will transfer the business equipment to Watson "[a]s soon as reasonably practical upon completion of its obligations under the FEMA Contract." Davis Decl., Ex. F, ¶ 5. The agreement reached in court does not impose any such time limitations on the transfer of the equipment.

Finally, the agreement reached in court states that "[t]he non-compete clauses that are in the contracts of any Bravera employee and of Mr. Watson will be released and deemed null and void from this day forward[2]." Davies Decl., Ex. D, p. 5. The settlement reached in Court makes no reference at all to the nullification of any other provisions in the various Agreements, yet Shea's proposed written agreement attempts to render all provisions contained within the Agreements unenforceable. Davies Decl., Ex. F, ¶ 6. Specifically, Watson is entitled to

---

2 The non-compete clauses with respect to Watson are contained within the Employment Agreement. Davies Decl, Ex. B.

indemnification in the event of future litigation by third-parties under the Merger Agreement. Davies Decl. at Exhibit A, pp. 32, 35-37.

Defendant Watson provided proposed revisions to the draft settlement agreement which more accurately reflected the agreement reached in court on July 10, 2008, but these were rejected by Shea's counsel. A copy of Watson's proposed settlement agreement is annexed to the Davies Decl. at Exhibit G. For example, in the interests of reaching a speedy resolution, Watson agreed to the nullification of all Agreements (despite the fact that this was not raised during the July 10, 2008 conference), with the exception of the indemnification provisions and other limitations afforded him by Articles 5 and 7 of the Merger Agreement. Davies Decl., Ex. A, pp. 32, 35-37. On July 21, 2008, counsel for Mr. Watson sent an e-mail to counsel for Shea specifically delineating the manner in which Shea's proposed agreement altered the initial settlement reached by the parties. A copy of Watson's July 21, 2008 e-mail is annexed to the Davies Decl. at Exhibit H. After conference calls on July 22, 2008 and on July 23, 2008 failed to resolve the impasse, the undersigned forwarded another e-mail to counsel for Shea advising of our intention to notify the Court of the impasse. A copy of Watson's July 23, 2008 e-mail is annexed to the Davies Decl. at Exhibit I. This correspondence also reiterated the need for a quick resolution. We advised that "as each day passes the non-cash consideration (e.g. space and equipment) present less of a value to my client. As two weeks already have passed since the conference, the transfer of the leased space and equipment is already less attractive to my client. As previously discussed, at this moment, we believe the transition strategy we have proposed is beneficial to both our clients." Id.

The undersigned wrote to the Court and requested a further conference before Magistrate Judge Gorenstein. A copy of Watson's July 23, 2008 letter to Judge Gorenstein is annexed to the

Davies Decl. at Exhibit J. A conference before Judge Gorenstein was held on July 29, 2008. At that conference, the Court noted that the July 10, 2008 settlement was an enforceable settlement.

While both parties agree that a settlement has been reached, Shea has utterly failed to comply with its terms. Shea continues to insist that the terms discussed above, which are clearly not part of the settlement agreed to in open court, be incorporated into the written agreement. More critically, Shea has continuously refused to comply with the terms of the settlement agreement as follows: Shea failed to place the $275,000 in escrow as it was required to do by July 24, 2008 (over twenty days ago); there has been no movement as to the transfer of the GSA MOBUS contract, despite numerous requests for information about the appropriate person to speak with about the transfer; Shea has failed to provide the $175,000 payment to Mr. Watson despite the fact that it has been thirty-five days since the July 10, 2008 conference and sixteen days since the July 29, 2008 conference (at which Shea's counsel advised they no longer intended to have a written document memorializing the settlement) and lastly, Shea's failure to cooperate by executing the necessary Power of Attorney forms is significantly hindering Mr. Watson's ability to resolve the tax liability issue. Further, although Shea returned some equipment that was located in a Florida facility, key development servers were missing and drives had been removed from other servers. This conduct is a clear breach of not only the July 10, 2008 settlement agreement, but also the terms of the IP Agreement. Davies Decl., Ex. C and D.

On the other hand, Watson has worked relentlessly to finalize the settlement that was reached on July 10, 2008. Following the July 29, 2008 conference before Judge Gorenstein, the parties had a lengthy conference with all parties present. Following that conference, the undersigned forwarded an e-mail on July 30, 2008 to Shea's counsel, again requesting a

proposed timeline for resolution of the settlement; reiterating Watson's desire to resolve these issues as soon as possible and requesting the name of the individual at Shea to whom Watson's accountants should speak to resolve the potential tax liability problem. A copy of Watson's July 30, 2008 e-mail is annexed to the Davies Decl. at Exhibit K.

On July 31, 2008, counsel for Shea forwarded a proposed timeline for carrying out the details of the settlement, along with Schedules A and B (Schedules A and B include copy of the inventory of equipment and a listing of the stocks and warrants issued to Mr. Watson). A copy of the e-mail from Shea dated July 31, 2008 with Schedules A and B is annexed to the Davies Decl. at Exhibit L. Notably, this proposed timeline set forth that the $275,000 would be placed in escrow on August 4, 2008. Id. To date, Shea has failed to confirm that the escrow was in fact placed.

On August 1, 2008, Watson provided a timely response to Shea's proposed timeline, as well as the requested contact information for Watson's accountants. A copy of Watson's e-mail dated August 1, 2008 is annexed to the Davies Decl. at Exhibit M. Watson, through this e-mail, also reiterated that the $275,000 needed to be placed in escrow immediately and set forth a proposed request for transferring the equipment and space at the Reston facility. Id.

On August 4, 2008, Shea responded by stating that they would confirm a date when the $275,000 would be placed in escrow as soon as possible. A copy of Shea's August 4, 2008 e-mail with attachments (including, *inter alia*, a proposed release) is annexed to the Davies Decl. at Exhibit N. This e-mail from Shea also indicated there was a "discrepancy" in the amount of stock which would be tendered by Watson, which there was not. Id. In addition, Shea's August 4, 2008 email attached a proposed general release which provided that Watson would release Shea from, *inter alia*, its future obligations under the Merger Agreement, the License Agreement

and the Employment Agreement.

Watson responded by e-mail dated August 5, 2008, and advised that Shea's proposed release language only regurgitates Shea's position made before, and rejected by the Court on July 29, 2008. A copy of Watson's August 5, 2008 e-mail is annexed to the Davies Decl. at Exhibit O. In addition, Watson, *inter alia*, once again requested confirmation that the $275,000 had been placed into escrow as agreed and requested a response to the timeline for transfer of the GSA MOBUS contract. Id. This e-mail also clearly delineated Watson's commitment to completing the settlement amicably and in a speedy fashion, but warned that an Order to Show Cause to enforce the settlement might be necessary if Shea continued to blatantly disregard the July 10, 2008 settlement. Id. It has now been nine days since this e-mail and Shea has not complied with the terms of the settlement.

Shea responded by e-mail on August 6, 2008 and advised once again, *inter alia*, that the $275,000 would be placed in escrow the following day. Shea also advised that the transfer of the GSA MOBUS contract was being worked on, but failed to indicate what steps had been taken. A copy of Shea's August 6, 2008 e-mail is annexed to the Davies Decl. at Exhibit P. Watson responded on August 7, 2008. A copy of Watson's August 7, 2008 e-mail response is annexed to the Davies Decl. at Exhibit Q. Once again, Watson requested confirmation of the placement of the $275,000 in escrow. Watson also requested that Shea advise what steps were taken to transfer the GSA MOBUS contract and indicated that a conference call to discuss the FEMA related issues would be amenable. Id. We received no response from Shea with respect to these issues on Thursday, August 7, 2008, Friday, August 8, 2008 or Monday, August 11, 2008.

On August 12, 2008, Watson sent another letter to Shea's counsel in a last ditch effort to cooperatively and amicably complete the July 10, 2008 settlement without Court intervention. A

copy of Watson's August 12, 2008 letter is annexed to the Davies Decl. at Exhibit R. Among other things, Watson's August 12, 2008 letter provided a timeline for the following: transfer of the physical possession of the equipment, transfer of the MOBUS contract, resolution of the payroll tax issue, payment of the $275,000 in escrow, Shea's payment of $175,000 to Mr. Watson, FEMA transition planning and lastly the tender of the shares by Mr. Watson and return of the warrants. Id. Specific dates and times for conference calls were provided and a request was made that Shea's counsel respond to the letter as soon as possible to avoid possible motion practice. Id. We have received no response other than that we were to receive a response until late on August 14, 2008.

On August 13, 2008, Watson, who was vacationing in Florida, picked up certain property that was located at Plaintiffs' Orlando office. After picking up the property, Mr. Watson noted that certain key hardware and software was missing. Watson Decl., ¶9. Watson contacted counsel for Shea to advise of the missing equipment. It was not until this failed delivery of equipment and Intellectus' intellectual property that plaintiff finally responded. A copy of Shea's August 13, 2008 e-mail is annexed to the Davies Decl. at Exhibit S. Notably, Shea only responded to the issue relating to the missing equipment and once again, only issued false promises of their intent to respond to Watson's many e-mails and letters setting forth a proposed timeline for consummation of the settlement.

Therefore, Watson has brought the within motion to enforce the terms of the settlement agreement as agreed to on July 10, 2008 and to seek legal fees.

ARGUMENT

POINT I

**PLAINTIFFS ARE BOUND BY THE SETTLEMENT
AGREEMENT REACHED IN OPEN COURT AND
SHOULD BE ORDERED TO ABIDE BY SAME**

A stipulation of settlement on the record in open court is "one of the strongest and most

binding agreements in the field of the law." In re Marketxt Holding Corp, 336 B.R. 39, 58

(S.D.N.Y. 2006); In re Cuffee, 232 B.R. 53, 56 (E.D.N.Y. 1999); see also Melwani v. Jain, 2004

U.S. Dist. LEXIS 7590, at *6 (S.D.N.Y. Apr. 26, 2004).   These agreements are "solemn

undertaking[s] requiring the lawyers and the parties to make every reasonable effort to carry out

all the terms to a successful conclusion." In re Marketxt Holding Corp., 336 B.R. at 58, quoting

Manning v. New York Univ., 2001 U.S. Dist. LEXIS 12607, at *18 (S.D.N.Y. Aug. 22, 2001).

Courts favor strict enforcement of these agreements and hold that parties are bound to the terms

set forth on the record. In re Cuffee, 232 B.R. at 56; Winston v. Mediafare Entertainment Corp.,

777 F. 2d 78, 80 (2d Cir. 1986).

Where a clear and unambiguous settlement is reached on the record, a court may not take

additional testimony to add terms that materially alter the contract.   Medinol Ltd. v. Guidant

Corp., 500 F. Supp. 2d 345 (S.D.N.Y. 2007). In Medinol, plaintiff Medinol brought suit against

defendant Guidant for patent infringement. Id. at 346. Following settlement negotiations, the

terms of the settlement was placed on the record. Id. Plaintiff granted defendant a license to use

certain patents for an undisclosed sum of money. Id. After the terms were summarized on the

record, the parties attempted to reduce the settlement to a writing. Id. at 347. The parties were

unable to agree on an essential term: whether the license granted by plaintiff was a restricted or

unrestricted license. Id. at 348. As the settlement placed on the record was silent as to this point,

the Magistrate Judge held an evidentiary hearing to determine the intention of the parties. Id.

The District Judge ultimately rejected the Magistrate's Report and Recommendations, and noted that the terms of the settlement were clear and unambiguous and an evidentiary hearing was inappropriate. Id. at 353. An oral statement of settlement placed on the record is necessarily a summary and is not fully integrated and complete. Id. Nevertheless, this Court has held that "[a] settling party - no matter how acute its buyer's remorse - may not assert ambiguity to undo the settlement when the record contains an agreement that is clear on its face." Id. The settlement placed on the record was clear in that it contained no field-of-use restriction, and therefore this restriction could not be later incorporated into the settlement. Id. at 354.

In this matter, a settlement agreement was entered into on the record following a settlement conference before the Honorable Gabriel W. Gorenstein. The parties did intend to reduce this agreement to writing; however Judge Gorenstein explicitly stated that "even in the absence of the paperwork, this is an enforceable settlement." Davies Decl., Ex. D, p. 4. The parties agreed to several terms and expressly conveyed their intent to accept these terms as settlement of the case. Davies Decl., Ex. D, p. 5-7.

After the agreement was entered into on the record, counsel for plaintiff Shea was responsible for reducing the agreement to writing. A copy of the proposed settlement agreement was forwarded on July 17, 2008. Davies Decl., Ex. F. Upon review of the agreement, proposed revisions were made and returned to Shea's counsel. Davies Decl., Exhibit G. Shea thereafter rejected all proposed revisions.

In doing so, Shea is attempting to alter the agreement that was reached on July 10, 2008. First, the agreement placed on the record states that "the tender of stocks and warrants that has been made by Mr. Watson will be accepted." Davies Decl., Ex. D, p. 4. Shea's proposed written

agreement requires Watson to "return" all stocks and warrants within ten business days of the execution of the agreement, but fails to account for the 400,000 shares of Shea stock which were tendered on December 18, 2007. Davies Decl., Ex. F, ¶1. The settlement agreement reached on the record specifically requires plaintiffs to accept the tender that has already been made by Watson. Davies Decl, Ex. D, p. 4. Therefore, Shea should be ordered to accept the tender made on December 18, 2007, in accordance with the settlement agreement. Watson has already agreed to return the remaining 2.9 million shares of stock and all warrants. Davies Decl., Ex. O.

Second, the settlement agreement states that "plaintiff will . . . transfer to Mr. Watson . . . certain business equipment that's been the subject of the settlement letters that every party appears to be familiar with." Davies Decl., Ex. D, p.5. Shea's draft alters this portion of the agreement to reflect that the transfer of equipment will occur upon completion of Bravera's obligations under the FEMA Contract. Davies Decl., Ex. F, ¶ 5. This extension of time was at no point memorialized in the settlement agreement placed on the record and agreed to by all parties to this matter. Davies Decl., Ex. D. Although some of the equipment has now been returned, the delivery remains incomplete. During a conference between the parties following the July 29, 2008 conference before Judge Gorenstein, the equipment to be returned to Mr. Watson was discussed at length. Shea provided an inventory of the equipment to be returned to Mr. Watson, along with the location of the equipment and further identified a number of pieces of equipment that could not be located. Davies Decl, Ex. L. Shea agreed to return all of the equipment enumerated in the inventory as being located in Florida prior to the FEMA transition period. Davies Decl., Ex. M and N. Yet again, Plaintiffs have failed to return all of the equipment as agreed to. Watson Decl, ¶ 9. Therefore plaintiff should be ordered to immediately transfer the business equipment to defendants in accordance with the terms of the agreement.

Third, regarding the various contracts, the settlement agreement unambiguously states: "The non-compete clauses that are in the contracts of any Bravera employees and of Mr. Watson will be released and deemed null and void from this day forward." Davies Decl., Ex. D, p. 5. This provision makes no reference to the Merger or Licensing Agreements. Indeed, the existence of those agreements is not even mentioned in the transcript. Yet, Shea is again attempting to materially alter the agreement reached in open court by asserting that the indemnification provisions of the contracts would become unenforceable in the event of future litigation by third parties. Shea claims that the settlement agreement's provisions for the exchange of "releases" essentially vitiates all prior agreements between the parties, even though this does not appear anywhere on the record. Davies Decl., Ex. F, ¶6.

While the transcript does reference dismissal of the pending litigations and exchange of "appropriate releases . . . from parties to that litigation" and later discusses "general releases," nowhere does the transcript reference a release of contract rights that arise after the date of the release to be exchanged. Indeed, the Merger and Licensing Agreements are not mentioned anywhere in the transcript. Davies Decl., Ex. D, p. 4 & 6. Contrary to Shea's unsupported arguments of ambiguity, there was no ambiguity here. Precisely, because Watson was fearful that Shea could attempt to charge him with a violation of the non-complete provisions of the Employment Agreement after the date of the release, Watson specifically demanded that the "non-compete clauses . . . will be released and deemed null and void from this day forward." Davies Decl., Ex. D, p. 5. As there is no ambiguity as to, much less mention of the enforceability of, the Licensing and Merger Agreements, and more specifically the indemnity provisions of the Merger Agreement, there can be no question that those provisions survive the settlement and that plaintiffs, now suffering buyer's remorse, merely want to add an additional

uncontemplated material term.

Accordingly, defendant Christopher Watson respectfully requests that the Court issue an Order, requiring plaintiff to comply with the settlement agreement by a dates certain.


## POINT II

### ATTORNEYS' FEES AND OTHER COSTS
### SHOULD BE AWARDED TO DEFENDANT

Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Second Circuit has held that section 1927 sanctions are appropriate where "'there is a finding of conduct constituting or akin to bad faith,' such as where "'the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.' State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004) (citing to Sakon v. Andrea, 119 F.3d 109, 115 (2d Cir. 2000); Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986). In determining whether section 1927 sanctions are appropriate "a district judge need not apply a subjective standard of bad faith, but may find bad faith where an attorney engages in conduct that is so objectively unreasonable that he necessarily must have been acting in bad faith." Forman v. Mt. Sinai Med. Ctr., 128 F.D.R. 591, 599 (S.D.N.Y. 1989).

A court may also award sanctions in the form of attorneys' fees and costs pursuant to its inherent power. Arthur the Dog v. U.S. Merchandising Inc., 2007 U.S. Dist. LEXIS 63885, at *32 (E.D.N.Y. August 28, 2007). "It is well established that courts have the inherent power to

impose a variety of sanctions on both litigants and attorneys to regulate their docket, promote judicial efficiency, and deter frivolous filings." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67, 100 S.Ct 2455 (1980). In order to impose sanctions pursuant to its inherent power the court must find that counsel's behavior "constituted or was tantamount to bad faith." Colucci v. N.Y. Times Co., 553 F.Supp. 1011, 1013-14 (S.D.N.Y. 1982).

Attorneys' fees and costs may be awarded in the context of a successful motion to enforce a settlement agreement when the opposing party has acted "in bad faith, vexatiously, wantonly or for oppressive reasons." Marquez v. Costich, 935 F.Supp 232, 236 (W.D.N.Y. 1996) (citing to Hall v. Cole, 412 U.S. 1, 5 (1943)).

In Vari-O-Matic Machine Corporation v. New York Sewing Machine Attachment Corp., 629 F.Supp.257 (S.D.N.Y. 1986), the court awarded attorneys' fees against the defendant on the grounds that it had acted in bad faith by requiring plaintiff to file a motion to enforce the settlement agreement. Id. at 259. In Vari-O-Matic, the parties represented to the court that a settlement agreement had been reached. Id.at 259. An order was rendered by the court to that affect. Id. Thereafter, plaintiff moved to set aside the order due to an "impasse in negotiations". Id. at 258. The court found that while certain terms required negotiations, a settlement agreement had been reach in principal and enforced the agreement. Id. at 259. The court determined that the settlement agreement was never consummated due to defendant's bad faith attempt to delay resolution. Id. According to the court "it was the defendant who began to back away from the agreement. Since no claim against it was pending (plaintiff's complaint had been dismissed), it apparently felt free to delay and frustrate resolution of the action." The court held that the defendant acted in bad faith and awarded plaintiff costs and attorneys' fees.

Attorneys' fees and costs are appropriate in this case since the instant motion presents

analogous facts to <u>Vari-O-Matic.</u> The parties reached an oral settlement agreement delineating specific terms of understanding. The parties were advised by the court that even if the agreement was never memorialized it was still an enforceable settlement. Davies Decl., Ex. D. p. 4. In addition, throughout the course of settlement negotiations, counsel for Shea was repeatedly advised that "time was of the essence" to both memorialize and implement the terms of settlement.

Shea's counsel has blatantly refused to adhere to the terms of settlement and has completely ignored the necessity to implement those terms expeditiously. While Defendant Watson attempted to complete the July 10, 2008 settlement by conceding to certain terms which Shea has demanded, this too has proved unsuccessful. The refusal by Shea's counsel to complete the settlement process and Defendant Watson's need to file the instant motion can only be characterized as a bad faith attempt to delay and frustrate the resolution process. For the foregoing reasons, Attorneys' fees and costs must be awarded to Defendant Watson.

## CONCLUSION

Based on the foregoing, it is respectfully requested that defendant Watson's motion to enforce the July 10, 2008 settlement agreement and awarding defendant the costs and attorneys fees incurred since July 11, 2008 be granted.


Dated: August 15, 2008

                                        Respectfully submitted,


                                        _____
                                        James E. Davies (JED0599)
                                        LANDMAN CORSI BALLAINE & FORD P.C.
                                        Attorneys for Defendant
                                        Christopher Watson
                                        120 Broadway-27th Floor
                                        New York, NY  10271
                                        (212) 238-4800

## **AFFIDAVIT OF SERVICE BY MAIL**

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF NEW YORK  )

      **RYAN NEW**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at NEW YORK, NEW YORK.

      That on the 18th day of August, 2008, deponent served the within **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS** upon:

> Williams Mullen
> Two James Center
> 1021 East Cary Street
> Richmond, VA  23219

attorneys in this action, at the addresses designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States post office department within the State of New York.

                                          _____
                                            Ryan New

Sworn to before me this
18th day of August, 2008

_____
              Notary

MELISSA SHARI KATZ
Notary Public, State of New York
No. 02KA6147335
Qualified in Kings County
Commission Expires May 30, 2010

461009.1 DocsNY