UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

SHEA DEVELOPMENT CORP., BRAVERA, INC.,
and IP HOLDING OF NEVADA CORP.

                    Plaintiffs,

v.                                                            07 Civ. 11201 (DLC) (GWG)

CHRISTOPHER WATSON and ELIZABETH ANNE
CONLEY,

                    Defendants.
-------------------------------------------------------------------X

## DECLARATION OF STEPHEN E. BARIL, ESQ.

I, Stephen E. Baril, Esq., hereby declare as follows:

1.      I am a member of the Virginia State Bar (Bar # 19604).

2.      I am a partner in the law firm of Williams Mullen in Richmond, Virginia, and

counsel of record for Plaintiffs Shea Development Corp., *et al.* ("Shea") in this action.

3.      I make this declaration in support of Shea's Cross-Motion to Enforce Settlement

Agreement and for Sanctions.

4.      Attached hereto as Shea Exhibit 1 is a true and correct copy of a letter from counsel

for Defendant Christopher Watson ("Watson") to Frank Wilde dated December 18, 2007.

5.      Attached hereto as Shea Exhibit 2 is a true and correct copy of Shea's Schedule A

identifying the stock and warrants issued to Watson and one of his companies, together with the

backup documentation for Schedule A.

6.      Attached hereto as Shea Exhibit 3 is a true and correct copy of Stock Certificate

No. 357 for 3,300,000 shares of common stock in Shea Development Corp. issued to Chris Watson

on July 18, 2007.

7.    Attached hereto as Shea Exhibit 4 is a true and correct copy of the July 28, 2008 email exchange between counsel for Watson and counsel for Shea.

8.    Attached hereto as Shea Exhibit 5 is a true and correct copy of the letter from the IRS dated July 22 2008, a copy of which was provided to Watson's CPA by Ms. Sheri Pantermuehl in early August 2008.

9.    Attached hereto as Shea Exhibit 6 is a true and correct copy of an August 8, 2008 and August 11, 2008 email exchange between Ms. Pantermuehl and Watson's CPA.

10.    Attached hereto as Shea Exhibit 7 is a true and correct copy of an August 18, 2008 email from Watson to his CPA, with a copy to Ms. Pantermuehl, regarding the CPA's investigation of the tax liability issue.

11.    Attached hereto as Shea Exhibit 8 is a true and correct copy of Watson's receipt for the business equipment in storage in Florida.

12.    Attached hereto as Shea Exhibit 9 is a true and correct copy of FEMA's Award Announcement & Transition Planning notification dated August 26, 2008.

13.    Attached hereto as Shea Exhibit 10 is a true and correct copy of Watson's proposed FEMA transition plan that was forwarded to Shea by Watson's counsel with his August 4, 2008 email (Watson Ex. O).

14.    Attached hereto as Shea Exhibit 11 is a true and correct copy of the July 18, 2008 email from James Davies transmitting Watson's revisions to the draft settlement agreement.

15.    During the conference call between counsel on July 22, Watson insisted on a "carve out" from his release of all future claims of indemnification against Shea. Shea understood that Watson's so-called "carve out" was part and parcel of his scheme to get Shea to accept a partial tender of 400,000 shares of Shea stock as a condition for returning the remaining

shares and warrants.  In short, as Shea understood it, Watson wanted to be released from any

obligation to indemnify Shea under Article 7 of the Merger Agreement, but he wanted Shea to be

required to fully indemnify him from any claims in the future under Article 5.

I declare that the foregoing declarations are correct under the penalty of perjury.

Dated:    8/29/08                                        _____
                                                         Stephen E. Baril
                                                         Counsel for Plaintiffs

1651780v1

# WEST & COSTELLO, LLC
### 409 Washington Avenue, Suite 1010
### Baltimore, Maryland 21204

John H. West III
Thomas C. Costello
James H. West

Telephone: 410-296-4655
Facsimile:  410-296-6654

December 18, 2007

**VIA E-MAIL AND FEDERAL EXPRESS**

**Without Prejudice and For Settlement Purposes Only**

Mr. Francis E. Wilde
Chairman & CEO
Shea Development Corp.
200 East Palm Valley Drive, 2nd Floor
Oviedo, Florida 32766

Re:     **Christopher Watson**

Dear Mr. Wilde:

This firm represents Christopher Watson ("Watson").  I am writing to you in connection with the Agreement and Plan of Merger ("Merger Agreement") dated April 26, 2007 by and among Shea Development Corp., Shea Development Acquisition No. 3 Corp., Bravera, Inc. ("Bravera"), and Watson.

Section 5.12(b) of the Merger Agreement sets forth a broad obligation by Shea and Bravera to indemnify and defend Watson in connection with any lawsuits filed against him:

> Subject to the terms set forth herein, Parent [Shea] will, as an absolute and unconditional guarantor of performance and payment, and will cause the Company [Bravera] to, indemnify and hold harmless, to the fullest extent permitted under applicable Law (and will also advance expenses as incurred by a Company Indemnified Party to the fullest extent permitted under applicable Law), each Company Indemnified Party against any costs and expenses (including reasonable legal fees and expenses), judgments, fines, losses, claims, damages, liabilities and amounts paid in settlement in connection with any claim, action, suit, proceeding or investigation, whether civil, criminal, administrative or investigative, arising out of or pertaining to any action, alleged action, omission or alleged omission by such Company Indemnified Party on or prior to the Closing Date (including any

WAT  0094

SHEA EXHIBIT 1

Mr. Francis E. Wilde
December 18, 2007
Page 2

> claims, action, suits, proceedings and investigations which arise
> out of or relate to the transactions contemplated by this
> Agreement) until the expiration of the applicable statute of
> limitations.

(Merger Agreement § 5.12(b) at 32).

Watson is a "Company Indemnified Party," as defined in Section 5.12(a) of the Merger Agreement. Accordingly, Shea and Bravera are required to indemnify and hold harmless Watson in connection with any lawsuit filed against him "arising out of or pertaining to any action, alleged action, omission or alleged omission by [Watson] on or prior to the Closing Date (including any claims, action, suits, proceedings and investigations which arise out of or relate to the transactions contemplated by [the Merger] Agreement)." (*Id.*). The expansive obligation undertaken by Shea and Bravera to indemnify and defend Watson includes the advancement of legal expenses "as incurred" by Watson, including retainers.

It is my understanding that Shea and Bravera have filed a lawsuit in New York against Watson based on alleged actions or omissions taken by Watson prior to the Closing Date relating to the merger transaction in which Bravera became a subsidiary of Shea. If that is the case, the complaint would fall squarely within the indemnification provisions set forth under Section 5.12(b) of the Merger Agreement.

Please accept this letter as notice of Watson's demand for Shea and Bravera to indemnify and hold harmless Watson as mandated under the Merger Agreement. In addition, please forward immediately to Watson the sum of $25,000 for Watson's retainer for legal fees needed to defend the claims that apparently have been asserted against him in New York.

Furthermore, please note that, pursuant to Section 7.2(a) of the Merger Agreement, Watson agreed to "indemnify and hold harmless" Shea "from and against any and all Losses arising out of any misrepresentation or breach of the representations, warranties, covenants and agreements given or made by the Company or the Shareholder [Watson] in this Agreement, or any certificate, instrument or document delivered by the Company or the Shareholder pursuant to this Agreement." (Merger Agreement § 7.2(a), at 36). Under Section 7.4(b) of the Merger Agreement, no claim for indemnity by Shea against Watson under Section 7.2(a) "relating to breaches of representations and warranties will be recoverable unless the aggregate amount owing exceeds ten thousand dollars per occurrence." (*Id.* § 7.4(b), at 37). Significantly, "[i]n no event will the aggregate amount recoverable from [Watson] for all claims for indemnity under this Agreement, including, but not limited to, Section 7.2(a) or 7.3, exceed one hundred thousand dollars ($100,000)." (*Id.*). Moreover, any claim for indemnification against Watson may be

WAT 0095

Mr. Francis E. Wilde
December 18, 2007
Page 3

fully satisfied by Watson surrendering "that portion of [Shea's] Shares received by [Watson] in connection with the Merger, valued at their then current fair market value." (*Id.* § 7.5).

Please note, under Section 7.5 of the Merger Agreement, that "[t]he indemnification mechanism provided for by this Article 7" constitutes "the sole remedy" for alleged breaches by Watson of the representations and warranties under the Merger Agreement. As of December 18, 2007, Shea shares are trading at $0.25 per share. Accordingly, Watson, without admitting any fault or liability, hereby tenders 400,000 shares of Shea stock as of December 18, 2005 in full satisfaction of all claims asserted by Shea in its lawsuit.

Please contact me with any questions that you may have.

                              Very truly yours,

                              James H. West

JHW/r

cc:    Robert T. Lincoln, Esquire (via e-mail and Federal Express)

WAT 0096

## Schedule A

**Stock and Warrant Issuance to Christopher Watson and ALL Parties Related**

| Type | Name | Date Issued | Certificate Number | Reason | Face Value |
|------|------|-------------|--------------------|--------|-----------|
| Common | Chris Watson | 7/18/07 | 357 | Merger Agreement | 3,300,000 |
| Warrant | Christopher Watson | June 14, 2007 | NA | Exhibit D Equity Earn-Out Warrant | 5,000,000 shares at a price of $1.00 |
| Warrant | Christopher Watson | June 15, 2007 | NA | Exhibit B Year One Earn-Out Warrant | 1,312,500 shares at a price of $1.00 |
| Warrant | Christopher Watson | June 15, 2007 | NA | Exhibit C Year Two Earn-Out Warrant | 1,625,00 shares at a price of $1.00 |
| Warrant | Intellectus, LLC | June 16, 2007 | NA | Exhibit E of the IP Agreement | 450,000 shares at a price of $1.00 |

**Execution Copy**

### AGREEMENT AND PLAN OF MERGER

This AGREEMENT AND PLAN OF MERGER (this "**Agreement**") is made and entered into as of April 26, 2007, by and among Shea Development Corp., a Nevada corporation ("**Parent**"), Shea Development Acquisition No. 3 Corp., a Nevada corporation and a wholly-owned subsidiary of Parent ("**Merger Sub**"), Bravera, Inc. a Florida corporation (the "**Company**"), and Christopher Watson, the holder of all of the outstanding capital stock of the Company (the "**Shareholder**"). Capitalized terms used and not otherwise defined herein have the meanings set forth in Article 10.

### RECITALS

A.    The respective Boards of Directors of Parent, Merger Sub and the Company each have approved and declared advisable this Agreement and the merger of Merger Sub with and into the Company (the "**Merger**"), upon the terms and subject to the conditions set forth in this Agreement, whereby each issued and outstanding share of common stock, par value $0.01 per share, of the Company ("**Company Common Stock**") will be converted into the right to receive common stock, par value $0.001 per share, of Parent ("**Parent Common Stock**") and cash as provided herein.

B.    The respective shareholders of Parent, Merger Sub and the Company have, or will have, prior to the Closing Date, by the legally required vote, approved and adopted the Merger.

C.    In connection with the Merger, the parties desire to make certain representations, warranties, covenants and agreements and also to prescribe various conditions to the Merger, upon the terms and subject to the conditions contained herein.

NOW, THEREFORE, in consideration of the covenants, promises, representations and warranties set forth herein, and for other good and valuable consideration, intending to be legally bound hereby the parties agree as follows:

### ARTICLE 1
### THE MERGER

1.1    Merger.    At the Effective Time as defined below, in accordance with this Agreement and applicable law Section 607.1105 of the Florida Statutes and Nevada Revised Statutes Section 92A.200, Merger Sub will be merged with and into the Company, the separate corporate existence of Merger Sub will cease and the Company will continue as the surviving corporation in the Merger and shall become a wholly-owned Subsidiary of Parent. The Company, as the surviving corporation after the Merger, is sometimes referred to herein as the "**Surviving Corporation**."

1.2    Closing.    Subject to the terms and conditions of this Agreement, the closing of the Merger (the "**Closing**") will take place at the offices of Dunnington, Bartholow & Miller, LLP located at 477 Madison Avenue, New York, NY 10022 or at such other place as Parent and the Company mutually agree, at 10:00 a.m. local time on the later to occur of June 15, 2007 or the

second Business Day after the day on which the last of the closing conditions set forth in Article 6 below has been satisfied or waived, or such other date as Parent and the Company mutually agree upon in writing (the "**Closing Date**"). On the Closing Date: (a) the parties hereto will cause the Merger to be consummated by filing with the Secretaries of State of the State of Florida and the State of Nevada a certificate of merger, a plan of merger and any required related documents, in such form or forms as are required by, and executed in accordance with, applicable law (the date and time of such filing being the "**Effective Time**" and the date upon which the Effective Time occurs, being the "**Effective Date**"); (b) Parent will deliver the merger consideration to the Shareholder in accordance with Section 1.6; and (c) Merger Sub, Company and Parent will cross-deliver the certificates and other documents and instruments to be cross-delivered pursuant to Article 6 below.

     1.3    Effect of the Merger. (a) At the Effective Time, the effect of the Merger will be as provided in this Agreement and as provided in Section 607.1105 of the Florida Statutes and Section 92A.200 of the Nevada Revised Statutes. Without limiting the generality of the foregoing and in accordance with Section 1.18 herein, and subject thereto, at the Effective Time all the property, rights, privileges, powers and franchises of Merger Sub and the Company will vest in the Surviving Corporation, and in accordance with the terms outlined herein all debts, liabilities and duties of Merger Sub and the Company will become the debts, liabilities and duties of the Surviving Corporation and all corporate acts, plans, policies, contracts, approvals and authorizations of Merger Sub and the Company and their respective shareholders, boards of directors, committees elected or appointed thereby, officers and agents, which were valid and effective immediately prior to the Effective Time, shall be taken for all purposes as the acts, plans, policies, contracts, approvals and authorizations of the Surviving Corporation and shall be as effective and binding thereon as the same were with respect to Merger Sub and the Company, respectively, as of the Effective Time. As of the Effective Time, the Surviving Corporation will be a wholly-owned subsidiary of Parent.

          (b) At the Effective Time, all rights, franchises and interests of Merger Sub and the Company, respectively, in and to any type of property and choses in action shall be vested in the Surviving Corporation by virtue of the Merger without any deed or other transfer. The Surviving Corporation, without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises and interests, including appointments, designations and nominations, and all other rights and interests as trustee, executor, administrator, transfer agent or registrar of stocks and bonds, guardian, assignee, receiver and in every other fiduciary capacity, in the same manner and to the same extent as such rights, franchises and interests were held or enjoyed by Merger Sub and the Company, respectively, as of the Effective Time.

     1.4    Effect of Merger on Capital Stock of the Parent. Each share of capital stock of Parent issued and outstanding immediately prior to the Effective Time shall remain issued and outstanding from and after the Effective Time.

     1.5    Effect of Merger on Capital Stock of Merger Sub. At the Effective Time, each share of common stock, par value $0.001 per share, of Merger Sub issued and outstanding immediately prior to the Effective Time shall, by virtue of the Merger and without any action on the part of the holders thereof, be converted into and become one validly issued, fully paid and

2

non-assessable share of common stock, par value $0.01 par value per share, of the Surviving Corporation.

1.6    Effect of Merger on Capital Stock of Company.

(a)    *Company Common Stock.* At the Effective Time, each share of Company Common Stock shall, by virtue of the Merger and without any action on the part of the holders thereof, be converted into the right to receive the following (the "**Merger Consideration**"):

(i)    a pro rata share of 3,000,000 shares of Parent Common Stock (referred to collectively herein as the "**Parent's Shares**") as set forth on Schedule 1.6(a)(i), which shares shall not have been registered under the Securities Act and shall be "restricted securities" as that term is defined in Rule 144 under the Securities Act.

(ii)    a pro rata share of $1,500,000 payable in cash as set forth on Schedule 1.6(a)(ii) by wire transfer of same day funds to the account designated by the Shareholder.

(b)    As a result of the Merger and without any action on the part of the Shareholder, at the Effective Time, all shares of Company Common Stock shall cease to be outstanding and shall be cancelled and retired and shall cease to exist, and each holder of a share of Company Common Stock (other than the Parent) shall thereafter cease to have any rights with respect to such shares of Company Common Stock, except that the Shareholder shall have the right to receive, without interest, the Merger Consideration in accordance with Section 1.6(a) upon the surrender of the certificate or certificates representing such shares of Company Common Stock (if any such certificates had been issued by the Company with respect to such shares of Company Common Stock).

(c)    At the Effective Time, each share of Company Common Stock held in the Company's treasury, if any, shall, by virtue of the Merger and without any action on the part of any Person, cease to be outstanding and shall be cancelled and retired without payment of any Merger Consideration or any other consideration therefor.

1.7    Delivery of Certificates. At and after the Effective Time, Parent will make available, and Shareholder shall be entitled to receive, (i) upon surrender to Parent or its representatives of any certificates evidencing Company Common Stock (the "**Certificates**") for cancellation and a letter of transmittal or assignment separate from certificate in customary form (which will be in such form and have such other provisions as Parent will reasonably specify) (the "**Transmittal Letter**"), the Merger Consideration into which such Company Common Stock shall have been converted pursuant to the Merger, and upon such surrender of each Certificate and delivery by Parent of the aggregate Merger Consideration in exchange therefor, all such Company Common Stock will forthwith be cancelled upon the transfer books and records of the Company. Until surrendered or delivered as contemplated by this Section 1.7, each Certificate will be deemed at any time after the Effective Time for all purposes to evidence only the right to receive upon such surrender the corresponding pro rata portion of the Merger Consideration.

R 0003

**Frank Mooney**

| | |
|---|---|
| **From:** | Sheri Pantermuehl [sheri.pantermuehl@riptidesoftware.com] |
| **Sent:** | Tuesday, July 29, 2008 10:19 AM |
| **To:** | Frank Mooney |
| **Cc:** | Robert Lincoln |
| **Subject:** | Chris Watson - Stock Cert |

**Attachments:**        AR-M455N_20080728_153000_OCR.pdf



AR-M455N_200807
28_153000_OCR.p...
                    Steve Baril wanted a copy.

Sheri
----- Original Message -----
From: Patrick Mokros [mailto:patrick@empirestock.com]
To: sheri.pantermuehl@riptide.com
Sent: Mon, 28 Jul 2008 15:24:26 -0700
Subject: Chris Watson

Hi Sheri,

Please see the attached.

Sincerely,
Patrick Mokros
EMPIRE STOCK TRANSFER INC.
2470 Saint Rose Pkwy, Suite 304
Henderson, NV 89074
702.818.5898
Fax 702.974.1444
www.empirestock..com


CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which
is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic
Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright
laws, and are intended only for the use of the recipient(s) named herein.  No part of this
document or any attachments may be reproduced or transmitted without permission from
Empire Stock Transfer Inc.  If you are not the intended recipient, you are hereby notified
that any disclosure, distribution, or the taking of any action in reliance upon the
contents of this communication is strictly prohibited.  If you have received this
transmission in error, please notify us immediately.



NUMBER
357

COMMON STOCK

SHARES
*****300,000*****

COMMON STOCK

CUSIP 82088G206

SEE REVERSE FOR CERTAIN DEFINITIONS

## SHEA DEVELOPMENT CORP.

INCORPORATED UNDER THE LAWS OF THE STATE OF

NEVADA

THIS CERTIFIES THAT

***Chris Watson***

Is the Owner of *** Three Million Three Hundred Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

**SHEA DEVELOPMENT CORP.**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:    July 18, 2007
COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
                    Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

SECRETARY

PRESIDENT

CORPORATE SEAL

3612

**Exhibit D**

**Equity Earn-out Warrant**

THIS COMMON STOCK PURCHASE WARRANT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 ACT, AS AMENDED (THE "1933 ACT"). THE HOLDER HEREOF, BY PURCHASING THIS COMMON STOCK PURCHASE WARRANT, AGREES FOR THE BENEFIT OF THE COMPANY THAT SUCH SECURITIES MAY BE OFFERED, SOLD OR OTHERWISE TRANSFERRED ONLY (A) TO THE COMPANY, (B) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE 1933 ACT, OR (C) IF REGISTERED UNDER THE 1933 ACT AND ANY APPLICABLE STATE SECURITIES LAWS. IN ADDITION, A SECURITIES PURCHASE AGREEMENT ("PURCHASE AGREEMENT"), DATED THE DATE HEREOF, A COPY OF WHICH MAY BE OBTAINED FROM THE COMPANY AT ITS PRINCIPAL EXECUTIVE OFFICE, CONTAINS CERTAIN ADDITIONAL AGREEMENTS AMONG THE PARTIES, INCLUDING, WITHOUT LIMITATION, PROVISIONS WHICH LIMIT THE EXERCISE RIGHTS OF THE HOLDER AND SPECIFY MANDATORY REDEMPTION OBLIGATIONS OF THE COMPANY.

-------------------------------------

**Shea Development Corp.**

**COMMON STOCK PURCHASE WARRANT**

Number of shares:       5,000,000

Holder:       CHRISTOPHER WATSON

Expiration Date:       June 15, 2014

Exercise Price per Share:  $1.00

Shea Development Corp., a company organized and existing under the laws of the State of Nevada (the "**Company**"), hereby certifies that, for value received, CHRISTOPHER WATSON, or his registered assigns (the "**Warrant Holder**"), is entitled, subject to the terms set forth below, to purchase from the Company 5,000,000 shares (the "**Warrant Shares**") of common stock, $0.001 par value (the "**Common Stock**"), of the Company (each such share, a "**Warrant Share**" and all such shares, the "**Warrant Shares**") at a price of $1.00 per Warrant Share (as adjusted from time to time as provided in Section 7,

R 0289

**Exhibit B**

**Year One Earn-out Warrant**

THIS COMMON STOCK PURCHASE WARRANT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 ACT, AS AMENDED (THE "1933 ACT"). THE HOLDER HEREOF, BY PURCHASING THIS COMMON STOCK PURCHASE WARRANT, AGREES FOR THE BENEFIT OF THE COMPANY THAT SUCH SECURITIES MAY BE OFFERED, SOLD OR OTHERWISE TRANSFERRED ONLY (A) TO THE COMPANY, (B) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE 1933 ACT, OR (C) IF REGISTERED UNDER THE 1933 ACT AND ANY APPLICABLE STATE SECURITIES LAWS. IN ADDITION, A SECURITIES PURCHASE AGREEMENT ("PURCHASE AGREEMENT"), DATED THE DATE HEREOF, A COPY OF WHICH MAY BE OBTAINED FROM THE COMPANY AT ITS PRINCIPAL EXECUTIVE OFFICE, CONTAINS CERTAIN ADDITIONAL AGREEMENTS AMONG THE PARTIES, INCLUDING, WITHOUT LIMITATION, PROVISIONS WHICH LIMIT THE EXERCISE RIGHTS OF THE HOLDER AND SPECIFY MANDATORY REDEMPTION OBLIGATIONS OF THE COMPANY.

-------------------------------------

**Shea Development Corp.**

**COMMON STOCK PURCHASE WARRANT**

Number of shares:          **1,312,500**

Holder:          **CHRISTOPHER WATSON**

Expiration Date:          **June 15, 2014**

Exercise Price per Share:  **$1.00**

Shea Development Corp., a company organized and existing under the laws of the State of Nevada (the "Company"), hereby certifies that, for value received, CHRISTOPHER WATSON, or his registered assigns (the "Warrant Holder"), is entitled, subject to the terms set forth below, to purchase from the Company 1,312,500 shares (the "Warrant Shares") of common stock, $0.001 par value (the "Common Stock"), of the Company (each such share, a "Warrant Share" and all such shares, the "Warrant Shares") at a price of $1.00 per Warrant Share (as adjusted from time to time as provided in Section 7,

R 0268

Exhibit C

Year Two Earn-out Warrant

THIS COMMON STOCK PURCHASE WARRANT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 ACT, AS AMENDED (THE "1933 ACT"). THE HOLDER HEREOF, BY PURCHASING THIS COMMON STOCK PURCHASE WARRANT, AGREES FOR THE BENEFIT OF THE COMPANY THAT SUCH SECURITIES MAY BE OFFERED, SOLD OR OTHERWISE TRANSFERRED ONLY (A) TO THE COMPANY, (B) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE 1933 ACT, OR (C) IF REGISTERED UNDER THE 1933 ACT AND ANY APPLICABLE STATE SECURITIES LAWS. IN ADDITION, A SECURITIES PURCHASE AGREEMENT ("PURCHASE AGREEMENT"), DATED THE DATE HEREOF, A COPY OF WHICH MAY BE OBTAINED FROM THE COMPANY AT ITS PRINCIPAL EXECUTIVE OFFICE, CONTAINS CERTAIN ADDITIONAL AGREEMENTS AMONG THE PARTIES, INCLUDING, WITHOUT LIMITATION, PROVISIONS WHICH LIMIT THE EXERCISE RIGHTS OF THE HOLDER AND SPECIFY MANDATORY REDEMPTION OBLIGATIONS OF THE COMPANY.

-----------------------------------------

Shea Development Corp.

COMMON STOCK PURCHASE WARRANT

Number of shares:       **1,625,000**

Holder:                 **CHRISTOPHER WATSON**

Expiration Date:        **June 15, 2014**

Exercise Price per Share: **$1.00**

Shea Development Corp., a company organized and existing under the laws of the State of Nevada (the "**Company**"), hereby certifies that, for value received, CHRISTOPHER WATSON, or his registered assigns (the "**Warrant Holder**"), is entitled, subject to the terms set forth below, to purchase from the Company 1,625,000 shares (the "**Warrant Shares**") of common stock, $0.001 par value (the "**Common Stock**"), of the Company (each such share, a "**Warrant Share**" and all such shares, the "**Warrant Shares**") at a price of $1.00 per Warrant Share (as adjusted from time to time as provided in Section 7,

R 0279

EXHIBIT A

Execution copy

## SOFTWARE LICENSE AND ASSET PURCHASE AGREEMENT

THIS SOFTWARE LICENSE AND ASSET PURCHASE AGREEMENT ("Agreement") is entered into as of the 16th day of July, 2007 by and between Intellectus, LLC, a Florida limited liability company with its principal offices located at 300 Bucksley Lane, #305, Daniel Island, South Carolina 29492 ("Owner") and IP Holding of Nevada Corp., a Nevada corporation with its principal offices located at 1351 Dividend Drive, Suite G, Marietta, Georgia 30067 ("Licensee"), a subsidiary of Shea Development Corp. ("Shea").

### WITNESSETH:

WHEREAS, Owner is in the business of designing, developing, manufacturing and licensing computer software ("Software"); and

WHEREAS, Owner has rights in certain Software identified as "Bravera Process Director", "Bravera Content Director" and "Bravera RAPID Workplace" (collectively, the "Software");

WHEREAS, the Owner has taken what Owner believes are reasonable steps to register and protect the Software and certain other intellectual property identified more fully in **Exhibit A** attached hereto and incorporated herein by this reference (collectively, the "Intellectual Property Assets"); and

WHEREAS, Licensee desires to obtain, effective as of the date of this Agreement, an exclusive, royalty free, worldwide license from the Owner with respect to the Intellectual Property Assets and subsequently to acquire all of Owner's right, title and interest to the Intellectual Property Assets in accordance with the terms and conditions identified more fully in **Exhibit B** and **Exhibit C**.

NOW, THEREFORE in consideration of the mutual promises and covenants herein contained, the parties agree as follows:

### Article I.      Definitions

For purposes of this Agreement, the following definitions apply:

"Agreement" shall mean this Software License and Asset Purchase Agreement.

"Confidential Information" shall mean the Source Code and the source code to the Derivative Works.

"Customer" shall mean the end users of the Software.

"Derivative Works" shall include any work, revision, elaboration, enhancement, modification, translation, abridgement, condensation or other expansion that is based upon the Software or a portion thereof. For purposes of this Agreement, Derivative Works shall not include works that remain separable from, or merely link to the interfaces of the work and Derivative Works thereof.

"Domain" shall mean the Owner's domain names listed on **Exhibit A**.

"Effective Date" shall mean July 16, 2007.

"Intellectual Property Assets" shall have the meaning set forth in the recitals.

and all right, title and interest in the original portion of such Derivative Works shall be held by Owner and Licensee as joint authors; provided that (i) upon the earlier to occur of July 15, 2008 or Owner's receipt of the initial $1,000,000.00 in consideration due the Owner pursuant to the terms of this Agreement, Owner shall transfer all of its rights in such Derivative Works to Licensee, and (ii) in the event that the License Term ends prior to July 15, 2008 for any reason otherwise provided herein Owner shall convey, effective immediately upon such termination, all of its right, title and interest in and to the Derivative Works to Licensee.

4.     **LICENSE TERM**

Upon the conclusion of the License Term prior to July 15, 2008 for any reason other than Owner having received the initial $1,000,000.00 in consideration due the Owner pursuant to the terms of this Agreement, (i) all rights granted to Licensee in the Intellectual Property Assets hereunder shall immediately terminate and revert to Owner; (ii) Licensee shall immediately return to Owner all embodiments of any of the Intellectual Property Assets in Licensee's or Licensee's licensees' or subsidiaries' presence, including such embodiments present on computer systems, or certify the destruction of such embodiments; and (iii) Licensee shall immediately amend any Licensee Filings to indicate that Licensee has no interest in the Intellectual Property Assets.

5.     **TERMINATION**

In the event Licensee shall materially breach and upon thirty (30) days' written notice, shall fail to cure such breach of the terms of this Agreement, including, without limitation, the terms set forth in **Exhibit B** and **Exhibit C**, upon a further thirty (30) days' written notice from Owner, the License Term shall terminate, Licensee's license to use the Intellectual Property shall terminate and Licensee shall transfer to Owner all right, title and interest held by Licensee or any Licensee subsidiary or affiliate in the Derivative Works.

In the event Owner shall breach the terms of this Agreement, including, without limitation, the terms set forth in **Exhibit B** and **Exhibit C**, upon written notice from Licensee the License Term shall terminate, Licensee's license to use the Intellectual Property shall terminate and Licensee shall convey to Owner all right, title and interest held by Licensee or any Licensee subsidiary or affiliate in the Derivative Works.

Any cause of action or claim of Licensee or Owner, accrued or to accrue because of any breach or default by the other party of any provision of this Agreement, shall survive the termination or expiration of this Agreement for a period of two (2) years.

**Article III.     Purchase of Intellectual Property Assets**

1.     **TRANSFER OF TITLE TO INTELLECTUAL PROPERTY ASSETS**

Upon receipt of the payments set forth in Section 1.1 of **Exhibit C**, attached hereto and incorporated herein by reference, Owner shall convey title to the Marks, Domains and logos to Licensee. It is the intent of the Owner and Licensee that Licensee will receive a full, unimpeded title and sole and exclusive ownership of the Intellectual Property Assets in accordance with and upon satisfaction of the terms and conditions set forth more fully in **Exhibit B** and **Exhibit C**.

3

**EXHIBIT C**
**Consideration for Intellectual Property Assets**

The following consideration shall be payable by Licensee to Owner for the Intellectual Property Assets as defined in the Agreement and Exhibit A thereto. All terms not otherwise defined herein shall have the meaning as set forth in the Agreement and Plan of Merger by and among Shea Development Corp., Shea Development Acquisition No. 3 Corp., Bravera, Inc. and Christopher Watson, dated April 26, 2007.

1.1       **Payments.** At the:

       (a)     Effective Time: Warrants to purchase 450,000 shares of the common stock of Shea in the form attached hereto as **Exhibit E**

       (b)     1st Closing Date Anniversary: $750,000

       (c)     2nd Closing Date Anniversary: $375,000

       (d)     3rd Closing Date Anniversary: $375,000

1.2       **Fiscal Year 2007 Earn-Out Payments.**

       (a)     *Q3 2007 Earn-Out Payments.* Subject to the combined EBITDA (the "**Q3 EBITDA**") of Bravera, Inc., Owner and all of their affiliates and subsidiaries (the "Bravera Group") equaling or exceeding $750,000 (the "**Q3 EBITDA Floor**") for the first three (3) month period following the Effective Date (the "**Q3 Earn-Out Period**"), Licensee shall pay $500,000 to Owner.

       *Q3 2007 EBITDA Deficit Event.* If the Q3 EBITDA is less than Q3 EBITDA Floor, Licensee shall pay a pro-rata portion of the $500,000 Earn-Out Payment to Owner calculated by (i) dividing the Q3 EBITDA by the Q3 EBITDA Floor and (ii) multiplying the result of subsection (a) (i) by $500,000.

       (b)     *Q4 2007 Earn-Out Payments.* Subject to the Bravera Group's EBITDA (the "**Q4 EBITDA**") equaling or exceeding $1,000,000 (the "**Q4 EBITDA Floor**") for the three (3) month period following the first 3 month anniversary of the Effective Date (the "**Q4 Earn-Out Period**"), Licensee shall pay $500,000 to Owner.

       *Q4 2007 EBITDA Deficit Event.* If the Q4 EBITDA is less than Q4 EBITDA Floor, Licensee shall pay a pro-rata portion of the $500,000 Earn-Out Payment to Owner calculated by (i) dividing the Q4 EBITDA by the Q4 EBITDA Floor and (ii) multiplying the result of subsection (b) (i) by $500,000.

14

*CW*

**Exhibit E**
**IP Agreement Warrant**

THIS COMMON STOCK PURCHASE WARRANT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 ACT, AS AMENDED (THE "1933 ACT"). THE HOLDER HEREOF, BY PURCHASING THIS COMMON STOCK PURCHASE WARRANT, AGREES FOR THE BENEFIT OF THE COMPANY THAT SUCH SECURITIES MAY BE OFFERED, SOLD OR OTHERWISE TRANSFERRED ONLY (A) TO THE COMPANY, (B) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE 1933 ACT, OR (C) IF REGISTERED UNDER THE 1933 ACT AND ANY APPLICABLE STATE SECURITIES LAWS. IN ADDITION, A SECURITIES PURCHASE AGREEMENT ("PURCHASE AGREEMENT"), DATED THE DATE HEREOF, A COPY OF WHICH MAY BE OBTAINED FROM THE COMPANY AT ITS PRINCIPAL EXECUTIVE OFFICE, CONTAINS CERTAIN ADDITIONAL AGREEMENTS AMONG THE PARTIES, INCLUDING, WITHOUT LIMITATION, PROVISIONS WHICH LIMIT THE EXERCISE RIGHTS OF THE HOLDER AND SPECIFY MANDATORY REDEMPTION OBLIGATIONS OF THE COMPANY.

---

Shea Development Corp.

COMMON STOCK PURCHASE WARRANT

Number of shares:        450,000

Holder:        INTELLECTUS, LLC

Expiration Date:        July 16, 2014

Exercise Price per Share:    $1.00

Shea Development Corp., a company organized and existing under the laws of the State of Nevada (the "**Company**"), hereby certifies that, for value received, INTELLECTUS, LLC, or its registered assigns (the "**Warrant Holder**"), is entitled, subject to the terms set forth below, to purchase from the Company 450,000 shares (the "**Warrant Shares**") of common stock, par value $0.001 per share (the "**Common Stock**"), (each such share, a "**Warrant Share**" and all such shares, the "**Warrant Shares**") at a price of $1.00 per Warrant Share (as adjusted from time to time as provided in Section 7, per Warrant Share (the "**Exercise Price**"), at any time and from time to time from and after the date thereof and through and including 5:00 p.m. New York City time on July 16, 2014 (or eighteen months of effectiveness of a Registration Statement subsequent to the issuance herein (such 18 months to be extended by one month for each month or portion of a month during which a Registration Statement's effectiveness has lapsed or been suspended), whichever is longer) (the "Expiration Date"), and subject to the following terms and conditions:

R 0258



COMMON STOCK

NUMBER
357

SHARES
***3,300,000***

COMMON STOCK

CUSIP 82088G206

SEE REVERSE FOR CERTAIN DEFINITIONS

# SHEA DEVELOPMENT CORP.

INCORPORATED UNDER THE LAWS OF THE STATE OF

NEVADA

THIS CERTIFIES THAT

***Chris Watson***

is the Owner of *** Three Million Three Hundred Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

**SHEA DEVELOPMENT CORP.**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:  July 18, 2007
COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
                                        Transfer Agent and Registrar

By
       AUTHORIZED SIGNATURE

PRESIDENT

SECRETARY

CORPORATE SEAL

3612

**From:**    Baril, Stephen E.
**Sent:**    Monday, July 28, 2008 4:29 PM
**To:**    James Davies; Cristi Luckow; Dowd, Brendan
**Cc:**    Dillon, Edward; McCarroll, Monica; Barbie, Karoline M.
**Subject:** RE: Riptide/Watson - Riptide's Response to Watson's Revisions 7/21/08

Well, you've confirmed that the parties have agreed to disagree. We'll see how it shakes out tomorrow.

As to Mr. Watson's proposed sharing arrangement of the business equipment and leasehold, a wholly new concept not discussed on July 10th, you never got back to me about the particulars of how, when and why Bravera's contractual obligations to FEMA would end any sooner than 9/30/08, the agreed expiration date of the FEMA contract.

**From:** James Davies [mailto:jdavies@lcbf.com]
**Sent:** Monday, July 28, 2008 4:06 PM
**To:** Baril, Stephen E.; Cristi Luckow; Dowd, Brendan
**Cc:** Dillon, Edward; McCarroll, Monica; Barbie, Karoline M.
**Subject:** RE: Riptide/Watson - Riptide's Response to Watson's Revisions 7/21/08

Not at all.   We are willing to tender and deliver everything as we told you during our conference call.   We are prepared to fully comply with the Court's memorandum of settlement and execute a release of all claims asserted in the litigations.   You inserted an additional material term - voiding the existing contractual indemnity agreements. (In this regard, we further direct you to severability provisions of the various agreements).   It was your position that the survival of these provisions was a "deal breaker."   That is why we contacted the Court.

The only other disagreement was the timing of the transfer of equipment and the realty.   We proposed a shared use of the equipment and Reston space during the transition.

     -----Original Message-----
**From:** Baril, Stephen E. [mailto:sbaril@williamsmullen.com]
**Sent:** Monday, July 28, 2008 3:57 PM
**To:** James Davies; Cristi Luckow; Dowd, Brendan
**Cc:** Dillon, Edward; McCarroll, Monica; Barbie, Karoline M.
**Subject:** RE: Riptide/Watson - Riptide's Response to Watson's Revisions 7/21/08

Jed,

Shea/Riptide has the funds and is ready, willing and able to perform under the terms of the parties' settlement agreement. It does not appear to me, however, that your client is in much position to raise this issue when Mr. Watson repudiated his end of the bargain two (2) days before the funds were due, i.e., his refusal to deliver all shares and warrants of Shea stock, together with what Judge Gorenstein called a "general release[]," and dismissal of all pending litigation, with prejudice. The hold up is on your client's end.

I look forward to seeing you tomorrow.

Steve

Stephen E. Baril, Esq.
Williams Mullen
1021 East Cary Street, 14th Floor

SHEA EXHIBIT 4

7/28/2008

P.O. Box 1320
Richmond, VA 23218-1320
(804) 783-6423
(804) 783-6507 - fax
sbaril@williamsmullen.com

---

**From:** James Davies [mailto:jdavies@lcbf.com]
**Sent:** Monday, July 28, 2008 3:28 PM
**To:** Baril, Stephen E.; Cristi Luckow; Dowd, Brendan
**Cc:** Dillon, Edward; McCarroll, Monica; Barbie, Karoline M.
**Subject:** RE: Riptide/Watson - Riptide's Response to Watson's Revisions 7/21/08

Steve,

Pursuant to the terms agreed to at the July 10, 2008 conference before Judge Gorenstein, Riptide was required to place $275,000
in escrow for the payment of the potential tax liability within 14 days (by July 24, 2008). (Page 6-7).  Please confirm the the money has been placed in escrow.  Otherwise, we will need to raise this issue with the Court tomorrow.

*Bravera, Inc*

**Internal Revenue Service**
IRS Wash. Appeals Field Office
1099 14th Street, N.W.
4100 West Tower
Washington, DC  20005

Date: July 22, 2008

DUNNINGTON, BARTHOLOW & MILLER LLP
ATTORNEYS AT LAW
NEW YORK, N.Y. 10022
 Attn: Joseph Michaels IV

**Department of the Treasury**

**Person to Contact:**
 Mark Hunt
 Employee ID Number: 52-07238
 Tel:  202-435-5756
 Fax:  202-435-5750
**Refer Reply to:**
 AP:FE:AP:WA:MEH
**In Re:**
 BRAVERA INC
**Social Security or Employer
Identification Number:**
 20-3010278
**Tax Period(s) Ended:**
 12/2005

### Appeals Received Your Request for a Collection Due Process Hearing

Joseph Michaels IV:

Appeals received your request for a Collection Due Process (CDP) Hearing.  I have
scheduled a telephone conference call for you on August 27, 2008 at 10am.   This call
will be your primary opportunity to discuss with me the reasons you disagree with the
collection action and/or to discuss alternatives to the collection action.

I will call you at 212-682-8811, the number you indicated on your CDP request.

Please call me at the number indicated above by August 15, 2008 to confirm the
teleconference.

Your CDP hearing request regarding proposed levy action on the following tax period
was timely: Form 941, for tax period December 31, 2005.   During your hearing, and
until any appeals become final for these tax periods, the legal collection period is
suspended and no levy action may be taken.

During the hearing, I must consider:

- Whether the IRS met all the requirements of any applicable law or administrative
  procedure

- Any nonfrivolous issues you wish to discuss.  These can include:

    1. Collection alternatives to levy such as full payment of the liability,
       installment agreement, offer in compromise or temporary suspension of
       collection action if the action imposes a hardship condition.  Although they
       may not be considered an "alternative" to a notice of lien filing, these
       collection options may also be discussed at a lien hearing.

SHEA EXHIBIT 5

2. Challenges to the appropriateness of collection action. If this is a lien hearing, you may ask us to determine if the notice of lien filing was appropriate and if you qualify for a lien withdrawal or other lien options, such as subordination.

- We may also consider whether you owe the amount due, but **only if** you have not otherwise had an opportunity to dispute it with Appeals or did not receive a statutory notice of deficiency.

- We will balance the IRS' need for efficient tax collection and your legitimate concern that the collection action be no more intrusive than necessary.

You are entitled to have your conference with an Appeals employee who has had no **prior involvement** with the tax periods at issue (other than a prior CDP hearing), either in Appeals or in the Compliance division. I do not recall any prohibited previous involvement with these tax periods, however, if you believe I have, please notify me immediately. If I have been involved but you would still like me to conduct your hearing, you may waive this right.

Regarding the liability you are raising:

I am in receipt of your letter dated February 5, 2008 in which you assert that Shea Development Corp. or a subsidiary thereof should not be held accountable for the December 31, 2005 employment tax liability because of the alleged fraudulent acts of Bravera Inc's former President, former sole Director and former sole Shareholder, Christopher R. Watson. You make the following requests:

1) Immediate hold on the account - the account is placed in abeyance while it is under Appeals jurisdiction. Penalties and interest continue to accrue.

2) Abate the assessment, interest, and penalties - as you are no doubt aware, penalty abatement relief is made on a case by case basis governed by reasonable cause. Reasonable cause is determined in accordance with the ordinary and prudent business person standard. Tax assessments on the other hand generally are only abated if they are incorrect or erroneous. Based on the latter there appear to be no grounds, equitable or otherwise, for the abatement of either tax or penalty.

3) IRS pursuit of Mr. Watson in accordance with Section 6672 or the Internal Revenue Service Code - IRS Appeals has no control over the initial "trust fund" tax assessment determination. This is an IRS Compliance Unit function.

4) Provide such other relief to the Company permissible by law - collection alternatives may be available based on the Taxpayer's income, expenses and assets.

For me to consider alternative collection methods such as an installment agreement or

offer in compromise, you must provide any items listed below. In addition, you must have filed all federal tax returns required to be filed.

- A completed Collection Information Statement (Form 433-A for individuals and/or Form 433-B for businesses.)

Please send me the items **requested** above by August 15, 2008. I cannot consider collection alternatives at your conference **without this information**

At the conclusion of the hearing, we will issue a **determination letter** as required by law **for the tax periods for which your CDP hearing request was received timely**. If you do not agree with our determination you may appeal the case to the appropriate court. We will provide information about the appropriate court in your determination letter.

If you do not participate in the conference or respond to this letter, the determination and/or decision letter that we issue will be based on your CDP request, any information you previously provided to this office about the applicable tax periods, and the Service's administrative file and records.

Please contact me with any questions or concerns you have regarding this letter or the CDP procedures. My telephone number is listed above.

Sincerely,

Mark Hunt
Settlement Officer

cc: Bravera Inc

DUNNINGTON, BARTHOLOW & MILLER LLP

ATTORNEYS AT LAW

477 MADISON AVENUE

NEW YORK, N. Y. 10022

MARVIN M. BROWN
RAYMOND J. DOWD
JOHN T. DUNLAP
GEORGE W. GOWEN
MICHAEL J. KOPCSAK
STEVEN E. LEWIS
ROBERT T. LINCOLN
ALBERT L. LINGELBACH
THOMAS V. MARINO
JOSEPH MICHAELS IV
C. FREDERICK ROGGE, III
JOHN W. SHROYER
CAROL A. SIGMOND
LOUIS E. TEITEL

FREDERICK W. LONDON
FRANCIS J. MOONEY, JR.
JOHN I. FORRY
OF COUNSEL

TELEPHONE: (212) 682-8811
FACSIMILE: (212) 661-7769
DBM@DUNNINGTON.COM
WWW.DUNNINGTON.COM
(646) 865-7741

February 5, 2008

**EXPRESS MAIL**

Internal Revenue Service
P.O. Box 16296
Philadelphia, PA  19114-0296

        Re:    Bravera, Inc. – EIN:  20-3010278

Dear Sir or Madam:

      We are legal counsel for Shea Development Corp. (whose name has recently been changed to Riptide Worldwide, Inc.)  For purposes of this discussion, I will continue to refer to the companies as Bravera, Inc. and Shea Development Corp., respectively.  On or about July 16, 2007, a wholly-owned subsidiary of Shea Development Corp. acquired Bravera, Inc. via a reverse triangular merger.  Due to a difficult transition between the companies, the new management of Bravera, Inc. only just received a copy of your "Notice of Intent to Levy" dated November 5, 2007 which was forwarded to Bravera, Inc. (the "Company") in care of its former President, former sole Director and former sole Shareholder, Christopher R. Watson, at his Jacksonville, Florida address.  Mr. Watson resigned as an employee and officer of Bravera, Inc. on September 29, 2007.  Mr. Watson never forwarded the November 5, 2007, "Notice of Intent to Levy."

      We are enclosing herewith a "Power of Attorney and Declaration of Representative," on Form 2848, signed by the current Chief Financial Officer of Bravera, Inc., authorizing the undersigned and other Members of this Firm to represent Bravera, Inc. with regard to this "Notice of Intent to Levy."

      The Merger Agreement executed by the parties to effectuate the acquisition of Bravera, Inc. by a wholly-owned subsidiary of Shea Development Corp. contains warranties and representations from Bravera, Inc.'s then President, sole Director, and sole shareholder, Christopher R. Watson, and/or the Company to the effect that there were no

DUNNINGTON, BARTHOLOW & MILLER LLP

Internal Revenue Service
Page -2-

"undisclosed liabilities" for, amongst other things, Federal, State or local income tax, employment tax and/or other tax liabilities with respect to Bravera, Inc. for the period prior to the July 16, 2007 merger date and that (i) the Company timely filed and paid all taxes due through December 31, 2006, (ii) the Company or its agents collected or withheld all amounts required to be collected or withheld on account of taxes, and "remitted the same to the appropriate governmental authority in the manner and in the time required . . . ," and (iii) Christopher R. Watson had no knowledge of any actions by any taxing authority in connection with assessing a material amount of additional taxes, nor was he aware of any tax liability of the Company. A copy of Sections 2.8, 2.10 and other appropriate portions of said Merger Agreement are annexed hereto.

In December, 2007, Shea Development Corp. and Bravera, Inc. commenced suit against Mr. Watson in the United States District Court for the Southern District of New York. The lawsuit contains multiple causes of action grounded in fraud, breach of contract, together with other causes of action seeking a judgment for the extensive damages done to Bravera, Inc.

Had Shea Development Corp. known prior to the execution of this Merger Agreement, or prior to the closing under the merger Agreement, of these tax liabilities for the quarter ended December 31, 2005, it would have sought to remit, or at a minimum, reserve for these liabilities from funds or other consideration due Mr. Watson under the Merger Agreement. As noted above, Mr. Watson represented that there were no outstanding tax liabilities as of the July 16, 2007 that had not been timely remitted or reserved for.

On the basis of your "Notice of Intent to Levy," it is now apparent to Bravera, Inc. and Shea Development Corp. that Mr. Watson failed to remit, or reserve for, the employment and withholding taxes which are the subject of your "Notice of Intent to Levy." Since Shea Development Corp. was unaware of these liabilities and not in control of Bravera, Inc. at the time these liabilities were incurred, and because Bravera, Inc. is in no financial position to satisfy the substantial liability arising from your assessment, we respectfully request on behalf of the Company that you (i) place an immediate "hold" on the levy and collection of the $258,367.91 balance set forth in your Notice and all interest and penalties thereon against the Company, (ii) abate the assessment, interest and penalties in full on equitable grounds and for reasonable cause, (iii) pursue Christopher R. Watson pursuant to the provisions of Section 6672 of the Internal Revenue Service for the amount of said assessment, interest and penalties on the basis that Mr. Watson was the person "required to . . . truthfully account for and pay over" said withholding taxes and

DUNNINGTON, BARTHOLOW & MILLER LLP

Internal Revenue Service
Page -3-

who "willfully" failed to "truthfully account for and pay over such tax," and (iv) provide
such other relief to the Company permissible by law. Mr. Watson should be held liable
for a penalty equal to the total amount of the tax not accounted for or paid over by him to
the IRS during his ownership and stewardship of the Company as President, sole Director
and sole Shareholder..

Thank you for your kind attention to this request. We would appreciate the
opportunity to confer with you further on these issues if you have any questions with
regard to our requests and to submit additional documentation and information, if needed,
in support of our requests for relief.

We would appreciate it if you would acknowledge receipt of this letter and
the enclosed "Power of Attorney and Declaration of Representative" by stamping the
enclosed copy of this letter with your "Received" stamp and returning it to us in the
stamped envelope provided.

Sincerely yours,

DUNNINGTON, BARTHOLOW & MILLER LLP

By: _____
Joseph Michaels IV
A Partner

JM/mcf
Enclosures

cc:     RTWW Business Services,. Inc. (f/k/a Bravera, Inc.)

**Baril, Stephen E.**

| | |
|---|---|
| **To:** | Baril, Stephen E. |
| **Subject:** | FW: Bravera - Sheri's Emails with CPA |


----- Original Message -----
From: Dan Wahlberg [mailto:DJW@Hertzbach.com]
To: sheri.pantermuehl@riptidesoftware.com
Sent: Mon, 11 Aug 2008 11:45:43 -0400
Subject: RE: Bravera

Sheri,

I was out of the office on Friday, I will try to give you a call today.

Thanks
Dan

-----Original Message-----
From: Sheri Pantermuehl [mailto:sheri.pantermuehl@riptidesoftware.com]
Sent: Friday, August 08, 2008 12:38 PM
To: Dan Wahlberg
Subject: Bravera

Dan, have not heard from you in a couple of days.  Just checking on status.

Sheri

---

CIRCULAR 230 DISCLOSURE NOTICE

In accordance with Internal Revenue Service rules, we are now required to advise you that, any federal tax advice provided in this communication, including attachments and enclosures, is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding tax-related penalties which may be imposed on the recipient by the Internal Revenue Service.

CONFIDENTIALITY NOTICE

The material accompanying this electronic transmission contains confidential information which is the property of the sender and is legally privileged.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this electronic information is strictly prohibited.  If you have received this electronic mail in error, please immediately notify us by telephone to arrange for the return of the material to us.

If any part of this message is not clear, please call 410-363-3200

SHEA EXHIBIT 6

## Baril, Stephen E.

| | |
|---|---|
| **To:** | Baril, Stephen E. |
| **Subject:** | FW: Bravera Payroll tax |

----- Forwarded Message -----
From: "Chris Watson" <chris.watson@intellectus.com>
To: "Dan Wahlberg" <DJW@Hertzbach.com>
Cc: "sheri pantermuehl" <sheri.pantermuehl@riptidesoftware.com>, "Mark Topolski" <MRT@Hertzbach.com>, "Joel Chazen" <JBC@Hertzbach.com>, "Diana C. Iwanowski" <dci@Hertzbach.com>
Sent: Monday, August 18, 2008 10:58:28 AM GMT -06:00 US/Canada Central
Subject: RE: Bravera Payroll tax

Thanks Dan,

I appreciate it.

Best Regards,

Chris

------------------

202 255 8092 mobile

703 439 1140 direct

440-425-1160 fax

chris.watson@intellectus.com

*****************************************************************

The information contained in this electronic communication and any accompanying document is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. It is the property of Intellectus, LLC. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.

*****************************************************************

From: Dan Wahlberg [mailto:DJW@Hertzbach.com]

SHEA EXHIBIT 7

Sent: Monday, August 18, 2008 12:02
To: chris.watson@intellectus.com
Cc: sheri.pantermuehl@riptidesoftware.com; Mark Topolski; Joel Chazen; Diana C. Iwanowski
Subject: Re: Bravera Payroll tax


Chris,
I am waiting on a call back from intuit who has the detailed records. Diana is following up with them today as I am out of the office.

As soon as I know anything I will pass it along.
Dan

----- Original Message -----
From: Chris Watson <chris.watson@intellectus.com>
To: Dan Wahlberg
Cc: 'Sheri Pantermuehl' <sheri.pantermuehl@riptidesoftware.com>; Mark Topolski; Joel Chazen
Sent: Mon Aug 18 11:51:32 2008
Subject: RE: Bravera Payroll tax

Hi Dan,


Any further word from Intuit? I copied Sheri in on this on as I think we all have a joint interest in getting this resolved ASAP.




Best Regards,



Chris

-----------------

202 255 8092 mobile

703 439 1140 direct

440-425-1160 fax

chris.watson@intellectus.com


*************************************************************************

The information contained in this electronic communication and any accompanying document is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. It is the property of Intellectus, LLC. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.

*************************************************************************


From: Dan Wahlberg [ mailto:DJW@Hertzbach.com ]
Sent: Wednesday, August 13, 2008 14:54
To: Chris Watson; Joel Chazen; Mark Topolski

2

Cc: James Davies; Cristi Luckow
Subject: RE:


Chris,


In order to gather all of the pertinent information, I needed to speak with Intuit who provided the payroll services to you Companies during 2005. I just got off the phone with CJ Taylor at Intuit and discussed the situation with her. Intuit should be able to provide proof of payment (as they orchestrated all payments for both Companies). Your QuickBooks records only show lump sum payments to Intuit, not to the IRS or Virginia, so we need their records to verify payment. I have faxed her the notices and she has expedited the case to be dealt with immediately. She needed someone to confirm that I could speak on your behalf and Amy has already verified this to her. I have instructed her not to contact the IRS or Virginia without contacting me first. Also, she thought that there was likely an open POA between Intuit and the IRS for Bravera and Workflow and she was going to check it out. If this exists, the POA would allow them access to Bravera and Workflow IRS transcripts of payment and to discuss the matter with them if necessary. She said I should expect a call back from her tax department in the next day or so to discuss the matter.


Let me know if you have any questions or concerns.

Thanks,

Dan


---

From: Chris Watson [ mailto:chris.watson@intellectus.com ]
Sent: Wednesday, August 13, 2008 9:45 AM
To: Dan Wahlberg; Joel Chazen; Mark Topolski
Cc: 'James Davies'; 'Cristi Luckow'
Subject: RE:


Thanks Dan,


I do not want their unhelpfulness or their slowness to block our ability to resolve this.


Best Regards,


Chris

----------------

202 255 8092 mobile

703 439 1140 direct

440-425-1160 fax

chris.watson@intellectus.com

From: Dan Wahlberg [ mailto:DJW@Hertzbach.com ]
Sent: Tuesday, August 12, 2008 17:50
To: Chris Watson
Cc: Joel Chazen; Mark Topolski
Subject:
Importance: High

Hi Chris,

Please see the attached emails from Sheri. I am not sure if you and/or Jed were aware of the correspondence sent to the IRS and VA by Bravera, but I thought it was important that you see it just in case you had not. Please note the IRS and Virginia responses included in the attached. We are in the process of gathering payroll data to prove that the taxes were paid by Workflow. We left a message with Intuit payroll services to get some of this support and are awaiting a phone call back. Once we get the supporting data from Intuit, I believe we should be armed with enough information to discuss this matter with the IRS and Virginia. Ideally I would like to get clear proof of payment from Intuit and the bank statements to show that the taxes were in fact paid, and then explain that this is just a presentational issue.

I spoke to Sheri and she said that we would not get a power of attorney signed from Bravera, however, she would be happy to call the IRS/VA with me. She said that her boss wanted her to be a part of all conversations with the IRS and VA. Phone calls from me and Sheri may or may not be successful without the signed POAs. You will see from the attached, that there is already a POA signed by 3 attorneys at Dunnington, Bartholow, & Miller LLP from New York. Please also note that there is a phone conference scheduled between Riptide and the IRS on 8/27. I will let you know when I obtain enough support from them. At that point I would feel comfortable calling the IRS/VA with Sheri.

Please review the attached and lets discuss.

Thanks,

Dan

CIRCULAR 230 DISCLOSURE NOTICE

In accordance with Internal Revenue Service rules, we are now required to advise you that, any federal tax advice provided in this communication, including attachments and enclosures, is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding tax-related penalties which may be imposed on the recipient

by the Internal Revenue Service.

CONFIDENTIALITY NOTICE

The material accompanying this electronic transmission contains confidential information which is the property of the sender and is legally privileged.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this electronic information is strictly prohibited.  If you have received this electronic mail in error, please immediately notify us by telephone to arrange for the return of the material to us.

If any part of this message is not clear, please call 410-363-3200

**BRAVERA INVENTORY**

| Make and Model | Serial Number | Barcode | Used for FEMA | In Possession | Released to Mr. Watson Initials | Received by Mr Watson Initials |
|---|---|---|---|---|---|---|
| **Verio Inventory – Herndon – Rack B23** | | | | | | |
| Dell Power Connect 2708 – 8 port | | BC10090BC | No | No (FL) | P3 | CW |
| SonicWall Pro 2040 | 0006B11A1S4 | BC10060BC | No | No (FL) | P3 | CW |
| SonicWall Pro 2040 | 0006B11A17C | BC10061BC | No | No (FL) | P3 | CW |
| Dell Power Connect 2624 – 24 port | 4HF2KJ2 | BC10062BC | No | No (FL) | P3 | CW |
| Cisco 2600 Series | TT409282546 | BC10063BC | No | No (FL) | — | — |
| Dell PowerEdge 750 – Bravera1 | B0TQ571 ● DoA | BC10064BC | No | No (FL) | — | — |
| Dell PowerEdge 750 – Mail | H0TQ571 | BC10065BC | No | No (FL) | — | CW |
| Dell PowerEdge 750 – wpdev.bravera.com | 6H0HT61 ● DoA | BC10066BC | No | No (FL) | — | — |
| Dell PowerEdge 750 – cni.bravera.com | 7H0HT61 | BC10067BC | No | No (FL) | P3 | CW |
| Dell PowerEdge 750 – wfsrv6 | 4DLSX51 | BC10074BC | No | No (FL) | P3 | CW |
| Dell PowerEdge 750 – wfsrv5 | 3DLSX51 | BC10075BC | No | No (FL) | P3 | CW |
| TrippLite KVM Switch – 8020-01b | 9351AZBO2001600257 | BC10089BC | Yes | Yes | | |
| Dell PowerEdge – Demo Sales | DGJ7211 ● | BC10076BC | Yes | Yes | | |
| Dell PowerEdge – wfsrv2 | G05FV01 | BC10077BC | No | No (FL) | P3 | CW |
| Dell PowerEdge – ViewStat | H05FV01 | BC10078BC | No | No (FL) | P3 | CW |
| Dell PowerEdge – dcgc1.corp.bravera.com | 3TXLX11 | BC10079BC | Yes | Yes | | |
| Dell PowerEdge – wfsdemo | F5RGX11 | BC10080BC | No | No (FL) | — | — |
| Dell PowerEdge – TestWeb | DYM1211 | BC10081BC | No | No (FL) | P3 | CW |
| Dell PowerEdge – Dev2 | 5LKTP21 | BC10088BC | No | No (FL) | P3 | CW |
| **Server Racks/Cabinet** | | | | | | |
| Rack 1 | | BC10026BC | Yes | Yes | | |
| Rack 2 | | BC10040BC | Yes | Yes | | |
| Network Cabinet – Intended for # 240 | | BC10012BC | No | No (FL) | P. | CW  In VA |
| **Julia's Returned Workstations/Servers** | | | | | | |
| HP SuperStore Opticle 220 | US9N000278 | BC10041BC | No | No (FL) | P. | CW |
| Workstation – No Brand Name | No available SN# | BC10055BC | | | | |
| Workstation – No Brand Name | 14486787 | BC10056BC | | | | |
| Panasonic – 50 inch Plasma | YH5110324 | | No | Yes | | |
| | Signed for by Chris Watson | | | | | |
| Signature In | Name Chris Watson | Time  11 15 | | | | |
| Signature Out | Chris Watson | Time  12 30 | | | | |
| Items Received:  13 | | | | | | |

SHEA EXHIBIT 8

1 of 5

| Type | Manufacturer | Model | Serial | | | |
|---|---|---|---|---|---|---|
| Firewall | Cisco | PIX 515E | | | Yes | Yes |
| Firewalls, routers, etc. | SonicWall | TZ 170 10 Node | 0006B1089B04 | | Yes | Yes |
| KVM Switch | Tripp Lite | | | | Yes | Yes |
| Laptop | Dell | Latitude D510 | 3DMTP81 | | Yes | Yes |
| Laptop | Dell | Latitude D610 | 129BL81 | | Yes | Yes |
| Laptop | Dell | Latitude D610 | C1MBGS71 | | Yes | Yes |
| Laptop | Dell | Latitude D611 | CN-OD4571-48643-5 | | Yes | Yes |
| Laptop | Tosiba | Satellite | 24022877H | | Yes | Yes |
| Monitor | Dell | 1707FPT | CN-0CC280-71618-C | Yes | Yes | ✓ ✓ |
| Monitor | Dell | 1707FPT | CN-0CC280-71618-C | Yes | Yes | ✓ ✓ |
| Monitor | Dell | 1707FPT | CN-0CC280-71618-C | No | Yes | |
| Monitor | Dell | 1707FPT | CN-0CC280-71618-C | No | Yes | ✓ ✓ |
| Monitor | Dell | 1707FPT | CN-0CC280-71618-C | No | Yes | ✓ ✓ |
| Monitor | Dell | 1707FPT | CN-0R9239-482205A | Yes | Yes | |
| Monitor | Dell | 1905FP | CN-0T6116-71618-59 | No | Yes | |
| Monitor | Dell | 1905FP | CN-0T6116-71618-59 | Yes | Yes | |
| Monitor | Dell | 1905FP | CN-0T6116-71618-59 | Yes | Yes | |
| Monitor | Dell | 1905FP | CN-0T6116-71618-59 | No | Yes | |
| Monitor | Dell | E173Pc | CN-0F5035-64180-56 | No | Yes | |
| Monitor | Dell | E173Pc | CN-0F5035-64180-56 | Yes | Yes | |
| Monitor | Dell | E173Pc | CN-0F5035-64180-56 | Yes | Yes | ✓ |

Laptop    Dell    Latitude D610    CN-0C 4708-48643-557-8743/100/1258

2 ℗ 5

| Type | Brand | Model | Serial | | |
|---|---|---|---|---|---|
| Copier | Cannon | Imageclass D860 | KAB16849 | Yes | |
| Copier | Cannon | PC1060 | ZTX15530 | Yes | |
| Desktop | Compaq | Presario | MXF53700FR | Yes | |
| Desktop | Compaq | Presario | MXF53700DV | Yes | |
| Desktop | Compaq | Presario | MXF53903SR | Yes | |
| Desktop | Compaq | Presario | MXF53903SP | Yes | |
| Desktop | Dell | Optiplex 520 | BWXZJ81 | Yes | |
| Desktop | Dell | Optiplex 520 | HWXZJ81 | Yes | |
| Desktop | Dell | Optiplex 520 | 6XXZJ81 | Yes | |
| Desktop | Dell | Optiplex 520 | 4XXZJ81 | Yes | |
| Desktop | Dell | Optiplex 520 | DWXZJ81 | Yes | |
| Desktop | Dell | Optiplex 520 | 1XXZJ81 | Yes | |
| Desktop | Dell | Optiplex 520 | CWXZJ81 | Yes | |
| Desktop | Dell | Optiplex GX520 | FZNNS81 | Yes | |
| Desktop | Dell | Optiplex GX520 | GZNNS81 | Yes | |
| Desktop | Dell | Optiplex GX520 | HZNNS81 | Yes | |
| Desktop | Dell | PowerEdge 500S | HFDJ511 | Yes | Yes |
| FAX machine | Brother | MFC-5840CN | U61092H5F954977 | Yes | Yes |

| Type | Brand | Model | Serial | | |
|---|---|---|---|---|---|
| Monitor | Dell | E173Pc | CN-0F5035-64180-58 | No | Yes |
| Monitor | Dell | E173Pc | CN-0F5035-64180-58 | Yes | Yes |
| Monitor | Dell | E173Pc | CN-0F5035-64180-58 | No | Yes |
| Monitor | Dell | E173Pc | CN-0F5035-64180-58 | Yes | Yes |
| Monitor | Dell | E173Pc | CN-0F5035-64180-58 | Yes | Yes |
| Monitor | Dell | E173Pc | CN-0D5428-72872-58 | Yes | Yes |
| Monitor | Dell | E173Pc | CN-0F5035-64180-58 | Yes | Yes |
| Monitor | HP | vs15 | CNN5320BDB | No | Yes |
| Monitor | HP | vs15 | CNC5311NM1 | No | Yes |
| Monitor | HP | vs15 | CNC5311NZX | Yes | Yes |
| Monitor | HP | vs17 | CND5320Y93 | Yes | Yes |
| Monitor | LG | Flatron | 511MXNUB13143 | Yes | Yes |
| Monitor | Multi-Sync | E500 | | Yes | Yes |
| Patch Panel | Hubbell | Category 6 | | Yes | Yes |
| Patch Panel | Hubbell | Category 6 | | Yes | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15300117G2H | Yes | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15200224G2H | Yes | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15300122G2H | Yes | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15300107G2H | Yes | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15200232G2H | Yes | Yes |
| Phone | NEC | 34 B Aspire IPhon | 16400129AJG | No | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15300108G2H | No | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15200130G2H | No | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15200211G2H | No | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15200128G2H | No | Yes |
| Phone | NEC | 34 B Aspire IPhon | 15200123G2H | No | Yes |
| Printer | Epson | Stylus Photo R38 | QJL7K099144 | Yes | Yes |

4 of 5

| Type | Manufacturer | Model | Serial | | | Notes |
|---|---|---|---|---|---|---|
| Printer | HP | LaserJet P2015dn | CNB9L14912 | Yes | Yes | |
| Printer | HP | LaserJet 1320tn | CNHC598022 | Yes | Yes | |
| Router | Cisco | 2800 Series | | Yes | Yes | |
| Router | Cisco | IAD 2400 Series | | Yes | Yes | |
| Scanner | Cannon | 9080C | CZ304492 | Yes | Yes | |
| Scanner | Cannon | 9080C | CZ304471 | Yes | Yes | |
| Scanner | Cannon | 9080C | CZ304470 | Yes | Yes | |
| Scanner | Cannon | 9080C | CZ304552 | Yes | Yes | |
| Scanner | Cannon | 9080C | CZ304551 | Yes | Yes | |
| Scanner | Kodax | i40 | 4322-0998 | Yes | Yes | |
| Scanner | Kodax | i40 | 4322-1078 | Yes | Yes | |
| Scanner | Kodax | i40 | 4322-1838 | Yes | Yes | |
| Scanner | Kodax | i40 | 4322-2171 | Yes | Yes | |
| Server | Dell | Power Edge 350 | 3TXLX11 / 83403160 | Yes | Yes | |
| Server | Dell | PowerEdge - Dev | 5LKTP21 | No | No | moved to Florida |
| Server | Dell | PowerEdge - Test | DYM1211 | No | No | moved to Florida |
| Server | Dell | PowerEdge - View | H05PV01 | No | No | moved to Florida |
| Server | Dell | PowerEdge - wfsd | F5RGX11 | No | No | moved to Florida |
| Server | Dell | PowerEdge - wfsn | G05PV01 | No | No | moved to Florida |
| Server | Dell | PowerEdge 1425 | CCRRL81 / 26893618 | Yes | Yes | |
| Server | Dell | PowerEdge 1550 | DGJ7211 / 29297871 | Yes | Yes | |
| Server | Dell | PowerEdge 750 - | B0TQS71 | No | No | moved to Florida |
| Server | Dell | PowerEdge 750 - | 7H0HT61 | No | No | moved to Florida |
| Server | Dell | PowerEdge 750 - | H0TQS71 | No | No | moved to Florida |
| Server | Dell | PowerEdge 750 - | 3DLSX51 | No | No | moved to Florida |

5 of 5

| Item | Brand | Model / Serial | | | Notes |
|---|---|---|---|---|---|
| Server | Dell | PowerEdge 750 - 4DLSX51 | No | No | moved to Florida |
| Server | Dell | PowerEdge 750 - 6H0HT61 | No | No | moved to Florida |
| Server Room Cooling Ur | Everstar | | | | |
| Switch | Belkin | 24 Port Gigabit Ethernet | Yes | Yes | |
| Switch | Netgear | 24 Port Gigabit Ethernet | Yes | Yes | |
| Switch | Netgear | 24 Port Gigabit Ethernet | Yes | Yes | |
| Switch | Netgear | 24 Port Gigabit Ethernet | Yes | Yes | |
| Telephone System | Mid-Atlantic | | Yes | Yes | |
| UPS | APC | 1000 | Yes | Yes | |
| UPS | APC | 1000 | Yes | Yes | |
| UPS | APC | 2200 | Yes | Yes | |
| Wireless Router | Linksys | Wireless-G | Yes | Yes | |
| Desktop | Apple | I-Mac   W87320ARX88 | No | Yes | |
| Jukebox | HP | Superstore Optical US9NJ00278 | No | No | moved to Florida |
| Monitor | Panasonic | 50 inch Plasma   YH5110324 | No | Yes | |
| Rack 1 | | | Yes | Yes | |
| Rack 2 | | | Yes | Yes | |
| Network Cabinet | | | No | No | moved to Florida |

The above checked and initialed items have been received from the Reston, Va office.

(Signature)   INTELLECTS FOODSYSTEMS, LLC
8/21/08

## Baril, Stephen E.

**To:**     Baril, Stephen E.

**Subject:** FW: BRAVERA: Award Announcement & Transition Planning

------ Forwarded Message
**From:** "Blake, Martin" <martin.blake@dhs.gov>
**Date:** Tue, 26 Aug 2008 09:42:08 -0500
**To:** <tony.weaver@riptide.com>, Joe Vitetta <jvitetta@riptide.com>
**Cc:** "Emerson, Sandra" <sandra.emerson@dhs.gov>, "Blake, Martin" <martin.blake@dhs.gov>, "Frantum, Kathleen" <Kathleen.Frantum@dhs.gov>, "Young, Michael" <Michael.Young3@dhs.gov>, "Fraley, George" <george.fraley@dhs.gov>, "Stratton, Bill" <bill.stratton@dhs.gov>
**Conversation:** BRAVERA: Award Announcement & Transition Planning
**Subject:** BRAVERA: Award Announcement & Transition Planning

Tony,

This message serves as official notice to Bravera of contract completion regarding contract #HSFE11-08-F-0183 at the end of the current Period of Performance, ending 9/30/2008. It also serves as notice of an award of a new contract to the contractor, Intellectus. The official contract award notice will be posted on www.fedbizops.gov <file://www.fedbizops.gov> .

Transition of services to Intellectus will occur during the last 30 days of the current contract with Bravera. FEMA's expectation is for the transition to be complete by 9/30/08 and for the new contractor to be fully operational before October 1st. During our 8/04/2008 meeting, you indicated that a 30 day notice would allow Bravera time to coordinate with the phone service and leases while transitioning to the new contractor.

As we are in the middle of Hurricane Season, it is imperative that all parties maintain good communication during this transition in order to ensure no service disruptions occur. The process will require close coordination between Bravera, our contracting office, FEMA IT, and the new contractor. Primary transitional elements include transfers of: the FEMA supplied network connection and records archival boxes currently stored by Bravera to the new contractor, and return of security badges to FEMA by 9/30/2008. Following completion of contract performance, I also request timely submission of Bravera's final invoice.

Please extend our thanks to your staff for their valuable support and efforts during our contract with Bravera.

Thank you,
Martin Blake
Program Manager, Contract Oversight and Management
Department of Homeland Security/FEMA
Texas National Processing Service Center
Phone:  940-891-8755
Fax:      940-323-2819

**WARNING:** This document is FOR OFFICIAL USE ONLY (FOUO). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information. This information shall not be distributed beyond the original addressees without prior authorization of the originator. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message.

------ End of Forwarded Message

SHEA EXHIBIT 9

| | O | Task Name | Duration | Start | Finish | Pre |
|---|---|---|---|---|---|---|
| 1 | | Lease for 1801 Robert Fulton Suite 250 is revised to allow termination with 30 days notice from | 1 day | Wed 7/16/08 | Wed 7/16/08 | |
| 2 | | A cubicle space at Reston is made available for Intellectus use during transition | 25 days | Thu 8/7/08 | Wed 9/10/08 | |
| 3 | | Florida Equipment Delivered to Reston | 1 day | Fri 8/8/08 | Fri 8/8/08 | |
| 4 | | Intellectus configures non-FEMA equipment for new contract | 15 days | Mon 8/11/08 | Fri 8/29/08 | |
| 5 | | BMW Title Delivered to Intellectus Holdings | 1 day | Fri 8/8/08 | Fri 8/8/08 | |
| 6 | | FEMA Transition Date Set (date is assumed) | 1 day | Mon 8/11/08 | Mon 8/11/08 | |
| 7 | | Intellectus Extends hiring opportunity to Affected government employees | 10 days | Tue 8/12/08 | Mon 8/25/08 | |
| 8 | | Intellectus selects employees for new contract from government and RTWW Reston staff | 1 day | Mon 8/25/08 | Mon 8/25/08 | |
| 9 | | RTWW sends two weeks notice of termination to affected employees | 1 day | Tue 8/26/08 | Tue 8/26/08 | |
| 10 | | RTWW completes transfer of remaining equipment, Ford Escape to Intellectus Holdings | 1 day | Wed 9/10/08 | Wed 9/10/08 | |
| 11 | | Intellectus turns on/transfers Reston Datalines to Intellectus from RTWW. RTWW pays any balances to date | 1 day | Wed 9/10/08 | Wed 9/10/08 | |
| 12 | | RTWW Reston Operations Complete | 1 day | Wed 9/10/08 | Wed 9/10/08 | |
| 13 | | SD2R accepts Reston Lease termination by RTWW | 1 day | Wed 9/10/08 | Wed 9/10/08 | |
| 14 | | Intellectus Begins processing operations | 1 day | Thu 9/11/08 | Thu 9/11/08 | |

SHEA EXHIBIT 10

**Baril, Stephen E.**

| | |
|---|---|
| **From:** | James Davies [jdavies@lcbf.com] |
| **Sent:** | Friday, July 18, 2008 1:05 PM |
| **To:** | Dowd, Brendan; Baril, Stephen E. |
| **Cc:** | Cristi Luckow |
| **Subject:** | Riptide Revisions - Watson's Revisions 7/18 |
| **Attachments:** | DocsNY-465364-v1-Watson - Settlement Agreement.DOC; bravera inventory.pdf |

Please call if you want to discuss.
Landman Corsi Ballaine & Ford P.C. N.Y. 212 238-4800 N.J. 973 623-2700 P.A. 215 561-8540 NOTE: This message, and any attached files, may contain privileged or confidential information. It is intended for use only by the addressee(s). Any disclosure, copying or distribution of, or reliance upon, this message by anyone else is strictly prohibited. If you received this message in error, please notify the sender by reply e-mail message or by telephone to one of the numbers above.

SHEA EXHIBIT 11