UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHEA DEVELOPMENT CORP., BRAVERA INC.,
and IP HOLDING OF NEVADA CORP.,            07 Civ. 11201
                                           (DLC) (GWG)
       Plaintiffs,

  - against -

CHRISTOPHER WATSON and ELIZABETH ANNE
CONLEY,

       Defendants.

------------------------------------------------------------------X


## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION AND IN OPPOSITION TO PLAINTIFFS' CROSS MOTION

LANDMAN CORSI BALLAINE & FORD P.C.
Attorneys for Defendant
Christopher Watson
120 Broadway, 27th Floor
New York, NY 10271-0079
(212) 238-4800

Of Counsel:
James E. Davies

466888.1 DocsNY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. ii

PRELIMINARY STATEMENT ............................................... 1

STATEMENT OF FACTS .................................................... 2

LEGAL ARGUMENT ........................................................ 3

POINT I
PLAINTIFFS ARE BOUND BY THE SETTLEMENT AGREEMENT REACHED IN OPEN
COURT AND SHOULD BE ORDERED TO ABIDE BY SAME ....................... 3

    A.    Stocks and Warrants ............................................ 4

    B.    Indemnification Issues/General Release ............................ 6

    C.    Tax Liability ................................................... 8

    D.    Business Equipment ........................................... 10

    E.    GSA MOBUS Contract and BMW ................................ 12

POINT II
SHEA'S CROSS-MOTION FOR SANCTIONS AND ATTORNEYS' FEES IS DEVOID OF
MERIT AND SHOULD BE DENIED ......................................... 12

CONCLUSION ............................................................ 14

# TABLE OF AUTHORITIES

## CASES

In re Cuffee, 232 B.R. 53 (E.D.N.Y. 1999) .................................................................. 3

Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006 (2d Cir. 1999) ...................... 12

Keller v. Mobil Corp et al., 55 F.3d 94 (2d. Cir. 1995) ...................................................... 12, 13

In re Marketxt Holding Corp., 336 B.R. 39 (S.D.N.Y. 2006) .......................................... 3

Medinol Ltd. v. Guidant Corp., 500 F. Supp. 2d 345 (S.D.N.Y. 2007) ................................ 3

Melwani v. Jain, 2004 U.S. Dist. LEXIS 7590 (S.D.N.Y. Apr. 26, 2004) ............................ 3, 8

Oliveri v. Thompson, 803 F.2d 1265 (2d Cir. 1986) ......................................................... 12

Heiser v. Woodruff, 327 U.S. 726 (1946) ......................................................................... 7, 8, 10

Shub v. Westchester Community College, 556 F. Supp. 2d 227 (S.D.N.Y. 2008) ................... 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHEA DEVELOPMENT CORP., BRAVERA INC., and
IP HOLDING OF NEVADA CORP.,,

        Plaintiffs,

- against -

CHRISTOPHER WATSON and ELIZABETH ANNE
CONLEY,

        Defendants.
------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION AND IN OPPOSITION TO PLAINTIFFS' CROSS MOTION**

07 Civ. 11201 (DLC) (GWG)

## PRELIMINARY STATEMENT

Defendant Christopher Watson ("Watson") respectfully submits this memorandum of law in reply to plaintiffs Shea Development Corp., Bravera Inc., and IP Holding of Nevada Corp.'s (collectively "Shea") opposition to Watson's motion to enforce the settlement agreement reached on July 10, 2008 ("Settlement Agreement") and to award Watson his costs and attorney's fees incurred in seeking to complete and enforce the settlement. This memorandum of law is further submitted in opposition to Shea's cross-motion to enforce settlement agreement and for sanctions.

Shea's cross-motion only underscores it's failure to complete the transaction agreed to on July 10, 2008. While plaintiffs allege that Watson, and not Shea, has attempted to change the agreement, the documents annexed to both parties moving papers make clear the following:

- At all times Watson has been willing to forward plaintiff the stock certificate in the amount of 3.3 million shares, and all warrants to purchase Shea stock;

- At all times Watson has been willing to execute releases provided that those releases do not affect contractual obligations that may arise in the future pursuant to the existing agreements;

467772.1 DOCSNY

- At all times Watson has endeavored to resolve the tax liability issue;

- Shea did not deposit $275,000 into an interest bearing account as it was required to do on July 24, 2008 and still has not;

- Shea has not transferred the automobiles as required by the settlement agreement;

- Shea has not transferred all of the business equipment including Intellectus' intellectual property that was stored on that equipment; and

- Shea has not taken necessary steps to allow for the transfer of the GSA MOBUS contract as it was required to do; and

- Shea has not remitted $175,000 in settlement proceeds.

Given Shea's outright unwillingness to perform, contrasted with Watson's desire to perform beginning on July 11, 2008 (as evidenced by, *inter alia*, Watson's request for a Power of Attorney authorizing accountants to contact the taxing authorities, Davies Decl., Ex. E), it is clear that this Court should enforce the Settlement Agreement, provide dates certain by which Shea's performance is due, and award Watson his reasonable costs and attorneys fees incurred since July 11, 2008.

## STATEMENT OF FACTS

Watson will rely on the statement of facts as set forth in its memorandum of law in support of its motion to enforce settlement and for sanctions.

# LEGAL ARGUMENT

## POINT I

### PLAINTIFFS ARE BOUND BY THE SETTLEMENT AGREEMENT REACHED IN OPEN COURT AND SHOULD BE ORDERED TO ABIDE BY SAME

As set forth in detail in Watson's memorandum of law in support of its motion to enforce the Settlement Agreement, a settlement placed on the record in open court is "one of the strongest and most binding agreements in the field of law." In re Marketxt Holding Corp., 336 B.R. 39, 58 (S.D.N.Y. 2006); In re Cuffee, 232 B.R. 53, 56 (E.D.N.Y. 1999); see also Melwani v. Jain, 2004 U.S. Dist. LEXIS 7590, at *6 (S.D.N.Y. Apr. 26, 2004). Further, courts have held that an oral statement of settlement placed on the record is necessarily a summary and is not fully integrated and complete. Medinol Ltd. v. Guidant Corp., 500 F. Supp. 2d 345, 353 (S.D.N.Y. 2007). Here, Shea has obstructed Watson's efforts to consummate the settlement by failing to perform in any respect and instead seeking to assert additional terms into the agreement, to wit: a) that Watson rescind his prior tender of shares and b) that Watson release Shea from its contractual duty to indemnify him in the future. As discussed below, the record is clear that Watson was not required to rescind his tender. Indeed, the Settlement Agreement specifically required Shea to accept Watson's tender. Further, other than releasing claims that now exist, and future claims based upon the non-compete provisions of the Senior Management Employment Agreement dated July 15, 2007 ("Employment Agreement"), the Settlement Agreement did not affect any other prior agreements between the parties, including the indemnity provisions of the Agreement and Plan of Merger dated August 26,

2007 ("Merger Agreement").[1]

### A. Stocks and Warrants

Contrary to Shea's assertions, Watson has always been ready, willing and able to deliver a stock certificate containing all 3.3 million shares of Shea Stock issued to Watson. Rather, it was, and remains today, plaintiffs' attempt to rewrite the Settlement Agreement and not expressly recognize the December tender that has prevented delivery of the stock certificate.

The settlement reached in open court unambiguously requires Shea to accept the "tender of stocks and warrants that <u>has been made</u> by Watson." Davies Decl., Ex. D, p. 4. The plain language of the settlement refers to a tender that "has been made" in the past. Id.

After the settlement was finalized in court, Shea drafted a written version of the settlement agreement. Regarding stocks and warrants, it states:

> Within ten (10) business days of execution of this Agreement, Mr. Watson shall tender to Shea all certificates representing the Shea Stock and warrants to purchase shares of Shea Stock in the possession of any of the Watson parties or to which any of the Watson Parties even had any claim of ownership or interest, and Shea shall verify that all Shea Stock and warrants to purchase shares of Shea Stock have been returned by the Watson Parties.

Davies Decl., Ex. F, ¶ 1. In its revisions, without altering the language quoted above, Watson inserted a single additional sentence: "By execution of this agreement, Shea hereby accepts the December 18, 2007 tender of 400,000 (four hundred thousand) shares of Shea stock at $.25 (twenty-five cents) per share." Davies Decl., Ex. G, ¶ 1. This additional language merely describes the prior

---

[1] The Employment Agreement is annexed to the August 15, 2008 Declaration of James Davies ("Davies Decl.") as Exhibit B. The Merger Agreement is annexed to the Davies Decl. as Exhibit A.

tender that had been made. The remainder of the paragraph is unchanged obligating Watson to return all of his Shea stock and warrants to purchase Shea stock.

Shea's version of the written agreement fails to account for the part of the settlement which states that Shea will accept the tender that "has been made" by Watson. Davies Decl., Ex. D, p. 4. Notwithstanding Shea's characterization of Watson's interpretation of the agreement as a "scheme," Shea's feigned ignorance of the December tender is belied by the fact that December 17, 2007 letter tendering the shares was annexed to Watson's July 7, 2008 mediation statement and the tender was specifically referenced in its mediation statement. See July 7, 2008 letter annexed to the Reply Declaration of James Davies dated September 8, 2008 as Exhibit 8.

Further, Shea mischaracterizes the effect of the tender. The tender was not a "scheme" to saddle Shea with on-going indemnification duties. Instead, Watson believes that the prior tender was properly made and that Shea's recognition of this fact merely provides Watson additional protection pursuant to Section 7.4(b) of the Merger Agreement, in the event of future derivative claims. Davies Decl., Ex A at 37.

Insofar as Shea claims that Watson has refused to return all stock and warrants, as is required by the settlement. This is simply not true. As discussed above, Watson's revisions to Shea's proposed agreement did not affect Watson's obligations to deliver all his Shea stocks and warranties. *See also* Davies Decl., Ex. K. ("We are interested in resolving [the dates for transfer of stock] as soon as possible"); Ex. O ("Obviously, counsel will provide the original certificate of stock in the amount of 3.3 million shares"); Ex. Q; Ex. R.

The record is clear. The Settlement Agreement unambiguously required Shea to accept the December 2007 tender which "had been made." A copy of letter tendering the shares was annexed

to Watson's mediation statement and was referred to in the body of the mediation statement. Accordingly, the Court should enforce the Settlement Agreement's requirement that Shea accept the December tender.

### B. Indemnification Issues/General Release

In its brief, Shea once again mischaracterizes the dispute, arguing that Watson has attempted to assert an additional term - to wit: that Shea agree to indemnify Watson in the event of future claims by third-parties. That statement is factually false as Shea already owes that duty to Watson. Article 5 of the Merger Agreement, clearly identifies Watson, a former officer, as a Company Indemnified Party to whom Shea will:

> . . . as an absolute and unconditional guarantor of performance and payment, and will cause [Bravera, Inc.] to indemnify and hold harmless, to the fullest extent permitted under applicable Law . . . [Watson] . . .

Davies Decl, Ex. A at 32.

Instead, it is Shea who is attempting to insert an additional term by proposing language in the written releases that would arguably limit Mr. Watson's ability to enforce his rights in the future. Nowhere in the agreement is Watson required to give up this essential contract right.

The settlement requires all parties to the litigation to enter into "general releases," that reference relates to all of the pending litigations. While Watson does not object to executing a release of all claims now existing, nowhere does the settlement suggest modification of Merger Agreement. Indeed, at no point does the Settlement Agreement refer in any way to the Merger Agreement.

Fatal to Shea's argument, the Settlement Agreement does suggest that the parties intended for the underlying agreements to remain in place. The agreement specifically provides that the non-compete clause contained in the Employment Agreement be deemed null and void. Davies Decl., Ex. D, p. 5. It was precisely because Watson feared that the release would be executed and that Shea would then commence another action under the Employment Agreement's then continuing non-compete provision, that the Settlement Agreement expressly releases the non-competes. If Shea did not want the indemnification provisions in the Merger Agreement to survive the settlement, it should have specifically requested and bargained for their nullification. Absent such a specific request and bargain, the indemnification provisions survive the general release language of the settlement.

Finally, Shea's reliance on case law cited in its brief is, at the very least, disingenuous. Watson agrees that the release he agreed to execute will release not only the claims asserted in the varied litigations, but also all "relevant issues which could have been but were not raised in the suit." Pls.' Mem. at 24 quoting Heiser v. Woodruff, 327 U.S. 726, 735 (1946). What Watson refuses to do, however, is execute any document which raises a question as to whether Mr. Watson can seek indemnity from Shea in the future should a third-party claim be brought against him in connection with his involvement with Shea and his employment by Bravera.

Contrary to plaintiff's citation, the Second Circuit case has never defined a general release as a release that includes "any claim which might arise in the future out of the 'matters and transactions' recited in the pleadings." Pls'. Mem. at 24 quoting Ruskay v. Wadell, 552 F.2d 392, 395 n. 5(2nd Cir. 1977). Instead, the Ruskay Court was merely describing the terms of a release contained in a Judgment and Order issued by Judge Lasker resolving a prior class-action. In no way did the Second Circuit suggest a general release released claims other than those existing at the time

the release was executed. Indeed, in Ruskay, the parties seeking to avoid the effect Judge Lasker's prior Judgment and Order argued that "despite the clear language of the release, it [was] operative only to those claims that they were pressing at the time of settlement." Id. at 394. Accordingly, plaintiff's erroneous citation to Ruskay should be rejected by this Court.

Instead, Courts in this district have found a "general release" to be a "release that covers all claims and demands due at the time of its execution." Shub v. Westchester Community College, 556 F. Supp. 2d 227, 242 (S.D.N.Y. 2008)(emphasis added); see also Melwani v. Jain, 2004 U.S. Dist. LEXIS 7590, at *20 (S.D.N.Y. 2004). By the very definition of a general release, a party is barred from bringing claims against the other party based on the party's actions prior to the signing of the release. Shub, 556 F. Supp. 2d at 242. Where a party's claims are based on actions which occur after the execution of the release, however, the general release will not act as a bar to these claims. Id.

Here, Shea owes a duty of indemnification for any potential future claims and nothing in the settlement agreement alters or discharges that duty. Thus, any language in a release executed pursuant to the Settlement Agreement must not cloud Watson's clear agreed to right to seek indemnity if circumstances in the future so warrant.

C.  Tax Liability

Regarding the tax liability issue, a hearing was held with the IRS on August 27, 2008. No decision has been entered. Further, no hearing has been scheduled with the Commonwealth of Virginia. No power of attorney has been signed by Shea, and therefore Watson is unable to inquire further into the tax liability issue, absent the assistance of Shea's counsel.

For purposes of paying the potential tax liability, the settlement requires that $275,000 be

placed in an interest-bearing escrow account within fourteen days of the settlement, or by July 24, 2008. Any interest earned, as well as any remaining money after paying the tax liability, will be Watson's property. The $275,000 was not placed in escrow on July 24, 2008.

As set forth in Watson's prior papers, Watson attempted to begin resolving the tax liability on July 11, 2008, the day after the settlement conference. However, Shea never executed a Power of Attorney authorizing Watson's accountants to contact the taxing authorities. Indeed, it was not until July 31, 2008 that Shea even requested Watson's accountant's contact information so that Watson could begin work to resolve the tax issues.

Also on July 31, seven days after the agreed July 24 deadline, Shea advised it <u>would</u> deposit $275,000 in escrow on August 4, 2008. Davies Decl., Ex. L. By email dated August 1, 2008, Watson responded that the $275,000 needed to be placed in escrow immediately. Davies Decl., Ex. M. On August 4, 2008, Shea's counsel advised that he had contacted Shea about wiring the $275,000 into the trust account and would confirm a date as soon as possible. Davies Decl., Ex. N. On August 6, 2008, in response to Watson's counsel's email requesting confirmation that the $275,000 had been placed in escrow, Shea's counsel advised that he "understood" that the $275,000 would be wired into escrow the next day. Davies Decl., Ex. P. On August 7, 2008, Watson's counsel again sought confirmation that the $275,000 had been placed in escrow.

Then, in abrupt turnaround, by letter dated August 14, 2008, Shea's counsel insists that Shea had not deposited the $275,000 in escrow for three reasons: (1) It has been working on a number of business transactions and anticipates funding coming through during the next week; (2) Funding the escrow was "not material" because the IRS tax liability issue would not be resolved before the hearing on August 27, 2008; and (3) Watson's non-performance. Davies Decl., Ex. T.

Funding the escrow by July 24, 2008 is material to the settlement as it was to be placed in an interest-bearing account, with the interest belonging to Watson after the tax liability had been paid. Davies Decl., Ex. D, p. 5-7. Shea's failure to place the $275,000 in this account has resulted in Watson's loss of over a month's worth of interest, to date.

Shea now claims that "the record is clear that Shea was ready, willing and able to fund the escrow until it discovered Watson's "gotcha' scheme." Pls.' Mem at 25. However, as discussed above, there is no "gotcha' scheme." Instead, according to counsel's August 14, 2008 letter, Shea was unable to fund the escrow because it was working on a number of business transactions to provide funding for the settlement, and expected funding to come through during the next week. Davies Decl., Ex. T. To date, the $275,000 has not been placed in an interest-bearing escrow account. The terms of the July 10, 2008 settlement are clear on this point: $275,000 was to be placed in an interest-bearing escrow account within fourteen days, or by July 24, 2008. Shea's failure to do so is further evidence of its continued non-performance of its obligations under the settlement agreement.

### D.  Business Equipment

The settlement requires Shea to return certain business equipment to Watson. Certain equipment located in Florida was recently retrieved by Watson on August 13, 2008. Upon inspection of this equipment, Watson noted that key hardware and software was missing. Shea claims that Shea informed Watson that it had wiped clean the source code and software from all business equipment in response to demand letters from Watson's former attorneys. Wilde Decl., ¶ 11; Davies Decl., Ex.

T.

Shea refers to letters from Watson's prior counsel to support its claim. These letters, attached to the letter from Shea's counsel annexed to the Davies Declaration at Exhibit T, advise Francis Wilde, Chairman and CEO of IP Holding of Nevada Corp., that it is in breach of the Software Agreement. At no time does Watson's former counsel request that Shea wipe clean the source code and software from all business equipment. In fact, in the January 22, 2008 letter to Mr. Wilde and his counsel, counsel for Watson advised the "[i]f it is not IP Holding's intention to pay what it owes in full, please make arrangements to transfer those assets promptly." Davies Decl., Ex. T. At no time does counsel advise that Shea should "wipe clean" the source code and software from the business equipment.

Contrary to what Shea and Wilde claim to have happened, the Software License and Asset Purchase Agreement dated July 16, 2007 ("IP Agreement") specifically required Shea to protect Intelectus' source code with "the greater of a commercially reasonable degree of care or the same degree of care as [Shea] uses for [its] own confidential information." Davies Decl., Ex. C at 2. While it is unclear how Shea protects its own confidential information, allowing computer source code to be "wiped clean" into the ether clearly is not a commercially reasonable method for protecting that property.

Finally, Francis Wilde, the CEO of Shea, claims that he "specifically stated in open court in Watson's presence on July 10, 2008" that he "instructed Shea personnel to [wipe the source code and software from the business equipment] in response to threats by Watson's attorneys to sue Shea for allegedly violating the parties' Licensing Agreement." Wilde Decl., ¶ 11. This statement is false. Wilde did not state that the source code and software had been wiped from the business equipment

in open court or at any other time in Watson's presence on July 10, 2008. Watson Reply Decl., ¶ 4. Indeed, Wilde merely dismissively stated that Shea did not want it. Id., at ¶ 4.

### E. GSA MOBUS Contract and BMW

Shea alleges that it has contacted the GSA about novating the GSA MOBUS contract, and is prepared to transfer title to the BMW. Shea blames its non-performance on Watson's refusal to perform material terms of the settlement, such as returning all stocks and warrants and providing a general release. As previously discussed, the settlement requires Shea to accept the tender that had previously been offered, and Watson has agreed to transfer the remaining shares and all warrants. Davies Decl., Ex. D; Davies Decl., Ex. R. Further, Watson will provide a general release in conformance with the terms of the settlement.

### POINT II

### SHEA'S CROSS-MOTION FOR SANCTIONS AND ATTORNEYS' FEES IS DEVOID OF MERIT AND SHOULD BE DENIED

Shea's Cross- Motion for sanctions and attorneys' fees is so completely without merit as to require the conclusion that the instant Cross-Motion must have been undertaken for an improper purpose such as to delay settlement. Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986); Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006, 1010 (2d Cir. 1999). In Keller v. Mobil Corp et al., 55 F.3d 94 (2d. Cir. 1995), the Court of Appeals noted that sanctions and attorneys' fees would be appropriate against an attorney who delayed settlement if the attorney: 1) had ulterior motives for insisting on different language in the settlement agreement; 2) gained any

advantage to the additional delay; and 3) used the proposed changes to extract additional concessions. Id. at **16. The settlement at-issue has been delayed by Shea for all three (3) of the foregoing reasons.

As set forth supra, while plaintiffs assert that Watson and not Shea curtailed resolution of this settlement process, the documents annexed to both parties moving papers are clear and speak for themselves. It is Shea, and not Watson, who has failed to perform material terms of settlement, has attempted to modify terms within the existing agreement, has sought additional concessions from Watson, and has gained advantage to the additional delay. In fact, this instant Cross-Motion can only be construed as an additional delay tactic to avoid settlement.

For the foregoing reasons, Shea's Cross-Motion for sanctions should be dismissed and Watson's motion to award defendant the costs and attorneys fees incurred since July 11, 2008 should be granted.

## CONCLUSION

Based on the foregoing, as well as all arguments set forth in Watson's memorandum of law in support of its motion to enforce settlement agreement and for sanctions, it is respectfully requested that defendant Watson's motion to enforce the July 10, 2008 settlement agreement and awarding defendant the costs and attorneys fees incurred since July 11, 2008 be granted.

Dated: September 8, 2008

                                                  Respectfully submitted,

                                                  James E. Davies (JED0599)
                                                  Landman Corsi Ballaine & Ford P.C.
                                                  Attorneys for Defendant
                                                  Christopher Watson
                                                  120 Broadway - 27th Floor
                                                  New York, NY 10271
                                                  (212) 238-4800

<u>AFFIDAVIT OF SERVICE VIA UPS OVERNIGHT</u>

**Regina Cajigas**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at Brooklyn, NEW YORK.

That on the 8th day of September, 2008, deponent served the within **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

upon

>Michael E. Twomey (MT 7839)
>Twomey, Hoppe & Gallanty, LLP
>757 Third Avenue
>New York, New York 10017
>
>Monica McCarroll
>Williams Mullen, PC
>1021 East Cary Street, 17th Floor
>Richmond, Virginia 23219
>
>Brendan J. Dowd
>O'Melveny & Myers LLP
>Times Square Tower
>7 Times Square
>New York, New York 10036

attorneys in this action, at the addresses designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed United Parcel Service overnight mail wrapper, under the exclusive care and custody of United Parcel Service.

_____
Regina Cajigas

Sworn to before me this
8th day of September, 2008

_____
Notary

NANCY SEVERE
Notary Public, State of New York
No. 01SE5058540
Qualified in Nassau County
Commission Expires April 8, 2010

467991.1 DocsNY