UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

SHEA DEVELOPMENT CORP., BRAVERA, INC.,
and IP HOLDING OF NEVADA CORP.,

                Plaintiffs,

v.                                              **07 Civ. 11201 (DLC) (GWG)**

CHRISTOPHER WATSON and ELIZABETH ANNE
CONLEY,

                Defendants.

-------------------------------------------------------------------X

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS-MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS

---

Michael E. Twomey
Twomey, Hoppe & Gallanty, LLP
757 Third Avenue
New York, NY 10017
212.688.0400
212.688.1929 (FAX)

Stephen E. Baril
WILLIAMS MULLEN
P. O. Box 1320
Richmond, VA 23218-1320
804.783.6459
804.783.6507 (FAX)

*Counsel for Plaintiffs*

September 12, 2008

**PRELIMINARY STATEMENT**

Plaintiffs Shea Development Corp., et al. (referred to collectively herein as "Shea"), by counsel, submit the following Reply Memorandum of Law in support of Shea's Cross-Motion to Enforce Settlement Agreement and for Sanctions.

In his Memorandum in Opposition to Shea's Cross-Motion ("Defendant's Opp."), Defendant Christopher Watson ("Watson") continues to try to misdirect the Court's attention from his material nonperformance of the parties' settlement on the record on July 10, 2008 (the "Settlement"). Rather than tender all stocks and warrant to Shea, without conditions as stated in the Settlement, Watson insists that Shea accept a "partial" tender based upon a "gotcha" argument. Rather than execute a general release as called for in the Settlement, Watson insists on a "carve-out" for "indemnification" claims. The irony is that the term "indemnification" appears nowhere in the Settlement. When Watson sought clarification on this point on July 29th, Judge Gorenstein declared that the Settlement does not address indemnification claims or rights; it is silent on this issue. Despite seeking and getting the Court's clarification, Watson has persisted with his contention nonetheless. Hence, completion of the parties' Settlement has stalled.

**ARGUMENT**

**I.    Cross-Motion to Enforce Settlement Agreement**

**A.    Return of All Stocks and Warrants.**

Watson's assertion – that he has always been "ready, willing and able" to return the stock certificate for 3.3 million shares of Shea stock, along with all warrants – is disingenuous at best. (See Defendant's Opp. at 1, 4.) Watson's so-called "willingness" has always come with the

2

string that Shea accept a "partial" tender in December 2007 that was tied to certain

indemnification rights under Section 7.4(b) of the Merger Agreement.  (See id. at 4-6.)

      Watson's argument relies exclusively upon a single sentence in the Settlement:  "The

tender of stocks and warrants that has been made by Mr. Watson will be accepted [by Shea]."

(Id. at 4.)  Watson ignores the next sentence in the Settlement that puts this term in context:  "He

[Watson] represents that these [the tender of stocks and warrants] are all the stock and warrants

and that's going to be verified by the plaintiff [Shea]."  (Watson Ex. D at 4 (emphasis added).)[1]

The two sentences in the Settlement, when read together and in context, say (i) that Watson will

return all stock and warrants; (ii) that Watson represented he had previously tendered all stock

and warrants; and (iii) that Shea is entitled to verify Watson's representation.  (See id.)

      When Shea received Watson's proposed revision to the draft Settlement agreement

requiring Shea to accept a "tender" of "400,000 . . . shares," Shea verified that 400,000 shares

did not constitute all stock and warrants.  That fact is not in dispute.  In fact, Watson made no

"tender" of stock on December 18, 2007, because nothing was "tendered" to Shea with Watson's

letter.  Nonetheless, Watson has persisted with his "gotcha" argument.

      Watson's reliance on parole evidence (the parties' draft settlement agreements and

Watson's December 18, 2007 letter) is improper.  Settled rules of construction require that where

an agreement is clear and unambiguous, the Court must determine the parties' intent from the

words they used in the agreement and may not resort to parole evidence.  See generally

Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 569 (2002) ("[A]

written agreement that is complete, clear and unambiguous on its face must be enforced

---

[1] Shea incorporates the exhibits identified in the Declaration of James Davies filed on August 15, 2008 in support of Watson's motions, and Shea will refer to them herein as "Watson Ex. ___." Shea also incorporates the exhibits identified in the Declaration of Stephen E. Baril filed on or about September 2, 2008 in support of Shea's motions, and Shea will refer to them herein as "Shea Ex. ___."

according to the plain meaning of its terms"). Further, words and sentences should be read in context of the entire agreement, and not in isolation. See Collins v. Harrison-Bode, 303 F.3d 429, 433 (2nd Cir. 2002).

Moreover, Watson has already sought clarification from the Court about whether the Settlement resolves indemnification rights under the parties' Merger Agreement. At the July 29th conference, Judge Gorenstein stated that the Settlement is silent on indemnification. Significantly, Watson does not dispute this point in his Opposition or supplemental declaration. Nevertheless, in the aftermath of the July 29th conference, Watson immediately backtracked to his position that Shea must accept the partial "tender" of 400,000 shares at $.25 per share. (See Watson Ex. O, second paragraph; Watson Ex. R, ¶ 7.) That term, as stated by Watson, simply does not appear in the parties' Settlement.

**B.    Execution of General Releases.**

Watson also contends that the parties' agreed to a "carve-out" from his general release for indemnification claims. (See Defendant's Opp. at 6.) Here again, the word "indemnification" does not appear in the Settlement. (See Watson Ex. D at 4-9.) Judge Gorenstein clarified on July 29th that the express term requiring the parties to exchange of "general releases" does not address indemnification claims. Watson does not dispute what transpired on July 29th.

Once again, Watson improperly relies on parole evidence (Article 5 of the Merger Agreement) to make his argument. Because this term is clear and unambiguous, parole evidence should not be considered in any respect.

Next, Watson argues that the parties "intended" for the Merger Agreement to remain in full force and effect because the parties expressly agreed to nullify the non-compete provision in Watson's Employment Agreement. (See Defendant's Opp. at 7.) Watson misses the point of the

4

parties' Settlement. Watson's non-compete extended beyond Watson's termination of
employment. (See Watson Ex. B at 7-8.) If the parties had not agreed to nullify this provision,
Watson would have been hamstrung in taking over performance of the FEMA and GSA MOBIS
contracts that are subjects of the Settlement. Hence, the reason for nullifying Watson's non-
compete had nothing to do with the Merger Agreement.

Finally, Watson argues that case law limits a general release to claims existing at the time
of the settlement. The very case law Watson cites, however, makes clear that a general release
reaches all claims, past, present, or future, that are due at the time the release is executed:

> Here, plaintiff provided defendants with a release of all claims that
> he "ever had, now [has] or hereafter can, shall or may, have for,
> upon, or by reason of any matter, cause of thing whatsoever from
> the beginning of the world to the day of the date of this release."
> This is the very definition of a general release. The release is also
> referred to as a "general release" by the parties in the 1999
> Settlement.

Shub v. Westchester Community College, 556 F.Supp.2d 227, 242 (S.D.N.Y. 2008) (emphasis
added).

### C.    Tax Liability Issue.

Watson acknowledges that the parties are awaiting a decision from the IRS. (See Watson
Opp. at 8.) This week Watson's CPA advised Shea that the Commonwealth of Virginia has
resolved and closed its tax liability issue. (See Suppl. Decl. of Baril, ¶ 4; Shea Ex. 12.) Shea has
not yet received written confirmation. Hence, Watson cannot demonstrate that Shea has
hindered the resolution of the tax liability issue one iota.

Clearly, Watson is not yet entitled to the $275,000 to be deposited in escrow and has not
been damaged. The reason the funds were not deposited on July 24th, per the Settlement, was
because Watson declared on July 23rd that he was scheduling a conference with Judge Gorenstein

to seek clarification about the material issues discussed above. (See Watson Ex. I.) After Judge

Gorenstein stated that the Settlement is silent on "indemnification," Shea was indeed willing to

deposit the $275,000 in escrow. By August 7th, however, Watson had reneged again on returning

all stock and warrants, without strings attached, and delivering a general release without any

"carve-out." (See Watson Ex. Q.) Instead, Watson decided to "appeal" Judge Gorenstein's

interpretation on July 29th by filing with the U.S. District Court a motion to enforce his

interpretation of the parties' Settlement. As a consequence, Watson is and has been refusing to

perform material terms of the Settlement. Watson's non-performance has therefore relieved

Shea of its obligation to perform terms of the Settlement that are important to Watson. See

generally CMI II, LLC v. Interactive Brand Development, Inc., 13 Misc. 1214A, 824 N.Y.S.2d

753 (Sup. Ct. NY Co. 2006) (a party seeking to recover for breach of contract must establish

"performance of the contract by the injured party"). Significantly, Watson has suffered no harm

in this regard because no portion of the $275,000 is yet due and payable to Watson.

      **D.**      **The Business Equipment and Other Assets.**

      Contrary to Watson's assertions that "key hardware and software was missing" from the

equipment Shea allegedly agreed to return (see Defendant's Opp. at 10), the Settlement does not

identify the specific equipment at issue. It certainly does not speak to software or Watson's

intellectual property. The Settlement simply states: "The plaintiff will return to Mr. Watson –

will transfer to Mr. Watson . . . the certain business equipment that's been the subject of the

settlement letters that every party appears to be familiar with." (Watson Ex. D, at 5.).

      By both parties' admissions, the identification of the specific business in question was

developed post-Settlement through the exchange of inventories. (See Watson Exs. G and L.)

Those inventories, however, do not identify software or intellectual property, nor do they contain

any representations or warranties about the condition of any of the used business equipment.

Watson further contends, for the first time, that Shea somehow violated the parties'

Software License and Asset Purchase Agreement (the "IP Licensing Agreement") by wiping the

business equipment clean after Watson's counsel threatened to file suit against Shea. (See

Watson Ex. T (letters attached).)  Watson's position is absurd.  Shea did not purchase the

software or source code at issue.  Shea merely "licensed" it. (See Watson Ex. C, at 2.)  Watson

(or his company Intellectus) owns it.  Watson offers no explanation why he or his company does

not possess the software or source code, or how he could have been damaged by Shea's actions.

## II.    Motion for Sanctions

Despite Watson's own failure and refusal to (1) tender all stocks and warrants, without

any conditions, and (2) execute a general release, Watson remarkably contends that Shea should

be sanctioned for "delay[ing] settlement." (See Defendant's Opp. at 12.)

In fact, the primary case cited by Watson is inapposite to his argument.  In Keller v.

Mobil Corporation, 55 F.3d 94 (2nd Cir. 1995), the Court vacated a sanction order, stating:

> We do not believe that [plaintiff's counsel] acted in bad faith in
> insisting that the agreement conform to her understanding of the
> parties' settlement.  The record reflects a bona fide belief on
> [plaintiff's counsel's] part that her client would not be adequately
> protected by Mobil's proposed retention-of-jurisdiction and
> confidentiality clauses.

Id., at 99.

Clearly, the parties had a "bona fide" dispute when they appeared before Judge

Gorenstein on July 29th seeking clarification of their competing interpretations of material terms

of the Settlement.  Even after getting that clarification, Watson has persisted with his

interpretation of the Settlement, which has brought the parties to the point of filing a motion and

cross-motion for enforcement of the Settlement. Simply stated, the parties disagree about material terms of the Settlement and have been unable to settle their disagreement. That may mean the parties are hard-headed, but it does not show "bad faith." See Keller, at 99. To the extent there has been any bad faith, however, it is Watson who has failed and refused to perform after Judge Gorenstein clarified that the Settlement is silent on "indemnification" rights.

## CONCLUSION

For the reasons stated herein, Shea respectfully moves the Court to enforce Shea's understanding of the parties' Settlement, to award Shea sanctions against Watson, including attorney's fees and costs incurred herein, and to deny Watson's motion to enforce the Settlement and for sanctions.

Dated: New York, New York
      September 12, 2008

WILLIAMS MULLEN

By: _____
     Stephen E. Baril (SEB – 2728)
P.O. Box 1320
Richmond, Virginia 23218-1320
804.783.6459
804.783.6507 (FAX)
    - and –
Twomey, Hoppe & Gallanty LLP
757 Third Avenue, 7th Floor
New York, New York 10017
212.688.0400
212.688.1929 (FAX)
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2008, a true and correct copy of the

foregoing was sent by electronic mail and by Federal Express to:

> James E. Davies
> Landman Corsi Ballaine & Ford P.C.
> 120 Broadway, 27th Floor
> New York, NY 10271-0079
> jdavies@lcbf.com

1655457v2