```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SHEA DEVELOPMENT CORP., BRAVERA, INC.,  :
and IP HOLDING OF NEVADA CORP.,         :
                         Plaintiffs,    :   07 Civ. 11201 (DLC)
                                        :
              -v-                       :   OPINION & ORDER
                                        :
CHRISTOPHER WATSON and ELIZABETH ANNE   :
CONLEY,                                 :
                         Defendants.    :
----------------------------------------X
```

Appearances:

For Plaintiffs:

Thomas V. Marino
Dunnington Bartholow & Miller LLP
477 Madison Avenue, 12th Floor
New York, New York 10022

For Defendant Christopher Watson:

James Davies
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271

DENISE COTE, District Judge:

On October 27, 2008, Magistrate Judge Gabriel W. Gorenstein issued a Report and Recommendation (the "Report") resolving disputes regarding the interpretation of an oral settlement reached before Judge Gorenstein during a settlement conference on July 10, 2008, and placed on the record that day. The Report included a proposed Settlement Judgment in accordance with the terms of the agreement. Christopher Watson filed timely

objections to the Report.[1]  For the reasons that follow, the Report is accepted with the modifications explained below.  A Settlement Judgment is appended.

## BACKGROUND

This dispute arises out of a merger executed by defendant Christopher Watson and Shea Development Corporation ("Shea").[2]  Christopher Watson sold his company, Bravera, Inc., to Shea's wholly owned subsidiary, Shea Development Acquisition No. 3 Corp., pursuant to an Agreement and Plan of Merger dated April 26, 2007 (the "Merger Agreement").  Watson accepted employment with Bravera in a Senior Management Employment Agreement on July 15, 2007.  In an agreement of July 16, 2007, Shea Development Corporation, through another wholly owned subsidiary, plaintiff IP Holding of Nevada Corporation, licensed for use by Bravera the intellectual property owned by Intellectus, LLP ("Intellectus"), of which Watson was the sole shareholder.

Shea filed a complaint on December 12, 2007, alleging that Watson fraudulently induced it to enter into the agreements by misrepresenting the sales contracts in Bravera's pipeline and

---

[1] Shea Development Corporation filed objections beyond the ten-day period set in law and of which the Report reminded the parties.

[2] All claims against defendant Elizabeth Anne Conley were dismissed on March 24, 2008.  See Shea Development Corp. v. Watson, No. 07 Civ. 11201 (DLC), 2008 WL 762087 (S.D.N.Y. Mar. 24, 2008).

2

Bravera's sales for 2007. Shea also alleged that Watson breached his employment agreement and fiduciary duties by failing to inform Shea that the information provided about Bravera's financial health was inaccurate. Meanwhile, Watson and Intellectus commenced suit against Shea in the New York Surpeme Court, alleging that Shea had failed to comply with the various agreements.

    In a settlement conference held before Judge Gorenstein on July 10, 2008, the parties reached a settlement agreement, which was placed on the record (the "July 10 Agreement"). As part of the settlement, plaintiffs agreed to accept "the tender of stocks and warrants that has been made by Mr. Watson." Plaintiffs also agreed to place $275,000 into escrow for Watson to use to satisfy outstanding tax liabilities and to pay Watson $175,000 cash. The parties recognized at the conference that they would have to "do some paperwork" to document the settlement, but they were subsequently unable to agree to a written version of the July 10 Agreement. On August 18, Watson filed an Order to Show Cause to enforce the terms of the agreement. Shea filed a cross-motion on September 2 seeking the same.

    Following two conferences with the parties, Judge Gorenstein issued the Report on October 27. Judge Gorenstein identified six outstanding issues: 1) whether the parties were

3

bound by the settlement to the Merger Agreement's indemnification clauses; 2) whether a December 18, 2007 letter from Watson constituted the tender of Watson's shares that Shea was required to accept under the settlement agreement; 3) whether the parties should execute general releases; 4) whether Shea must pay interest on the money owed to Watson pursuant to the settlement; 5) whether either party acted "unreasonably" or "vexatiously" such that sanctions should be awarded under 28 U.S.C.; and 6) the deadlines by which the payments and releases must be made. The Report included a Settlement Judgment to implement the terms of the July 10 Agreement.

The Report also specified that the parties must file any objections within ten days of service of the Report, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b), Fed. R. Civ. P. Watson filed objections to the Report on November 6, disagreeing with the payment deadlines set by the Report and the proposed Settlement Judgment's direction that the funds go directly to Watson, rather than to either Watson or his holding company or "pursuant to wiring instructions." Shea filed a response to Watson's objections on November 26, 2009.

DISCUSSION

When deciding whether to adopt a report, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §

4

636(b)(1)(C). The court shall make a de novo determination of the portions of the report to which petitioner objects. 28 U.S.C. § 636(b)(1); see United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Figueroa v. Riverbay Corp., No. 06 Civ. 5364 (PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006) (citation omitted).

A settlement placed on the record is binding. Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007). A court has authority to enter judgment on the terms agreed to by the parties in a stipulated settlement placed on the record. United States v. Sforza, 326 F.3d 107, 116 (2d Cir. 2003) (citing Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986)). A district court retains authority to clarify the settlement and impose clarifying terms. Manning v. New York University, 299 F.3d 156, 163 (2d Cir. 2002). A court may also require acts not specifically contemplated as part of the agreement in order to enforce the terms of the settlement. See Huertas v. East River Housing Corp., 992 F.2d 1263, 1268-69 (2d Cir. 1993). Settlement agreements must be construed according to principles of contract law. Powell, 497 F.3d at 128. Finding no clear error in the portions of the Report to which no timely

5

objections have been filed, the remaining items in the Report will be considered de novo, in light of the principles of interpretation and enforcement outlined here.

The Report's Settlement Judgment directs plaintiffs to place the $275,000 payment into escrow within 30 days of the entry of judgment. Watson seeks to have Shea put the $275,000 in escrow immediately, because the July 10 Agreement required plaintiffs to put the funds into escrow within fourteen days of the settlement conference, which was July 24, 2008. Plaintiffs offer several responses. Their response that they did not intend to pay the accrued interest on the $275,000 allocated for tax liability is not relevant to the issue of when they must make the payment. Similarly, their explanation of why they have not yet paid the $275,000 -- because Watson refused to deliver all stocks and warrants -- is also not an argument for why they should have additional time to make the payment beyond the date on which judgment is entered. The July 10 Agreement did not require that the tender of shares occur simultaneously with the $275,000 payment, and it is not clear why the Court should alter the structure of the due dates to which the parties agreed. As required by the July 10 Agreement, payment should occur within fourteen days of the entry of judgment.

Watson also objects to the Settlement Judgment's direction that the $275,000 and $175,000 shall be, respectively, released

6

to Watson from the escrow and paid to Watson directly.  Watson notes that the July 10 Agreement allowed the release of the $275,000 from escrow "to Mr. Watson or his holding company" and the payment of the $175,000 to "the attorney for Mr. Watson or pursuant to wiring instructions."  He seeks to have these additional delivery options -- to send the $275,000 to the holding company and the $175,000 pursuant to wiring instructions -- included in the Settlement Judgment.  Plaintiffs do not object.  Because the July 10 Agreement controls the terms of the settlement, and there is no objection, the Settlement Judgment should be reformed to include the additional payment options explicitly mentioned in the July 10 Agreement.

## CONCLUSION

The Report is adopted in part, and the August 18, 2008 and September 2, 2008 cross-motions to enforce the settlement are denied in part and granted in part.

SO ORDERED:

Dated:   New York, New York
         February 3, 2009

_____
              DENISE COTE
         United States District Judge

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
SHEA DEVELOPMENT CORP., BRAVERA, INC.,:
and IP HOLDING OF NEVADA CORP.,      :
                        Plaintiffs,  :   07 Civ. 11201 (DLC)
                                     :
             -v-                     :   SETTLEMENT JUDGMENT
                                     :
CHRISTOPHER WATSON and ELIZABETH ANNE :
CONLEY,                              :
                        Defendants.  :
-------------------------------------X
```

DENISE COTE, District Judge:

    The parties reached a settlement during a conference held on the record in the above-captioned matter on July 10, 2008. Omitted from this settlement judgment are items that the parties have already effectuated, such as transfer of property. In accordance with the July 10 conference, it is hereby

    ORDERED that:

1. The tender of stocks and warrants that was made by defendant Christopher Watson ("Watson") in a letter dated December 18, 2007 is deemed accepted by plaintiffs.

2. Within 30 days of the entry of this judgment, Watson will tender to plaintiffs all stock certificates and warrants that were not previously tendered. He will provide a written representation that these are all the stocks and warrants in his possession.

1

3. Within 30 days of the entry of this judgment, all pending litigation shall be dismissed with prejudice and each party shall provide a general release in favor of any adverse parties.

4. Watson shall be personally responsible for any tax liability that is determined to exist by the Internal Revenue Service and the Virginia taxing authorities with respect to the dispute regarding past due employment taxes.

5. As part of the process of determining that tax liability, Watson will be responsible for hiring any accountants that he needs.  Watson also has final authority with respect to any settlement of that tax liability with either the Internal Revenue Service or the Virginia authorities.

6. The sum of $275,000 (plus interest calculated as of July 24, 2008 at the rate earned by the plaintiffs' attorneys trust account) shall be put into the plaintiffs' attorneys' trust account within fourteen days of the entry of this judgment.  Such monies shall be the property of Watson.  This money will be held by these attorneys in escrow specifically for the purpose of paying the tax liability described above.  The money shall be released to Watson or his holding company for the purpose of the payment of any such tax liability.  Any remaining money will be given to him personally or to his designee promptly thereafter.

7. In addition, within thirty days of the date of this judgment, plaintiffs shall pay to Watson or pursuant to wiring instructions the sum of $175,000 plus interest calculated at the rate earned by the plaintiffs' attorneys' trust account.

8. The non-compete clauses that are in the contracts of any Bravera, Inc. employee and of Watson are released and are deemed null and void as of July 10, 2008.

9. No party shall discuss the terms of this agreement, except that the parties may reveal them to accountants, attorneys, immediate family members or any person to whom it must be revealed to comply with any subpoena or applicable law. The parties acknowledge that this Judgment will be filed in the public record.

SO ORDERED:

Dated:   New York, New York
         February 3, 2009

_____
DENISE COTE
United States District Judge

3